**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:16-CV-126-JRG-RSP** |
| | § | |
| **LINDA BUTCHER, ET AL.,** | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT, LOOKOUT, INC.'S MOTION TO DISMISS UNDER R12(b),**
**ALTERNATIVELY, TO TRANSFER IN INTEREST OF JUSTICE,**
**AND SUPPORTING BRIEFING**

Introduction

1. The Northern District of Texas, Dallas Division, the Honorable Sam A. Lindsey, has

expressly retained jurisdiction of this related action:

> The court shall **retain** exclusive jurisdiction of this case over any disputes that may arise
> concerning this or any earlier order, the wind down of the Receivership estate, and the
> relief provided under this order, or any controversy that arises from or relates to the
> Receivership or actions of the Receiver or his professionals.

civil case no. 3:09-CV-988-L, styled *Netsphere, Inc. v. Baron*, court docket doc. #1447, 2015

U.S. Dist. LEXIS 39735 at *40 (N.D. Tex. Mar. 27, 2015) (emphasis original). This related

action filed by plaintiff, Associated Recovery, LLC ("Associated Recovery"), is a purported

declaratory judgment action and claim for damages against a number of defendants, including

Lookout, Inc. ("Lookout"), with regard to their acquisition of domain name rights sold under the

receivership referenced by Judge Lindsey in his order.

2. Lookout before pleading an answer moves the court to dismiss the action under Fed. R.

Civ. Proc. 12(b)(3) for improper venue. Alternatively, Lookout moves the court to transfer the

action in the interest of justice to the Northern District of Texas, Dallas Division, the Honorable Sam A. Lindsey, under 28 U.S.C. §1406(a) or, alternatively, under 28 U.S.C. §1404(a).

3. Additionally, Lookout moves the court to dismiss the action under Fed. R. Civ. Proc. 12(b)(1) for the plaintiff's lack of standing to complain of the alleged acts and to seek the requested relief. Alternatively, Lookout moves the court to dismiss the action under Fed. R. Civ. Proc. 12(b)(6) for the plaintiff's failure to state a claim upon which relief can be granted.

4. Alternatively, Lookout moves the court to dismiss the action under Fed. R. Civ. Proc. 12(b)(7) for the plaintiff's failure to join a required party under Fed. R. Civ. Proc. 19.

5. Lookout affirmatively alleges the defenses of *res judicata* or claim preclusion and of collateral estoppel or issue preclusion. Alternatively, Lookout affirmatively alleges the defenses of statute of limitations and laches.

## Summary of Argument

6. Venue is not proper in this district as to Lookout under the general venue statute, 28 U.S.C. §1391: Lookout is a resident of California, not Texas; no part of the events or omissions giving rise to the claim occurred in this district, nor is any part of any property that is the subject of the action situated in this district; and, there is a district in which the action otherwise could be brought, that is, the Northern District of Texas, in which district a substantial part of the events or omissions giving rise to the claim occurred and in which district a court has retained exclusive jurisdiction over any such related case as this one.

7. Alternatively, because that court has retained exclusive jurisdiction of any controversy that arises from the receivership in question, this court in the interest of justice should transfer the case to the Northern District of Texas, Dallas Division, for assignment to the Honorable Sam

A. Lindsey, under 28 U.S.C. §1406(a). Further alternatively, this court otherwise in the interest of justice should transfer the case to the Northern District under 28 U.S.C. §1404(a).

8.   Additionally, by operation of final orders in the underlying receivership action, *Netsphere, Inc. v Baron, infra*, and in the subsequent lawsuit by the plaintiff's predecessors-in-interest directly against the receiver, *Baron v. Vogel, infra*, Associated Recovery's predecessors-in-interest are barred by the doctrine of *res judicata* from re-litigating against the court-appointed receiver any complaint based on transfer of the domain name rights while that asset was in receivership. Associated Recovery, therefore, is collaterally estopped from re-litigating by proxy any such assigned complaint against Lookout as a purchaser from the receiver. Associated Recovery, thus, lacks standing to bring this lawsuit.

9.   Additionally, since Lookout was a third-party purchaser in an arms-length transaction for value of the domain name rights from the receiver while the asset was in an un-stayed receivership, Associated Recovery's complaint should be dismissed for failure to state a claim upon which any relief can be granted against Lookout.

10.   Alternatively, Associated Recovery's complaint should be dismissed for failure to join the receiver or Associated Recovery's assignor(s) as a required party under Fed. R. Civ. Proc. 19(b).

<u>Synopsis of Factual Background</u>

11.   (The following is summarized from the matters of record recounted in the reported opinions cited below in the argument.) In 2009, a lawsuit was filed in the United States District Court for the Northern District of Texas, Dallas Division, under civil case no. 3:09-CV-988-F styled *Netsphere, Inc., et al. v. Jeffrey Baron, et al.,* for enforcement of a settlement agreement with regard to the ownership of a portfolio of internet domain name rights. Toward the end of

2010, the district court, Judge Ferguson then presiding, appointed a receiver, Peter S. Vogel, over the defendant, Jeffrey Baron, and over a number of related entities, including Novo Point, LLC, which order was appealed to the Fifth Circuit Court of Appeals. The order appointing the receiver was not stayed pending the interlocutory appeal. In the interim, the district court proceeded to approve various actions by the receiver, including the appointment of a manager over the portfolio, Damon Nelson, and the sale of various domain name rights by the manager (including the domain name "lookout.com" to Lookout). At the end of 2012, the court of appeals reversed the order of the district court appointing the receiver and remanded the matter with directions to the district court to vacate the receivership. The district court in accordance with the court of appeals mandate proceeded with winding-up the receivership through 2013, continuing through 2014, and, finally, in 2015.

