**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**Marshall Division**

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00126-JRG-RSP |
| | ) | |
| LINDA BUTCHER *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**LOOKOUT, INC.'S MOTION TO DISMISS UNDER R12(b),**
<u>**ALTERNATIVELY, TO TRANSFER IN INTEREST OF JUSTICE**</u>

Plaintiff Associated Recovery, LLC ("Associated Recovery") responds in opposition to

Defendant Lookout, Inc.'s Motion to Dismiss under R12(b), Alternatively, to Transfer in Interest

of Justice and Supporting Brief (the "Defendant's Motion to Dismiss").  Dkt. 66.

The Defendant's Motion fails to appreciate what this litigation is about and places undue

emphasis on an Order that has already been adjudicated and vacated by the Fifth Circuit.  None

of the Defendant's arguments warrants the dismissal, or transfer, of this case.  The Defendant's

Motion to Dismiss should be denied in its entirety.

**I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant's Motion to Dismiss is cluttered with a lot of noise, unnecessary

"background," and efforts to taint the Court's impression of the Plaintiff or its predecessors.  In

reality, much of what is set forth by the Defendant is irrelevant to the issues at hand.  The factual

and procedural background of the earlier litigation involving the Plaintiff's predecessor Novo

Point, LLC ("Novo Point"), and the improper Receivership that is actually germane to the Defendant's Motion to Dismiss is quite simple.

The United States Court of Appeals for the Fifth Circuit held that the Receivership Order instituted by the Northern District of Texas was improper and vacated the order appointing a receiver. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012).

In 2014, the Northern District of Texas held a fee order, issued prior to the Fifth Circuit's decision and based on the improper Receivership Order, to be void and unenforceable. *Baron v. Schurig*, 2014 U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014).

The Northern District of Texas ultimately wound down the Receivership, issuing its order regarding the Receivership's final accounting and discharge on March 27, 2015. *See* Dkt. 66-3, Exhibit 1.

## II.    ARGUMENT

There is a lot to unpack in the Defendant's Motion to Dismiss, which is brought on several alleged bases: FED. R. CIV. P. 12(b)(1), (3), (6) and (7), as well as affirmatively alleging various defenses and, alternatively, requesting a transfer under 28 U.S.C. §§ 1404(a) and 1406(a). However, after a careful review of the facts and law relevant to each issue, the Defendant's Motion to Dismiss should be denied in its entirety.

### A.    Venue Is Proper in this District and the Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(3) Should Be Denied

The Defendant argues, misguidedly, that venue is not proper in this district. Under the venue statute, venue plainly lies here. It provides that "[a] civil action may be brought in … any judicial district in which *any defendant* is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3) (emphasis added). In arguing that venue is improper, the

Defendant argues only that *it* is not subject to personal jurisdiction; the Defendant does not argue that *none* of the defendants is subject to personal jurisdiction here.  That standing alone should be sufficient to warrant denial of the Defendant's Motion to Dismiss.

But taking the analysis a step further, it is plain that this court may exercise personal jurisdiction over at least one of the defendants. Where the parties have not conducted discovery, the plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). All available materials, including the pleadings, are construed in the plaintiff's favor.  *Id.*

> For specific personal jurisdiction, a plaintiff makes a prima facie showing of minimum contacts when his claim arises from the defendant's contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). For general personal jurisdiction, a plaintiff makes the requisite showing when that defendant's contacts are "continuous and systematic," so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

*Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th. Cir., 2013).

This Court has personal jurisdiction over, *at least*, the Defendant Butcher.  Butcher has appeared and filed a motion (Dkt. 52); she did not contest personal jurisdiction, either on independent gorunds or as a component of her venue argument, thus waiving that defense. *Jackson v. Fie Corp.*, 302 F.3d 515, 523 (5th Cir. 2002) ("a party's right to object to personal jurisdiction certainly is waived under Rule 12(h) if such party fails to assert that objection in his first pleading or general appearance.")  Additionally, the complaint specifically alleges that at least two more of the defendants – State Farm and Radical Investments – "conduct[] business on a systematic and continuous basis within the United States, including the State of Texas and this judicial district," (Dkt. 15, para. 48, 53), thus making out a case of general personal jurisdiction

over both of those entities. *Las Vegas Metro. Police Dep't Health & Welfare Trust v. P&P Ins. Servs. LLC* (D. Nev., 2011) (unpublished) (insurance company doing business in the state has sufficient continuous and systematic contacts to support the exercise of general personal jurisdiction).

Indeed, the same allegations are made as to the Defendant itself, (Dkt. 15, para. 16). To the extent that the Defendant has challenged that allegation via its Motion to Dismiss and the supporting affidavit, that challenge does nothing to controvert the allegations as to State Farm or Radical Investments. Furthermore, Plaintiff objects to the court basing any ruling on the affidavits submitted by the Defendant without first giving Plaintiff the opportunity to conduct limited discovery into the issues addressed by the affidavit and supporting materials. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal citations omitted) (in making preliminary decisions based on 'personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery'); *Allergan, Inc. v. Actavis, Inc.* (E. D. Tex., 2014) (Gilstrap, J.) (unpublished) (parties entitled to jurisdictional discovery if court is considering a decision on those grounds).

