In the United States District Court
Eastern District of Texas
Marshall Division

**Associated Recovery, LLC,**

    plaintiff,

v.

**Linda Butcher, et al.,**

    defendants.

case no. 2:16-cv-126-JRG-RSP

**Buyers International Group, LLC's Special Appearance for
the Purpose of Filing a Motion to Dismiss or, in the Alternative,
Motion to TransferVenue and Brief in Support**

Buyers International Group, LLC (**"BI"**) files this motion to dismiss for the primary reason thar it does not have minimum contacts with the state of Texas, and consequently this court did not acquire jurisdiction over **BI** through plaintiff's attempted service under the Texas long arm statute, Tex. Civ. Prac. & Rem. Code Ann. Sec. 17.042. Alternatively, **BI** requests dismissal of plaintiff's Amended Complaint pursuant to Rules 12(b)(1), 12(b)(3), 12(b)(6), and 12(b)(7) or, if necessary, the transfer of venue to the Northern District of Texas (**"NDTX"**)..

I.    **Introduction**

This case is yet another in a long line of vexatious litigation filed by Jeffrey Baron (**"Baron"**) and Novo Point, LLC (**"Novo Point"**), this time brought as a collateral attack on a judgment that has been rendered final in the Northern District of Texas. A quick list of the litigation that relates to the very same set of operative facts is set out on pages five and six of defendant Lookout, Inc.'s motion to dismiss, filed as docket entry 66 in this lawsuit.

Novo Point, the predecessor to plaintiff Associated Recovery, Inc. (**"Plaintiff"**), sold for value in 2012 many of its domain names pursuant to an order from the NDTX and earned hundreds of thousands of dollars from those sales. Now, Plaintiff seeks the return of those very domain names, despite (i) its predecessors never raising this dispute in the NDTX during the last four-plus years of ongoing litigation there; (ii) the NDTX expressly retaining exclusive jurisdiction of all such disputes; and (iii) it pleading no evidence whatsoever demonstrating its own standing to bring this case.

Further, Plaintiff fails to join necessary parties, including its predecessors Novo Point and Baron, Novo Point's court-appointed manager, Damon Nelson, and its receiver, Peter S. Vogel. Plaintiff's resistance to filing this matter in the NDTX is surprising, since Plaintiff is certainly aware that the Honorable Sam Lindsay has expressly retained jurisdiction of the allegations made in this matter:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, *or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.*

*Netsphere, Inc. v. Baron (**"Netsphere III"**)*, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015)(emphasis added).

Because this current action is a "controversy that arises from or relates to the prior receivership and/or the actions of the receiver and his professionals," the Eastern District of Texas, Marshall Division, is not a court of proper venue for this matter. Accordingly, BI seeks the dismissal of this matter pursuant to Rule

12(b)(3).  Alternatively, BI requests that this matter be transferred to the NDTX in the interest of justice pursuant to 28 U.S.C. §1406(a) or §1404(a).

Additionally, BI seeks the dismissal of this matter for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as Plaintiff has failed to set out facts demonstrating that it has standing to bring the claims it has brought against BI.

Alternatively, BI seeks the dismissal of this matter for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as Plaintiff's claims are barred as a matter of law by the doctrines of *res judicata* and collateral estoppel.

BI seeks the dismissal of this matter for Plaintiff's failure to join a required party pursuant to Federal Rule of Civil Procedure 19, as Plaintiff has failed and refused to name the receiver, Peter Vogel, or the court-appointed manager of Novo Point, Damon Nelson, or Plaintiff's predecessors, Baron and Novo Point.

Finally, BI seeks the dismissal of four of the claims brought against it on limitations grounds.

In sum, BI seeks the dismissal of all claims against it in this matter. Alternatively, BI requests that this matter be transferred to the NDTX for assignment to the Honorable Sam A. Lindsay.

## II.   Factual and Procedural Background

Much of the procedural history has been discussed in decisions by the NDTX and the Fifth Circuit, which are summarized in part below.


A.   *Netsphere* Litigation

Plaintiff's alleged predecessor, Baron, entered into a joint venture with a man named Munish Krishan (**"Krishan"**) relating to the ownership and sale of internet domain names.   *Netsphere II*, 2013 WL 332858 at *1.   Baron and Krishan ultimately had a falling out, resulting in a dispute and a settlement agreement being signed by them in April of 2009.   *Id.*   Shortly after that agreement was signed, however, Baron and one of his companies, Ondova Ltd. (**"Ondova"**) breached the agreement, leading Krishan and his company, Netsphere, to sue Baron in May of 2009.   *Id.*   Throughout the underlying case, Baron substituted counsel so many times that the NDTX was "concerned that Baron would continue to frustrate the judicial system by cycling through attorneys in order to cause delay."   *Id.* at *2.

