**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**Marshall Division**

| | |
|---|---|
| ASSOCIATED RECOVERY, LLC,          ) | |
|        ) | |
|       *Plaintiff*,     ) | |
|        ) | |
|     v.         ) | Case No. 2:16-cv-00126-JRG-RSP |
|        ) | |
| LINDA BUTCHER *et al.*,     ) | |
|        ) | |
|      *Defendants*.    ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**ALL-PRO FASTENER, INC.'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Plaintiff Associated Recovery, LLC ("Associated Recovery") responds in opposition to Defendant All-Pro Fastener, Inc.'s Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (the "Defendant's Motion").  Dkt. 73.

## I.      Introduction

The Defendant tries to employ the all too familiar litigation tactic of poisoning the well, recounting at length irrelevant aspects of procedural history and quoting what Defendant surely hopes will be incendiary comments from that history that will warp this Court's view of Plaintiff and its predecessors.  But, cutting through the layers of muck contained in the Defendant's Motion, this case is really very simple.  Whatever one may think about the other cases in which the Plaintiff or its predecessors have been involved, there can be no serious dispute that this relatively straightforward case rests on solid ground.

It cannot be realistically disputed that the Fifth Circuit invalidated the district court's order approving sales of the domain names.  Despite that ruling, the domain names have never

been returned to the original owners of the domain names, or their successors (i.e., to the Plaintiff). The Plaintiff, on behalf of itself and its predecessors, wants the domain names back. That perfectly reasonable objective, which flows directly from the Fifth Circuit's ruling, is all that this case is about. It is no more complicated than that, although the Defendant is certainly trying to muddy the waters with extensive and ofttimes frankly misleading recitations of mainly irrelevant historical facts. The Plaintiff trusts that the Defendant will not so easily distract or color this Court's view of this simple straightforward case.

It is a well-settled and long-standing principle that equity "will not suffer a wrong without a remedy." *Jones v. Campbell-Taggart Associated Bakeries*, 63 F.2d 58, 60 (5th. Cir. 1933). And yet, that is precisely the way Defendant would have it – a wrong without a remedy – even in the face of the Fifth Circuit's prior ruling invalidating the order approving the sale of the domain names to which the Defendant now claims an interest. Whatever else the Fifth Circuit said or meant, it plainly and indisputably found that the district court abused its discretion in attempting to exercise jurisdiction over the domain names. In light of the ruling, it is utterly untenable and, indeed, impossible to suggest that panel somehow affirmed an order by which the district court exercised jurisdiction over those same domain names. This conundrum presents an analytical bind from which the Defendant cannot free itself. The laws of logic do not yield to creative or impassioned advocacy.

## II. The Plaintiff's Claims Rest on Solid Legal Ground, Namely, the Fifth Circuit's Ruling in *Netsphere*

Before addressing the numerous misguided arguments in the Defendant's Motion to Dismiss, the Plaintiff thinks it particularly important to understand that this case rests on solid legal footing. The indisputable legal basis for the Plaintiff's primary claim for a return of the

2

domain names involves only a small fraction of the prior procedural history of the Plaintiff's predecessors, rather than the needlessly extensive recitation contained in the Defendant's Motion.  Specifically, the only relevant history relates to the order by which the district court established the receivership ("the Receivership Order"), the order by which the district court purported to approve the sale of the domain names ("the Sale Order"), and the Fifth Circuit's subsequent decision upon the appeal of these two (and numerous other) orders.

Even the relevant facts from this procedural history are few and relatively easy to understand.  The district court entered the Receivership Order, by which the district court sought to exercise jurisdiction over assets and entities that were not before the court; Plaintiff's predecessors appealed.  *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).  The district court entered the Sale Order, by which the district court, once again, purported to exercise jurisdiction over assets and entities that were not before the court; Plaintiff's predecessors appealed.  (*See* Fifth Circuit Appeal No. 11-10290; Composite Exhibit 1, attached hereto.)  The Fifth Circuit consolidated the appeals (with others that were taken from other orders in the *Netsphere* matter).  *Netsphere*, 703 F.3d at 301. The Fifth Circuit ultimately found that the Receivership Order was outside the district court's jurisdiction and vacated that order. *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012).  The other district court orders then fell with the Receivership Order.  In respect to the order permitting the sale of domain names the Fifth Circuit issued a judgment holding that "the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court."  *Id*.

The critical and central foundation of Plaintiff's claims lies in the Fifth Circuit's resolution of the consolidated appeals.  The validity of the Receivership Order was so obviously central to the other orders on appeal, and its disposition so patently controlling of those appeals, that the Fifth Circuit saw it necessary to do little more than observe that "our conclusions about the receivership itself make most of the later appeals irrelevant."  *Netsphere*, 703 F.3d at 305.  In other words, as goes the Receivership Order, so go the other appeals – a point the Fifth Circuit reiterated and reinforced by declaring that its resolution of the issues surrounding the Receivership Order also necessarily resolved the other appeals not specifically addressed in the opinion.  *Id.* at 314 (indicating the Court's intent to address specifically only those issues "that would remain unresolved despite our holding that the receivership was improper").

Although it is plain enough from the Fifth Circuit's opinion that the Sale Order did not survive invalidation of the Receivership Order, it bears repeating that there is completely and absolutely no conceivable way the Sale Order could have survived.  The Fifth Circuit invalidated the Receivership Order because the district court lacked jurisdiction over the domain names: "[E]quity does not allow a receivership to be imposed over property that was not the subject of the underlying dispute."  *Netsphere*, 703 F.3d at 306.  The Court rejected every argument advanced in support of the receivership, finding that the district court's action exceeded the "boundaries of traditional equitable relief," even when those boundaries are typically quite "broad."  *Netsphere*, 703 F.3d at 305.

