IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

**ASSOCIATED RECOVERY, LLC,**

    Plaintiff,

  v.

**LINDA BUTCHER *ET AL.*,**

    Defendants.

**No. 2:16-cv-126-JRG-RSP**

<u>**CONSOLIDATED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**</u>

# Table of Contents

I.      INTRODUCTION ................................................................................................. 1
II.     FACTUAL BACKGROUND ............................................................................... 3
        A.    The Start of the *Netsphere* Litigation .................................................... 3
        B.    The Ensuing Bankruptcy and Receivership .............................................. 4
        C.    The Sale of Domain Names Pursuant to Receivership ............................. 5
        D.    The Fifth Circuit Vacates the Receivership But Leaves Previous Sales in Place ........ 6
        E.    Winding Down the Receivership .............................................................. 6
        F.    The *Baron v. Vogel* Litigation ............................................................... 7
        G.    The Related *in rem* Litigation ............................................................... 7
        H.    The Present Litigation ............................................................................. 8
III.    ARGUMENT AND AUTHORITIES ................................................................. 9
        A.    The Court Should Dismiss this Action for Failure to State a Claim Upon Which Relief Can Be Granted. ...... 9
        B.    The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims. .............. 12
              1.    Declaratory Judgment ................................................................. 12
              2.    Conversion ................................................................................. 13
              3.    Anticybersquatting Consumer Protection Act ............................ 14
              4.    Unjust Enrichment ...................................................................... 15
              5.    Misappropriation ........................................................................ 16
              6.    Quiet Title .................................................................................. 17
              7.    Fraudulent Conveyance .............................................................. 18
        C.    The Court Should Dismiss this Action Because Plaintiff Lacks Standing. ............... 18
        D.    The Court Should Dismiss this Action for Failure to Join Necessary Parties. .......... 20
              1.    Novo Point .................................................................................. 21
              2.    Jeffrey Baron .............................................................................. 22
              3.    Peter Vogel and Damon Nelson ................................................. 23
        E.    The Court Should Dismiss This Action for Improper Venue. ................. 24
        F.    Alternatively, the Court Should Transfer this Action to Dallas ............... 25
              1.    Convenience of Witnesses and Parties ........................................ 25
              2.    The Interests of Justice ............................................................... 26
IV.     CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
  569 F. App'x 259 (5th Cir. 2014) ..........................................................................16

*Associated Recovery, LLC v. Does 1-44*,
  No. 1:15-cv-1723, Dkt. 32 (E.D. Va. Mar. 25, 2016) ...............................................8

*Associated Recovery LLC v. Does 1-44*,
  No. 1:15-cv-1723, Dkt. 36 (E.D. Va. Apr. 5, 2016) ................................................22

*Associated Recovery LLC v. Does 1-44*,
  No. 3:16-cv-1025-L, Dkt. 80, 81 (N.D. Tex. Aug. 22, 2016)....................................8

*Atlantic Mar. Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
  134 S.Ct. 568 (2013).................................................................................................25

*In re Baron*,
  593 F. App'x 356 (5th Cir. 2014) ..............................................................................3

*In re Baron*,
  No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013),
  *rev'd sub nom.*.........................................................................................................3

*Baron v. Schurig*,
  2014 WL 25519 ..........................................................................................................3

*Baron v. Schurig*, No. 3:13-cv-3461-L, 2014 WL 25519 (N.D. Tex. Jan 2, 2014) .........................3

*Baron v. Vogel*,
  No. 3:15-cv-232-L, 2015 U.S. Dist. LEXIS 128812 (N.D. Tex. Sep. 25, 2015)......................3

*Baron v. Vogel* (*Vogel I*),
  No. 3:15-cv-232-L, 2016 WL 1273465 (N.D. Tex. Mar. 31, 2016)............................... *passim*

*Carson v. Dynegy, Inc.*,
  344 F.3d 446 (5th Cir. 2003) ...................................................................................13

*Chiropractic v. Nationwide Mut. Ins. Co.*,
  No. 4:15-CV-135-Y, 2016 WL 3916005 (N.D. Tex. July 20, 2016).........................16

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN),*
  915 F.2d 167 (5th Cir. 1990) .......................................................................12, 13

*Croft v. Gov. of Texas,*
  562 F.3d 735 (5th Cir.2009) .................................................................................18

*Davis v. Bayless,*
  70 F.3d 367 (5th Cir. 1995) .................................................................................24

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.,*
  --- F. Supp. 3d ......................................................................................................12

*E. & J. Gallo Winery v. Spider Webs Ltd.,*
  286 F.3d 270 (5th Cir. 2002) ...............................................................................15

*E.E.O.C. v. Peabody W. Coal Co.,*
  400 F.3d 774 (9th Cir. 2005) ...............................................................................21

*EDS Corp. v. Southwestern Bell Tel.,*
  674 F.2d 453 (5th Cir. 1982) ...............................................................................19

*Express One Int'l, Inc. v. Steinbeck,*
  53 S.W.3d 895 (Tex. App. – Dallas 2001, no pet.)...............................................13

*Matter of Gober,*
  100 F.3d 1195 (5th Cir. 1996) .............................................................................10

*Hazelhurst v. JPMorgan Chase Bank, N.A.,*
  No. 3:13-CV-4605-L (BF), 2014 U.S. Dist. LEXIS 105550
  (N.D. Tex. July 14, 2014) ....................................................................................13

*Howard v. JP Morgan Chase NA,*
  No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433
  (W.D. Tex. Apr. 17, 2013)....................................................................................17

*Jaffer v. Standard Chartered Bank,*
  301 F.R.D. 256 (N.D. Tex. 2014) ...................................................................22, 23

*Johnson v. Ga. Hwy Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ...............................................................................11

*Keane v. Fox Television Stations, Inc.,*
  297 F. Supp.2d 921 (S.D. Tex. 2004) ..................................................................17

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.,*
  723 F.2d 1173 (5th Cir. 1984) .............................................................................12

*LST Financial, Inc. v. Four Oaks Fincorp, Inc.*,
  No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014)................................................24

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)....................................................18, 19

*Mayo v. Hartford Life Ins. Co.*,
  354 F.3d 400 (5th Cir. 2004) ...............................................................................................14

*McCoy v. Misuboshi Cutlery, Inc.*,
  67 F.3d 917 (Fed. Cir. 1995)................................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
  No. 3:06-CV-0575-P, 2007 U.S. Dist. LEXIS 69235
  (N.D. Tex. Sep. 18, 2007)....................................................................................................15

*Hood ex rel. Mississippi v. City of Memphis*,
  570 F.3d 625 (5th Cir. 2009) ...............................................................................................20

*Mowbray v. Avery*,
  76 S.W.3d 663 (Tex. App. - Corpus Christi 2002, pet. denied) ............................................15

*Nat'l. Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
  210 F.3d 246 (4th Cir. 2000) ...............................................................................................23

*Neles-Jamesbury, Inc. v. Bill's Valves*,
  974 F. Supp. 979 (S.D. Tex. 1997) .......................................................................................13

*Netsphere, Inc. v. Baron* (*Netsphere I*),
  703 F.3d 296 (5th Cir. 2012) ...................................................................................... *passim*

*Netsphere, Inc. v. Baron* (*Netsphere II*),
  No. 3:09-cv-988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) ............................... *passim*

*Netsphere, Inc. v. Baron* (*Netsphere III*),
  No. 3:09-cv-0988-F, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015)............................. *passim*

*Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P.*,
  No. 15-10341, 2016 U.S. App. LEXIS 12627 (5th Cir. July 8, 2016) ....................................7

*Nikols v. Chesnoff*,
  435 Fed. Appx. 766 (10th Cir. 2011)....................................................................................12

*Pemex Exploracion y Produccion v. BASF Corp.*,
  No. CIV.A. H-10-1997, 2013 WL 5514944 (S.D. Tex. Oct. 1, 2013) .............................14, 15