12. Toward the end of 2014, Jeffrey Baron and Novo Point, LLC, (and another entity) filed a lawsuit against the receiver, Peter Vogel, and his manager, Damon Nelson, and others in state district court in Dallas County, Texas, alleging claims based on wrongful appointment of the receiver. The case was removed at the beginning of 2015 to the United States District Court for the Northern District of Texas, Dallas Division, under civil action no. 3:15-CV-232-L styled *Jeffrey Baron, et. al. v. Peter Vogel, et al* (assigned to Judge Lindsey as successor to Judge Ferguson presiding over the *Netsphere, Inc.*, litigation).  Plaintiffs' motion to remand the action was denied. Defendants' motion to dismiss the (amended) complaint was granted with prejudice.

13. In the beginning of 2016, Associated Recovery filed a lawsuit as the successor-in-interest to Jeffrey Baron and Novo Point, LLC, as an action *in rem* against a number of internet domain names that had been transferred by the receiver. That lawsuit originally was filed in the United States District Court for the Eastern District of Virginia. It subsequently was transferred

(in part) and now is pending in the United States District Court for the Northern District of Texas, Dallas Division, under civil case no. 3:16-CV-1025-L styled *Associated Recovery, LLC v. John Does 1-44* (assigned to Judge Lindsey). Associated Recovery also filed this companion lawsuit in this division of the Eastern District of Texas as an action *in personam* against a number of internet domain name transferees of the receiver.

Related Cases

14. The following are related matters which Lookout has identified to date:

a. Civil Action No. 3:09-CV-988-F styled *Netsphere, Inc., et al. v. Jeffrey Baron, et al.,* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Ferguson, then J. Lindsey).

b. Appeal No. 10-11202 styled *Netsphere, Inc. v. Baron* in the U.S.C.A. for the Fifth Circuit, 703 F.3d 296 (2012) (opinion).

c. Appeal No. 10-11202 styled *Netsphere, Inc. v. Baron* in the U.S.C.A. for the Fifth Circuit, 2012 U.S. App. LEXIS 27248 (Dec. 31, 2012) (clarification opinion).

d. Appeal No. 13-10119 styled *Netsphere, Inc. v. Baron* in the U.S.C.A. for the Fifth Circuit, 799 F.3d 327 (2015) (dism'd w.o.j.).

e. Bankruptcy Case No. 09-BK-34784-SGJ-7 styled *In re: Ondova Limited Company* in the U.S.Bk.C. for the N. Dist. of Tex., Dallas Div. (J. Jernigan)

f. Civil Action No. 3:13-CV-1294-L styled *Jeffrey Baron v. Daniel J. Sherman* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey), 2013 U.S. Dist. LEXIS 155442 (Oct. 30, 2013) (bankruptcy appeal dismissed *sua sponte*).

g. Civil Action No. 3:13-CV-3461-L styled *Jeffrey Baron v. Elizabeth Schurig* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey).

h.   Appeal No. 13-10120 styled *Petfinders, LLC v. Sherman (In re Ondova Ltd. Co.)* in the U.S.C.A. for the Fifth Circuit, 620 Fed. Appx. 290 (2015).

i.   Bankruptcy Case No. 12-BK-37921-SGJ-7 styled *In re: Jeffrey Baron* in the U.S.Bk.C. for the N. Dist. of Tex., Dallas Div. (J. Jernigan).

j. Appeal No. 14-10092 styled *Ferguson v. Baron (In re Baron)* in the U.S.C.A. for the Fifth Circuit, 593 Fed. Appx. 356 (2014) (opinion).

k. Civil Action No. 3:14-CV-1552-L styled *Novo Point, LLC, et.al. v. Elisa Katz, et al.* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey).

l. Memorandum Opinion and Order in Civil Action No. 3:14-CV-1552-L styled *Novo Point, LLC, et. al. v. Elisa Katz, et al.*, 2015 U.S. Dist. LEXIS 31813 (Mar. 13, 2015) (remand *sua sponte* to state district court, Collin County, Texas).

m. Civil Action No. 3:15-CV-232-L styled *Jeffrey Baron, et al. v. Peter Vogel, et al.* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey).

n. Civil Action No. 3:15-CV-2244-L styled *Domain Protection LLC v. Paul Raynor Keating* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey).

o. Civil Action No. 3:16-CV-1025-L styled *Associated Recovery, LLC v. John Does 1-44* in the U.S.D.C. for the N. Dist. of Tex., Dallas Div. (J. Lindsey).

<u>Argument</u>

A. Improper Venue

15. Venue is not proper in this district as to Lookout under the general venue statute, 28 U.S.C. §1391. In the first place, Lookout is not a resident of Texas or of this judicial district. 28 U.S.C. §1391(b)(1). Instead, Lookout is a California corporation with its headquarters and its principal place of business located in San Francisco, California.  See Declaration of Irene Liu at

¶4. Lookout is not registered with the Texas Secretary of State to do business in Texas, and Lookout does not maintain an agent for service of process in Texas. Liu Decl. at ¶5. Associated Recovery, itself, admits in its Amended Complaint that Lookout "has neither a place of business nor a registered agent in Texas." See court docket, doc.#15, pg.6, ¶16.

16. Secondly, no part of the events or omissions giving rise to the claim occurred in this district, nor is any part of any property that is the subject of the action situated in this district. 28 U.S.C. §1391(b)(2). Associated Recovery reportedly is a Wyoming-based company with no apparent ties to this district other than the filing of this lawsuit. Doc.#15, pg.3, ¶4. Lookout, itself, does not have any ties to this district or any other presence in this district. Liu Decl. at ¶5.

17. And, there is a district in which the action otherwise could be brought, that is, the Northern District of Texas. 28 U.S.C. §1391(b)(3). A substantial part (if not all) of the events or omissions giving rise to the claim occurred in that district, specifically within the Dallas Division. Liu Decl. at ¶6.