Moreover, even if the Plaintiff were required to demonstrate that the Defendant is subject to personal jurisdiction here, the Defendant plainly is. It has appeared and filed a pleading responsive to the complaint (its motion to dismiss) and did not move to dismiss based on lack of personal jurisdiction. Thus, that defense is waived and the Defendant is *ipso facto* subject to the personal jurisdiction of this court. *Jackson*, 302 F.3d at 523 ("a party's right to object to personal jurisdiction certainly is waived under Rule 12(h) if such party fails to assert that objection in his first pleading or general appearance.").

4

The Defendant alleges that this Court lacks subject matter jurisdiction because the Northern District of Texas created the Receivership which sold or otherwise transferred the property in dispute.  The Defendant cites to an Order from the Northern District of Texas regarding its jurisdiction "over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, or any controversy that arises from or related to the Receivership or actions of the Receiver or his professionals."  The Defendant does not appear to appreciate that this lawsuit is **not** about the Receivership and that this Order is inapplicable to the current dispute.

First, there is no "dispute" about any of the Northern District of Texas' earlier orders. The orders happened, and the Fifth Circuit subsequently held that the Northern District of Texas acted outside of its subject matter jurisdiction in ordering the Receivership, and it reversed the Order permitting the sales of the domain names.  *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012).  Second, the instant matter is *not* a dispute about the Receivership or actions by the Receiver or his professionals.  As explained *supra*, there is no controversy in this lawsuit about what has happened.  The facts germane to this case have largely been decided.

This case is simply one where a plaintiff's property was improperly taken (including by tortious activity conducted by the Defendant within this District) and the plaintiff is seeking to get it back.  The courts have already decided that the taking of the property was improper due to a lack of subject matter jurisdiction.  While the background noise of the earlier case which led to the improper taking of the property may be "interesting" to some, none of it is being litigated in this proceeding.

5

For the foregoing reasons, the Defendant's Motion to Dismiss pursuant to

FED. R. CIV. P. 12(b)(3) should be denied.

**B.     The Plaintiff Possesses Standing and the Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) Should Be Denied**

The Defendant's second argument is that the Plaintiff lacks standing, asserting the matter

should be dismissed under Fed. R. Civ. P. 12(b)(1).  In support of this request for dismissal, all

that the Defendant argues is that collateral estoppel would have prevented the Plaintiff's

predecessors from bringing this action.  This argument is based solely on a decision from a case

involving the Receiver and allegations of sanctionable conduct and assertions of judicial

immunity in another case, *Baron v. Vogel*, 2016 U.S. Dist. LEXIS 44294 (N.D. Tex. Mar. 31,

2016).  In making its arguments the Defendant misconstrues the requirements for collateral

estoppel and issue preclusion and overstates the breadth of the *Vogel* decision.

The Plaintiff agrees with the Defendant's initial statement of the requirements for

collateral estoppel essentially that (1) the issues are identical in the current and prior litigation,

(2) the issues were actually litigated in the prior litigation, and (3) the determination of the issues

in the prior litigation was a necessary part of the judgment there.  *Test Masters Educ. Servs. v.*

*Robin Singh Educ. Servs.*, 799 F.3d 437, 448 (5th Cir. 2015).  The Plaintiff strongly disagrees

with the very broad interpretation the Defendant applies to these requirements.

**1.     The Issues in This Case and in *Vogel* Are Different and Distinct**

For the Defendant's argument to have a chance of success, the issues in the *Vogel* case

must be identical to the issues in this matter.  They are not identical.

It is important to be clear on what this case is **not** about.  This case is **not** about attacks

on the appointment of the underlying receivership.  The Fifth Circuit has already addressed that

6

issue.  This case is also **not** about attacks on the Receiver or his agents. Those allegations are being pursued and litigated in the *Vogel* matter.  Rather, this case is about **the return of property to its rightful owner**.  The crux of this case is that the sales of the domain names at issue may be set aside as void,[1] since they were conducted solely pursuant to an Order which was found to lack subject matter jurisdiction.

It is also important to be clear on what the issues were in the *Vogel* litigation.  *Vogel* was and is about judicial immunity as well as whether the defendants there (including the Receiver) engaged in wrongful or sanctionable conduct in the *Netsphere* cases.  *Baron v. Vogel*, U.S. Dist. LEXIS 44294 (N.D. Tex. Mar. 31, 2016).  Neither of these issues is identical to the issues in this case, which, again, concerns only an effort to retrieve domain names wrongfully sold by a receiver pursuant to a receivership that the district court lacked jurisdiction to institute.

Moreover, not only are the actual issues and causes of action in *Vogel* and this case facially distinct, but the legal standards applied are different as well.  This is important since "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306 (2015) (quoting 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417, p. 449 (2d ed. 2002)).  *See also Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013).  ("However, '[i]ssues of fact are not "identical" or "the same," and therefore not preclusive, if the legal standards governing their resolution are "significantly different,"' or create a 'demonstrable difference' in legal standards" (quoting *Pace*

---

[1] The impact of this on, and how it supports, each of the causes of action is not addressed in detail herein as the Plaintiff's position is that the Defendants have not offered any arguments addressing each cause of action specifically.  Therefore, a detailed analysis is premature.