B.     Bankruptcy and Receivership

Netsphere obtained an injunction against Baron directing Baron to comply with his settlement agreement with Krishan, and later alleged that Baron violated the terms of that injunction.   In July of 2009, after Netsphere sought a finding of contempt, Baron placed Ondova in bankruptcy in the NDTX.   *Netsphere I,* 703 F.3d at 302.    Ultimately, the bankruptcy creditors reached a settlement, which was approved by the bankruptcy court in July of 2010.   *Id.* at 303.   At the hearing on the settlement agreement, the bankruptcy trustee informed the bankruptcy court that one of Baron's former attorneys had testified that Baron planned to move assets that were subject to United States' jurisdiction to another country.   *Id.*   The bankruptcy trustee expressed concern that money to pay lawyers and

satisfy other claims would be lost by moving the assets.  *Id.*  In response, the district judge appointed a special master to mediate claims for unpaid legal fees. *Id.* at 304.  After Baron again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of lawyers in violation of the court's order," which would "expose the bankruptcy estate to additional administrative claims and further delay the resolution of the bankruptcy proceedings."  *Id.* Ultimately, the NDTX appointed Peter S. Vogel (the **"Receiver"**) as the receiver for Baron's companies in November of 2010. *Id.*; *see also,* Order Appointing Receiver, *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex. Nov. 24, 2010), ECF No. 130.  This order was later clarified to include Novo Point's assets at ECF No. 176.

C.      Receivership and Actions of the Receiver

To fund disbursements to the unpaid attorneys, the NDTX granted the Receiver's motion to sell domain names owned by Novo Point.  *Netsphere, Inc. v. Baron*, 3:09-cv-988-F (N.D. Tex. Feb. 4, 2011), ECF No. 288.  The order granting the motion and the motion of the Receiver are collectively attached to this motion as exhibit 1.  The NDTX also appointed Nelson as the permanent manager of Novo Point to assist the Receiver in selling the domain names.  *Id.* at ECF No. 473.

**It is the order authorizing the sale of these domain names that Plaintiff alleges initiated the sales Plaintiff is now trying to void by its**

**current allegations before this court.**

D.     Appeal, Reversal, and Winding Down of Receivership

Baron appealed the order appointing the Receiver and the subsequent orders authorizing sales.   *Netsphere I*, 703 F.3d at 305.   Neither the order appointing the Receiver nor the order authorizing the sale of domain names were stayed during the appeal.   Ultimately, the Fifth Circuit reversed the appointment of the Receiver with directions to the NDTX to wind up the receivership.   *Id.* at 315.

When the NDTX began the winding up process, it had to determine what fees would be paid to the Receiver and his professionals.   In that process, the NDTX noted, "[n]ever in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron."   *See,* Order, *Netsphere, Inc. v. Baron*, 3:09-cv-988 (N.D. Tex. Jan 7, 2013), ECF No. 1155 at *3.   The NDTX recognized that the Fifth Circuit vacated the receivership, but it also clearly spelled out to the parties that "all Orders issued under the Receivership remain in effect until the Receivership is wound down."   *Netsphere II,* 2013 WL 3327858 at *6-7.

The winding down process was further delayed by the bankruptcy and other proceedings over the next two years, but the NDTX issued the final order on the Receiver's request for a final accounting on March 27, 2015.   *Netsphere III,* 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015).   A copy of this order is attached

to this motion as exhibit 2.   In addition to awarding the Receiver fees and expenses and holding the receivership would be terminated upon payment of those amounts, the NDTX further held:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, *or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.*

*Id.*


E.   Baron Sues the Receiver

In November of 2014, Baron and Novo Point sued the Receiver, not in the NDTX, but in a state district court in Dallas County, Texas.   Baron and Novo Point alleged claims of wrongful appointment of the Receiver, breach of fiduciary duties, conspiracy, intentional infliction of emotional distress, abuse of process, breach of contract, constitutional torts, and vicarious liability.   After removing the case to the NDTX, the Receiver filed a motion to dismiss alleging, among other things, that the Receiver was immune as an officer of the court.   The NDTX granted the Receiver's motion, dismissing all claims against the Receiver. *See,* Memorandum Opinion and Order, *Baron v. Vogel*, 3:15-cv-232-L (N.D. Tex. March 31, 2016), ECF No. 49, a copy of which is attached to this motion as exhibit 3.