The district court's actions were so clearly beyond the bounds of its jurisdiction that the panel quoted a case from the Supreme Court, stating, "No relief of this character has been thought justified in the long history of equity jurisprudence."  *Netsphere*, 703 F.3d at 309

4

(internal citation omitted).  Never.  Not once in the entire "long history of equity jurisprudence" has anyone ever produced even a single authority that supported the district court's decision to strip assets away from entities that were not even before the court – assets that themselves were not even in a part of the underlying dispute that *was* before the court – and order those assets sold.

In light of this ruling and its reasoning, the Defendant's argument that the Fifth Circuit nonetheless surreptitiously and implicitly affirmed the district court's order approving the sale is confounding to say the least.  There is simply no way that the Fifth Circuit could have found in one appeal that the district court lacked jurisdiction over the domain names, and then in a separate appeal that had been consolidated with that same case, affirm the district court's exercise of jurisdiction over those very domain names.  It just could not happen.  Such a ruling would not only be highly implausible, it would be utterly impossible.  That has to be the reason – indeed is the only logical explanation – why the Fifth Circuit found it "unnecessary" to separately address the other appeals – the ruling as to the Receivership Order necessarily resolved all the others.  The Fifth Circuit could not have meant that it was "unnecessary" to specifically and separately address the Sale Order because the panel intended to make a ruling directly at odds with the published *Netsphere* opinion.  Indeed, the domino effect of the Fifth Circuit's ruling – by which the invalidation of the Receivership Order invalidates the other orders attendant to the receivership – has even been recognized by Judge Lindsay of the Northern District of Texas.  *Baron v. Schurig*, 2014 U.S. Dist. LEXIS 180, at *42-45 (N.D. Tex. Jan. 2, 2014).

This is an incredibly easy concept, and the difficulty and obfuscation introduced by Defendant in repeated efforts to twist the Fifth Circuit's *Netsphere* ruling into an implied affirmation of the Sale Order are frankly mystifying.  Those two rulings would be completely irreconcilable.  As a matter of pure and simple logic, there is no way that the Sale Order could have survived the invalidation of the Receivership Order – none.  This simple irrefutable analysis completely debunks a primary recurring theme throughout the Defendant's Motion to Dismiss, a theme that forms a central component of most if not all of the arguments the Defendant advances.  Once the utter absurdity of the Defendant's central premise is understood, the bulk of the arguments in Defendant's Motion fall of their own weight.  Having established that its claims stand on the solid legal underpinning of the Fifth Circuit's *Netsphere* opinion, the Plaintiff turns now to the serial scattershot makeweight arguments advanced in All Pro's Motion to Dismiss.

## III.    The Defendant's Challenges to Venue Do Not Pass Scrutiny

The Defendant's first attack on venue is based on a provision from a prior order issued by the Northern District of Texas:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.

*Netsphere v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015) (hereafter, *Netsphere III*).   While the Defendant prefers to emphasize the language following the final comma in the quoted paragraph, the Defendant conveniently overlooks the introductory language that precedes the list of matters over which the district court purported to retain exclusive jurisdiction.  "The court shall retain exclusive jurisdiction *of this*. . . ."  The current case is

6

separate from *Netsphere*.  The simple fact that some of the relevant background facts are taken from *Netsphere* does not transmute the current case to bring it within the scope of "this case" as that term is used in the subject order.  Moreover, the district court itself has already expressly realized that, in light of the Fifth Circuit's ruling and remand, it has no jurisdiction"over any claims and disputes regarding ownership of the receivership" assets - which is precisely what this current case is about.  (Exhibit 2, N.D. Texas, Dkt. 1368, PageID # 65785).

Furthermore, to the extent that this action could otherwise be thought to be within the scope of the district court's retention of jurisdiction, the district court's order would plainly be invalid.  None of these parties, their predecessors, or the subject domain names was properly before the district court in *Netsphere*, which was the primary point of the *Netsphere* opinion. The district court cannot "retain" jurisdiction over parties or assets over which it never properly acquired jurisdiction in the first place.  It would first have to "obtain" jurisdiction in order to "retain" it.  Having never had jurisdiction to institute the Receivership in the first place, it is absolutely illogical to think that the district court can "retain" a jurisdiction it never had in order to preside over disputes concerning a receivership it had no jurisdiction to establish in the first place.

The case law confirms this basic common sense proposition.  As the Supreme Court itself has explained, "the doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters . . . that are incidental to other matters *properly before them*."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) (emphasis added).  Here, the district court never had jurisdiction over the Receivership assets and abused its discretion in instituting the Receivership in the absence of such jurisdiction; the district court simply cannot retain a

jurisdiction it never had.[1]  If Defendant contends otherwise, it is the Defendant's burden to establish such a contention.  *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010).  ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (quoting *Kokkonen*, 511 U.S. at 377).)

Furthermore, the current dispute does not even fit within the language emphasized by the Defendant.  Any actions by the Receiver are merely background in this case.  There is no claim against the Receiver in this action.  That case is currently pending on appeal in the Fifth Circuit.  This case involves the erroneous actions *of the district court* in exercising jurisdiction of assets over which it did not have jurisdiction and allowing those assets to be improperly sold.  Indeed, one of the Receiver's main defenses, and the one upon which the district court granted the Receiver's motion to dismiss, is that the Receiver is entitled to judicial immunity because he was only doing what the district court authorized him to do.  This case also involves the actions of the Defendants in continuing to assert ownership interests in domain names that were effectively stolen from Mr. Baron and his entities and that the Defendants acquired by virtue of undeniably unlawful and unauthorized sales.  In light of the district court's erroneous decision to allow the

---

[1] As the Supreme Court made clear in *Kokkonen*, situations in which a court purports to retain jurisdiction as the Northern District is an effort by the court to extend its exercise of jurisdiction to "ancillary suits" and are therefore analyzed under the doctrine of ancillary jurisdiction.  511 U.S. 375.  ("A bill filed to continue a former litigation in the same court . . . to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties . . . or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court, . . . is an ancillary suit") (quoting *Julian v. Central Trust Co.*, 193 U.S. 93, 113-14 (1904) (internal citations omitted)).

wrongful sale of those assets, Associated Recovery, as successor in interest, seeks return of the domain names.  That is all.