*PEMEX Exploracion y Produccion v. Murphy Energy Corp.*,
  923 F. Supp.2d 961 (S.D. Tex. 2013) ...............................................................................18, 20

*Phillips v. Frey,*
    20 F.3d 623 (5th Cir. 1994) ..................................................................................16

*Priester v. Long Beach Mortg. Co.,*
    No. 4:10-CV-641, 2011 U.S. Dist. LEXIS 142031 (E.D. Tex. Oct. 13, 2011) ......................13

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,*
    583 F.3d 348 (5th Cir. 2009) ..................................................................................9

*Recommended Mailers Inc. v. Maryland Cas. Co.,*
    339 F. App'x 467 (5th Cir. 2009) ..........................................................................16

*Recoveredge LP v. Pentecost,*
    44 F.3d 1284 (5th Cir. 1995) ................................................................................12

*In re Rouge Indus., Inc.,*
    326 B.R. 55 (Bankr. D. Del. 2005) ........................................................................22

*S. Co. v. Dauben Inc.,*
    324 F. App'x 309 (5th Cir. 2009) ....................................................................14, 15

*In re Schering Plough Corp./Intron Temodar Consumer Class Action,*
    678 F.3d 235 (3rd Cir. 2012) ................................................................................20

*SEC v. W.L. Moody & Co.,*
    374 F. Supp. 465 (S.D. Tex. 1974) ........................................................................11

*In re Sims,*
    479 B.R. 415 (Bankr. S.D. Tex. 2012) ..................................................................12

*Southmark Corp. v. Coopers & Lybrand,*
    163 F.3d 925 (5th Cir. 1999) ................................................................................11

*Sport Supply Gr., Inc. v. Colum. Cas. Co.,*
    335 F.3d 453 (5th Cir. 2003) ................................................................................16

*Tyler v. Tywell Mfg. Corp. (In re Tyler),*
    Nos. 01-80343-SAF-13, 02-3530, 2003 Bankr. LEXIS 930
    (U.S. Bankr. N.D. Tex. Aug. 5, 2003) ..................................................................18

*U.S. Nat'l Bank Ass'n v. Johnson,*
    No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507
    (Tex. App. Dec. 30, 2011) ....................................................................................17

**Statutes**

15 U.S.C. § 1125(d)(1)(B)(ii) ........................................................................................15

15 U.S.C. § 1127 (2013) ................................................................................................15

28 U.S.C. § 1391(b)(1) ...............................................................................................25

28 U.S.C. § 1391(b)(2) ...............................................................................................25

28 U.S.C. § 1391(b)(3) ...............................................................................................25

28 U.S.C. § 1404(a) ....................................................................................................25

28 U.S.C. § 1406(a) ....................................................................................................25

28 U.S.C. §§ 2201, 2202 ............................................................................................12

Tex. Civ. Prac. & Rem. Code § 16.003 ...............................................................14, 15

Tex. Civ. Prac. & Rem. Code § 16.003(a) ..................................................................14

Tex. Civ. Prac. & Rem. Code § 16.010 .......................................................................16

**Other Authorities**

64 Tex. Jur. 3d RECEIVERS § 138 ................................................................................25

Fed. R. Civ. P. 12(b) ................................................................................................1, 8

Fed. R. Civ. P. 12(b)(1) ...........................................................................................2, 20

Fed. R. Civ. P. 12(b)(3) .......................................................................................3, 24, 25

Fed. R. Civ. P. 12(b)(6) .....................................................................................2, 9, 12

Fed. R. Civ. P. 12(b)(7) .........................................................................................3, 24

Fed. R. Civ. P. 19(a) ..................................................................................................21

Fed. R. Civ. P. 19(a)(1) ..............................................................................................21

Fed. R. Civ. P. 19(b) ..................................................................................................21

## I.     INTRODUCTION

Defendants Quinn Veysey; Priveco, Inc.; Virtual Investments, LLC; Telepathy, Inc.;

Strong, Inc.; Adam Strong; Creation Media, LLC; Unicorn Ranch, LLC (in lieu of Onig, LLC[1]);

True Magic, LLC; CBRE Group, Inc.; Power Home Technologies, LLC; State Farm Mutual

Automobile Insurance Company; Tumult, Inc.; Radical Investments Management, LLC; and

Slice Technologies, Inc. (collectively, "Defendants")[2] file this Motion, respectfully moving the

Court to dismiss with prejudice Plaintiff's Amended Complaint under Rule 12(b) or, in the

alternative, transfer this case to the Northern District of Texas.

This case concerns Internet domain names that Defendants lawfully acquired, directly or

indirectly, from Plaintiff Associated Recovery, LLC's predecessor-in-interest through sales in

2012 authorized by the Northern District of Texas, arising from the *Netsphere, Inc. v. Baron*

litigation.  Now, years later, Plaintiff alleges that the sales were improper and the domain names

should be returned because the Fifth Circuit vacated the receivership order.   But Plaintiff ignores

that, in *Netsphere*, the Fifth Circuit left undisturbed the then-final sales, including those in

dispute here.  703 F.3d 296, 313 (5th Cir. 2012) ("*Netsphere I*").  The Fifth Circuit's decision

allowed use of proceeds from those sales to pay receivership fees.  *Id.* ("[C]harging the current

receivership fund for reasonable receivership expense, without allowing any additional assets to

be sold, is an equitable solution.").  When recently dismissing another related case brought by

Baron and Novo Point against the receiver, Peter Vogel, the Northern District of Texas ruled that

"any claim by Plaintiffs based on the wrongful establishment or continuation of the receivership

---

[1] Onig, LLC became inactive before Plaintiff filed suit.  Although Plaintiff's counsel has twice agreed to file a motion to substitute successor-in-interest Unicorn Ranch LLC for Onig, LLC, Plaintiff has inexplicably failed to do so.

[2] At least four other defendants filed individual motions to dismiss, independent of this Motion. *See* Dkt. Nos. 52, 66, and 73.

or payment of receivership expenses is an impermissible collateral attack of prior orders through this suit." *Baron v. Vogel*, No. 3:15-cv-232-L, 2016 WL 1273465, *6 (N.D. Tex. Mar. 31, 2016) (Lindsay, J.) ("*Vogel I*").  In combination with the *Netsphere*[3] decisions, the *Vogel I* ruling makes Plaintiff's new allegations untenable and, hence, Plaintiff's claims subject to dismissal with prejudice on at least four separate grounds.

     First, Plaintiff fails to state a claim upon which relief can be granted.  The case at bar is yet another "impermissible collateral attack of prior orders"—this time through the domain-name owners rather than the receiver.  The domain name owners sued here are at least a step further removed from Mr. Baron and his business; most of them had never heard of Baron, his business or the prior litigation discussed herein before they got sued and were forced to incur legal fees to defend this latest chapter in Mr. Baron's litigation playbook.   The Fifth Circuit's and the Northern District's rulings in *Netsphere* and *Vogel*[4] on the propriety of the Receiver's actions— which include the sales of the domain names in dispute—preclude Plaintiff's claims, so this case should be dismissed under Rule 12(b)(6).

     Second, Plaintiff's claims are either not cognizable causes of action, inapplicable to the facts pled, or are time barred.  Those flaws further warrant dismissal under Rule 12(b)(6).

     Third, Plaintiff lacks standing.  It is a shell company created by Baron for the purpose of suing bona fide purchasers for value of domain names sold through the receivership.  Because the Northern District authorized and later ratified those sales, Baron and Novo Point had no ownership interests to transfer to Plaintiff.  Thus, as Baron and Novo Point's assignee, Plaintiff lacks standing.  Dismissal is proper under Rule 12(b)(1).

---

[3] *"Netsphere"* refers to the *Netsphere v. Baron* litigation, No. 3:09-cv-0988-F/L (N.D. Tex.), whereas *Netsphere I, Netsphere II,* and *Netsphere III* refer to three opinions in that litigation.