18. When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a). *Atl. Marine Constr. Co. v. U. S. Dist. Ct. for the W. Dist. Of Tex.*, _ U.S. _, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013). In other words, when suit is filed in the wrong district, that is, when venue is improper, then the court must dismiss the case upon timely objection, or, if the court finds it be in the interest of justice, may transfer the case to the district where the suit could have been brought, under 28 U.S.C. §1406(a). *Id.*

19. In the case of a corporate defendant, it "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the

civil action in question." 28 U.S.C. §1391(c)(2). The Fifth Circuit has held that in states such as Texas where the forum's long arm statute is coextensive with the limits of due process, personal jurisdiction is determined by evaluating whether the defendant has sufficient minimum contacts with the forum "such that maintaining the suit does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214-15 (5th Cir. [Tex.] 2000), citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If such minimum contacts are not of a sufficient "continuous and systematic" nature so as to support general jurisdiction, *see, e.g., Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. [Tex.] 2003), then the plaintiff's claims must arise from or relate to the defendant's contacts with the forum to support specific jurisdiction, *see, e.g., Alpine View Co. Ltd., supra.* In any event, "random," "fortuitous," or "attenuated" contacts or contacts resulting from the "unilateral activity" of others are insufficient to support jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

20. In this case, Associated Recovery has made absolutely no particularized factual allegations to support venue in this district against Lookout, only general allegations of conclusory legal propositions. Doc.#15, pg.19-20, ¶68-71. Lookout as a matter of fact does not have sufficient minimum contacts with the Eastern District of Texas to support either general or specific jurisdiction. Liu Decl. at ¶4-5. Lookout, therefore, urges the court to dismiss the action for improper venue as to Lookout. *Alpine View Co. Ltd., supra*.

21. The court, however, may well find it to be in the interest of justice to transfer the suit to the Northern District of Texas, Dallas Division, for assignment to the Honorable Sam A. Lindsey, based on his express retention of jurisdiction:

> The court shall **retain** exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the

relief provided under this order, or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.

civil case no. 3:09-CV-988-L, styled *Netsphere, Inc. v. Baron*, court docket doc. #1447, pg.40, 2015 U.S. Dist. LEXIS 39735 at *40 (N.D. Tex. Mar. 27, 2015) (emphasis original). (See attached Exhibit #1. See also B. Lack of Standing, ¶27, below.) Additionally, the court may transfer the entire case since the Northern District is proper for all defendants. *Cottman Transmission Sys. V. Martino*, 36 F.3d 291, 296 (3rd Cir. 1994). A cursory consideration of the dozen related matters serves to demonstrate Judge Lindsey's familiarity with the underlying receivership action as well as with the various appeals, subsequent litigation, and entwined bankruptcy cases, which familiarity puts Judge Lindsey in a superior position to more expeditiously and judiciously determine the outcome of this action, whether procedurally or substantively. (Note: Judge Lindsey closed, but did not dismiss, the *Netsphere* case, due to the pendency of related bankruptcy matters. See civil case no. 3:09-CV-988-L, court docket doc. #1448.)

22. For the same reason, by analogy to a mandatory forum selection clause, the court may transfer the case to the Northern District even if venue is proper in the Eastern District, under 28 U.S.C. §1404(a). *See Atl. Marine Constr. Co.,* 134 S. Ct. at 579. Under a "convenience" transfer analysis, the court considers a number of private and public interest factors, none of which are given dispositive weight. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. [Tex.] 2004). The private interest factors largely concern the interest of the parties and witnesses. *Id.* at 203-05. The public interest factors include "the familiarity of the forum with the law that will govern the case." *Id.* at 203. The statute, however, speaks not only of "the convenience of parties and witnesses" but also "in the interest of justice." 28 U.S.C. §1404(a).

23. The only connection between this case and the Eastern District is Associated Recovery's choice to file here. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. [Tex.] 2008). The predominant private interest factor of the convenience of the parties and witnesses connects this case squarely with the Northern District. The principle witnesses (and potential parties, see D. Failure to Join, ¶51 *et seq.*, below) are the receiver, Peter Vogel, and his manager, Damon Nelson, as well as plaintiff's predecessor-in-interest (and beneficial interest owner), Jeffrey Baron, all of whom on information and belief are residents of Dallas, Texas. The predominant public interest factor of the familiarity of the forum with the law of the case also squarely connects this case with the Northern District, in particular with Judge Lindsey's court in the Dallas Division. The Northern District meets the threshold determination as a district in which the case not only could but should have been filed in accordance with Judge Lindsey's fiat. *Id.* at 312. Thus, Lookout has demonstrated good cause to overcome plaintiff's choice of venue. *Id.* at 315.

24. In any event, once Lookout properly raises a 12(b)(3) motion, the burden of sustaining venue lies with the plaintiff, Associated Recovery. *Watts v. L-3 Commc'n Corp.*, No. 2:12-cv-28-JRG, 2012 WL 4480721 (E.D. Tex. Sept. 26, 2012); *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002).

## B. Lack of Standing

25. Associated Recovery alleges that it is the assignee of the rights to the subject domain names, including the right to sue to recover the subject domain names and damages, without alleging any more particulars about the identity of any purported assignor. Doc.#15, pg.4, ¶5, and pg.21, ¶77. Associated Recovery, however, has alleged such assignee status with considerably

more particularity in the related civil case no. 3:16-CV-1025-L styled "*Associated Recovery, LLC v. John Does 1-44*" now pending in the United States District Court for the Northern District of Texas, Dallas Division (Judge Lindsey presiding). Associated Recovery alleges in its amended complaint in that suit that Associated Recovery's predecessor-in-interest is Novo Point, LLC, whose predecessor-in-interest is Jeffrey Baron. See case no. 3:16-CV-1025-L court docket doc.#76, pg.2-3, ¶3-4 (Exh. #2). The status of Associated Recovery as purported assignee of the rights of Novo Point, LLC, and Jeffrey Baron is dispositive in this regard of the plaintiff's lack of standing to sue.