*v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005), and *Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.8 (5th Cir. 1971)).  Therefore, the issues cannot be "identical" and meet the requirements for applying collateral estoppel.  *B&B Hardware, Inc.*, 135 S. Ct. at 1306. Even glossing over the entirely different causes of action in this matter, the question of the receivership in this case centers on the void nature of the sales of the domain names.  The question of whether a sale is void is subject to legal standards that are simply not the same as the legal standards applied in determining whether fees should be awarded to the Receiver.

**2.      The Issues in This Litigation Were Not Actually Litigated in
           *Vogel***

"As a general rule, an issue is 'actually litigated' only when it is properly raised by the pleadings, submitted for a determination, and actually determined."  *Gober v. Terra+Corp.*, 100 F.3d 1195, 1203 (5th Cir. 1996) (citation omitted).  The issues in this litigation were never actually litigated in *Vogel*.  *Vogel* never addressed the issue of whether a court-ordered sale is void when it is later held that the order authorizing the sale was found to lack subject matter jurisdiction.  Indeed, the question of subject matter jurisdiction was raised only in relation to judicial immunity.  Judicial immunity is an entirely different context subject to distinct precedent from the issue at hand and therefore is not an "identical" issue under collateral estoppel.  *See B&B Hardware, Inc.*, 135 S. Ct. at 1306. Furthermore, the district court order in *Vogel*, which is currently on appeal and is therefore not a final resolution of the matter at any rate, *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, pp. 5-6 (Tex., 1986), was decided on a motion to dismiss; no issues were ever "actually litigated" as that term is understood in the collateral estoppel jurisprudence.  *Cf. American Home Assur. Co. v. Chevron, Usa, Inc.*, 400 F.3d 265 (5th Cir. 2005) (where case was settled and dismissed, the issues were not "actually litigated" for

8

purposes of collateral estoppel doctrine); *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319-20 (4th Cir., 2002) (issues involved in a default judgment were not "actually litigated").

### 3. The Issue in This Litigation Was Not Determined, nor Was It a Necessary Part of the Judgment in *Vogel*

*Vogel* did not include a judgment wherein the issue of this case was actually litigated or determined.  Consequently, the issue of this litigation was not a necessary part of any of the judgments in *Vogel*.

As noted *supra*, the issues in this case are not identical to any of the issues raised, actually litigated, or determined in *Vogel*.  Therefore, collateral estoppel does not apply.  Since the bases for the Defendant's "lack of standing" argument are legally unfounded, the Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) should be denied.

### C. Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6) Should Be Denied

The Defendant next argues for dismissal under FED. R. CIV. P. 12(b)(6) based on the faulty premises that the issues in this case have been addressed and resolved and a misapplication of bankruptcy principles.  The Defendant's arguments are all insufficient, and its motion under FED. R. CIV. P. 12(b)(6) should also be denied.

Initially, it is crucial to again understand what facts and legal issues were before and decided by the Fifth Circuit in the *Netsphere* appeal as well as the *Vogel* case, and the issues presented in this case.  The instant matter involves the sale of assets sold pursuant to a receivership that was subsequently held to be lacking jurisdiction, and claims for relief for the return of that property.  For purposes of this matter the lack of jurisdiction for the receivership is what is important, there is no spotlight on bad acts by the Receiver.  In contrast, the *Vogel* case,

9

which is still on appeal and not final at any rate, involved the potential liability of the Receiver

for a variety of bad acts.  In the *Netsphere* case, the primary appeal was of the Receivership

Order itself, but numerous other interlocutory appeals were also filed, and combined, addressing

the numerous orders and decisions from the district court that flowed from that Receivership

Order.  Among the order appealed was the order allowing the Receiver to sell domain names[2].

*See* Composite Exhibit 1, attached hereto. The Fifth Circuit ultimately found that the

Receivership Order was outside the district court's jurisdiction and vacated that order.

*Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012).  The other district court orders then fell with

the Receivership Order, , a fact the Fifth Circuit itself recognized.  The validity of the

Receivership Order was so obviously central to the other orders on appeal, and its disposition so

patently controlling of those appeals, that the Fifth Circuit saw it necessary to do little more than

observe that "our conclusions about the receivership itself make most of the later appeals

irrelevant." *Netsphere*, 703 F.3d at 305.  In other words, as goes the Receivership Order, so go

the other appeals – a point the Fifth Circuit reiterated and reinforced by declaring that its

resolution of the issues surrounding the Receivership Order also necessarily resolved the other

appeals not specifically addressed in the opinion.  *Id.* at 314 (indicating the Court's intent to only

specifically address those issues "that would remain unresolved despite our holding that the

receivership was improper").  In respect to the order permitting the sale of domain names the

Fifth Circuit issued a judgment holding that "the judgment of the District Court is reversed, and

the cause is remanded to the District Court for further proceedings in accordance with the

opinion of this Court." *Id.*  The domino effect of the Fifth Circuit's ruling - by which the

---

[2] This appeal was assigned number 11-10290.

invalidation of the Receivership Order invalidates the other orders attendant to the receivership - has even been recognized by Judge Lindsay.  *Baron v. Schurig*, 2014 U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014).