F.   The *In Rem* Litigation

In 2015 Plaintiff, purporting to act as successor to Baron and Novo Point,

filed an *in rem* action in the Eastern District of Virginia against a number of domain names that allegedly had been transferred by the Receiver. Some of the defendant domains successfully sought to transfer this case from the Eastern District of Virginia to the NDTX, Dallas Division, where it is currently pending before the Honorable Sam A. Lindsay pursuant to the continuing jurisdiction provision set out above. The *in rem* action bears case number 3:16-cv-1025-L, and it is styled *Associated Recovery, LLC v. John Does 1-44*.

Some of the domains at issue in the *in rem* action are also at issue in this litigation.

G.   <u>This Litigation</u>

On February 8, 2016, Plaintiff filed its original complaint, and on June 16, 2016, Plaintiff filed its amended complaint, seeking the following relief:

> a declaration that Plaintiff's property, which was improperly, fraudulently, or otherwise converted through a vacated receivership. The vacated receivership had no authorization to transfer title of the Plaintiff's property to "original transferees" of that property. The original transferees had no legal title to the Plaintiff's property, which the original transferees could pass to subsequent and/or "current transferees" of that Property. The Plaintiff's requested declaratory judgment seeks the return to the Plaintiff of its property as well as a declaratory judgment that any and all interest obtained in the property by every Defendant was done wrongfully, that Plaintiff has a superior right in law and equity, and that any purported and/or alleged ownership rights are invalid, null and void *ab initio*. In addition to the return of its property under Texas law and a removal of cloud on said property via a request to quiet title, Plaintiff also seeks damages under federal and state law for conversion, unjust enrichment, misappropriation, fraudulent conveyance, and violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

*See,* Plaintiff's amended complaint, ECF No. 15, paragraph 1.

III.   **Argument**

A.   <u>This Matter Should Be Dismissed for Lack of Jurisdiction over this</u>
<u>Defendant</u>.

BI is a limited liability company which has never had a presence in the
State of Texas.  Plaintiff erroneously states in paragraph 42 of its amended
complaint (ECF No. 15, page 12) that BI previously had a resident agent in
Texas.  No supporting documentation was attached.  The affidavit of Haney
Sarsour, manager of BI (*See* Exhibit 4, paragraphs 4, 5 and 6), Affidavit of
Haney Sarsour) refutes Plaintiff's claim by affirmatively stating BI was not
created under Texas law; it has never been authorized to conduct business in
Texas; it has never had an office, employees, agents or representatives, or any
real or personal property in Texas; it has never solicited business or conducted
business in Texas; and it has never consented to be sued in Texas.

Plaintiff claims to have served BI by certified mail, enclosing a summons
and amended complaint in an envelope addressed to 586 Belvedere Court
South, Canton, Michigan  48188.  This was received by BI manager Henry
Sarsour on June 21, 2016.  This service was apparently done by Plaintiff in
reliance on the Texas "long-arm statute", Tex. Civ. Prac. & Rem. Code Ann. §
17.042 (West 2015).  This statute allows Texas courts to exercise personal
jurisdiction over a nonresident defendant who does business in Texas.

The Texas statute was enacted to allow jurisdiction to be asserted to the
extent allowed by the Supreme Court in *International Shoe Co. v. Washington*,

9

326 US 310, 66 S.Ct. 154, 90 S. Ed. 95 (1945).  That case established that jurisdiction over a nonresident did not offend federal due process guarantees if the nonresident has minimum contacts with the state, and exercising such jurisdiction does not violate traditional notions of fair play and substantial justice. 326 US at p. 316.

In this case BI has no minimum contacts with Texas, and to subject it to litigation in Texas would offend traditional notions of fair play and substantial justice.  Affidavit of Haney Sansour, Exhibit 4, par. 4, 5 and 6; *Guardian Royal Exch. Assurance Ltd. v. English China Clays, PLC*, 815 SW2d 223 (Tex. 1991); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 US 408, 104 S.Ct. 1868 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 US 770, 104 S.Ct. 1473 (1984). BI asks the court to dismiss plaintiff's Complaint as it relates to this defendant, for the reason that BI has no minimum contacts with the State of Texas, and is not subject to being sued in this Court.