Relying on 28 U.S.C. § 1404(a), the Defendant next argues that this Court should transfer venue to the Northern District of Texas for the convenience of the witnesses and the parties.[2] The Defendant's arguments on this point, however, are greatly exaggerated.  The relevant and central legal and factual issues have already been mainly decided.  *See* Discussion, *supra*.  The district court abused its discretion in establishing the Receivership, as not a single authority in the entire history of equity jurisprudence could be found to support institution of the Receivership.  That fact, irrefutably established at this point, necessarily invalidated the order by which the district court purported to exercise jurisdiction over the domain names in approving their sale.  While there may well be other facts to be developed in discovery with respect to the other causes of action, those facts are at the heart of this suit.

The Defendant has not clearly demonstrated the "good cause" that is necessary for the Court to disregard the Plaintiff's choice of venue and cannot come close to doing so.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th. Cir. 2008).  "[W]hen the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.*  The Defendant's Motion does not even so much as pay homage to this showing that it must necessarily make in order to obtain the transfer the Defendant so

---

[2] The Defendant also states in cursory fashion – with no citation to any authority and no analysis whatsoever – that the Plaintiff has not pled sufficient facts to bring the case within the proper venue in this Court.  The Defendant is flat wrong.  Its singular and unsupported cursory statement is plainly insufficient to establish any impropriety of venue in this Court.  As the Defendant did not see fit to dedicate much effort toward this argument, the Plaintiff similarly gives it short shrift.

desperately seeks.  Indeed, the Defendant's Motion does not mention or argue many of the

factors that this Court must consider in addressing a transfer motion.  Since the Defendant bears

the burden of clearly demonstrating good cause for a transfer, the Defendant can only be

properly understood as having conceded a majority of the relevant factors:

> The private interest factors are:  "(1) the relative ease of access to sources of
> proof; (2) the availability of compulsory process to secure the attendance of
> witnesses; (3) the cost of attendance for willing witnesses; and (4) all other
> practical problems that make trial of a case easy, expeditious and inexpensive."
> *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004). . . .  The public interest
> factors are: "(1) the administrative difficulties flowing from court congestion; (2)
> the local interest in having localized interests decided at home; (3) the familiarity
> of the forum with the law that will govern the case; and (4) the avoidance of
> unnecessary problems of conflict of laws [or in] the application of foreign law."

*In re Volkswagen of Am. Inc.*, 545 F.3d at 315 (internal citations omitted).

The Plaintiff couches its arguments under general headings that do not track these

factors, making it difficult to tell to which factors the Defendant's arguments apply.  Regardless,

the arguments the Defendant does make are not the least bit compelling and do not make out a

clear case of good cause for upsetting the Plaintiff's choice of forum.  Indeed, some of

Defendant's arguments are difficult to take seriously.  For example, under its heading for

"Convenience of Witnesses and Parties" (a section of only two paragraphs), the Defendant oddly

suggests that this Court is inconvenient for the Plaintiff and/or its predecessors.  The Plaintiff –

to state the obvious – chose the forum.  One would be justified in assuming that the forum is not

overly inconvenient for the Plaintiff or its predecessors.  To the extent necessary, the Plaintiff

affirmatively waives any claim that this Court is an inconvenient forum for itself or its

predecessors.

With respect to the Receiver and those located in and around the Dallas area, Marshall is no more than a two-hour drive from Dallas – hardly an extreme inconvenience, much less an extreme burden, and certainly not a clear showing that Dallas is "clearly more convenient" than this Court.  All discovery (e.g., depositions) will take place where the witnesses are.  The Defendant disingenuously cites only one issue, namely, the standing issue, as one on which the Dallas-area witnesses will be "essential witnesses."  Aside from the fact that the Plaintiff plainly has standing, the standing issue will be decided on dispositive motion with supporting affidavits.  The Receiver, of course, will not be required to travel to Marshall for that purpose, nor will any of the other witnesses.  Beyond that, the Defendants are spread out all over the country (and perhaps internationally).  There is no reason to think that for the vast majority of the Defendants the Northern District of Texas is any more convenient than the Eastern District of Texas.

The Defendant also observes in the "convenience" section of its Motion that "all books and records of the Receivership estate" are maintained by the Receiver in the Northern District of Texas.  The Plaintiff is confident that the location of the books and records will not pose a problem for obtaining that proof.  *See* Fed. R. Civ. P. 45.  The Defendant likewise observes that the Receiver and the Manager (Mr. Nelson) reside in the Northern District "outside the non-party subpoena range for deposition testimony in this district."  Again, the Plaintiff is confident that the Receiver's and the Manager's deposition testimony can be easily secured by the simple expedient of issuing a subpoena from the district court with jurisdiction to enforce it.  *See* Fed. R. Civ. P. 45.

The balance of the Defendant's arguments about the "convenience of the witnesses and the parties," such as it is, sounds the familiar refrain that the Northern District already has

history with the Plaintiff's predecessors.  The bulk of this notion is dispelled above.  The current

parties have not been before the Northern District.  The issues facing the Court in this case are

not at all complicated or complex, and they have either not been decided by the Northern District

or have already been decided in a manner favorable to the Plaintiff.  Indeed, that favorable ruling

came from the Fifth Circuit, and the Northern District is no better position than this Court simply

to read the Fifth Circuit's opinion and give it the legal effect it deserves.