[4] "*Vogel*" refers to the *Baron v. Vogel* litigation, No. 3:15-cv-232-L (N.D. Tex.), whereas *Vogel I* refers to the specific Memorandum Opinion and Order dated March 31, 2016.

Fourth, Plaintiff failed to join necessary parties, including Novo Point and Jeffrey Baron, who have been embroiled for years in the *Netsphere* and *Vogel* litigations in the Northern District. Plaintiff also failed to join the court-appointed manager, Damon Nelson, and receiver, Peter Vogel, who are the parties that, on Novo Point's behalf and with the Northern District's authorization, sold the domain names now held by Defendants. The absence of those necessary parties warrants dismissal under Rule 12(b)(7).

In the alternative, the case should be dismissed or transferred to the Northern District of Texas. Plaintiff's Amended Complaint ignores that Judge Lindsay in the Northern District of Texas retained "exclusive jurisdiction" over all disputes, such as this one, that arise out of the *Netsphere* litigation. *Netsphere, Inc. v. Baron*, No. 3:09-cv-0988-F, 2015 WL 1400543, *10 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*"); *see also Baron v. Vogel*, No. 3:15-cv-232-L, 2015 U.S. Dist. LEXIS 128812, at *7 (N.D. Tex. Sep. 25, 2015) (noting Court's "exclusive jurisdiction"); 2016 U.S. Dist. LEXIS 44294, at *8 (N.D. Tex. Mar. 31, 2016) (same). Accordingly, this case should be dismissed under Rule 12(b)(3), or in the alternative, transferred to the Northern District of Texas.

## II.    FACTUAL BACKGROUND

Much of the procedural history has been discussed in decisions by the Northern District and the Fifth Circuit, which are summarized in relevant part below.[5]

### A.    The Start of the *Netsphere* Litigation

Years ago, Plaintiff's alleged predecessor-in-interest, Jeffrey Baron ("Baron") entered into a joint venture with Munish Krishan ("Krishan") "involving the ownership and sale of

---

[5] Summaries of the procedural history can be found in *Netsphere I*, 703 F.3d at 302; *Netsphere v. Baron*, No. 3:09-cv-988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) (*"Netsphere II"*); *In re Baron*, No. 12-37921-SGJ-7, 2013 WL 3233518 (Bankr. N.D. Tex. June 26, 2013), *rev'd sub nom. Baron v. Schurig*, No. 3:13-cv-3461-L, 2014 WL 25519 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part, sub nom. In re Baron*, 593 F. App'x 356 (5th Cir. 2014).

3

domain names." *See Netsphere II*, 2013 WL 3327858, at \*1.  Numerous disputes arose between

Baron and Krishan, and in April 2009 they reached an agreement and signed a Memorandum of

Understanding ("MOU") to settle all disputes between them.  *Id.*  Shortly thereafter, however,

Baron and one of his companies, Ondova Ltd. ("Ondova"), allegedly breached the agreement.

*Id.*  Krishan and his company, Netsphere, Inc., filed suit in the Northern District of Texas against

Baron and Ondova in May 2009.  *Id.*  Throughout the underlying case, Baron substituted counsel

so many times that the Northern District of Texas was "concerned that Baron would continue to

frustrate the judicial system by cycling through attorneys in order to cause delay."  *Id.* at \*2.

### B.       The Ensuing Bankruptcy and Receivership

Early in the case, the Northern District entered a preliminary injunction to compel Baron

to comply with the MOU.  *Netsphere I*, 703 F.3d at 302.  In July 2009, after Netsphere moved to

hold Baron in contempt for violating the preliminary injunction and one day before the hearing,

Baron further complicated the proceeding by placing Ondova into bankruptcy.  *Id.*  Eventually,

the bankruptcy creditors and Ondova agreed to a partial settlement, but Baron continued to

substitute counsel in the bankruptcy proceedings.  *Id.*  Another settlement was reached, and the

bankruptcy court approved the settlement in July 2010.  *Id.* at 303.  At a hearing regarding the

settlement agreement, the bankruptcy trustee informed the bankruptcy court that a former

attorney for Baron testified that Baron planned to move assets that were subject to U.S.

jurisdiction to another country.  *Id.*  The bankruptcy trustee was further concerned that money to

pay lawyers and satisfy other claims in the bankruptcy would be lost by moving the assets.  *Id.*

In response, district court appointed a special master to mediate claims for any unpaid legal fees

based on a recommendation by the bankruptcy court.  *Id.* at 304.  After Baron again fired his

attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure

to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of

lawyers in violation of the court's order," which would "expose the bankruptcy estate to additional administrative claims and further delay the resolution of the bankruptcy proceedings." *Id.* The Court appointed Peter Vogel ("Vogel" or "Receiver") as the receiver in November 2010. *Id.*; *see also* Order Appointing Receiver, *Netsphere* Dkt. 130 (N.D. Tex. Nov. 24, 2010).

### C.      The Sale of Domain Names Pursuant to Receivership

To fund disbursements to the unpaid attorneys, the Northern District granted a motion by the Receiver to permit sales of domain names on February 4, 2011.  *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011).  The Court further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Mr. Baron's companies, Quantec, LLC and Novo Point, LLC ("Novo Point"), to assist the Receiver in selling the domain names.  *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, *Netsphere* Dkt. 473 (N.D. Tex. Apr. 22, 2011).

Nelson worked under Vogel's direction.  Pursuant to an order authorizing sales of the domain names, Nelson sold the domain names that are the subject of the instant case in 2011 and 2012.  Amended Complaint ¶ 84 (Dkt. 15).  The purchases were for value and pursuant to formal domain name assignment and transfer agreements.  *Id.* at ¶¶ 84, 89.  The seller of the domain names in the agreements was "Novopoint, LLC" [*sic*], and Mr. Nelson authorized the sale and signed on behalf of Novo Point.  *E.g.,* Exhibit A (Domain Name Assignment and Transfer Agreement for Slice.com); Dkt. 66-2 (Domain Name Assignment and Transfer Agreement for Lookout.com).

**D.      The Fifth Circuit Vacates the Receivership But Leaves Previous Sales in Place**

Baron appealed the receivership order, as well as subsequent orders entered by the Court. *Netsphere I*, 703 F.3d at 305.  The Fifth Circuit looked at "whether a court can establish a receivership to control a vexatious litigant."  *Id.*  Ultimately, the Fifth Circuit reversed the appointment of the receiver with directions to vacate the receivership. *Id.* at 315. Normally when a receivership is improper, the party that sought the receivership is deemed accountable for receivership fees and expenses.  *Id.* at 312.  But here, the Fifth Circuit held otherwise, leaving previous sales intact and halting only future sales:

> Additionally, we hold, based on this record, that in creating the receivership "there was no malice nor wrongful purpose, and only an effort to conserve property in which [the court] believed" it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics. We recognize that the district court was dealing with a conundrum when it decided to appoint the receiver — the problem was great, but standard remedies seemed inadequate. We also take into account that, to a large extent, **Baron's own actions resulted in more work and more fees for the receiver and his attorneys**. For these reasons, charging the current receivership fund for reasonable receivership expenses, **without allowing any additional assets to be sold,** is an equitable solution**.**

*Id.* at 313 (emphasis added).  Hence, the Fifth Circuit left in place the then-final sales of domain names, stopping only sales of "**additional** assets."  *Id.*; *see id.* at 314 ("No **further** sales of domain names or other assets are authorized." (emphasis added)).

**E.      Winding Down the Receivership**

Pursuant to the Fifth Circuit's Order, the Court wound down the receivership. *See* Order, *Netsphere* Dkt. 1155 (N.D. Tex. Jan. 7, 2013).  When determining the fees to be paid, Judge Furgeson observed, "Never in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron."  *Id.* at 3. While the Northern District recognized that the Fifth Circuit vacated the receivership, it understood that "all Orders issued under the Receivership remain in

effect until the Receivership is wound down."  No. 3:09-CV-0988-F, 2013 WL 3327858, at *6-7

(N.D. Tex. May 29, 2013) ("*Netsphere II*").