26. A motion to dismiss for want of standing is properly brought under Fed. R. Civ. Proc. 12(b)(1) because standing is a jurisdictional matter. *In re Schering Plough*, 678 F.3d 235, 243 (3rd Cir. 2012). A party has standing to file suit if it can demonstrate (1) an injury in fact, that is, harm that is concrete and actual, not merely conjectural or hypothetical; (2) causation, that is, a traceable connection between the plaintiff's claimed injury and the defendant's alleged conduct; and, (3) redressability, that is, the likelihood that the requested relief will remedy the alleged injury. *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. [Tex.] 2009), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Furthermore, since the assignee stands in its assignor's shoes, then the assignee's standing to assert an assigned claim is no greater than the standing of its assignor to satisfy the predicate jurisdictional requirements to assert those rights. *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F.Supp.2d 961, 965-66 (S.D. Tex. 2013).

27. The subject domain name rights at issue in this case were the subject of a receivership as assets of Jeffrey Baron and Novo Point, LLC, which receivership was established by the Northern District of Texas, Dallas Division, the Honorable Royal Furgeson then presiding, in its

civil case no. 3:09-CV-988-F styled "*Netsphere, Inc., et al. v. Jeffrey Baron, et al.*" [See Fifth Circuit Court of Appeals opinion on related interlocutory appeal in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) for more of the background to that case.]  Novo Point, LLC, and Jeffrey Baron subsequently brought a separate state court suit, styled *Jeffrey Baron, et al. v. Peter Vogel, et al.* (removed to the United States District Court for the Northern District of Texas, Dallas Division, under civil case no. 3:15-CV-232-L), directly against the court-appointed receiver and his agent who had transferred the subject domain name rights, alleging "claims based on theories of wrongful appointment of receivership, breach of fiduciary duty, civil conspiracy, intentional infliction of emotional distress, gross negligence and intentional torts, abuse of process, breach of contract, constitutional torts, and vicarious liability." See case no. 3:15-CV-232-L, court docket doc.#49, pg.1-2, *Baron v. Vogel*, 2016 U.S. Dist. LEXIS 44294 at *1-*2 (N.D.Tex. Mar. 31, 2016) (Exh. #5).

28. Judge Lindsey in his memorandum opinion and order reported in *Baron v. Vogel, supra,* noted that "[v]irtually all of Plaintiffs' allegations and claims with respect to the [receiver] pertain to the receivership and Defendants' administration of the receivership." *Id*. at *19. Judge Lindsey then went on to hold that "[a]ny contention by Plaintiffs, however, that Defendants engaged in wrongful or sanctionable conduct in the *Netsphere* or any of the related litigations brought by or against Baron and the LLCs could have and should have been brought to the court's attention in a **Rule** 11 motion or one of the many appeals filed with the Fifth Circuit regarding the receivership and fee orders, not as a separate collateral state court action." *Id*. at *20-21. Thus, "[f]or all of the reasons set forth herein, the court **grants** [defendants'] Motion to Dismiss Amended Complaint (Doc. 39) and **dismisses with prejudice** their [sic] claims based on theories of wrongful appointment of receivership, breach of fiduciary duty, civil conspiracy,

intentional infliction of emotional distress, gross negligence and intentional torts, abuse of process, breach of contract, constitutional torts, and vicarious liability." *Id*. at *22 (emphasis original).

29. In other words, Associated Recovery's purported assignor(s), whether Novo Point, LLC, or Jeffrey Baron, could not bring the instant lawsuit against Lookout. Any claims in this case - for declaratory judgment, conversion, violation of the Anticybersquatting Consumer Protection Act, unjust enrichment, misappropriation, to quiet title, or for fraudulent conveyance - are all based on the underlying issue of wrongful receivership and, therefore, are all precluded from re-litigation under the doctrine of collateral estoppel or issue preclusion.

30. To establish collateral estoppel or issue preclusion under federal law, one must show: (1) that the issue at stake is identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. [Tex.] 1995); *Wehling v. CBS*, 721 F.2d 506, 508 (5th Cir. [Tex.] 1983). *Accord, Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit. *Id*. In this instance, the identical issue – whether Novo Point, LLC, or Jeffrey Baron has a right to recovery or for damages from the transfer of the domain name rights in receivership - has been adjudicated against them *with prejudice to its refiling. Baron v. Vogel, supra. See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) (judgment dismissing suit "with prejudice" bars a later suit on the same cause of

action). *See also Keys v. Sawyer*, 353 F. Supp. 936, 940 (S.D. Tex. 1973) (action barred by *res judicata* fails to state a claim).

31. Novo Point, LLC, or Jeffrey Baron, therefore, would be barred from bringing this lawsuit. *See also Allen v. McCurry,* 449 U.S. 90, 94-97, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) (discussion of policies supporting *res judicata* and collateral estoppel). Associated Recovery, thus, as their purported assignee of their barred claims has no standing to bring the lawsuit, either. *PEMEX*, 923 F.Supp.2d at 965. *See also Freeman v. Lester Coggins Trucking Co.*, 771 F.2d 860, 864 (5th Cir. [Miss.] 1985), *quoting Southwest Airlines v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir. [Tex.] 1977), *cert. denied*, 434 U.S. 832, 98 S. Ct. 117, 54 L. Ed. 2d 93 (1977) (successor-in-interest barred). *See also Keys v. Sawyer*, 353 F. Supp. at 940 ("judgment on the merits in a prior suit involving the same parties *or their privies* bars a second suit based on the same cause of action") (emphasis added).

32. Again, in any event, once Lookout properly raises a 12(b)(1) motion, the burden of establishing jurisdiction lies with the plaintiff, Associated Recovery. *Lujan*, 504 U.S. at 561, citing *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231, 107 L. Ed. 2d 603, 110 S. Ct. 596 (1990), and *Warth* v. *Seldin*, 422 U.S. 490, 508, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).