The Defendant's citation to *Netsphere* actually relates solely to the section on allocating costs and expenses of the improper receivership.  This section does not address the validity of sales of property over which the court lacked subject matter jurisdiction.  It is important to note that the Receivership was not solely funded by sales of taken domain names. Indeed, the receivership took control of personal assets.  "For example, the receiver was empowered to take possession of Baron's mobile phone and computers and to divert mail.  Baron was required to turn over his bank accounts and keys to any property he owned or rented, including his own home.  Moreover, when Baron needed funds for medical care, he had to request such funds from the receiver."  *Netsphere, Inc. v. Baron*, 703 F.3d at 311.  The Defendant has offered no explanation whatsoever about how a court could even conceivably confirm the sale of assets over which it concluded it lacked jurisdiction.  None of the cases cited by the Defendant involve sales where it was later found that the court lacked jurisdiction over the property.

Next, the Defendant makes much of Judge Lindsay's order in *Vogel* differentiating between a lack of jurisdiction and an excess of jurisdiction.  However, the Defendant's statement of the holding is an excessively broad interpretation and not accurate.  Judge Lindsay was determining whether removal of the case filed against the Receiver was proper or not, including whether the Receiver would be protected by judicial immunity.  2015 US Dist LEXIS 128812.  It was within the context of judicial immunity that Judge Lindsay discussed the difference between a lack of jurisdiction and excess of jurisdiction.  *Id*.  Indeed, he specifically stated, "As explained

by the court in *Davis*, however, a judge's absolute immunity is not affected when the judge

performs a 'normal judicial function' unless he acts in the 'clear absence of all jurisdiction.' . . .

The distinction between lack of jurisdiction and excess of jurisdiction is important *in this

context.*" *Id.* at *12-13 (quoting *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (emphasis

added). In sum, this opinion merely held that the "reversal of the receivership order did not

affect Judge Ferguson's judicial immunity or Defendant's derivative judicial immunity." The

Defendant's summary of the opinion simply takes this actual holding too far. The issue when

considering immunity is not whether there was or was not jurisdiction. *Davis v. Bayless*, 70 F.3d

367, 373 (5th Cir. 1995) ("the proper inquiry is not whether the judge actually had jurisdiction,

or even whether the court exceeded its jurisdictional authority, but whether the challenged

actions were obviously taken outside the scope of the judge's powers.") The issue is whether the

absence of jurisdiction was so patently clear that those that took action on the basis of the order

do not qualify for judicial immunity for the conduct in question. *Id.* Those issues are reversed in

the instant case; whether the judge and/or receiver acted in the clear absence of jurisdiction is

irrelevant. The issue here is whether there was or was not jurisdiction. The issues are not the

same.

     In direct contradiction to the Defendant's statements as to the "void" nature of the

Receivership Order, Judge Lindsay has held that "the Fifth Circuit's holding (and mandates) that

this district court could not establish the receivership" invalidated earlier orders from the district

court based on the Receivership Order. Specifically, the Northern District of Texas held that a

secondary order from the district court based on the improper Receivership Order **was void and

unenforceable** because the district court lacked subject matter jurisdiction. *Baron v. Schurig*,

2014 U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014) (emphasis added).  The Court *then* went on to vacate the fee order at issue, holding that vacatur was "appropriate in light of the Fifth Circuit's December 18, 2012 reversal of the Receivership Order."  *Id*. at *46, n.6.  The holding in *Schurig* establishes that the issues and questions raised in this matter are not already settled in favor of the Defendant, nor are they facially implausible.

The bulk of the Defendant's Rule 12(b)(6) arguments are variants on a theme of *res judicata* and/or collateral estoppel.  The faulty nature of the Defendant's collateral estoppel argument based on *Vogel* is addressed above and applies with equal force to the Defendant's baseless claims of *res judicata*.  The Defendant relies heavily on *Vogel* to support its claim for *res judicata* and recasts this case as one about "wrong receivership" just like in *Vogel*.  This is not an accurate statement of this case.  *See supra*.  Nor is it an accurate statement of the case in *Vogel*.  The basis for the wrongful receivership claim was that there were allegations that the Receiver and others made false representations to the court to induce the establishment of the receivership and to maintain control over it.  *Vogel*, 2016 U.S. Dist. LEXIS 44924, at *20. Moreover, *res judicata* is not appropriate since the parties are not the same, nor is there complete privity.  At best, the Defendant is a purchaser of property, not a "transferee" of the Receiver, as it declares.

Moreover, to the extent the Defendant asserts that this litigation is a collateral attack on any earlier decisions, such an assertion is a red herring.  Parties are allowed to "collateral[ly] attack[] a jurisdictionally void sale," as opposed to attacking the sale on direct review.  *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1141 (9th Cir. 1996) (citing *Voorhees v. Jackson*, 35 U.S. 449 (1836)).  Indeed, *American Capital Investments, Inc*, further noted that the

ability to being such a collateral attack was contingent on the party being able to overturn the order which authorizes the sale in the first place.

The remainder of the Defendant's Rule 12(b)(6) argument relies on cases where jurisdiction was not at issue and attempts to misappropriate the bankruptcy code, namely, the Defendant's claim to be a good faith purchaser.  The Defendant's argument that it was a good faith purchaser is, at its core, an equitable one, and the court has broad discretion in applying equity powers.  *Bustamante v. Cueva*, 200 Fed. Appx. 334, 335 (5th Cir. 2006).  Moreover, the questions of whether the Defendant is a third party purchaser in arms-length transaction for value is not ripe for decision.[3]  Regardless, the question of whether the Defendant was a good faith purchaser is immaterial if both the sale and transfer of the domain names were void.  *See infra*.