B.    Alternatively, This Matter Should Be Dismissed for Improper Venue

BI asks the court to dismiss this action pursuant to Rule 12(b)(3) because Plaintiff has intentionally filed it in this court despite the NDTX's explicit retention of exclusive jurisdiction regarding this dispute.

Plaintiff has not attempted to plead any particularized showing of proper venue regarding BI other than blanket statements purportedly relating to all of the 42 defendants named in this matter.

Regardless, Plaintiff was certainly aware that the Honorable Sam Lindsay has expressly retained jurisdiction of the allegations made in this matter.

*Netsphere III*, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015).   In fact, Plaintiff spends nearly three full pages in its amended complaint setting out its somewhat skewed factual recitation of the NDTX litigation history on pages 21 through 24. Nonetheless, Plaintiff fails to inform this court in its amended complaint of the NDTX's specific retention of jurisdiction for these claims:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, *or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals*.

*Id.*

This current action is a "controversy that arises from or relates to the prior receivership and/or the actions of the receiver and his professionals."   Plaintiff cannot reasonably dispute this fact, since it alleges that the sales of the domain names at issue in this case were made by the Receiver.   Thus, this court is not a court of proper venue for this matter.   Accordingly, BI seeks the dismissal of this matter pursuant to Rule 12(b)(3).

C.   <u>Alternatively, the Court Should Transfer this Action to the NDTX</u>

Alternatively, this court may and should transfer this case to the NDTX even if venue is proper under 28 U.S.C. §1391 for "convenience" pursuant to 28 U.S.C. 1404(a).   On a motion to transfer for convenience, the court considers two broad categories of factors: (1) the convenience of the parties and witnesses, and (2) the interests of justice.   *Atlantic Mar. Constr. Co. v. U.S. Dist.*

*Ct. for the W. Dist. of Tex.*, 134 S.Ct. 568, 581 (2013).

1.    *Convenience of Witnesses and Parties*

As set out above, there is a long history of litigation in the NDTX involving these claims and Plaintiff's predecessors, Novo Point and Baron.  Baron resides in Dallas County, Texas, and Novo Point regularly transacted business in and availed itself of courts located within the NDTX.  Novo Point and Baron, as well as the Receiver and his agents will be essential witnesses in this case, especially on the issue of whether or not Plaintiff even has standing to bring the claims it has brought against BI.

The Receiver and Mr. Nelson, like Baron, reside in the NDTX, and they are outside the non-party subpoena range for deposition testimony in this district.  Further, the Receiver was engaged by order of the NDTX, and the domain sales complained of in this action were specifically authorized by an order of the NDTX.  These sales all occurred in the NDTX, and the NDTX ordered the Receiver to "store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court."  *See Netsphere III*, 2015 WL 1400543 at *10.  Thus, the books and records associated with the sales now complained of here are all held and stored in the NDTX.

2.    *The Interests of Justice*

Perhaps more compelling for the transfer of this matter to the NDTX than even the convenience of the witnesses is the over-riding interest of justice given the lengthy history of litigation involving Plaintiff and its predecessors.

The NDTX has dealt with the *Netsphere* litigation and all of its offshoots

since 2009, and it is most familiar with the facts and parties at issue here. This very case arises out of the NDTX's appointment of the Receiver and the Receiver's actions taken pursuant to the order granting the Receiver the ability to sell the subject domains.  The NDTX has been so involved in these exact issues that it retained exclusive jurisdiction to deal with these disputes.  In fact, even when Plaintiff tried to file an *in rem* action relating to certain domain names in the Eastern District of Virginia, that court immediately transferred that matter to the NDTX, where it remains pending right now.

This action certainly appears to be a collateral attack on the orders of the NDTX and the Fifth Circuit.  Transferring this matter to the NDTX will avoid any inconsistent rulings regarding the effect of the receivership, which is again at issue in this case, just as it remains in the *in rem* proceeding.  Given the lengthy case history and continued litigation in the NDTX, the interests of justice strongly favor transfer of this case to the NDTX, as well.

Accordingly, if the court declines to dismiss this matter for improper venue, BI respectfully requests that it be transferred to the NDTX for further proceedings.

D.      This Action Should Be Dismissed for Lack of Subject Matter Jurisdiction

BI seeks the dismissal of this action pursuant to Rule 12(b)(1), as this court lacks subject matter jurisdiction due to Plaintiff's lack of standing to assert these claims against BI.