The Defendant's Motion then turns to the "interests of justice."  This section does little

more than repeat the familiar refrain that the Northern District has history with these issues and

with the Plaintiff's predecessors.  At the risk of sounding like a broken record, the Defendant's

argument is grossly exaggerated and overstated.  The relevant facts and legal issues that form the

basis of the claim for equitable relief (i.e., return of the domain names) have largely already been

decided.  Thus, this case will involve very little of the "lengthy history of litigation" upon which

the Defendant relies in suggesting that the interests of justice weigh in favor of a transfer.  To the

extent the Defendant merely repeats other arguments in this section of its Motion (e.g., that the

Northern District retained jurisdiction or that this action "appears to be a collateral attack" on the

orders of the Northern District), those arguments have already been addressed and refuted

elsewhere in this brief.  The Northern District never had any jurisdiction to retain, and this case

is an effort to *enforce* the Fifth Circuit's ruling, not collaterally attack it.  In addition to the fact

that there is no particularly compelling reason for this Court to think any prior proceedings

should weigh in favor of a transfer, it bears noting that this case involves other claims and that

none of the Defendants has been involved in the Northern District proceedings.  Thus the legal

and factual issues surrounding those claims are no more familiar to the Northern District of

Texas than they are to this Court.  And with respect to the equitable claim for recovery of the domain names, there is likewise no compelling reason for this Court to defer to the Northern District.  The relevant proceedings in the Northern District have already been to the Fifth Circuit, which reversed the Northern District's orders.  The Northern District is in no better position to understand and implement that fact than this Court.

Turning back to the factors that this Court considers on a motion to transfer venue, it becomes readily apparent why the Defendant did not address them specifically.  There is no complicating factor with respect to access to sources of proof; no argument or issue made regarding the cost of attendance for willing witnesses; no suggestion that any factors make trial in this Court impractical; no suggestion of any administrative difficulties that would result from court congestion; no suggestion or argument that this Court is not sufficiently local to qualify as an essentially local forum with respect to the underlying dispute; no convincing argument that this Court is not sufficiently familiar with the basic legal principles, whether legal or equitable, that will govern this dispute; and no suggestion that the case will present difficult conflict of laws issues.  The Defendant cannot possibly make the necessary clear showing of good cause for transfer of venue when it fails to acknowledge or address the vast majority of relevant concepts.

## IV.    Collateral Estoppel

The Defendant's Motion next turns its attention to the doctrine of collateral estoppel. Once the underlying proceedings upon which that defense is premised are properly and fully understood, the Defendant's collateral estoppel argument is revealed as indefensible.  First and foremost, the Plaintiff's predecessors *won* the Netsphere appeal.  *See* Discussion, *supra*.  It makes no sense whatsoever to speak of collaterally estopping a winning party from reaping the

fruits of victory.  *See, e.g., Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th

Cir. 1986).  ("Collateral estoppel, which is also known as issue preclusion, generally prevents a

party from relitigating an issue the party has already litigated *and lost*" (emphasis added)

(internal citation omitted).)

Furthermore, the issues here are not the same as in *Baron v. Vogel*, 2016 U.S. Dist.

LEXIS 44294 (N.D. Tex. Mar. 31, 2016) (hereafter, *Vogel I*).  The issue in *Vogel I* is whether the

Receiver engaged in wrongful conduct that subjects him to liability.  The district court dismissed

the case primarily on immunity, and the case is now on appeal to the Fifth Circuit.  (*See* Fifth

Circuit Appeal No. 16-10556.)  Even so, further review confirms that the issues are not the same

in the two suits.  There is no way the Plaintiff or its predecessors could have sought return of the

domain names in the *Vogel I* action.  Mr. Vogel does not currently claim an ownership interest in

the domain names.  Accordingly, there was, of course, no claim for affirmative injunctive relief

against Mr. Vogel seeking to have the court order him to return ownership of the domain names

to the rightful owners.  Only a suit against the current parties who currently claim an ownership

interest can effectuate that relief.  All of which brings up two additional reasons why collateral

estoppel cannot apply – no issues have been litigated in *Vogel I*, and the decision there is not

final.  *See Kariuki v. Tarango*, 709 F.3d 495, 506 (5th. Cir. 2013) (for collateral estoppel to

apply to an issue, it "must have been *fully and vigorously* litigated in the prior action") (emphasis

added); *American Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 (5th Cir. 2005)

(where case was settled and dismissed, the issues were not "actually litigated" for purposes of

collateral estoppel doctrine); *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319-20 (4th

Cir. 2002) (issues involved in a default judgment were not "actually litigated"); *Hicks v. Quaker*

14

*Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981) ("general rule is that if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court"); *Scurlock Oil Co. v. Smithwick*, 724 S.W. 2d 1, 5-6 (Tex., 1986) (action on appeal is not final, a rule that applies even in federal court when the appeal could result in a reinstatement of all issues for a trial de novo).

Additionally, the district court's order dismissing *Vogel I* arguably rests on a few alternative grounds (although that is not altogether clear and may be clarified on appeal), a fact that complicates the analysis of whether any particular issue was "necessary to the court's judgment" for collateral estoppel purposes. *Hicks, supra*.