Though winding down was further delayed by the bankruptcy and other proceedings over

the next two years, on March 27, 2015, the Northern District issued an opinion and order

regarding the Receiver's request for final accounting. *Netsphere, Inc. v. Baron*, No. 3:09-CV-

0988-L, Dkt. 1447, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*"). Ultimately,

the Northern District held that it could not continue with the case until related bankruptcies were

resolved, and therefore closed, but did not dismiss, the case.  Order, *Netsphere* Dkt. 1448 (N.D.

Tex. Mar. 27, 2015).

### F.      The *Baron v. Vogel* Litigation

In 2015, Baron, Quantec, and Novo Point filed a lawsuit against receiver Peter Vogel and

his law firm in Texas state court, but Vogel successfully removed the case to the Northern

District.  Judge Lindsay then quickly dismissed the *Vogel* case with prejudice, ruling that,

although the Fifth Circuit vacated the receivership order, Vogel conducted his receivership duties

according to court authorization and was shielded by judicial immunity.  *Vogel I*, 2016 WL

1273465 at *6 ("[A]ny claim by Plaintiffs based on the wrongful establishment or continuation

of the receivership or payment of receivership expenses is an impermissible collateral attack of

prior orders through this suit.").  *See also Netsphere, Inc. v. Gardere Wynne Sewell, L.L.P.*, No.

15-10341, 2016 U.S. App. LEXIS 12627 (5th Cir. July 8, 2016) (slip op.) (finding collateral

order jurisdiction; affirming receiver fee awards from funds raised by domain name sales due to

plaintiffs' waiver, which obviated additional analysis).

### G.      The Related *in rem* Litigation

On December 31, 2015, Plaintiff filed an *in rem* lawsuit against 44 foreign-owned

domain names in the Eastern District of Virginia.  The disputed domain names in that litigation

were sold through the *Netsphere* receivership sales, similar to the domain names at issue here, and the defendants in the Virginia action filed a motion to dismiss or transfer that included many of the same arguments raised here. *See generally* Certain Defendants' Motion to Dismiss Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue, *Associated Recovery, LLC v. Does 1-44*, No. 1:15-cv-1723, Dkt. 32 (E.D. Va. Mar. 25, 2016). On April 15, 2016, the Eastern District of Virginia transferred that action to the Northern District of Texas, where it was ultimately assigned to Judge Lindsay. *Id.* at Dkt. 40. On August 22, 2016, the defendants in the Northern District action filed a motion to dismiss that raises the same arguments found in this Motion. *See* Defendants' Rule 12(b) Motion to Dismiss Amended Complaint and Memorandum, *Associated Recovery LLC v. Does 1-44*, No. 3:16-cv-1025-L, Dkt. 80, 81 (N.D. Tex. Aug. 22, 2016).

### H.     The Present Litigation

Plaintiff filed the instant case on February 8, 2016, apparently as the *in personam* counterpart to the E.D. Virginia *in rem* action. *See* Complaint (Dkt. 1). After filing suit, Plaintiff sent letters to at least some Defendants, stating that the domain names in-suit were "stolen" and demanding that Defendants assign the domain names to Plaintiff. *E.g.*, Exhibits B-D (demand letters sent by Plaintiff's original counsel to defendants). Thereafter, Plaintiff's original counsel withdrew from this case and was replaced by current counsel, who is also Plaintiff's counsel of record in the *in rem* action that was transferred from the Eastern District of Virginia to the Northern District of Texas. *See* Dkt. 4, 15.

III.     **ARGUMENT AND AUTHORITIES**

    A.     **The Court Should Dismiss this Action for Failure to State a Claim Upon Which Relief Can Be Granted.**

The *Netsphere I*, *Netsphere II*, *Netsphere III*, and *Vogel I* decisions collaterally estop Plaintiff's claims, thus triggering Rule 12(b)(6).  Collateral estoppel requires that: (1) the issue is identical to the issue involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a crucial and necessary part of the judgment.  *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.,* 583 F.3d 348, 353 (5th Cir. 2009).  Here, all three prongs are met.

The issues Plaintiff raises in its complaint have been litigated and decided against Plaintiff's predecessors-in-interest.  Plaintiff alleges that the domain names at issue were "improperly" placed under the control of a receivership then sold pursuant to orders of the Northern District.  Amended Complaint ¶¶ 79-82 (Dkt. 15).  But the Fifth Circuit held that the district court entered the Receivership Order to bring a halt to Baron's "longstanding vexatious litigation tactics," and rejected Baron's contention that the appointment of the Receiver was in bad faith or collusive. *Netsphere I,* 703 F.3d at 310-13 ("[W]e hold, based on this record, that in creating the receivership there was no malice nor wrongful purpose, and only an effort to conserve property in which the court believed it was interested in maintaining for unpaid attorney fees and to control Baron's vexatious litigation tactics.") (internal quotations omitted). The Fifth Circuit also held that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making." *Id.*  Since the *Netsphere I* decision, the Northern District has reviewed the actions of Vogel and Nelson.  The Northern District found Vogel's work "exemplary and entirely appropriate," *Netsphere II*, 2013 WL 3327858, at *22.  Both the Fifth Circuit and the Northern District blamed Baron—not Vogel or

Nelson—for the high fees and other expenses that Baron himself caused.  *See Netsphere I*, 703
F.3d at 310-13; *Netsphere II,* 2013 WL 3327858, at *7, 15-16; 21-22; *Netsphere III*, 2015 WL
1400543, at *3.

The issues in this suit previously were presented to the Fifth Circuit and to the Northern
District in connection with *Netsphere II*.  In Baron's *Netsphere I* March 28, 2011 Fifth Circuit
brief, he complained—as Associated Recovery complains here—that the Receivership was
wrongful.  Baron sought to "recover the costs of the receivership from those who have
wrongfully provoked it."  Brief at 69-71.  After the panel decision in *Netsphere I,* Baron filed his
objections to the Receiver's fee applications in the Northern District.  *Netsphere* Dkt. No. 1269
(May 8, 2013).  Baron argued, among other things, that Vogel should receive no fees because of
alleged breaches of fiduciary duty and waste.  *See id.*  The next day, Baron sought leave to
amend his pleadings to assert claims including "breaches of fiduciary duties, malpractice,
negligence, gross negligence, fraud and other causes of action" against Vogel, the Trustee, and
law firm Munsch Hardt. *Netsphere* Dkt. No. 1270 (May 9, 2013).  These issues were submitted
for determination and decided against Baron in *Netsphere II*. *See Netsphere II*; *see also*
*Netsphere* Dkt. No. 1289 (N.D. Tex. May 29, 2013) (electronic order finding Baron's motion for
leave to be moot, because the issues raised therein were ruled upon in *Netsphere II*); *Matter of*
*Gober,* 100 F.3d 1195, 1203-04 (5th Cir. 1996) (explaining that an issue is 'actually litigated'
when it is properly raised by the pleadings, or otherwise submitted for a determination, and
determined).

Each of the foregoing rulings was crucial and necessary to the Fifth Circuit's decision in
*Netsphere I* and the Northern District's decisions in *Netsphere II* and *Netsphere III*.  In *Netsphere*
*I,* the findings that the Receivership was not procured by any conspiracy between the
professionals, there was no bad faith, and that Baron's own tactics caused the Receivership were

10

critical to the Fifth Circuit's holding that, although the Receivership was improper, equity would permit the reasonable fees and expenses of the Receivership professionals to be charged against the Receivership estate.  *See Netsphere I*, 703 F.3d at 313.