C. Failure to State a Claim

33. Associated Recovery asserts its various claims in this case based on the premise of the vacatur of the receivership order in the underlying civil case no. 3:09-CV-988-F styled "*Netsphere, Inc., et al. v. Jeffrey Baron, et al.*" filed in the Northern District of Texas. Doc.#15, pg.2, ¶1. Again, the status of Associated Recovery as purported assignee of the rights of Novo

Point, LLC, and Jeffrey Baron also is dispositive in this regard of the plaintiff's failure to state a claim.

34. Associated Recovery alleges that the Fifth Circuit Court of Appeals "ordered a reversal of the Domain Sales orders." Doc.#15, pg.22, ¶83. The record patently does not support that assertion. In the first place, there is no automatic stay on appeal of an interlocutory order in a receivership, Fed. R. Civ. Proc. 62(a), and the court of appeals declined to grant Jeffrey Baron's motion to stay the receivership pending the interlocutory appeal of the order granting it, *Netsphere, Inc*., 703 F.3d at 304. The court of appeals in its opinion did vacate the order appointing the receiver, *id*. at 311, and did stay the closing of any pending auction sales of domain name rights, *id*. at 314, fn.2, but it did not rescind any *private* sales of domain name rights. To the express contrary, the court of appeals held that "[n]o *further* sales of domain names or other assets are authorized." *Id*. at 314 (emphasis added). The court of appeals *could* have but did *not* compel the receiver to make any restitution for the domain names that already had been sold, relying on *W.F. Potts & Co. v. Cochrane*, 59 F.2d 375, 377-78 (5th Cir. [Fla.] 1932). Instead, the court of appeals considered that, under the extraordinary circumstances that Jeffrey Baron had brought upon himself, "[f]or these reasons, charging the current receivership fund for reasonable receivership expenses, without allowing any *additional* assets to be sold, is an equitable solution." *Netsphere, Inc*., 703 F.3d at 313 (emphasis added).

35. In other words, the court of appeals opinion makes no provision for return of the domain name rights assets already sold, just the cash proceeds, and even then subject to a charge of the reasonable receivership expenses. The court of appeals opinion halts any *further* private sales or auction closings, and it remands the matter to the district court for the determination of

the winding-up of the receivership. *Id*. at 313-14. The court of appeals in a subsequent clarification order specifically pointed out that their opinion did *not* dissolve the receivership immediately and that it instead remanded the matter to the district court to manage the process of winding-up the receivership. *Netsphere, Inc. v. Baron*, 2012 U.S. App. LEXIS 27248 (5th Cir. [Tex.] Dec. 31, 2012) (Exh. #3). This recognition of the *de facto* continuance of the receivership is in accordance with the general effect of any order of a court, that it must be promptly obeyed: "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458-59, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975). The receivership in fact continued in existence for over two years, until it was finally wound-up by the district court in 2015. See case no. 3:09-CV-988-L, court docket doc.#1447, *Netsphere, Inc. v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015) (Exh. #1.)

36. Judge Lindsey, himself, subsequently interpreted the effect of the court of appeals' vacatur of the receivership order, in light of a motion to remand the removed separate collateral state court action, *Baron v. Vogel*. In his reported memorandum opinion and order denying the motion to remand, Judge Lindsey drew on the distinction between lack of jurisdiction and excess of jurisdiction:

> "In *Netsphere*, the district court had subject matter jurisdiction over the action based on diversity jurisdiction * * * and the court determines that appointment of a receiver is a normal judicial function because, as the Fifth Circuit in *Netsphere I* recognized, a district court has authority to establish receiverships in certain circumstances. *See Netsphere, Inc.*, 703 F.3d at 305-307. A district court also has a number of tools at its disposal to manage its dockets and control the vexatious conduct of litigants such as Baron. *See id.* at 310-11. As explained in *Netsphere I*, however, Judge Furgeson simply fashioned the wrong remedy when he established a receivership over assets not at issue in the underlying litigation as a means of controlling Baron's disruptive conduct. The court in *Netsphere I* also held, based on the record before it, that "in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in

which [the court] believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics." *Netsphere, Inc.*, 703 F.3d at 313.

> The court, therefore, concludes that, even if Judge Furgeson acted beyond the district court's authority or in excess of its jurisdiction, he did not act in the clear absence of jurisdiction when he created the receivership in *Netsphere*."

Case no. 3:15-CV-232-L, court docket doc.#48, pg.13-14, *Baron v. Vogel*, 2015 U.S. Dist. LEXIS 128812 at *13-*14 (N.D. Tex. Sept. 25, 2015) (Exh. #4).

37. In other words, Judge Lindsey determined in *Baron v. Vogel* that the order appointing the receiver in legal effect was voidable, not void *ab initio*, since the order subsequently was held to be unauthorized under the circumstances but it was not fundamentally outside the inherent power of the court initially to order a receivership. *Id.* The court of appeals similarly had noted in *W.F. Potts & Co., supra*, that the district court generally has the power and the discretion within equitable limits to enter decrees in a receivership, just not to enter the specific decree that it did under the equitable principles applicable in that case. 59 F.2d at 377.

38. In his reported subsequent memorandum opinion and order granting the motion to dismiss for failure to state a claim, Judge Lindsey relied on such distinction to further hold that the receiver had the authority during the pendency of his receivership to manage the receivership assets. See case no. 3:15-CV-232-L, court docket doc.#49, pg.16-20, *Baron v. Vogel*, 2016 U.S. Dist. LEXIS 44294 at *16-*20 (N.D.Tex. Mar. 31, 2016) (Exh. #5). Judge Lindsey in effect determined that the derivative judicial immunity of the receiver during the pendency of the receivership was unaffected by the court of appeals reversal of the order appointing a receiver. *Id.* Judge Lindsey further determined that plaintiff's complaint failed to state a valid claim for any relief, since plaintiffs' allegations of purported bad faith actions outside of the receiver's authority were facially implausible. *Id.* And, Judge Lindsey further determined that any such allegations also constituted an impermissible collateral attack on the court's prior orders in the

*Netsphere* case. *Id.* at *20-*21. Thus, Judge Lindsey came to the ultimate conclusion that the removed separate collateral complaint should be dismissed *with prejudice* for failure to state a claim. *Id.* at *22. The same result, that is, dismissal with prejudice of Associated Recovery's case against Lookout, should occur in this case.