The Defendant cites to *United States v. "A" Mfg Co.*, 541 F.2d 504 (5th Cir. 1976) and *Sage v. Railroad Company*, 96 U.S. 712, 714 (1877) to support its argument that the Defendant received title to the disputed domain name "purchased from the receiver regardless of the disposition on appeal of the order appointing the receiver."  Dkt. 66, PageID #420.  Neither *"A" Mfg*. nor *Sage* concerned the question of whether the court had proper jurisdiction to order the sale of property.  Instead, both cases stand for the proposition that a final sales order is appealable.  As noted *supra*, the order permitting the sale of domain names by the Receiver was appealed.  Similarly, the Defendant's citation to *SEC v. Janvey*, 404 Fed. Appx. 912 (5th Cir. 2010) fails because *Janvey* is simply not analogous to the case at hand.  In *Janvey* the appellant

---

[3] The Defendant's statement that it has a cyber privacy claim against the Plaintiff is a baseless aside that fails to account for the Plaintiff's claimed rights to the domain name and trademark dates from well before the improper "purchase" by the Defendant.  Of course, the Defendant has not actually brought such a claim.

appealed orders confirming a judicial sale of assets.  On appeal, one of the arguments made by the appellee was that the appeal was moot because the appellant failed to seek a stay.  In reaching its decision the *Janvey* court noted that the purchasers at the sales were "good faith purchaser[s] and implicitly held none of the exceptions in bankruptcy law as to a good faith purchaser's status when there was a challenge to an order confirming the sale of property applied.  *Janvey*, as well as the bankruptcy cases cited by the Defendant, is distinguishable from the present case for at least a very crucial reason.  Unlike *Janvey* and the bankruptcy cases, there was *no order confirming the sale* of the disputed domain names and finding that the Defendant was a good faith purchaser.

Rather, the Defendant's purchase of the subject domain name appears to have been completed as a typical transaction, one categorized by the Defendant as a "private sale." Dkt. 66, PageID #416.  This is made even more clear when one reviews the "agreement" provided by the Defendant which is noticeably void of any references to "good faith purchases" or the sale being "free and clear."  *See* Dkt. 66, Exhibit D-1.  Quite to the contrary, the agreement is rife with language limiting the seller's liability to the Defendant, as well as a release and indemnification of the seller by the Defendant.  *Id*.  In light of these important distinctions, it is more appropriate to apply case law from foreclosure sales and similar sales to this case.

"As a general rule [in Texas], one who bids on property at a foreclosure sale does so at his peril.  If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property.  Furthermore, the general effect of a 'good

15

faith purchaser for value without notice' does not apply to a purchaser at a *void* foreclosure sale.

A purchaser at a foreclosure sale obtain only such title as the trustee had authority to convey."

*In re Niland*, 825 F.2d 801, 813-14 (5th Cir. 1987) (internal citations omitted) (emphasis in

original).

As noted *supra*, at least one court has suggested that any order issued under the guise of

authority from the Receivership is void and unenforceable. *Schurig*, 2014 U.S. Dist. LEXIS 180

at *45.  If the sale of the domain name was *void*, then the Defendant's "good faith purchaser"

status is irrelevant.  It is fundamental that a party who loses title to property sold through what is

later held to be a void sale has standing to bring a claim to recover that property. *See Ocwen*

*Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584 (S.D. Tex. 2015).

(Plaintiff brought suit, on which it ultimately prevailed, alleging wrongful foreclosure and to

quiet title over property that was sold to one of the defendants via a tax sale that the plaintiff

argued was void.  "If a property is void, rather than voidable, then it cannot be taken by a bona

fide purchaser." *Id*. at 596).  *See also In re Niland*, 825 F.2d at 813-14, *Pemex Exploracion y*

*Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS 144166, *54-56 (S.D. Tex. Oct. 1, 2013)

(noting that a defendant accused of conversion who asserts the defense of being a good faith

purchaser for value must establish that its title was voidable and not void), and *United States v.*

*Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D. Tex. Dec. 22, 2003).  (A tax sale that was invalid

when it occurred did not convey any legally enforceable interest in the property to the buyer,

even though the buyer as bona fide purchaser.)  Similarly, the Defendants' argument of an

implied license falls flat since its case citation refers to valid sales. *McCoy v. Mitsuboshi*

*Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir. 1995). There is no indication that the Federal Circuit

ever intended to allow implied licenses when a sale was void or otherwise improper.  Indeed, to

allow such a result would fly in the face of the principle that even a good faith purchaser does

not acquire title in a void sale.