A motion to dismiss for want of standing is properly brought under Rule

12(b)(1) because standing is a component of subject-matter jurisdiction.   *In re Schering Plough*, 678 F.3d 235, 243 (3rd Cir. 2012).   Where, as with Plaintiff here, a claim or right is assigned, the assignee stands in its assignor's shoes with the assignee's rights being no greater than those of its assignor's for purposes of subject matter jurisdiction.   *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F.Supp.2d 961, 965-66 (S.D. Tex. 2013).

Once a defendant files a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992).   Plaintiff here cannot meet that burden.

Standing, at a minimum, requires the demonstration of three elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent;   (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury.   *Croft v. Gov. of Texas*, 562 F.3d 735, 745 (5th Cir. 2009)(citing *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

Plaintiff claims that it is the assignee of rights in the subject domain names pursuant to an assignment that occurred on or about December 24, 2015.   *See* paragraph 77 of Plaintiff's amended complaint, ECF No. 15.   Plaintiff does not identify in its amended complaint who its alleged assignor was, but in the *in rem* case now pending in the NDTX, Plaintiff claims to be the assignee to the rights of Novo Point and Baron.   *See Associated Recovery, LLC v. John Does 1-44*, 3:16-CV-1025-L, ECF No. 59, pages 2-3, paragraphs 3-4.   Thus,

Plaintiff has no more standing to assert these claims than Novo Point or Baron would.

Plaintiff simply has no injury in fact.  Although the Fifth Circuit reversed the order creating the receivership, the sales of domain names to raise funds to pay the receivership fees occurred under the NDTX's authority.  *See,* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names and The Receiver's Omnibus Motion to Permit Sales of Domain Names, attached to this motion as exhibit 1.  Further, the NDTX implicitly authorized the sales after the fact when it authorized payment of the receivership fees using, in part, funds raised through the sales.  *See, generally, Netsphere II*, 2013 WL 3327858; *Netsphere III,* 2015 WL 1400543.

Plaintiff's claims for violation of the Anticybersquatting Consumer Protection Act, to quiet title, for conversion and misappropriation, and for declaratory judgment, all flow from BI's alleged acquisition of BI.com, which BI purchased in the stream of commerce after it was apparently sold under the express authorization of the NDTX.  These claims are extinguished by the orders authorizing the sales and orders authorizing payments.

Besides having no injury in fact, Plaintiff cannot establish that BI caused any kind of injury to Plaintiff.  <u>BI has done nothing to injure Plaintiff or its assignors.</u>  The injury alleged was self-inflicted.  *See, Netsphere I*, 703 F.3d at 313 (holding "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making"); *see also, Netshpere III*, 2015 WL 1400543 at *3 (holding "the court also takes into account

the disruptive conduct of Receivership Parties Jeffrey Baron, Novo Point LLC, and Quantec LLC, which continued after the order establishing the Receivership was reversed and increased the Receivership expenses to which Baron now objects").

With only Baron and Novo Point to blame, Plaintiff is the "assignee" of non-existent rights and non-existent causes of action.   Thus, Plaintiff has no standing to bring this action against BI.   Because Plaintiff has not effectively pleaded its standing to bring these claims, and because Plaintiff cannot establish that standing for purposes of proving to this court that it has subject-matter jurisdiction, this matter should be dismissed.

E.    <u>This Action Should Be Dismissed for Failure to State a Claim</u>

BI seeks the dismissal of the claims against it pursuant to Rule 12(b)(6) as Plaintiff has failed to state a claim upon which relief can be granted.   The Fifth Circuit's decision in *Netsphere I* and this court's decisions in *Netsphere II, Netsphere III*, and the Vogel Lawsuit collaterally estop Plaintiff's claims, and thus, dismissal is also proper under Rule 12(b)(6), as Plaintiff's claims are not plausible on their face.

To avoid dismissal in the face of a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also, Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).   A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   While well-pleaded facts in the complaint are to be accepted as true in the 12(b)(6) context, legal conclusions are not entitled to the assumption of truth.  *Id.* at 679.  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.   *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005).

Plaintiff is collaterally estopped from bringing the claims it has asserted against BI.  To establish collateral estoppel, a party must show (1) the issue is identical to one involved in prior litigation; (2) the issue was actually litigated in prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment there.  *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009); *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995).