Overall, many Defendants (including now All Pro) have asserted or are certainly expected to repeat the familiar refrain that this case is a "collateral attack" on the Northern District of Texas and the Fifth Circuit. That claim is utter nonsense. This case is nothing more than an effort *to get the benefit of* the Fifth Circuit's prior *Netsphere* ruling, which plainly and necessarily invalidated the Sale Order along with the Receivership Order. *See* Discussion, *supra*. There is literally nothing left to do but give the Plaintiff the benefit of its victory. And to the extent that anyone might be inclined to think that this case is a collateral attack on an order of the Fifth Circuit (which is actually untenable), the Northern District of Texas is in no better position to understand what the Fifth Circuit said than this Court is. Indeed, in light of the tumultuous dealings in the *Netsphere* litigation, it indeed may be preferable for a "fresh set of eyes" to consider this case.[3]

---

[3] The intense history of the *Netsphere* matter appears to have led to inaccurate decisions and orders from the Northern District, orders other than the institution of the Receivership. For example, in some of those orders, the district court made "factual findings" that the Fifth Circuit

Nor is there any possibility of "inconsistent judgments."  The Defendant simply fails to understand, come to grips with, or acknowledge that the Fifth Circuit has already decided the largely dispositive legal issue.  The Defendant's willful blindness is disturbing at best.  The Fifth Circuit has ruled.  Now the Plaintiff is entitled to get back the wrongfully sold domain names.

## V.      Subject Matter Jurisdiction and Standing

Even assuming that a Rule 12(b)(1) motion is the proper mechanism for raising a standing argument premised on a collateral estoppel argument, which is not at all clear, there is plainly subject matter jurisdiction.  *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690, 698 n.7 (5th Cir. 2015).  ("We need not decide whether Rule 12(b)(1) – as opposed to Rule 12(b)(6) or Rule 56 – is the appropriate procedural vehicle for raising this issue of collateral estoppel" under the rubric of standing.)  One of Plaintiff's claims is premised on a federal statute (the anticybersquatting statute), so at the very least, the case is within the federal question of subject matter jurisdiction of the Court.  28 U.S.C. § 1331. The Amended Complaint further rests on 28 U.S.C. § 1338(a), 28 U.S.C. § 1367, and 28 U.S.C. §§ 2201 and 2202.

To the extent that the Defendant's argument for "lack of subject matter jurisdiction" turns on the argument that the Plaintiff lacks standing, the argument fares no better.  The Defendant's argument begins with the assertion that the Plaintiff suffered no injury.  This argument begins with the proposition that, although the Fifth Circuit reversed the Receivership, the sale of the domain names took place pursuant to a separate order.  The Defendant conveniently overlooks

---

held were plainly not supported by any record evidence.  *See, e.g., Netsphere*, 703 F.3d at 308. ("We do not . . . find evidence that Baron was threatening to nullify the global settlement agreement by transferring domain names outside the court's jurisdiction.")

the fact that the Fifth Circuit invalidated the Receivership Order because it found that the district court lacked jurisdiction over the domain names.  So, as established above, the Defendant's argument, stripped to its essence, amounts to a suggestion that the Fifth Circuit simultaneously held that the district court lacked jurisdiction over the domain names but affirmed the district court's exercise of jurisdiction over those very domain names by virtue of the Sale Order. Simply stating the argument reveals that it is completely and necessarily lacking in merit.  Those two rulings would, of course, be directly contradictory and undeniably irreconcilable.  The ironclad laws of logic plainly demonstrate that the Defendant's reading of *Netsphere* is completely implausible and unquestionably incorrect.  There is no way the Sale Order, which was on appeal at the same time as, and indeed was consolidated with, the appeal of the Receivership Order, survived invalidation of the latter order.  The Fifth Circuit made this as clear as it thought it needed to and left it to the parties and their attorneys to exercise their basic common sense and reasoning capacity to understand and acknowledge the obvious.  Common sense and elementary logic compel that conclusion.

Moreover, the injury to the Plaintiff is obvious.  The Fifth Circuit declared that the district court abused its discretion because that court could not lawfully exercise jurisdiction over the assets at issue (i.e., the domain names).  Thus, those assets should have never been taken from Mr. Baron or the entities in which he holds an interest and should never have been sold. They should have been and should still be the property of Mr. Baron, the entities in which Mr. Baron claims an interest, or any entities that received the assets from one or more of those rightful owners.  The Plaintiff's injury is that the Defendant currently claims an ownership interest in a domain name that, by virtue of the Fifth Circuit's *Netsphere* opinion, properly

17

belongs to the Plaintiff.  The Plaintiff's injury is caused by the Defendant's assertion of and refusal to yield those claims to ownership of the domain names.  And an order mandating the return of those domain names would redress the injury.  The Plaintiff can easily establish the three elements of standing - injury, causation, and redressability.  *See, e.g., Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th. Cir. 2009) (standing requires only that a plaintiff (1) have suffered an injury, (2) that was caused by the defendant, and (3) that the court is capable of issuing an order that will redress the injury).

Furthermore, it is textbook, black letter law that should hardly need a citation to any authority that the district court cannot do anything, "implicitly" or otherwise, to contravene the Fifth Circuit's ruling.  *Ayestas v. Stephens*, 817 F.3d 888, 899 (5th Cir. 2016) ("[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues *expressly or impliedly decided* by the appellate court" (emphasis added) (internal citation omitted)).  In light of that ruling, any effort by the district court at any time to exercise any jurisdiction over the subject domain names is necessarily invalid, null, and void.  *Id.* At any rate, during the proceedings upon which the Defendant relies, the district court was doing nothing more than allocating the costs and fees of the wrongful Receivership.  It was not and could not have been doing anything that in any way implied that the Sale Order was valid or that it had jurisdiction over them.  The Fifth Circuit effectively said the Northern District that "you had no jurisdiction to establish the Receivership, now undo it and use your equitable discretion in allocating fees and expenses."  That is *Netsphere* in a nutshell.  The only thing the district court had authority to do on remand was to *undo* the Receivership, nothing more.  And critically,

the funds in the Receivership were not generated entirely by the wrongful sale of the domain names.