Likewise, for the Northern District to award the Receiver and his professionals attorneys' fees, it was required, under *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), to determine the reasonableness of the award, make specific findings in support of any award of attorneys' fees, and to consider all circumstances surrounding the receivership, including the Receiver's performance.  *SEC v. W.L. Moody & Co.,* 374 F. Supp. 465, 480 n.20 (S.D. Tex. 1974).  The fee award, coupled with the Northern District's express findings of no wrongdoing set forth in the *Netsphere II*, collaterally estop Baron and Novo Point from claiming wrongdoing regarding the payment of the receivership costs.  *See Southmark Corp. v. Coopers & Lybrand,* 163 F.3d 925, 932-34 (5th Cir. 1999) (partial fee disgorgement order in bankruptcy court collaterally estopped debtor from seeking to recover greater damages in subsequent suit). Furthermore, raising funds to pay receivership fees entailed selling the domain names in suit. *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 288 (N.D. Tex. Feb. 4, 2011); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, *Netsphere* Dkt. 242 (Jan. 24, 2011).  By dispensing the assignment proceeds to pay receivership fees *after* the Fifth Circuit's *Netsphere I* decision, Judge Lindsay gave *post hoc* approval of, or ratified, the assignments.  Specifically, Judge Lindsay found:

> [Vogel's law firm] developed a system for determining the value of domain names that allowed it to make choices regarding the fate of individual names: whether to develop, to park, to sell or to let lapse.  This was critical because it enabled counsel … to identify money losing names that should be culled from the portfolios.  Although Baron may have elected to run these businesses differently, all of the actions were reasonable and prudent ….

11

*Netsphere II*, 2013 WL 3327858, at *16.  The Northern District again gave *post hoc* approval of the Receiver's actions in the recent *Vogel I* decision.  2016 WL 1273465 at *6. [6]

Associated Recovery's claims, which were allegedly assigned by Novo Point, are barred by such rulings by the Northern District and the Fifth Circuit in *Netsphere* and *Vogel.  See Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." (internal citations omitted)).  Hence, the Court should dismiss this case under Rule 12(b)(6).

### B.    The Court Should Dismiss Plaintiff's Inapplicable, Time-Barred Claims.

Another Rule 12(b)(6) basis for dismissal is that Plaintiff's various causes of action are either inapplicable to the facts pled or time barred.  Below each cause of action is taken in turn.

### 1.    Declaratory Judgment

Plaintiff's first claim is for declaratory judgment.  (Dkt. 15, ¶¶ 99-101).  The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action.  *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)).  A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law.  *Collin Cnty., Tex. v.*

---

[6] Plaintiff's predecessors are appealing the *Vogel I* decision to the Fifth Circuit. Nevertheless, a judgment or order is final for purposes of the doctrine of collateral estoppel, even though on appeal, until that judgment or order is reversed on appeal, modified, or set aside by the rendering court. *See Nikols v. Chesnoff*, 435 Fed. Appx. 766, 770 (10th Cir. 2011); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, --- F. Supp. 3d ----, 2014 WL 4961992, at *3 (E.D. Tex. Oct. 3, 2014); *In re Sims*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012).

*Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990).  Plaintiff fails to identify any substantive right it seeks or identify any underlying cause(s) of action.  Dkt. 15, ¶¶ 100-01  Plaintiff merely asserts that it is the owner of the domain names and Defendants do not have the right to use them and seeks a declaration from this Court declaring the same.  *Id.*

To the extent such allegations could make out a claim, the claims are time-barred under the substantive underlying law discussed below.  *E.g., Hazelhurst v. JPMorgan Chase Bank, N.A.,* No. 3:13-CV-4605-L (BF), 2014 U.S. Dist. LEXIS 105550, at *12-13 (N.D. Tex. July 14, 2014) (declaratory judgment claim based upon time-barred state constitutional claim was itself time-barred); *Priester v. Long Beach Mortg. Co.,* No. 4:10-CV-641, 2011 U.S. Dist. LEXIS 142031 at *15 (E.D. Tex. Oct. 13, 2011) (same).  Thus, the declaratory-judgment claim should be dismissed.

### 2.     Conversion

Plaintiff's second claim is conversion.  (Dkt. 15, ¶¶ 102-07).  But "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."  *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App. – Dallas 2001, no pet.); *see Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (explaining that Texas conversion law "concerns only physical property"); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (holding that Texas law does not recognize a claim for conversion of a trademark because plaintiff did not allege that defendants converted any document representing plaintiff's intangible rights).  There can be no claim for conversion because the Court's orders authorized the sale of the domain names and authorized the receivership payments, thus terminating any claim of conversion by the Plaintiff.

13

Furthermore, under Texas law the statute of limitations for claims for conversion is the two-year period provided by Texas Civil Practice and Remedies Code § 16.003:  "[A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Pemex Exploracion y Produccion v. BASF Corp.*, No. CIV.A. H-10-1997, 2013 WL 5514944, at *10 (S.D. Tex. Oct. 1, 2013); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) ("The applicable limitations period for [plaintiff's] claim—whether it is formally labeled 'unjust enrichment' or 'conversion'—is two years.").  The relevant sales occurred in 2011 or 2012.  *See Netsphere I*, 703 F.3d at 313 (issued Dec. 18, 2012 and prohibiting any "further" sales).  The statute of limitations commenced running no later than the 2012 receivership sales of the domain names.  The two-year statute of limitations expired well before Plaintiff's Original Complaint in February 2016.

### 3.       Anticybersquatting Consumer Protection Act

Plaintiff's third claim is an alleged violation of the Federal Anticybersquatting Consumer Protection Act.  (Dkt. 15, ¶¶ 108-15).  To prevail on an ACPA claim, Plaintiff must prove that (1) its mark "is a distinctive or famous mark entitled to protection;" (2) Defendant's "domain names are 'identical or confusingly similar to' [Plaintiff]'s mark"; and (3) Defendant "registered the domain names with the bad faith intent to profit from them."  *S. Co. v. Dauben Inc.*, 324 F. App'x 309, 314 (5th Cir. 2009).  Plaintiff fails at least the first and third prongs.

Plaintiff cannot prove the first prong because Plaintiff has no mark entitled to protection.  Plaintiff has not used any of the disputed marks (i.e., domain names) since 2012.  (Dkt. 15, ¶ 78-80).  "A mark shall be deemed to be abandoned … [w]hen its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse

for 3 consecutive years shall be prima facie evidence of abandonment."  15 U.S.C. § 1127

(2013).  Here, Plaintiff makes no assertion that it or its predecessors-in-interest ever sought to

register any of the marks at issue.  And Plaintiff admits it has not used the alleged marks at issue

for over three consecutive years prior to filing suit, thus the nonuse admitted by Plaintiff

establishes a case of prima facie abandonment of the marks.

Plaintiff cannot prove the third prong because there can be no bad-faith intent where

ACPA's safe harbor provision applies.  15 U.S.C. § 1125(d)(1)(B)(ii) ("Bad faith intent

described under subparagraph (A) shall not be found in any case in which the court determines

that the [defendant] believed and had reasonable grounds to believe that the use of the domain

name was a fair use or otherwise lawful."); *see also E. & J. Gallo Winery v. Spider Webs Ltd.*,

286 F.3d 270, 275 (5th Cir. 2002); *Dauben Inc.*, 324 F. App'x at 315.  The court-approved,

lawful sale of the domain names falls under the ACPA safe harbor provision.  Given the court-

approved sale, Defendants had reasonable grounds to believe the purchase and use of the domain

names were lawful.

### 4.     Unjust Enrichment

Plaintiff's fourth claim is unjust enrichment.  (Dkt. 15, ¶¶ 116-18).  But unjust

enrichment is not a distinct independent cause of action.  It is a theory of recovery.  *See Merrill*

*Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, No. 3:06-CV-0575-P, 2007

U.S. Dist. LEXIS 69235, at *32 (N.D. Tex. Sep. 18, 2007); *Mowbray v. Avery*, 76 S.W.3d 663,

679 (Tex. App. - Corpus Christi 2002, pet. denied).  Furthermore, to the extent the unjust

enrichment allegation were operable, it is also subject to the two-year statute of limitations

period provided for by Texas Civil Practice and Remedies Code § 16.003.  *See Pemex*, 2013 U.S.