39. The court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. [Tex.] 2008), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (U.S. 2007). While the court must accept as true the allegations in the complaint and construe them in the light favorable to the plaintiff, the court need not strain to find favorable inferences and must not accept mere conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. [Tex.] 2005). The plaintiff's factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. As the Supreme Court has explained:

> "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

40. In this case, Associated Recovery by proxy is attempting to assert as the purported assignee the same conclusory allegations that its assignor(s) attempted to assert in *Baron v. Vogel, supra,* and that were dismissed *with prejudice* in that case for failure to state a claim.

Associated Recovery as purported assignee of Jeffrey Baron or Novo Point, LLC, stands in no better position in this case than the assignor(s) did in *Baron v. Vogel*. Associated Recovery's factual allegations in this case are no more legally sufficient than Jeffrey Baron's or Novo Point, LLC's were in their case. Lookout as the purchaser of the subject domain name rights from the receiver while the asset was in receivership stands in at least no worse position than the receiver did in *Baron v. Vogel*. The court, therefore, should dismiss this suit for failure to state any claim upon which any relief can be granted.

41. Furthermore, Lookout as a third-party purchaser in an arms-length transaction for value in fact stands in an even better position than the receiver: "The Supreme Court long ago in *Sage v. Railroad Company*, 96 U.S. 712, 714, 24 L. Ed. 641 (1877) stated that:

> We have often decided that a decree confirming a sale, if it is final, may be appealed from. . . . In this case ***it is final, so far as title under the sale is concerned***. It cuts off the equity of redemption by the railroad company and the junior mortgagees and general creditors, except as provided in the decree of Oct. 22; ***and passes the title to the purchaser***, subject to certain trusts already fixed by the court, over which the present appellants have control only through their appeal from the former decree. ***no reversal of any order hereafter made will necessarily divest this title***. The proceedings hereafter will relate only to the disposition of the property acquired by the purchase and the proceeds of the sale. For relief against the sale, resort can alone be had to an appeal from the decree of confirmation. (Citations omitted)."

*United States v. "A" Mfg. Co.*, 541 F.2d 504, 506 (5th Cir. [Tex.] 1976) (appeal of order directing sale under receivership) (emphasis added). Lookout, therefore, received title to the domain name rights it purchased from the receiver, regardless of the disposition on appeal of the order appointing the receiver. *Id.* As the Supreme Court said, "[t]he proceedings [t]hereafter will relate ***only*** to the disposition of . . . the ***proceeds*** of the sale." *Sage*, 96 U.S. at 714 (emphasis added). *See also SEC v. Janvey*, 404 Fed.Appx. 912, 915-16 (5th Cir. [Tex.] 2010) (good faith purchaser status trumps a challenge to an [un-stayed] order confirming the judicial sale of property).

42. By analogy, as cited in *SEC v. Janvey, supra*, the statutory bankruptcy provision contained in 11 U.S.C. §363(m) patently protects, from later modification on appeal, an authorized sale by a trustee where the purchaser acted in good faith and the sale was not stayed pending appeal. *Gilchrist v. Westscott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990). The same preference for finality and efficiency in the bankruptcy context codified in §363(m) - that is, providing good faith purchasers with a final order and removing the risks of endless litigation over ownership, see *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 218-19 (5th Cir. [Tex.] 2013) - equally applies in the receivership context. In particular, the fact that the purchaser knew about the pendency of an appeal is not dispositive, so long as the sale was not stayed pending the appeal. *Gilchrist*, 891 F.2d at 561 ("Gilchrist's failure to obtain a stay is fatal to his position"). *See also Am. Grain Assoc. v. Lee-Vac, Ltd.,* 630 F.2d 245, 247 (5th Cir. [La.] 1980) ("In the absence of a stay of a bankruptcy court's order affecting a debtor's property, a party appealing the order will not be heard to affect the rights of a third party who, pursuant to the order, acquired, in good faith, . . . the property"), *citing In re Dutch Inn of Orlando, Ltd.,* 614 F.2d 504, 506 (5th Cir. [Fla.] 1980) (mere knowledge that an aggrieved party has appealed the bankruptcy court's order does not deprive a third party of the protection afforded a good faith purchaser).

43. Lookout, thus, as a third-party purchaser in an arms-length transaction for value in an authorized sale by the receiver acquired the title to the domain name rights it purchased from the receiver, *regardless*, either of the fact of the pendency of an appeal or of the disposition on appeal of the order appointing the receiver. This is the same legal and equitable result as the express statutory effect of an authorized sale by a trustee in bankruptcy, *regardless*, so long as the authorizing order was not stayed on appeal. It does not matter what Lookout knew about the

status of the receivership, so long as the sale was authorized at the time and the order was not stayed pending the appeal. *United States v. "A" Mfg. Co., supra; SEC v. Janvey, supra.*

44. Furthermore, Associated Recovery's asserted claim to common-law trademark rights in the domain names is implausible on its face. The transfer of the domain name rights by the receiver to the purchaser implies the transfer of a license to use the name, regardless of whether the sale is voluntary or involuntary. *See McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (patent right). In addition, Lookout already had applied for and in due course subsequently had been issued domestic and foreign registration for its trademark name *prior* to the purchase of the subject domain name rights. Liu. Decl. at ¶6-7. If anyone has a claim for cyberpiracy prevention, it is Lookout against Associated Recovery for Associated Recovery's assertion of a putative claim to a domain name identical to Lookout's registered trademark under which Lookout actively conducts commerce. *See, e.g., Petfinders, L.L.C. v. Sherman (In re Ondova Ltd. Co.)*, 620 Fed. Appx. 290, 291 (5th Cir. [Tex.] 2015) ("The [Bankruptcy] Court further heard convincing evidence that Discovery holds numerous trademark registrations on the word "petfinder" and that any use or sale by the Trustee of the Domain Name could lead to claims by Discovery of trademark infringement").