The Defendant also relies on *Sage* for its argument that Associated Recovery can only

seek proceeds of the sale of the disputed domain name, and therefore it cannot claim it acquired

rights in the domain names from its predecessors.  Again, as noted *supra*, *Sage* is not applicable

to this case.  Moreover, there are facts that would support the Plaintiff's claim for relief.  As a

prime example, a set of facts establishing that the sale to the Defendant was void would entitle

the Plaintiff to relief of more than just the proceeds of the sale to the Defendant.  *See, e.g.,*

*Ocwen Loan Servicing*, 77 F. Supp. 3d at 597-97; *In re Niland*, 825 F.2d at 813-14, *Pemex*

*Exploracion.*, 2013 U.S. Dist. LEXIS 144166, *54-56; and *Miller*, 2003 U.S. Dist. LEXIS

24884.

**D.      The "Necessary Parties" Identified by the Defendant Are Not
              Properly Parties, Let Alone "Necessary," and Defendant's Motion to
              Dismiss Pursuant to FED. R. CIV. P. 12(b)(7) Should Be Denied**

A party is only necessary if (1) without that party the court cannot accord complete relief

among the existing parties, or (2) that person claims an interest relating to the subject matter of

action.  FED. R. CIV. P. 19(a).  The Defendant has the initial burden of establishing the necessity

of the parties it alleges are missing.  *Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625,

628 (5th Cir. 2009). The Defendant has failed to meet this burden.

Perhaps the easiest purported "necessary party" to dispatch of is Mr. Vogel, the prior

receiver.  The Defendant merely asserts that Mr. Vogel is a necessary party without ever

explaining why.[4]  Despite the Defendant's apparent assertion to the contrary, merely declaring

something without any support or argument is not sufficient to meet the movant's burden.

Mr. Vogel is not a necessary party, there is no cause of action against him, and the Defendant

utterly fails to provide any explanation of why the Court cannot accord complete relief without

Mr. Vogel, or how Mr. Vogel can claim an interest relating to the subject matter of the case.

Next, the Defendant asserts that Mr. Damon Nelson (the "manager" of Novo Point LLC

appointed by the Receiver) and Novo Point, LLC, are "necessary parties" under the guise that

they were parties to the contract with the Defendant through which the Defendant claims title of

its domain name at issue.  This argument fails to appreciate a fundamental fact in this case:  there

has already been a ruling that the Receivership, which was the authority for the transfer, was

improper and the District Court had lacked subject matter jurisdiction.  *See Netsphere*, 703 F.3d

296.  The validity of any assignments or transfers conducted under the Receivership's authority

rises and falls on the Fifth Circuit's determination of the invalidity of the order instituting the

Receivership.  There are no other questions regarding the assignments or transfers of the domain

names.

These facts make this case clearly distinguishable from the case law relied upon by the

Defendants.  For example,  *Jaffer v. Std. Chtd. Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014),

concerned a breach of contract when the contract was between the plaintiff and an entity other

than the defendant.  Moreover, in *Jaffer* the plaintiff was seeking recovery of funds from this

other entity and **not** from the named defendant.  That is in direct contradiction to the case here,

---

[4] The one quasi-explanation actually says that the receiver's manager, *not* the receiver itself is "necessary."  Dkt. 55, PageID #427 ("the receiver (*through his manager*) . . . should be considered [a] necessary part[y].")

18

where there are no allegations of a breach of contract and the Plaintiff seeks the recovery of a

domain name from the entity that possess the domain name.  The Plaintiff is not seeking any

relief from any of the purported "necessary parties."  Similarly, in *Travelers Indemnity Co. v.*

*Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991), the lawsuit was based on a

contract, an insurance policy, and related to the insurer's right for reimbursement under that

policy.  These are not remotely similar to the facts of this case.  This is a crucial factor as "[t]he

nature of Rule 19 requires that the courts make 'highly practical, *fact-based* decision[s].'"

*Jaffer*, 301 F.R.D. at 260 (emphasis added) (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305,

1309 (5th Cir. 1986)).  *See also Travelers Indemnity Co.,* 775 F. Supp. at 527 ("[t]he court's

research has failed to find any case *on similar facts*") (emphasis added).

　　　A more analogous fact pattern to this case can be found in *In re Formtech Industries,*

*LLC*, 439 B.R. 352 (Bankr. D. Del. 2010).  In *Formtech* the plaintiff, a purchaser of the

Chapter 11 debtors' assets, requested a declaratory judgment that it acquired the accounts

receivable due from defendant free and clear of set off or recoupment.  One of the issues before

the court was whether the Chapter 11 debtors were necessary parties.  The court held the joinder

of the sellers of property was not necessary because the plaintiff, "the party asserting ownership

over the property in dispute[, was] already present in the proceeding" and "the validity of the

assignment [was] not at issue." *Id.* at 359.  Similarly, in this case there are no questions as to the

scope of the Defendant's "contract," nor are there questions as to the propriety of such a

"contract" in light of the Fifth Circuit's holding that the Receivership was outside the bounds of

the District Court's subject matter jurisdiction and improper.  *See also Nat'l Mortg. Warehouse,*

*LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 506 (D. Md. 2002) (holding two parties were not

"necessary" to an action despite their involvement in the alleged transfers that were at the heart

of the case because certain facts had "been established beyond a reasonable doubt in prior

proceedings" and "[o]ther matter relating to their involvement in the alleged transfers . . . may be

determined by either calling them as witnesses if necessary, or using documentary evidence");

and *In re Maggard*, 2007 Bankr. LEXIS 3893, *11 (Bankr. E.D. Va. Nov. 13, 2007) (holding

that the chapter 7 trustee, who sold the property at issue, was not a necessary party to the

litigation, even though he "might be a useful witness, but that [was] a different issue").