As set out above, Novo Point and Baron have already challenged the actions of the Receiver relating to these domain names by suing the Receiver directly in a Dallas County state district court, which was in turn removed to the NDTX into *Baron et al. v. Vogel*, 3:15-CV-232-L (the **"Vogel Lawsuit"**).  In the Vogel Lawsuit, Plaintiff's assignors asserted various claims against the Receiver in an effort to void the sales of the domain names conducted by the Receiver pursuant to the orders of the NDTX.  In granting the Receiver's motion to dismiss, the Honorable Judge Lindsay first found that "virtually all of Plaintiff's allegations and claims with respect to the [Receiver] pertain to the receivership

and Defendants' administration of the receivership." *See,* memorandum opinion and order, attached to this motion as exhibit 3.   Judge Lindsay went on to dismiss all claims with prejudice, holding:

> Any contention by Plaintiffs, however, that Defendants engaged in wrongful or sanctionable conduct in the *Netsphere* or any of the related litigations brought by or against Baron and the LLCs could have and should have been brought to the court's attention in a Rule 11 motion or one of the many appeals filed with the Fifth Circuit regarding the receivership and fee orders, not as separate collateral state court action.   Additionally, Defendants are correct that any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership … is an impermissible collateral attack of prior orders through this suit.

*Id.* at p. 13.

Here, Plaintiff's claims against BI, including claims for declaratory judgment, conversion, violation of the Anticybersquatting Consumer Protection Act, unjust enrichment, misappropriation, and to quiet title, all stem from and are based on the underlying allegation of "wrongful receivership."   Plaintiff's theory here is that, since the receivership was reversed, all of the actions of the Receiver must be void.   However, Plaintiff's assignor already tried to make that argument directly against the Receiver and his agents, but such claim was dismissed with prejudice.   *Id.*

Even beyond the Vogel Lawsuit, the issues in this lawsuit have been presented to the Fifth Circuit and the NDTX time and time again.   In Baron's *Netsphere I* brief to the Fifth Circuit, he complained, as Plaintiff does here, that the receivership was wrongful, and Baron sought to "recover the costs of the receivership from those who have wrongfully provoked it.   Brief at 69-71.   After

the panel decision in *Netsphere I*, Baron filed his objections to the Receiver's fee applications to the NDTX.   *Netsphere I*, ECF No. 1269 (May 8, 2013).   Baron argued, among other things, that the Receiver should receive no fees because of alleged breaches of fiduciary duty and waste. *Id.*   These issues were decided against Baron in *Netsphere II*.

Each of these rulings were crucial and necessary to the Fifth Circuit's decision in *Netsphere I* and the NDTX's decisions in *Netsphere II* and *Netsphere III*, as well as the Vogel Lawsuit.  It was crucial to the Fifth Circuit's decision to award reasonable fees and expenses to the Receiver in *Netsphere I* that the receivership, while improper, was not procured by any conspiracy or bad faith, and that Baron's own tactics caused it to be ordered.  Similarly, the NDTX, when awarding the Receiver and his professionals their attorneys' fees, determined the reasonableness of the award, making specific findings in support of the award. The fee award, coupled with the NDTX's express findings of no wrongdoing set forth in *Netsphere II*, collaterally estop Baron and Novo Point from claiming wrongdoing regarding the payment of the receivership costs.  *See Southmark Corp. v. Coopers & Lybrand,* 163 F.3d 925, 932-34 (5th Cir. 1999)(holding that a partial fee disgorgement order in bankruptcy court collaterally estopped the debtor from seeking to recover greater amount of damages in subsequent case).

Further still, the NDTX authorized the paying of receivership expenses through the sale of domain names.  *See,* exhibit 1.  The NDTX then authorized the disbursement of the proceeds of those sales to pay receivership fees *after* the Fifth Circuit's *Netsphere I* decision that Plaintiff claims vacated and voided

the receivership.   By allowing those proceeds to be used to pay receivership expenses, the NDTX ratified the sales as valid, and the NDTX specifically found:

> [Receiver's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios. Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent.…

*Netsphere II*, 2013 WL 3327858 at *16.  The NDTX further ratified these sales in the Vogel Lawsuit.

Plaintiff's assignor, then, would be barred from bringing this lawsuit, and since Plaintiff stands in the shoes of its assignors, it is barred from bringing this lawsuit.  *See, e.g., PEMEX*, 923 F.Supp.2d at 965.