To the extent that any of the remaining arguments are premised on the Sale Order, those arguments must fall for the reasons given above.  The conclusion is inescapable that the Sale Order did not survive the vacatur of the Receivership Order.

In yet another effort at countering the notion that the Defendant caused the Plaintiff (and its predecessors) an injury, the Defendant argues, relying on certain portions of the *Netsphere* opinion, that any injury the Plaintiff's predecessors sustained was self-inflicted.  That argument is another ill-considered red herring.  Mr. Baron's conduct could not possibly have expanded the district court's jurisdiction.  *Cf. Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) (reviewing Supreme Court cases establishing the proposition that "jurisdiction cannot exist by mere consent of the parties").  Jurisdiction is a legal concept, not an equitable one.  And it is a black letter law that legal constraints do not bow to equitable considerations. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("Judicial estoppel, as an equitable remedy, must be consistent with the law"); *In re Daves,* 770 F.2d 1363 (5th Cir. 1985) ("Equity follows the law . . . ." (internal citation omitted)).  Despite the observations relied on by the Defendant, the Fifth Circuit found that the district court lacked jurisdiction over the domain names and invalidated the Receivership Order and necessarily any other order by which the district court purported to exercise jurisdiction over the domain names.  The observations upon which the Defendant relies were made in the context of the Fifth Circuit's discussion about how to charge the fees and expenses *in light of the wrongful establishment of the receivership.*  It is completely unthinkable that the Fifth Circuit, in making these observations and ruling on the

19

proper allocation of expenses, somehow blessed or otherwise approved the district court's exercise of jurisdiction over the domain names when the Fifth Circuit spent the bulk of its *Netsphere* opinion proving and ultimately concluding that the district court's effort at exercising jurisdiction over those domain names had o support whatsoever in the entire history of equity jurisprudence.  This suit is nothing more than the necessary and logical expression and consequence of that ruling.

**VI.    The Plaintiff Sufficiently States Claims for Relief**

The Defendant next argues that this matter should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).  This argument is nothing more than a rehashing of the nonsensical argument that the case is barred by collateral estoppel – an argument that simply cannot fly in light of *Netsphere*.  By way of response, the Plaintiff incorporates everything that has already been said on that issue.  Moreover, not only are the claims plausible, the legal basis of those claims is effectively undeniable.  *Netsphere* established the Plaintiff's right to the domain names – period. The Plaintiff here has stated a claim for injunctive relief premised on the necessary and only logical reading of the *Netsphere* opinion.  That certainly must state a claim.

In support of its collateral estoppel argument, the Defendant purports to rely on *Netsphere I, II, and III,* as well as *Vogel*.  The collateral estoppel argument based on *Netsphere I* has been repeatedly addressed and debunked ad nauseum herein.  *Netsphere v. Baron*, 2013 U.S. Dist LEXIS 94308 (N.D. Tex. Jan. 7, 2013) (hereafter, *Netsphere II*) and *Netsphere III*  which were district court proceedings conducted after the remand of *Netsphere I*, could not have done anything to affect the legal validity of the claims asserted herein.  The claims here are premised on the Fifth Circuit's *Netsphere I* holding, which the district court was precluded from altering in

any way on remand.  *See* cases discussing the mandate rule, *supra*.   Moreover, the district court

did not purport to make any rulings regarding its jurisdiction over the domain names and

certainly did not attempt to reauthorize any sales.   Each of the passages relied on by Defendant

merely related to the district court's rulings regarding allocation of fees for the wrongfully

instituted Receivership.   The issue of whether the Receiver (or anyone else) was entitled to fees,

and what the proper allocation of costs was, is an entirely separate issue from the issues

presented here.   As to *Vogel*, many of the reasons it has no collateral estoppel effect in this case

have already been set out and are incorporated herein.   *Vogel* was about judicial immunity as

well as whether the defendants there (including the Receiver) engaged in wrongful or

sanctionable conduct in the *Netsphere* cases.   *Baron v. Vogel*, U.S. Dist. LEXIS 44294 (N.D.

Tex. Mar. 31, 2016).   Neither of these issues is identical to the issues in this case.   This case is

about **the return of property to its rightful owner**.   The crux of this case is that the sales of the

domain names at issue may be set aside as void, since they were conducted solely due to an

Order which was found to lack subject matter jurisdiction. Moreover, not only are the actual

issues and causes of action in *Vogel* and this case facially distinct, but the legal standards applied

are different as well.   This is important since "[i]ssues are not identical if the second action

involves application of a different legal standard, even though the factual setting of both suits

may be the same."  *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306 (2015) (quoting

18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417, p. 449 (2d

ed. 2002)).  *See also Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013), and *Talcott v.*

*Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.8 (5th Cir. 1971)).

In the portions of the *Netsphere* opinion relied on by te Defendant, the Fifth Circuit found that there was no precedent establishing how fees and costs would be handled in a situation where the district court lacked jurisdiction to establish the receivership and initiation of the receivership was not provoked by any particular party.  *Netsphere*, 703 F.3d 311-12.  It ultimately concluded that the matter was one of equity.  *Id.* at 312.  The lack of jurisdiction may have been a factor that was argued in the weighing of the equities but, as per the Fifth Circuit, it was not and could not be dispositive as to the allocation of fees and expenses.  That is not the issue here.  Jurisdiction is not based on equitable concepts.  The invalidation of the Sale Order is a necessary consequence of the Fifth Circuit's ruling, as is this lawsuit.

Moreover, the Plaintiff is not here challenging the Receiver's actions per se.  The Plaintiff is seeking to cash in on the successful challenge to the district court's actions and to retrieve the subject domain names from the entities that continue wrongfully to withhold them. *Netsphere I*, 703 F.3d at 312 ("[Appellants] overlook the fact that, though it is true that one who invokes without sufficient equitable grounds the administration by a receiver of the property of another may be in a proper case held accountable for the costs and expenses of the receivership and for losses which the receivership has visited upon the property, the appointment of a receiver is at last the court's appointment; the administration, its administration" (emphasis added)).