Dist. LEXIS 144166, at *33-34.  In its Amended Complaint, Plaintiff provides no factual

allegations for when the alleged unjust enrichment occurred.  Plaintiff's implication is the

15

conversion occurred on or before December 18, 2012, the date of the Fifth Circuit ruling in
*Netsphere I*.  Plaintiff's filed suit in February 2016, rendering this claim time-barred.

### 5.    Misappropriation

Plaintiff's fifth claim is misappropriation.  (Dkt. 15, ¶¶ 119-25).  Plaintiff's attempt to
assert that cause of action is misplaced because misappropriation applies to trade secrets.  *E.g.*,
*Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994).  Domain names are not trade secrets; they are
the public domain of websites.  Thus, "misappropriation" is not relevant to this litigation.  *Id.*
Specifically, "[t]rade-secret misappropriation in Texas requires (1) the existence of a trade secret,
(2) improper acquisition of that secret, and (3) use of the trade secret without authorization."
*Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 265 (5th Cir. 2014).  The domain names
are not trade secrets, thus Plaintiff cannot prove any of the elements of misappropriation under
Texas law.

Furthermore, the Fifth Circuit, applying Texas law, has held that "the definition of
advertising does not include trademarks; therefore, trademark infringement claims do not involve
misappropriation of advertising ideas."  *Am.'s Recommended Mailers Inc. v. Maryland Cas. Co.*,
339 F. App'x 467, 469 (5th Cir. 2009).  "Texas law does not appear to view a trademark as a
marketing device ... and has adopted a more conventional understanding of a trademark as a label
that serves primarily to identify and distinguish products."  S*port Supply Gr., Inc. v. Colum. Cas.
Co.*, 335 F.3d 453, 462 (5th Cir. 2003); *Chiropractic v. Nationwide Mut. Ins. Co.*, No. 4:15-CV-
135-Y, 2016 WL 3916005, at *6 (N.D. Tex. July 20, 2016).

Under Texas law, trade secret misappropriation claims are subject to a three-year statute
of limitations.  Civil Practice & Remedies Code § 16.010.  Plaintiff provides no factual
allegation for when Defendants allegedly appropriated any trade secret.  But all relevant sales

were completed before the December 18, 2012, *Netsphere I* decision—actually several months before.  Thus, any claim for "misappropriation" by Plaintiff is time-barred.

Alternatively, Plaintiff may be alleging common law misappropriation of a product or idea.  *See Keane v. Fox Television Stations, Inc.*, 297 F. Supp.2d 921, 938 (S.D. Tex. 2004) (discussing common law misappropriation of product, idea or trade secret).  But if so, Plaintiff's claim still fails.  The disputed domain names are neither products nor ideas, nor has Plaintiff pled facts that would be supportive of such claims.  Thus, common law misappropriation is also inapplicable.

### 6.    Quiet Title

Plaintiff's sixth claim is for quiet title.  (Dkt. 15, ¶¶ 126-29).  To state a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 Tex. App. LEXIS 10253, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex. App. 1991)).  A plaintiff further "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference."  *Howard v. JP Morgan Chase NA*, No. SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *16-17 (W.D. Tex. Apr. 17, 2013).  Plaintiff cannot do so here, as the Northern District ratified the Receiver's sales of the domain names, thus transferring Novo Point's (Plaintiff's predecessor) ownership rights to third parties.  Plaintiff also cannot prove at least the third element because each Defendant has a valid claim to its domain name via the court-authorized receivership sales, thus Defendants have a valid and enforceable claim to the domain names through the Northern District's authority.

17

### 7.     Fraudulent Conveyance

Plaintiff's seventh and final claim is fraudulent conveyance.  (Dkt. 15, ¶¶ 130-38).

Plaintiff's attempt to assert that cause of action is misplaced here also.  Fraudulent conveyance

allows a court, trustee or creditor to set aside a transaction by a debtor whereby the debtor

attempts to use the transaction to avoid a creditor's pre-existing claim against the debtor.  *Tyler*

*v. Tywell Mfg. Corp. (In re Tyler)*, Nos. 01-80343-SAF-13, 02-3530, 2003 Bankr. LEXIS 930, at

*20-21 (U.S. Bankr. N.D. Tex. Aug. 5, 2003).  But as Plaintiff admits, the disputed domain

names were sold to raise funds needed to pay Plaintiff's creditors (multiple lawyers hired, fired,

and unpaid by Plaintiff) and receivership fees.  (Dkt. 15, ¶¶ 79-82; *Netsphere I*, 703 F.3d at 305.

("The district court appointed a receiver primarily to control Baron's hiring, firing, and non-

payment of numerous attorneys.").  Thus, Plaintiff's attempt to use that cause of action here turns

it on its head.  The Court should dismiss that allegation as a matter of law.

### C.     The Court Should Dismiss this Action Because Plaintiff Lacks Standing.

Neither Baron nor Novo Point could bring this suit.  Associated Recovery is merely their

assignee and, thus, is likewise unable.  "[T]he only injury sufficient to support an assignee's

standing to assert an assigned claim is an injury suffered by the assignor, and that injury must

satisfy all the requirements of constitutional standing, i.e., the injury suffered must be an injury-

in-fact that is causally traceable to a named defendant and likely to be redressed by the court

action." *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp.2d 961, 965

(S.D. Tex. 2013).  "[T]he irreducible constitutional minimum of standing contains three

elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351

(1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b)

actual or imminent; (2) a causal connection between the injury and the conduct complained of;

and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Texas*,

562 F.3d 735, 745 (5th Cir.2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).   "The party

invoking federal jurisdiction bears the burden of establishing these elements."   *Lujan*, 504 U.S. at

561, 112 S.Ct. 2130.

Associated Recovery's allegations lack at least two requisite elements.   First, there was

no injury in fact.   Although the Fifth Circuit vacated the receivership, it left in place the already

completed domain-name sales that raised funds needed to pay the receivership fees. *Netsphere I*,

703 F.3d at 313.   Furthermore, the Northern District again authorized, or ratified, the sales *post

hoc* when it authorized payment of the receivership fees using funds raised in part by the

domain-name sales.   *See generally Netsphere II*, 2013 WL 3327858; *Netsphere III*, 2015 WL

1400543 *see also Vogel I*, 2016 WL 1273465 at *5 (finding no *ultra vires* acts by Vogel).

Second, there is no causal connection between the alleged injury and the conduct

complained of.   Assuming, *arguendo*, there were an injury, it was not caused by Defendants,

who are bona fide purchasers for value of the domain names.   *See EDS Corp. v. Southwestern

Bell Tel.*, 674 F.2d 453, 459 (5th Cir. 1982) ("A bona fide purchaser … is one who buys property

in good faith for valuable consideration and without knowledge (actual or imputed) of

outstanding claims in a third party or parties.").   Indeed, the domain names at issue were

transferred pursuant to contracts, signed by Damon Nelson on behalf of Novo Point, without

notice or mention of any alleged third-party interests.   *See, e.g.*, Exhibit A (Domain Name

Assignment and Transfer Agreement for Slice.com); Dkt. 66-2 (Domain Name Assignment and

Transfer Agreement for Lookout.com).