45. In any regard, Associated Recovery's complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 554. The amended complaint essentially attempts to conjure by a virtual sleight-of-hand an assigned claim that did not exist to be assigned: Associated Recovery on the one hand claims that it acquired the domain name rights from its predecessors-in-interest, but then Associated Recovery on the other hand complains that the defendants acquired the domain name rights from the receiver in the course of the receivership (which they did). In the latter regard, then, Associated Recovery's claim is

illusory, regardless of any purported assignment of it, since its predecessors-in-interest's claim would be limited to the proceeds of the sale, only, if at all. *Sage v. Railroad Company, supra*.

46. Associated Recovery's further claim that its assignment included the right to sue to recover the subject domain names and damages also is illusory: Associated Recovery's predecessors-in-interest, whether Novo Point, LLC, or Jeffrey Baron, and, hence, Associated Recovery, itself, are barred from re-litigating against the court-appointed receiver *or his transferees* any complaint based on transfer of the domain name rights while that asset was in receivership. This is because of the operation of the final orders in the receivership action, *Netsphere, Inc. v Baron, supra*, and because of the effect of the dismissal *with prejudice* in the subsequent lawsuit directly against the receiver, *Baron v. Vogel, supra*: "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties *or their privies* based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of *issues* actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326, n. 5, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979) (Emphasis added.) *Accord, Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628-31 (Tex. 1992); *Texas Water Rights Comm. v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979).

47. In other words, either way, by *res judicata* or by collateral estoppel, Associated Recovery's complaint fails to state any claim for which any relief can be granted. As the Supreme Court stated in *Ashcroft v. Iqbal, supra*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Associated Recovery's amended complaint fits that description to the proverbial "T." When it is specifically considered in context of the record, Associated Recovery's amended complaint wholly fails to

state a claim upon which any relief can be granted against Lookout: Associated Recovery is not asserting anything new or differently from what its predecessor(s) in interest tried to assert against the receiver, and Associated Recovery is not asserting anything else or differently against the receiver's purchasers. Associated Recovery otherwise asserts "nothing more than conclusions" against the defendants. *Id.* Associated Recovery's suit, therefore, should be dismissed as to Lookout.

48. As an evidentiary matter, the court, of course, may consider any relevant extrinsic evidence such as an affidavit or documents in making its determination of the venue motion or of the joinder motion. *See, e.g., Philippines v. Pimentel*, *infra,* 553 U.S. at 868 ("Rule 19 cannot be applied in a vacuum"). The court also may consider the defendant's supporting affidavit as well as the matters of public record in deciding the jurisdictional issue of standing. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. [Miss.] 1994). Lookout asserts that the court even may consider the Transfer Agreement attached to the supporting declaration, *see Collins v. Morgan Stanley*, 224 F.3d 496, 498-99 (5th Cir. [Tex.] 2000), as well as take judicial notice of the relevant matters of public record, *see Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017-18 (5th Cir. [Tex.] 1996), in deciding whether a claim has been stated.

49. The point in urging the court to consider these matters, particularly the relevant public record, even in the context of failure to state a claim, is not that the court is being asked to make any merits-oriented determination of disputed facts, as in the context of a motion for summary judgment. *Cf. Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994). It is, rather, that the court is being asked to consider related matters of record in a procedurally-oriented context, just as the court is asked to consider the governing statutes and rules as well as the controlling and analogous case law. *Id.* These related matters in effect are the 'law of the

case.' In so taking into account these matters of record, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. Associated Recovery, itself, has attached and incorporated selected matters of record - an order and notice filed in the *Netsphere* case and the judgment of the court of appeals in *Netsphere, Inc. v. Baron* - to Associated Recovery's response to another defendants' motion to dismiss. Doc#54, pg.3. *See Sheppard,* 158 F.R.D. at 595, fn.6, citing Fed. R. Civ. P. 10(c): "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

50. Any plaintiff's complaint inherently incorporates matters explicitly or implicitly relied upon under the circumstances of the case as the bases for any alleged causes of action. In this case, Associated Recovery explicitly relies in its amended complaint upon the circumstances of the underlying receivership order and the court of appeals vacatur of it, as the basis for all of its alleged causes of action. The court may take judicial notice of adjudicated facts at any stage of the proceeding. Fed. R. Evid. 201. *See Lovelace, supra*. And, when the plaintiff references a matter that is integral to the claim but that is contradictory of the complaint, the defendant may introduce the matter as part of the motion to dismiss. *See Sheppard, supra*. By explicating these matters of record, Lookout "merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, *supra*.

D. Failure to Join a Required Party

51. Fed. R. Civ. Proc. 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. [La.] 2006).

Rule 19 provides a two-step analysis for further deciding whether to dismiss an action for failure to join an absent party: first, Rule 19(a) provides a framework for deciding whether a given person should be joined; second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined. *Id*. As the Supreme Court has explained (following the 2007 amendment to the rule):

> Subdivision (a) of Rule 19 states the principles that determine when persons or entities must be joined in a suit. The Rule instructs that nonjoinder even of a required person does not always result in dismissal. Subdivision (a) opens by noting that it addresses joinder "if Feasible." Where joinder is not feasible, the question whether the action should proceed turns on the factors outlined in subdivision (b). The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that "[t]he factors for the court to consider include." Fed. Rule Civ. Proc. 19(b). The general direction is whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." The design of the Rule, then, indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations. This is also consistent with the fact that the determination of who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes. For these reasons, the issue of joinder can be complex, and determinations are case specific * * * In all events it is clear that multiple factors must bear on the decision whether to proceed without a required person. This decision must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.

*Philippines v. Pimentel*, 553 U.S. 851, 862-63, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008) (citations omitted).