        Finally, in a puzzling statement, the Defendant asserts that the assignors to the Plaintiff

are "necessary parties" because they are "the purported transferors of the same domain name

rights to" the Plaintiff.  To require a assignor as a party to any action brought by the assignee

would effectively negate the whole legal principle of assignments.  In direct contradiction to this

theory, the courts routinely let an assignee  proceed without its assignor joined as a "necessary

party."  *See Azure Networks, LLC v. CSR PL LLC*, 2013 U.S. Dist. LEXIS 53966, at *15-16

(E.D. Tex. Jan. 16, 2013) (an assignor who maintained no substantial right to supervise or

control assignee's activities with response to enforcement of property, and had no obligation to

maintain the property, was not the owner of the property at the time the complaint was filed and

was not a necessary party); *P&G v. Kimberly-Clark Corp.*, 684 F. Supp. 1403 (N.D. Tex. 1987)

(an assignor who completely divests itself of its rights to property is no longer an interested party

and is neither an indispensable party nor a proper party); and *Tetra Techs., Inc. v. La. Fruit Co.*

2007 U.S. Dist. LEXIS 1240 (E.D. La. Jan. 5, 2007).  (Plaintiff brought declaratory judgment

that it was entitled to terminate a lease with defendant and for related damages.  The third-party

who assigned the lease to plaintiff was not a necessary party.)  *See also Overseas Dev. Disc*

*Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 505 n.18 (7th Cir. 1982). ("Unless local law qualifies the rights of the assignee . . . or the assignor has repudiated the assignment, or the assignment is wholly executory, the assignor is not an indispensable (Rule 19(b)) party.")

At most, the "parties" identified by the Defendant are possible witnesses who may possess some factual knowledge that may be relevant to the claims or defenses of one or more of the Parties in this action.  However, this does not make any of the potential witnesses a "party." *See Ameriprise Fin., Inc. v. Bailey*, 944 F. Supp. 2d 541, 545 (N.D. Tex. 2013) ("Even though [a third-party] may have intimate knowledge of the transactions that gave rise to this lawsuit, she can always be called as a witness with the need to designate her as a [party].")  *See also Fannie Mae v. Moser*, 2011 U.S. Dist. LEXIS 67369, at *5 (S.D. Miss. June 22, 2011).  (The court denied a Rule 12(b)(7) motion because there is no requirement to join agents.  "[A]t best, the [defendants] demonstrate that [the third-party] and its employees may be necessary witnesses. There is no indication that [the third-party] would be prejudiced in any way as an absent party or that adequate relief cannot be given without [the third-party's] participation as a party.")  *See also Nat'l Mortg. Warehouse, LLC*, 201 F. Supp. 2d at 506; *In re Maggard*, 2007 Bankr. LEXIS 3893 at *11; and *In re Donoho*, 402 B.R. 687, 699 (Bankr. E.D. Va. 2009).

Since none of the "parties" identified by the Defendant is actually a proper party to this matter, let alone a "necessary" party, there is no need to delve into the question of whether the case should be dismissed if the parties cannot be joined.  However, for the sake of good order, the Plaintiff notes that the Defendant never even tries to make an argument that Novo Point, LLC, is an indispensable party, nor does the Defendant offer any argument as to why Novo Point, LLC, cannot be joined.  In regard to Mr. Baron, the Defendant's argument that joining him

21

would deprive the Court of diversity is a non-starter.  While this action could be based on diversity jurisdiction, it is also based on federal question, as noted in the Amended Complaint. *See* Dkt. 15, PageID #239, para. 67.  As to Messrs. Nelson and Vogel, while the Defendant asserts that the Plaintiff's case is "affecting their interests," the Defendant never identifies what these supposed "interests" are.[5]  The Defendant also appears to suggest that "the receiver" is indispensable because the Defendant "has an interest in avoiding sole responsibility for the receiver's putative liability." Dkt. 66, PageID #428.  The Defendant never bothers to elaborate on what exactly the "the receiver's putative liability" is in this action.  The Plaintiff can only surmise that this argument is based on the Defendant's faulty statements on what this case is about, and therefore relies on its correction of the Defendant's statements set forth *supra*.[6] Finally, the Defendant makes another vague reference to "needless multiple litigation," citing *Pulitzer-Polster*.  In *Pulitzer-Polster* the Court was concerned with multiple litigation because parties other than the plaintiff could have a colorable claim against the defendant and there was an existing state case between the parties.  Neither of these facts exists here.

---

[5] The Defendant's argument that the case is "regarding their actions" is addressed *supra*. The case is not about "their actions," rather it is about the impact of the Fifth Circuit holding that the Receivership Order was void for a lack of jurisdiction.