The issues Plaintiff raises in its complaint against BI have been litigated and decided against Plaintiff's assignors.  Plaintiff alleges that the domain name ching.com was among domain names that were "improperly placed … under the control of a receivership" in *Netsphere I* and then "improperly, fraudulently, or otherwise converted through a vacated receivership."  *See,* Amended Complaint, ECF No. 15, paragraphs 1, 43 and 79.  These allegations are inconsistent with the actual findings of both the NDTX and the Fifth Circuit.  Thus, the court should dismiss the claims against BI pursuant to Rule 12(b)(6).

F.    <u>This Action Should Be Dismissed for Failure to Join Required Parties</u>

Plaintiff has failed to join parties necessary, and thus, this action should be dismissed pursuant to Rule 19 and Rule 12(b)(7).

Determining whether to dismiss a case for failure to join a party requires a two-part analysis. *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must determine whether a party should be added under the requirements of Rule 19(a). *Id.* Second, if the party to be added cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is "indispensable," that is, whether litigation can be properly pursued without the absent party. *Id.* at 629. The factors to consider in making this determination are set out in Rule 19(b). *Id.*

Here, there are four necessary parties that have not been joined by Plaintiff: Novo Point, Baron, the Receiver, and Nelson.

1.    *Novo Point*

Plaintiff mentions Novo Point as one of its predecessors in paragraph 97 of its amended complaint, then complains that the transfer of control of the subject domain names "were made without authorization from the Plaintiff, Mr. Jeff Baron, Novo Point LLC, or Quantec LLC" and were "tantamount to thefts." *See* Amended Complaint, ECF No. 15, paragraph 135. Plaintiff fails to actually allege in its petition who or what entity assigned the rights in the subject domains to it, but it appears from the general nature of the allegations that such assignment came from either Novo Point or Baron. What Plaintiff does allege, however, is that the assignment came on December 24, 2015, some six years into the protracted litigation and well after the subject domains were authorized to be sold and their proceeds disbursed. *See,* Amended Complaint, ECF no. 15, paragraph 77.

In any event, Novo Point was the transferring party at the start of the domain transfers at issue here, acting through the court-appointed manager, Mr. Nelson.   Novo Point was a party to the agreements first transferring these domains, and as such, it is a necessary party here.   *See Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014); *In re Rouge Indus., Inc.*, 326 BR. 55, 59 (Bankr. D. Del. 2005)(noting "a termination of ownership of assets allegedly transferred between a buyer and a seller should not be attempted without both parties to the transaction being before the court").

Plaintiff has not alleged, and BI has not found, that any order from any court ever unwound the sales authorized by the NDTX prior to the Fifth Circuit's opinion in *Netsphere I*.  Plaintiff challenges the validity of these sales, and thus, Novo Point remains a necessary party to this action.

2.   *Jeffrey Baron*

Similar to Novo Point, Plaintiff claims that Baron is one of its "predecessors" and that Baron gave no authorization for the transfer of any of the domains at issue.  Baron is the subject of the NDTX's findings of litigation abuse, as set out above.  Given Baron's close involvement with Novo Point and the domain names (and apparently Plaintiff, as well), and given that Baron's litigation misconduct caused the receivership in the first place, he is a necessary party.  In fact, Baron himself filed the Vogel Lawsuit, complaining of the same operative facts as Plaintiff here, though Baron sued the Receiver there, while Baron's proxy sues the purchasers here.

Jeffrey Baron is a necessary party that should have been joined.

3.     *The Receiver and Mr. Nelson*

Mr. Nelson was court appointed as the manager of Novo Point by the NDTX, and he signed the transfer agreements as authorized representative of Novo Point.   The Receiver supervised and authorized Mr. Nelson's activities. Both should be joined, as they are the parties who allegedly "wrongfully transferred" the domains at issue.

However, the NDTX recently dismissed Baron's claims against the Receiver in the Vogel Lawsuit and held that the Receiver's actions were consistent with his charge and not subject to collateral attack.   *See,* Memorandum Opinion and Order, attached as exhibit 3.   The same logic would apply to Mr. Nelson, as he acted under the supervision of the Receiver.

Thus, as a matter of law, neither the Receiver nor Mr. Nelson is likely available as a party in this matter.   Where necessary parties are indispensable but unavailable, dismissal is proper under Rule 12(b)(7).   *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.,* 2014 WL 3672982 (W.D. Tex. July 24, 2014). Because indispensable parties are absent, the court must determine whether, in equity and good conscience, the action should proceed among the parties before the court, or whether the case should be dismissed to avoid manifest prejudice. *Pulitzer-Polster v. Pulitzer,* 784 F.2d 1305, 1312 (5th Cir. 2006).   One of the factors to be considered by the court in this analysis is whether a party has an interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another."   *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109-10, 88 S.Ct. 733 (1968).