Furthermore, the remedies sought in this case and the primary operative facts upon which the claims rest have nothing to do with whether the Receiver acted as part of conspiracy or in bad faith or otherwise unlawfully.  Had the Receiver acted in a perfectly lawful and professional manner, the Plaintiff would still be entitled to a return of the domain names, all of which were sold pursuant to the district court's wrongful attempt to exercise jurisdiction over parties and

22

assets over which it lacked jurisdiction.  In sum, this case is entirely about the undisputed and indisputable rulings by the Fifth Circuit about lack of jurisdiction, not about the Receiver's actions per se.

## VI.   All Necessary Parties Have Been Joined

In its "kitchen sink" approach to its Motion to Dismiss, the Defendant next argues that the case should be dismissed for failure to join multiple necessary parties.  As a starting point, the Defendant argues that the Plaintiff's predecessors in interest (i.e., the assignors, Novo Point and Mr. Baron) are necessary parties.  Nothing could be farther from truth.  The Assignors are only necessary and indispensable parties primarily where the assignor has repudiated the agreement or the assignment has yet to be fully performed.  *See Overseas Dev. Disc Corp. v. Sangamo Const. Co., Inc.*, 686 F.2d 498, 505 n.18 (7th Cir. 1982).  ("Unless local law qualifies the rights of the assignee (e.g., of certain tort claims), or the assignor has repudiated the assignment, or the assignment is wholly executory, the assignor is not an indispensable (Rule 19(b)) party.  Even where the assignment is partial, the assignor and the assignee may be necessary parties, but they will not be indispensable (Rule 19(b)) parties.")  *See also Phoenix Insurance Company v. Woosley*, 287 F.2d 531, 533 (10th Cir. 1961) (only "parties claiming an interest in the indebtedness are necessary parties"); and *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 819-20 (9th Cir., 1961) ("Professor Moore states flatly that a partial assignee of a chose [sic] in action, though a necessary party, is not an indispensable party").  As can be seen from these authorities and others, the Defendant simply cannot make the showing necessary to obtain dismissal on the basis of nonjoinder.  At the very least, the authorities firmly establish that an assignor is not an indispensable party:

> If joinder of a "necessary" party under Rule 19(a) is not feasible, the court
> consults Rule 19(b), which "requires courts to consider whether, 'in equity and
> good conscience,' the party is one without whom the action between the
> remaining parties cannot proceed – or, in the traditional terminology, whether the
> absent party is 'indispensable.'" *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119,
> 132 (2d Cir.2013) (quoting FED. R. CIV. P. 19(b)).  "Federal courts are extremely
> reluctant to grant motions to dismiss based on nonjoinder and, in general,
> dismissal will be ordered only when the defect cannot be cured and serious
> prejudice or inefficiency will result."  7 CHARLES ALAN WRIGHT & ARTHUR R.
> MILLER, FED. PRACTICE & PROCEDURE § 1609 (3d ed. 2015).

*Am. Trucking Ass'ns v. N.Y. State Thruway Auth., N.Y. State Canal Corp.*, 795 F.3d 351, 357

(2nd Cir. 2015).  *See also U.S. v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir. 2001) (in

conducting Rule 19 analysis, the court first determines whether person is necessary under

subsection (a), and then whether the person is indispensable under subsection (b)).  Moreover,

even if the absence of the identified parties were serious enough to warrant further scrutiny,

which it is not, there is no reason to think that the issue cannot be easily cured or that serious

prejudice or inefficiency would result from their absence.  Complete relief can certainly be

afforded among the parties that are currently before the Court.  FED. R. CIV. P. 19(a)(1)(A).

These holdings make perfect sense because the whole point of the "necessary party" rule

is to prevent defendants from being subjected to multiple lawsuits which could subject them to

inconsistent results.  FED. R. CIV. P. 19(a)(1)(B)(ii).  Once all rights have been fully and

completely assigned, however, the assignee takes subject to all defenses that would be applicable

against the assignor, *Kroeplin Farms General P'ship v. Heartland Crop Ins.*, 430 F.3d 906, 911

(8th Cir. 2005) (stating, "The assignee stands in the same shoes as the assignor. . . .  An assignee

can obtain no greater rights than the assignor had at the time of assignment" and citing

RESTATEMENT (SECOND) OF CONTRACTS § 336(2) and other authorities for the proposition that

assignee is subject to defenses that could have been asserted against assignor at time of

assignment).  *See also, e.g., Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725 (5th Cir. 2010) ("An assignee is also subject to any defenses, limitations, or setoffs that could be asserted against the assignor's rights") (internal citations omitted).  The assignor – having assigned all his rights – no longer has any basis upon which to bring suit and cannot claim any interest in the contract being litigated.  FED. R. CIV. P. 19(a)(1)(B) (to be a required party, person must "claim[] an interest related to the subject of the action").  "When a contract right is assigned, the assignor's right to performance by the obligor is extinguished and the assignee acquires that right. . . .  Where there is an unconditional assignment, an assignee can recover on an assigned right against the obligor, but the assignor cannot."  *Kroeplin Farms*, 430 F.3d at 911 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 331).