Associated Recovery's causes of action all flow from Defendants' acquisition and use of

domain names that were sold with the Northern District's authorization.   To the extent they are

even operable (*see* Section III.B., *supra*), Plaintiff's claims of/for quiet title, conversion,

declaratory judgment, theft, unjust enrichment, misappropriation, and fraudulent conveyance

19

claims are extinguished by the Northern District's orders authorizing the sales and orders authorizing payments.  As for the ACPA claims, which flow from alleged trademark rights, Defendants' respective use of the domain names was not only foreseeable but constitutes the very reason for the assignments.  Hence, Defendants enjoy an implied license from Novo Point that defeats any ACPA/trademark allegations.  *See McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (implied license available even through involuntary sale).  Defendants have not injured Baron, Novo Point, or Plaintiff.  *Id.*  Any alleged injury to Baron or Novo Point (and by assignment, Associated Recovery) was self-inflicted.  *See Netsphere I*, 703 F.3d at 313 ("the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making"); *Netsphere III*, 2015 WL 140043, at *3 ("[T]he court also takes into account the disruptive conduct of Receivership Parties Jeffrey Baron, Novo Point LLC, and Quantec LLC, which continued after the order establishing the Receivership was reversed and increased the Receivership expenses to which Baron now objects.").

With only Baron and Novo Point to blame, Associated Recovery is the "assignee" of nonexistent rights and, thus, has no standing to bring this case.  *See PEMEX*, 923 F. Supp.2d at 965 (S.D. Tex. 2013).  The Court should dismiss Associated Recovery's complaint under Rule 12(b)1.  *See In re Schering Plough Corp./Intron Temodar Consumer Class Action,* 678 F.3d 235, 243 (3rd Cir. 2012) ("A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."). ).

### D.      The Court Should Dismiss this Action for Failure to Join Necessary Parties.

"Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry."  *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).  First, the court must determine whether a party should be added under the requirements

of Rule 19(a).  *Id.*  Rule 19(a) requires that a person subject to process and whose joinder will

not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or (ii) leave an existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "Rule 19(a) sets forth three circumstances in which joinder is not

feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and

when joinder would destroy subject matter jurisdiction."  *E.E.O.C. v. Peabody W. Coal Co.*, 400

F.3d 774, 779 (9th Cir. 2005).

Second, if the necessary party cannot be joined without destroying subject-matter

jurisdiction, the court must then determine whether that person is "indispensable," that is,

whether litigation can be properly pursued without the absent party.  *Id.* at 629 (citing *HS Res.,

Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003)).  The factors a district court is to consider in

making this determination are laid out in Rule 19(b).  *Id.* (quoting Fed. R. Civ. P. 19(b)).

Here, the necessary parties are (1) Novo Point, the actual party to the domain name

assignment and transfer agreements; (2) Jeffrey Baron, the apparent owner of Novo Point who

has been embroiled in years of litigation in Texas and who the Texas courts have characterized

as a "vexatious litigant"; (3) Damon Nelson, the permanent manager of Novo Point and

signatory of the domain name assignment and transfer agreements; and (4) Peter Vogel, the

court-appointed Receiver for Novo Point.

### 1.     Novo Point

Plaintiff offers no proof that it is the successor-in-interest to Novo Point.  Moreover,

given the complicated history of the *Netsphere* litigation giving rise to the issues at bar, it is

unclear how Novo Point could have transferred any domain names without any approval from the Northern District, and Plaintiff has not provided any order authorizing such transfer to itself of any assets of Novo Point or Baron.  In any event, Novo Point is required as the actual party to the domain name assignment and transfer agreements.  *See Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 261 (N.D. Tex. 2014); *In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005) ("A determination of ownership to assets allegedly transferred between a buyer and a seller should not be attempted without both parties to the transaction being before the court.").

Plaintiff has not identified, nor are Defendants aware of, any order by the Fifth Circuit or Northern District to unwind any transactions or the order authorizing sale of domain names entered during the Receivership.  Indeed, *Netsphere I*, 703 F.3d at 313, states otherwise.  To the extent there is a question of the validity of the assignments of the domain names, Novo Point remains a necessary party.  Indeed, Plaintiff punctuated the folly of its attempt to litigate this case without Novo Point.  Plaintiff alleges that its "predecessors-in-interest" include Novo Point LLC.  Amended Complaint ¶ 97 (Dkt. 15).  Yet Plaintiff stated in the related *in rem* action that, prior to March 25, 2016, Plaintiff had "**never before seen any of the agreements** that purported to transfer or assign any of the domain names from Novo Point to others during the Receivership."  Plaintiff's Opposition to Certain Defendants' Motion to Dismiss at 2-3, *Associated Recovery LLC v. Does 1-44*, No. 1:15-cv-1723, Dkt. 36 (E.D. Va. Apr. 5, 2016) (emphasis added).  Similarly, Plaintiff characterizes this case as "simply one where a plaintiff's property was taken" and "plaintiff is seeking to get its improperly taken property back." *Id.* at 11. But in those statements, the "plaintiff" is Novo Point, not Associated Recovery.

### 2. Jeffrey Baron

Plaintiff alleges that Baron is the predecessor-in-interest of Novo Point and of Plaintiff, and that Baron was responsible for acquiring the subject domain names.  Amended Complaint

¶ 133; *see in rem* Amended Complaint at ¶ 3 (admitting same).  Plaintiff further suggests that

Baron is the party actually in control of Novo Point and responsible for the domain names,

stating throughout the Complaint that Baron and/or Novo Point had ownership rights in the

domain names, and that Baron and/or Novo Point never gave authority for Nelson to act.  *See id.*

Given Baron's close involvement with Novo Point (of which Baron apparently owns a

controlling interest) and the domain names—and given that Baron's litigation misconduct caused

the receivership and, in turn, domain-name sales—he is a necessary party.  *See Jaffer*, 301

F.R.D. at 261.  Indeed, Baron filed the *Vogel* case, which had the same operative facts as this

case, except there Baron attacked the Receiver, while here Baron's proxy attacks the purchasers.

*See generally*, *Vogel I*, 2016 WL 1273465.  And in the *in rem* case already in Dallas, Baron

attended the July 13, 2016 settlement conference as Plaintiff's representative.

### 3.    Peter Vogel and Damon Nelson

Nelson was the manager of Novo Point and the signatory to the domain name

assignments.  As Receiver, Peter Vogel, supervised and authorized Mr. Nelson's activities.  Both

should be joined, given that they are the parties who purportedly "wrongfully transferred" the

domain names.  Amended Complaint ¶ 3; *see Jaffer*, 301 F.R.D. at 261.  Like Novo Point,

Nelson, and Vogel are indispensable parties.  "[P]recedent supports the proposition that a

contracting party is the paradigm of an indispensable party."  *Nat'l. Union Fire Ins. Co. v. Rite*

*Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000).  Complicating this analysis, however, is the

Northern District's recent *Vogel I* decision, which dismissed Baron's claims against Vogel and

held that Vogel's actions were consistent with his charge and not subject to collateral attack.

*Vogel I*, 2016 WL 1273465 at *6.  The same logic likely applies to Nelson, who was manager

under Vogel's supervision and whose actions were also subject to the Northern District's review.

*See Netsphere II*, 2013 WL 3327858, at * 18;  *Netsphere III*, 2015 WL 140043, at *2.

Accordingly, as a matter of law, neither Vogel nor Nelson is likely available as a party this lawsuit.  *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *Vogel I*, 2016 WL 1273465 at *5 ("Vogel and Gardere are entitled to immunity in connection with their administration of the receivership as long as they were acting pursuant [to] the receivership order(s) entered by Judge Furgeson."). Where necessary parties are indispensable but  unavailable, dismissal is proper under Rule 12(b)(7).  *See LST Financial, Inc. v. Four Oaks Fincorp, Inc.*, No. 14-cv-435, 2014 WL 3672982 (W.D. Tex. Jul. 24, 2014).