52. In this case, it is clear that a number of absent parties should be joined in this purported declaratory judgment action: for one, the receiver, Peter Vogel, and his manager, Damon Nelson; for another, the plaintiff's predecessors-in-interest, Novo Point, LLC, and Jeffrey Baron. In the first place, parties to a contract are generally considered necessary to litigation concerning that contract. *Jaffer v. Std. Chtd. Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014) (citations omitted). In this case, then, that is Novo Point, LLC, as the transferor of the

domain name rights to Lookout, and Damon Nelson as the receiver's manager who executed the transfer agreement on behalf of Novo Point, LLC. That also is Novo Point, LLC, and Jeffrey Baron as the purported transferors of the same domain name rights to Associated Recovery.

53. In the second place, by analogy to a corporate subsidiary, both Novo Point, LLC, as the plaintiff's predecessor-in-interest and the receiver (through his manager) as the defendant's predecessor-in-interest should be considered necessary parties that are required to be joined. *Id*. at 260, citing *Freeman v. Northwest Acceptance Corporation*, 754 F.2d 553, 559 (5th Cir. 1985). In a manner conflating the two principles, the district court in *Jaffer, supra*, cited *Travelers Indemnity Company v. Household International, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991), in which that district court held that an insurer's subsidiary that initiated a contract for an insurance policy constituted a necessary party to a lawsuit concerning that insurance policy, even though the subsidiary's parent company assumed all of the risks and liabilities of the policy. That district court had surveyed authority from several circuits and found that "the precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Id.*

54. On information and belief, however, Jeffrey Baron is a resident of Dallas, Texas, and hence a citizen of Texas. It is not feasible, therefore, to join Jeffrey Baron as an involuntary plaintiff, since his joinder would deprive the court of complete diversity. *See, e.g., Pulitzer-Polster v. Pulitzer, supra*. Similarly, it is not feasible to join the receiver or his manager, since they have been adjudicated as entitled to derivative judicial immunity from the plaintiff's claims, as determined by Judge Lindsey in civil case no. 3:15-CV-232-L styled *Baron v. Vogel,* court docket doc. #49, pg.16-20, 2016 U.S. Dist. LEXIS 44294 at *16-*20 (N.D. Tex. Mar. 31, 2016) (Exh. #5), relying on *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 367, 373-75 (5th Cir. [Tex.]

1995). Yet, Associated Recovery seeks a declaratory judgment regarding their actions and affecting their interests.

55. The relevant inquiry then becomes whether in equity and good conscience the action should proceed among the parties before the court, or whether the case should be dismissed to avoid manifest injustice. *Pulitzer-Polster v. Pulitzer*, 784 F.2d at 1312. The Supreme Court has stated that the factors enumerated in Rule 19(b) may be delineated as the interests that affect four categories of persons, one being the defendant and the defendant's interest in avoiding "multiple litigation, or inconsistent relief, *or sole responsibility for a liability he shares with another*." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-10, 19 L. Ed. 2d 936, 88 S. Ct. 733 (1968) (emphasis added). In this instance, the defendant, Lookout, certainly has an interest in avoiding sole responsibility for the receiver's putative liability. The court, therefore, in equity and good conscience should dismiss this action. *Id*.

56. The Supreme Court further delineated one of the four categories of affected persons' interests as "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Id*. at 111. As the court of appeals held in *Pulitzer-Polster v. Pulitzer*, "[t]his case is almost a paradigm of needless multiple litigation" and "[t]he public's interest therefore supports the district court's determination that the suit should be dismissed." 784 F.2d at 1313. This case likewise fits the particularly apt description of "needless multiple litigation." The court, then, in considering these case-specific factors, in equity and good conscience should dismiss this action. *Id*. at 1312-13. *See also Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 629 (5th Cir. [Miss.] 2009) *cert. denied*, 559 U.S. 904, 130 S. Ct. 1319, 175 L. Ed. 2d 1074 (2010).

57. Once again, in any event, once Lookout properly demonstrates that a required party is absent, the burden of disputing this initial appraisal falls on the plaintiff. *Pulitzer-Polster*, 784 F.2d at 1309. Associated Recovery must identify (1) any absent person who is required to be joined if feasible and (2) the reasons for not joining that person. Fed. R. Civ. Proc. 19(c).

58. Additionally, on information and belief, the named defendants may not in every instance be the current domain name rights holders or registrants. It appears that there may well be additional current transferees, or at least other current registrants of the domain name rights than the named transferees. To the extent that Associated Recovery seeks a declaratory judgment affecting their interests, then Associated Recovery must identify such other holders or registrants as required parties and the reasons for not joining them.

## Conclusion

59. When the court considers the totality of the circumstances of the case, the court has any one of four valid grounds to dismiss the action as to Lookout: for improper venue of the action, for plaintiff's lack of jurisdictional standing, for plaintiff's failure to state a claim upon which relief can be granted, or for plaintiff's failure to join a required party. Alternatively, the court has either of two equitable grounds to transfer the action in the interest of justice to the Northern District of Texas, Dallas Division, for further determination of defendant's asserted defenses by Judge Lindsey.

## Prayer

60. For these reasons, defendant, Lookout, Inc., requests the court dismiss the action as to Lookout, Inc., or alternatively transfer the action to the Northern District of Texas, Dallas Division, the Honorable Sam A. Lindsey.

August 5, 2016                    Respectfully submitted,

                                               **MANN | TINDEL | THOMPSON**
                                               300 West Main Street
                                               Henderson, Texas 75652
                                               (903) 657-8540
                                               (903) 657-6003 (fax)


                              By:         *_/s/ J. Mark Mann_____*
                                          **J. Mark Mann**
                                          State Bar No. 12926150
                                          mark@themannfirm.com
                                          **G. Blake Thompson**
                                          State Bar No. 24042033
                                          blake@themannfirm.com

                                          **ATTORNEYS FOR LOOKOUT, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on August 5, 2016.


                                          *_/s/ J. Mark Mann_____*
                                          **J. Mark Mann**