[6] To the extent that Defendant argues that it might have a possible claim against a third party, such an argument does not automatically render these persons or entities "necessary parties."  *Nottingham v. General American Communications Corp.*, 811 F.2d 873, 880 (5th Cir. 1987).  ("Rule 19 does not require the joinder of joint tortfeasors.  Nor does it require joinder of principal and agent.  Finally, Rule 19 does not require joinder of persons against whom [the defendant has] a claim of contribution." (internal citations omitted) (cited by *Bowman v. Western Rim Prop. Servs.*, 2016 U.S. Dist. LEXIS 15741, at *3-4 (E.D. Tex. Feb. 9, 2016)).  *See also Halpern v. Rosenbloom*, 459 F. Supp. 1346, 1354 (S.D.N.Y. 1978) ("[P]laintiffs are not required to anticipate defendants' counterclaims and join all parties that may be necessary for defendant's benefit").

Finally, since none of the individuals nor entity identified by the Defendant is a "required party, the Defendant's argument pursuant to Rule 19(c) fails as well." *Ameriprise Fin., Inc. v. Bailey*, 944 F. Supp. 2d 541, 546, n.5 (N.D. Tex. 2013).

### E.  The Defendant's "Alternative Relief" for Transfer Should Be Denied

While the Defendant alleges its Motion to Dismiss seeks "alternative relief" of transfer pursuant to 28 U.S.C. § 1404(a), the Defendant provides little analysis, law, or argument in support of such relief.  The Defendant must show good cause, demonstrating that the proposed transferee venue is "*clearly* more convenient than the venue chosen by the plaintiff." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (emphasis added).  The documents likely to be relevant to this cause of action are either public documents accessible online (such as Court opinions and orders, or online information regarding ownership of the domain names at issue) or documents in the Defendant's possession in relation to their procurement of the property that likely are either already electronic or can easily be converted into digital form and readily movable around the nation.  The Defendant has not identified any non-party witnesses who are beyond this Court's subpoena powers.  The laws at issue in this case are federal or state law – laws that this Court is familiar with and properly able to address.

The Defendant has failed to meet its burden of proving that the Northern District of Texas is *clearly* more convenient than the Eastern District of Texas, and the Defendant's alternative request for relief should be denied.

IV.   **CONCLUSION**

For the foregoing reasons, the Plaintiff submits that the Defendant's Motion to Dismiss should be denied in its entirety.

Date:  August 22, 2016

Respectfully submitted,

 /s/ Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)
Paul Grandinetti
Rebecca J. Stempien Coyle
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

**Attorneys for the Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on August 22, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court.  Pursuant to Local Rule CV-5, this constitutes service on the following counsel:

Jason Richerson
RICHERSON LAW FIRM
306 East Randol Mill, Suite 160
Arlington, Texas 76011
Telephone (214) 935-1439
Facsimile (214) 935-1443
info@richersonlawfirm.com

Jennifer Lee Taylor
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone (415) 268-7000
Facsimile (415) 268-7522
jtaylor@mofo.com

Darin Michael Klemchuk
Aaron Douglas Davidson
Corey Jennifer Weinstein
KLEMCHUK LLP Dallas
Campbell Centre II
8150 North Central Expressway
10th Floor
Dallas, Texas 75206
Telephone (214) 367-6000
Facsimile (214) 367-6001
darin.klemchuk@klemchuk.com
aaron.davidson@klemchuk.com
corey.weinstein@klemchuk.com

James Mark Mann
MANN TINDEL & THOMPSON
300 West Main Street
Henderson, Texas 75652
Telephone (903) 657-8540
Facsimile (903) 657-6003
mark@themannfirm.com

Joel Christian Boehm
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas  78746-5546
Telephone (512) 338-5400
Facsimile (512) 338-5499
jboehm@wsgr.com

R William Beard, Jr.
SLAYDEN GRUBERT BEARD PLLC
401 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone (512) 402-3556
Facsimile (512) 402-6865
wbeard@sgbfirm.com

Steven M. Geiszler
DENTONS US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Telephone (214) 259-091
Facsimile (214) 259-0910
steven.geiszler@dentons.com

Debra Elaine Gunter
FINDLAY CRAFT PC
102 North College Avenue
Suite 900
Tyler, Texas 75702
Telephone (903) 534-1100
Facsimile (903) 534-1137
dgunter@findlaycraft.com

Jennifer Parker Ainsworth
WILSON ROBERTSON & CORNELIUS PC
909 ESE Loop 323
Suite 400
P.O. Box 7339
Tyler, Texas 75711-7339
Telephone (903) 509-5000
Facsimile (903) 509-5092
jainsworth@wilsonlawfirm.com

Mark Jeffrey Levine
WEYCER KAPLAN PULASKI & ZUBER
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046-1104
Telephone (713) 961-9045
Facsimile (713) 961-5341
mlevine@wkpz.com

William Robert Lamb
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone (90) 934-8450
Facsimile (903) 934-9257
wrlamb@gillamsmithlaw.com

Brian H Pandya
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone (202) 719-7457
Facsimile (202) 719-7049
bpandya@wileyrein.com

Barry M Golden
GOLDFARB LLP
2501 North Harwood Street, Suite 1801
Dallas, Texas 75201
Telephone (214) 583-2233
Facsimile (214) 583-2234
bgolden@goldfarbpllc.com

Hilda Contreras Galvan
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone (214) 969-4556
Facsimile (214) 969-5100
hcgalvan@jonesday.com

Michael Edward Hassett
JONES HASSETT PC
440 North Center
Arlington, Texas 76011
Telephone (817) 265-0440
Facsimile (817) 265-1440
mhassett@joneshassett.com

 /s/  Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)