Obviously, BI has an interest in avoiding being held solely responsible for actions taken by the Receiver in transactions that BI was neither aware of nor privy to.  BI did not purchase the domain ching.com from the Receiver or with any knowledge of the receivership.  As such, it would not be equitable to force BI to continue to litigate here and potentially bear the sole responsibility for claims that the Receiver did something wrong.  This case should be dismissed.

G.   Should Be Dismissed Based on Limitations

Plaintiff has asserted seven claims against BI: declaratory judgment, conversion, violation of the ACPA, unjust enrichment, misappropriation, quiet title, and fraudulent conveyance.  At least four of these causes of action carry statutes of limitations that are three years or shorter, yet Plaintiff did not bring this action within three years of the accrual of the claims.  Accordingly, the applicable statutes of limitations bar Plaintiff's claims for declaratory judgment, conversion, unjust enrichment, and misappropriation, and these claims should be dismissed pursuant to Rule 12(b)(6).

1.   *Conversion*

Conversion is a Texas tort claim.  The limitations period for an action for conversion is two years.  Tex. Civ. Prac. & Rem. Code § 16.003(a); *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 762 (Tex. App. – Tyler 2014, no pet.).

Plaintiff does not provide any factual allegation for when the alleged conversion of ching.com occurred, but from the allegations, the clear inference from the pleadings indicates such conversion occurred prior to the Fifth Circuit's

ruling in *Netsphere I*, which was December 18, 2012.   This action was filed in February of 2016, and thus, the claim for conversion is barred by limitations.


2.    *Misappropriation*

Plaintiff does not specify whether it sues BI under a common law theory of misappropriation of trade secrets, or under the Texas Uniform Trade Secret Act. Regardless, the limitations period for a trade secret misappropriation claim is three years.   Tex. Civ. Prac. & Rem. Code § 16.010(a).

Again, Plaintiff does not provide any factual allegation for when BI allegedly misappropriated any trade secret.   However, it appears from the totality of the pleading that Plaintiff claims that such "misappropriation" occurred prior to the Fifth Circuit's ruling on December 18, 2012.   This action was filed in February of 2016, more than three years later, and thus, the claim for misappropriation is barred by limitations.

3.    *Declaratory Judgment*

Because a declaratory judgment action is a procedural device used to determine substantive rights, to determine the applicable limitations period, courts must look to the legal remedy underlying the cause of action for the applicable limitations period. *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex.App.-Austin 2008, pet. denied).   Here, the declaration requested is twofold: one, that Plaintiff is the owner of the subject domains, and two, that BI does not have the right to use ching.com.   The substantive, underlying causes of action, then, are conversion and misappropriation.

Because Plaintiff failed to file these claims within three years of the alleged actions of the Receiver, they are time barred as against BI.   The declaratory judgment claim should be dismissed.

4.   *Unjust Enrichment*

Unjust enrichment is a Texas tort claim.   The limitations period for an action for conversion is two years.   Tex. Civ. Prac. & Rem. Code § 16.003(a).

Plaintiff does not provide any factual allegation for when the alleged unjust enrichment occurred, but from the allegations, the clear inference from the pleadings indicates such conversion occurred prior to the Fifth Circuit's ruling in *Netsphere I*, which was December 18, 2012.   This action was filed in February of 2016, and thus, the claim for unjust enrichment is barred by limitations.

<u>Conclusion</u>

For the reasons set out above, BI requests that the court dismiss the claims asserted against it by Plaintiff with prejudice, reserving its right to seek fees and costs upon the granting of this motion.   Alternatively, as set out in part III.B. above, this court should transfer this entire action to the NDTX to be assigned to the Honorable Sam Lindsay pursuant to his retention of exclusive jurisdiction of these matters.   BI seeks all further relief to which it is justly entitled.

Respectfully submitted,

*/s/ Jerome A. Moore*
Jerome A. Moore (P17930-Mich)

24825 Little Mack Avenue
St. Clair Shores, MI  48080

(586) 298-0298

ATTORNEY FOR BUYERS
INTERNATIONAL GROUP, LLC

Certificate of Service

The undersigned certifies that on August 26, 2016, I caused this motion to be served on all counsel of record via the court's CM/ECF system.

_____ /s/ Jerome A. Moore _____

_____