As to Mr. Vogel and Mr. Nelson, it is inconceivable that they could be either necessary or indispensable.  In their absence, the Court can clearly afford complete relief among the existing parties.  FED. R. CIV. P. 19(a)(1)(A).  While they may certainly be fact witnesses, neither claims any interest in the domain names that are the subject of this lawsuit at all, much less an interest that meets the criteria of subsections (a)(1)(B)(I) and (ii).  FED. R. CIV. P. 19(a)(1)(B).  Tellingly, while the Defendant cites some authorities for general and otherwise unremarkable principles of law, it does not cite a single case that holds that a Receiver or his underlings (e.g., Mr. Nelson, the manager) is a necessary party to any kind of case.  While the Defendant contends that it would basically be unfair to force the Defendant to stand trial in a posture in which it could be held "solely responsible for actions taken by the Receiver," the Defendant makes no effort to explain how this case would subject it to the potential for inconsistent judgments.  To the extent that the Defendant may wish to bring an action against the Receiver

for indemnity, that cause of action is not ripe until, at the very earliest, this case ends.  *Marathon E.G. Holding Ltd. v. CMS Enterprises Co.*, 597 F.3d 311, 320-21 (5th Cir. 2010) (explaining the two types of indemnity under Texas law, one of which accrues when "liability becomes fixed and certain, as by rendition of a judgment" and the other of which accrues only when the party is "compelled to pay the judgment or debt").  The indemnity lawsuit against Mr. Vogel, once ripe, can certainly be brought as an independent action.

There is no basis to conclude that any of the persons or entities identified by the Defendant are necessary or indispensable.  Rule 19 thus has no bearing on this case, either by way of the dismissal requested by Defendant or otherwise.

## VII.   This Action Is Not Precluded by Statute of Limitations

The Defendant contends that several claims in the amended complaint should be dismissed pursuant to the applicable statutes of limitations.  Specifically, the Defendant targets the claims for conversion, misappropriation, declaratory judgment, and unjust enrichment.  "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944 (5th Cir. 2014).  Even assuming that the statute of limitations proffered by the Defendant are correct, it is *not* evident from the pleadings that the action is time-barred or that the pleadings fail to raise some basis for tolling.  A crucial part of the claims identified by the Defendant is that the Sales Order was void in light of the Fifth Circuit's holding in *Netsphere*.  *See supra*.  The mandate for the Fifth Circuit's holding did not occur until April 19, 2013, but the last challenge to the Fifth Circuit was not disposed of until November 4, 2014 (the last denial of a petition for writ of certiorari) and the Receivership was

not wound down until March 27, 2015.  "Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his rights."  *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5th Cir. 1998).

## VIII.   CONCLUSION

For the foregoing reasons, the Plaintiff submits that the Defendant's Motion to Dismiss should be denied in its entirety.

Date:  August 29, 2016                                    Respectfully submitted,


  /s/  Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)
Paul Grandinetti
Rebecca J. Stempien Coyle
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

**Attorneys for the Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on August 29, 2016, I electronically filed the foregoing document with the

clerk of court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the

electronic case filing system of the court.  Pursuant to Local Rule CV-5, this constitutes service

on the following counsel:

Jason Richerson
RICHERSON LAW FIRM
306 East Randol Mill, Suite 160
Arlington, Texas 76011
Telephone (214) 935-1439
Facsimile (214) 935-1443
info@richersonlawfirm.com

Jennifer Lee Taylor
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone (415) 268-7000
Facsimile (415) 268-7522
jtaylor@mofo.com

Darin Michael Klemchuk
Aaron Douglas Davidson
Corey Jennifer Weinstein
KLEMCHUK LLP Dallas
Campbell Centre II
8150 North Central Expressway
10th Floor
Dallas, Texas 75206
Telephone (214) 367-6000
Facsimile (214) 367-6001
darin.klemchuk@klemchuk.com
aaron.davidson@klemchuk.com
corey.weinstein@klemchuk.com

James Mark Mann
MANN TINDEL & THOMPSON
300 West Main Street
Henderson, Texas 75652
Telephone (903) 657-8540
Facsimile (903) 657-6003
mark@themannfirm.com

Joel Christian Boehm
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas  78746-5546
Telephone (512) 338-5400
Facsimile (512) 338-5499
jboehm@wsgr.com

R. William Beard, Jr.
SLAYDEN GRUBERT BEARD PLLC
401 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone (512) 402-3556
Facsimile (512) 402-6865
wbeard@sgbfirm.com

Steven M. Geiszler
DENTONS US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Telephone (214) 259-091
Facsimile (214) 259-0910
steven.geiszler@dentons.com

Debra Elaine Gunter
FINDLAY CRAFT PC
102 North College Avenue
Suite 900
Tyler, Texas 75702
Telephone (903) 534-1100
Facsimile (903) 534-1137
dgunter@findlaycraft.com

Jennifer Parker Ainsworth
WILSON ROBERTSON & CORNELIUS PC
909 ESE Loop 323
Suite 400
P.O. Box 7339
Tyler, Texas 75711-7339
Telephone (903) 509-5000
Facsimile (903) 509-5092
jainsworth@wilsonlawfirm.com

Mark Jeffrey Levine
WEYCER KAPLAN PULASKI & ZUBER
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046-1104
Telephone (713) 961-9045
Facsimile (713) 961-5341
mlevine@wkpz.com

William Robert Lamb
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone (90) 934-8450
Facsimile (903) 934-9257
wrlamb@gillamsmithlaw.com

Brian H Pandya
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Telephone (202) 719-7457
Facsimile (202) 719-7049
bpandya@wileyrein.com

Barry M Golden
GOLDFARB LLP
2501 North Harwood Street, Suite 1801
Dallas, Texas 75201
Telephone (214) 583-2233
Facsimile (214) 583-2234
bgolden@goldfarbpllc.com

Hilda Contreras Galvan
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone (214) 969-4556
Facsimile (214) 969-5100
hcgalvan@jonesday.com

Michael Edward Hassett
JONES HASSETT PC
440 North Center
Arlington, Texas 76011
Telephone (817) 265-0440
Facsimile (817) 265-1440
mhassett@joneshassett.com

 /s/  Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)