### E.    The Court Should Dismiss This Action for Improper Venue.

Defendants move the Court to dismiss this action pursuant to Rule 12(b)(3) because Plaintiff has intentionally filed it in this Court despite the Northern District's explicit retention of exclusive jurisdiction regarding this dispute.  Plaintiff was certainly aware that the Honorable Sam Lindsay has expressly retained jurisdiction of the allegations made in this matter. *Netsphere III*, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015).  In fact, Plaintiff spends nearly three full pages in its Amended Complaint (Dkt. 15 at 21-24) setting out its somewhat skewed factual recitation of the Northern District litigation history.  Nonetheless, Plaintiff fails to inform this court in its Amended Complaint of the Northern District's specific retention of jurisdiction for these claims:

> The court shall retain **exclusive jurisdiction** of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, or **any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals**.

*Netsphere III*, 2015 WL 1400543 at 10 (emphasis added).  This current action is a "controversy that arises from or relates to the prior receivership and/or the actions of the receiver and his professionals."  Plaintiff cannot reasonably dispute this fact, since it alleges that the sales of the domain names at issue in this case were made by the Receiver.

A sale of property in receivership pursuant to an order of the court having jurisdiction of the parties and subject matter may be attacked only by a suit brought directly for that purpose in that court. All parties to the suit must be made parties to the attack on a receiver's sale to make it a direct attack. See generally 64 Tex. Jur. 3d RECEIVERS § 138. Moreover, Plaintiff cannot establish venue in this District under 28 U.S.C. § 1391(b)(1) because not all Defendants are residents of Texas; nor can it avail itself of 28 U.S.C. § 1391(b)(3) because, pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events giving rise to the litigation occurred in the Northern District of Texas. Thus, this Court is not a court of proper venue for this matter. Accordingly, Defendants seek dismissal of this matter under Rule 12(b)(3). The Northern District of Texas is the only proper court to hear this case based on its retention of exclusive jurisdiction of all matters arising out of the receivership sale.

**F.      Alternatively, the Court Should Transfer this Action to Dallas.**

Alternatively, the Court may and should transfer this case to Judge Lindsay in the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and/or § 1406(a). On a motion to transfer for convenience, the court considers two broad categories of factors: (1) the convenience of the parties and witnesses, and (2) the interests of justice. *Atlantic Mar. Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S.Ct. 568, 581 (2013).

**1.      Convenience of Witnesses and Parties**

As set out above, there is a long history of litigation in the Northern District involving these claims and Plaintiff's predecessors, Novo Point and Baron. Baron resides in Dallas County, Texas, and Novo Point regularly transacted business in and availed itself of courts located within the Northern District. Novo Point and Baron, as well as the Receiver and his agents will be essential witnesses in this case, especially on the issue of whether or not Plaintiff even has standing to bring the claims it has brought against Defendants.

25

The Receiver and Mr. Nelson, like Baron, reside in the Northern District, and they are outside the non-party subpoena range for deposition testimony in this district.  Further, the Receiver was engaged by order of the Northern District, and the domain sales complained of in this action were specifically authorized by an order of the Northern District.  These sales all occurred in the Northern District, and that court ordered the Receiver to "store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court."  *See Netsphere III*, 2015 WL 1400543 at *10.  Thus, the books and records associated with the sales now complained of here are all held and stored in the Northern District.

## 2.      The Interests of Justice

Perhaps more compelling for the transfer of this matter to the Northern District than even the convenience of the witnesses is the overriding interest of justice given the lengthy history of litigation involving Plaintiff and its predecessors.

The Northern District has dealt with the *Netsphere* litigation and all of its offshoots since 2009, and it is most familiar with the facts and parties at issue here. This very case arises out of the Northern District's appointment of the Receiver and the Receiver's actions taken pursuant to the order granting the Receiver the ability to sell the subject domains.  The Northern District— Judge Lindsay in particular— has been so involved in these exact issues that it retained exclusive jurisdiction to deal with these disputes.  In fact, even when Plaintiff tried to file the *in rem* action relating to certain domain names in the Eastern District of Virginia, that court immediately transferred that matter to the Northern District, where that case remains pending.

This action is a collateral attack on the orders of the Northern District and the Fifth Circuit.  Transferring this matter to the Northern District will avoid any inconsistent rulings regarding the effect of the receivership, which is again at issue in this case, just as it remains in the in rem proceeding.  Given the lengthy case history and continued litigation in the Northern

District, the interests of justice strongly favor transfer of this case to the Northern District, as well.  Accordingly, if the Court declines to dismiss this matter for improper venue, Defendants respectfully request that the case be transferred to the Northern District for further proceedings.

## IV.     CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's claims with prejudice or, in the alternative, transfer this action to the Northern District of Texas.  Defendants respectfully reserve the right to seek fees and costs.

Dated:  September 1, 2016                    Respectfully submitted


By: */s/ Steven M. Geiszler*
   Steven M. Geiszler
   Texas Bar No. 24032227
   DENTONS US LLP
   2000 McKinney Avenue, Suite 1900
   Dallas, Texas 75201-1858
   T: (214) 259-0951
   steven.geiszler@dentons.com
   *Counsel for Creation Media, LLC; Unicorn*
   *Ranch, LLC (successor to Onig, LLC); Adam*
   *Strong; Strong, Inc.; True Magic, LLC; and*
   *Virtual Investments, LLC*


By: */s/ Bobby Lamb (w/permission SMG)*
   Bobby Lamb
   GILLAM & SMITH
   303 S. Washington Avenue
   Marshall, Texas  75670
   T: (903) 934-8450
   wrlamb@gillamsmithlaw.com
   *Counsel for Power Home Technologies, LLC*


By: */s/ M. Scott Fuller (w/permission SMG)*
   M. Scott Fuller
   LOCKE LORD LLP
   2200 Ross Avenue, Suite 2800
   Dallas, Texas  75201
   T:  (214) 740-8601
   sfuller@lockelord.com
   *Counsel for CBRE Group, Inc.*


By: */s/ Brian H. Pandya (w/permission SMG)*
   Brian H. Pandya
   WILEY REIN LLP
   1776 K Street NW
   Washington, DC  20006
   T:  (202) 719-7457
   bpandya@wileyrein.com
   *Counsel for Telepathy, Inc.*


By: */s/ R. William Beard, Jr. (w/permission SMG)*
   R. William Beard, Jr.
   SLAYDEN GRUBERT BEARD PLLC

28

401 Congress Avenue, Suite 1900
Austin, Texas  78701
T:  (512) 402-3556
wbeard@sgbfirm.com
*Counsel for State Farm Mutual Automobile*
*Insurance Company*

By: */s/ Franklin M. Smith (w/permission SMG)*
Franklin M. Smith
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan  48084
T:  (248) 433-7393
fsmith@dickinsonwright.com
*Counsel for Priveco, Inc.*

By: */s/ Jennifer P. Ainsworth (w/permission SMG)*
Jennifer P. Ainsworth
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
(903) 509-5000 Main
(903) 509-5001 Direct
(903) 509-5092 Fax
jainsworth@wilsonlawfirm.com
*Counsel for Tumult, Inc.*

By: */s/ Darin M. Klemchuk (w/permission SMG)*
Darin Michael Klemhuck
KLEMCHUK LLP
Campbell Centre II
8150 North Central Expressway, 10th Floor
Dallas, Texas  75206
T:  (214) 367-6000
darin.klemchuk@klemchuk.com
*Counsel for Radical Investments Management,*
*LLC*

By: */s/ Mark Levine (w/permission SMG)*
Mark Levine
WEYCER, KAPLAN, PULASKI & ZUBER P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas  77046
T:  (713) 961-9045
mlevine@wkpz.com
*Counsel for Quinn Veysey*

29

By: */s/ Joel Boehm (w/permission SMG)*
Joel Christian Boehm
WILSON SONSINI GOODRICH & ROSATI
900 South Capital of Texas Hwy
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
T:  (512) 338-5400
jboehm@wsgr.com
*Counsel for Slice Technologies, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2016 I caused the foregoing document to be

served on counsel of record via the Court's CM/ECF system.

*/s/ Steven M. Geiszler*
Steven M. Geiszler

101238003

30