**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**Marshall Division**

| | |
|---|---|
| ASSOCIATED RECOVERY, LLC, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Case No. 2:16-cv-00126-JRG-RSP |
| | ) |
| LINDA BUTCHER *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**BUYERS INTERNATIONAL GROUP. LLC'S MOTION TO DISMISS,**
<u>**OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**</u>

Plaintiff Associated Recovery, LLC ("Associated Recovery") responds in opposition to
Defendant Buyers International Group LLC's ("BI") Motion to Dismiss, or in the Alternative,
Motion to Transfer Venue (the "Defendant's Motion" or "Motion to Dismiss").  Dkt. 89.

## I.      Introduction

The Defendant tries to employ the all too familiar litigation tactic of poisoning the well,
recounting at length irrelevant aspects of procedural history and quoting what Defendant surely
hopes will be incendiary comments from that history that will warp this Court's view of Plaintiff
and its predecessors.  But, cutting through the layers of muck contained in the Defendant's Motion,
this case is really very simple.  Whatever one may think about the other cases in which the Plaintiff
or its predecessors have been involved, there can be no serious dispute that this relatively
straightforward case rests on solid ground.

It simply cannot be disputed that the Fifth Circuit invalidated the district court's order
approving sales of the domain names.  The Fifth Circuit *expressly invalidated* that Order.  (*See*

1

Fifth Circuit Appeal No. 11-10290; Composite Exhibit 1, attached hereto.)[1]  Despite that ruling, the domain names have never been returned to the original owners of the domain names, or their successors (i.e., to the Plaintiff).  The Plaintiff, on behalf of itself and its predecessors, wants the domain names back.  That perfectly reasonable objective, which flows directly from the Fifth Circuit's ruling, is all that this case is about.  It is no more complicated than that, although the Defendant is certainly trying to muddy the waters with extensive and oft-times frankly misleading recitations of mainly irrelevant historical facts.  The Plaintiff trusts that the Defendant will not so easily distract or color this Court's view of this simple straightforward case.

It is a well-settled and long-standing principle that equity "will not suffer a wrong without a remedy." *Jones v. Campbell-Taggart Associated Bakeries*, 63 F.2d 58, 60 (5th. Cir. 1933).  And yet, that is precisely the way Defendant would have it – a wrong without a remedy – even in the face of the Fifth Circuit's prior ruling invalidating the order approving the sale of the domain names to which the Defendant now claims an interest.  Whatever else the Fifth Circuit said or meant, it plainly and indisputably found that the district court abused its discretion in attempting to exercise jurisdiction over the domain names.  In light of the ruling, it is utterly untenable and, indeed, impossible to suggest that panel somehow affirmed an order by which the district court exercised jurisdiction over those same domain names.  Indeed, the Fifth Circuit *expressly*

---

[1] Appeal of the Order Appointing the Receiver was given USCA 5 case number 10-11202.  Appeal of the Order purporting to authorize the sale of the domain names, which was later consolidated with 10-11202 (as were many other appeals), was given USCA 5 case number 11-10290.  As can be seen by Composite Exhibit 1, the Fifth Circuit issued its mandate in 11-10290 expressly reversing the Order approving the sale of the domain names.  The case number assignments can be confirmed by going to the district court docket for 3:09-cv-988 in the Northern District of Texas and looking at docket number 288 (order approving sale of domain names); 341 (notice of appeal for docket number 288); and the entry dated 04/05/2011, reporting that the Fifth Circuit had assigned case number 11-10290 to the notice of appeal at docket entry 341.

*invalidated* that Order.  This conundrum presents an analytical bind from which the Defendant cannot free itself.

## II.    The Plaintiff's Claims Rest on Solid Legal Ground, Namely, the Fifth Circuit's Ruling in *Netsphere*

Before addressing the numerous misguided arguments in the Defendant's Motion to Dismiss, the Plaintiff thinks it particularly important to understand that this case rests on solid legal footing.  The indisputable legal basis for the Plaintiff's primary claim for a return of the domain names involves only a small fraction of the prior procedural history of the Plaintiff's predecessors, rather than the needlessly extensive recitation contained in the Defendant's Motion. Specifically, the only relevant history relates to the order by which the district court established the receivership ("the Receivership Order"), the order by which the district court purported to approve the sale of the domain names ("the Sale Order"), and the Fifth Circuit's subsequent decision upon the appeal of these two (and numerous other) orders.

Even the relevant facts from this procedural history are few and relatively easy to understand.  The district court entered the Receivership Order, by which the district court sought to exercise jurisdiction over assets and entities that were not before the court; Plaintiff's predecessors appealed.  *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).  The district court entered the Sale Order, by which the district court, once again, purported to exercise jurisdiction over assets and entities that were not before the court; Plaintiff's predecessors appealed.  (*See* Fifth Circuit Appeal No. 11-10290; Composite Exhibit 1, attached hereto.)  The Fifth Circuit consolidated the appeals (with others that were taken from other orders in the *Netsphere* matter). *Netsphere*, 703 F.3d at 301. The Fifth Circuit ultimately found that the Receivership Order was outside the district court's jurisdiction and vacated that order.  *Netsphere v. Baron*, 703 F.3d 296 (5th Cir. 2012).  The other district court orders then fell with the Receivership Order.  In respect

to the order permitting the sale of domain names the Fifth Circuit issued a judgment holding that "the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." *Id.* In light of the lack of district court's lack of jurisdiction over the domain names, the Fifth Circuit *expressly reversed* the Order approving the sale of the domain names. As a matter of simple logic, there is no way the Fifth Circuit could have done otherwise in light of its conclusion that the district court lacked jurisdiction over the domain names, though many Defendants seem to harbor the unfounded, illogical, demonstrably false notion that the Sale Order somehow survived in the aftermath of the *Netsphere* opinion.

The Fifth Circuit's rationale for invalidating the Receivership bears noting: "No relief of this character has been thought justified in the long history of equity jurisprudence." *Netsphere*, 703 F.3d at 309 (internal citation omitted). Never. Not once in the entire "long history of equity jurisprudence" has anyone ever produced even a single authority that supported the district court's decision to strip assets away from entities that were not even before the court – assets that themselves were not even in a part of the underlying dispute that *was* before the court – and order those assets sold. The Fifth Circuit's reversal of the Sale Order completely debunks a primary recurring theme throughout the Defendant's Motion to Dismiss, a theme that forms a central component of most if not all of the arguments the Defendant advances. Once that basic irrefutable fact is acknowledged and realized, the bulk of the arguments in Defendant's Motion fall of their own weight. Having established that its claims stand on the solid legal underpinning of the Fifth Circuit's *Netsphere* opinion, the Plaintiff turns now to the serial scattershot makeweight arguments advanced in BI's Motion to Dismiss.

### III.    Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction Fails.

Defendant spends a little over one page arguing that this matter should be dismissed as to BI because, BI contends, the court lacks personal jurisdiction over the company.  Only two short paragraphs actually contain argument about the issue; the other two address service of process and the provision of the long-arm statute pursuant to which service was effected.  The Motion, however, does not suggest that service was improper, insufficient, or otherwise inadequate.  Furthermore, the Motion does not cite Rule 12(b)(5), which provides for challenges to the sufficiency of service.  Thus, although the Motion contains some discussion of service, Defendant's Motion does not challenge the adequacy of service.  This response confines itself to the arguments Defendant actually does make about personal jurisdiction.  As to those arguments, Defendant's Motion is insufficient to warrant dismissal.

As an initial matter, BI's Motion speaks out of both sides of its mouth.  BI argues that it is not subject to personal jurisdiction in Texas.  Yet, in other places, BI asserts that this case should be transferred to the Northern District of Texas.  Indeed, BI claims, quite stridently and in support of numerous arguments, that the claims in this case can only be brought in the Northern District of Texas.  BI cannot simultaneously argue on the one hand that a federal court in Texas cannot exercise personal jurisdiction over the company and on the other hand that the court should transfer the case to another federal court in Texas that BI affirmatively argues is the only court in the nation that does have jurisdiction.  In light of BI's admitted willingness to litigate in another federal court in Texas, it can hardly be said to violate due process to require BI to defend in this Court.

Indeed, under BI's argument, BI can never be sued regarding the domain names; exclusive jurisdiction rests in the Northern District of Texas (according to BI), but BI is not subject to personal jurisdiction in Texas.  That proposition cannot be accepted.  BI's argument that the case

should be transferred to the Northern District can only be understood as a consent to litigate in Texas. *See First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 752 n.6 (5th. Cir., 2013) ("a party's agreement to arbitration in a jurisdiction could only be understood as waiving jurisdictional arguments for that jurisdiction"); *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th. Cir., 2006) (by consenting to a particular order, party "waived any potential personal jurisdiction argument").

Indeed, this is the only way to construe the effect of the arguments in Defendant's Motion. If this Court were to transfer the case to the Northern District pursuant to BI's express request that it do so, BI could not be heard to later complain on appeal that the Northern District lacked personal jurisdiction over it; given BI's argument and request for the transfer, that issue would necessarily have to be waived. *Ids.* Having chosen to so consent, BI cannot cherry-pick which Texas federal courts it will litigate in – agreeing to litigate in some while attempting to preserve a personal jurisdiction defense to litigating in others. For personal jurisdiction purposes, Texas is Texas. *Central Freight Lines Inc. v. Apa Transport Corp.*, 322 F.3d 376, 381-82 (5th Cir., 2003) (conducting personal jurisdiction analysis by reference to contacts "with the State of Texas").

Aside from this patent contradiction in BI's Motion, BI supports its "lack of personal jurisdiction" argument with an affidavit from one of its managers, attesting to several facts that, in sum, amount to testimony that BI does not have and never has had a presence in Texas. While BI's misguided argument may well defeat any effort to exercise general jurisdiction over BI, Plaintiff is not asking the court to exercise general jurisdiction over BI. There is no allegation in the Amended Complaint (as there is with some other Defendants) that BI has, or in the past has had, a continuous or systematic presence in Texas. *See Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th. Cir., 2013) ("For general personal jurisdiction, a plaintiff makes

6

the requisite showing when that defendant's contacts are 'continuous and systematic,' so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum.").

In the absence of general jurisdiction, however, the court may exercise specific personal jurisdiction over a defendant.  *See id*.  Notably, Defendant's Affidavit contains little testimony about any factors that go to establishing (or negating the existence of) specific jurisdiction.  There are no facts about the particulars of the transactions by which Defendant came to own the domain name, other than the identity of the party from whom Defendant obtained the domain name.  We do not know whether any of the documentation or discussions between the parties to the transaction put Defendant on notice of the potential connection to Texas or the possibility of lawsuits in this state.  Defendant's Motion merely states in conclusory fashion, with no analysis, that Defendant does not have minimum contacts with the State of Texas and the exercise of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  Defendant actually cites to its Affidavit in support of this contention, although the Affidavit itself does not address either.

The domain names were sold pursuant to an order (later reversed) entered by the Northern District of Texas.  The individual that sold the domain names (unlawfully) was based in Dallas.  Although Defendant was not the initial transferee of the domain names, the forgoing facts are sufficient, or at least should be sufficient, to make the necessary showing at the pleadings stage.  *See Walk Haydel & Associates v. Coastal Power Prod.*, 517 F.3d 235, 241 (5th. Cir. 2008).  At the pleadings stage, the Plaintiff need not prove personal jurisdiction by even a preponderance of the evidence; all Plaintiff need do is make out a prima facie case.  *Id.*  The Fifth Circuit has explained:

> When the defendant disputes the factual bases for jurisdiction, … the court may receive interrogatories, depositions, or "any combination of the recognized methods

of discovery" to help it resolve the jurisdictional issue. The court has discretion as to the type and amount of discovery to allow. But even if the court receives discovery materials, *unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts. Moreover, at this stage the plaintiff is required to present only a prima facie case for personal jurisdiction.* The Ninth Circuit has explained why:

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. *Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.*

*Id.*

That is precisely what BI is doing here; attempting to obtain a dismissal by the simple expedient of submitting its own affidavit without having ever given Plaintiff an effort to gather any evidence on the subject.  The cases above demonstrate the clear impropriety of that approach and establish that, if the court is inclined to consider the merits of BI's argument, Plaintiff is, at the very least, entitled to have discovery on the issue.  BI is certainly free to renew its challenge to personal jurisdiction at a later date, should the facts established in discovery warrant such a motion. To the extent that the Court might be willing to consider Defendant's Motion sufficient to adequately raise the issue at this stage of the proceedings, Plaintiff respectfully requests that it be allowed to conduct jurisdictional discovery prior to any hearing or ruling on this issue.  *See Walk Haydel*, 517 F.3d. at 241.  Given the above undisputed facts, there is at least enough smoke here to justify investigating whether there is a fire.  *Id.* (in conducting the personal jurisdiction analysis at the pleadings stage, the court interprets everything in the plaintiff's favor).  Plaintiff is not and should not be compelled to accept the contentions in Defendant's affidavit at face value, especially when they say so little about factors relevant to specific jurisdiction and contain no attachments

by which to analyze the testimony provided in the affidavit.  *Id.* (court may allow discovery on the jurisdictional issue if there is a dispute).  As neither Plaintiff nor its predecessors was party to the transaction with BI, Plaintiff can offer no more at this point by way of affidavit or documentation or otherwise.  If the Court is inclined to entertain the argument at this stage, further development of the facts is necessary.  But Plaintiff submits that BI's necessary consent to personal jurisdiction in Texas is sufficient to defeat its argument.

## IV.     The Defendant's Challenges to Venue Do Not Pass Scrutiny

The Defendant's first attack on venue is based on a provision from a prior order issued by the Northern District of Texas:

> The court shall retain exclusive jurisdiction of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.

*Netsphere v. Baron*, 2015 U.S. Dist. LEXIS 39735 (N.D. Tex. Mar. 27, 2015) (hereafter, *Netsphere III*).   While the Defendant prefers to emphasize the language following the final comma in the quoted paragraph, the Defendant conveniently overlooks the introductory language that precedes the list of matters over which the district court purported to retain exclusive jurisdiction.  "The court shall retain exclusive jurisdiction *of this*...."  The current case is separate from *Netsphere*. The simple fact that some of the historical facts are taken from *Netsphere* does not transmute the current case to bring it within the scope of "this case" as that term is used in the subject order. Moreover, the district court itself has already expressly realized that, in light of the Fifth Circuit's ruling and remand, it has no jurisdiction "over any claims and disputes regarding ownership of the receivership" assets - which is precisely what this current case is about.  (Exhibit 2, N.D. Texas, Dkt. 1368, PageID # 65785).

Furthermore, to the extent that this action could otherwise be thought to be within the scope of the district court's retention of jurisdiction, the district court's order would plainly be invalid. None of these parties, their predecessors, or the subject domain names was properly before the district court in *Netsphere*, which was the primary point of the *Netsphere* opinion.  The district court cannot "retain" jurisdiction over parties or assets over which it never properly acquired jurisdiction in the first place.[2]  It would first have to "obtain" jurisdiction in order to "retain" it. Having never had jurisdiction to institute the Receivership in the first place, it is absolutely illogical to think that the district court can "retain" a jurisdiction it never had in order to preside over disputes concerning a receivership it had no jurisdiction to establish in the first place.

The case law confirms this basic common sense proposition.  As the Supreme Court itself has explained, "the doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters . . . that are incidental to other matters *properly before them*."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) (emphasis added).  Here, the domain names were never "properly before" the Northern District; the district court never had jurisdiction over the Receivership assets and abused its discretion in instituting the Receivership in the absence of such jurisdiction.  The district court simply cannot retain a jurisdiction it never had.[3]  If Defendant contends otherwise, it is the Defendant's burden, as the party asserting that jurisdiction is proper

---

[2]  Plaintiff's predecessor-in-interest, Novo Point, LLC, was never a party to the *Netsphere* case.

[3] As the Supreme Court made clear in *Kokkonen*, situations in which a court purports to retain jurisdiction as the Northern District is an effort by the court to extend its exercise of jurisdiction to "ancillary suits" and are therefore analyzed under the doctrine of ancillary jurisdiction.  511 U.S. 375.  ("A bill filed to continue a former litigation in the same court . . . to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties . . . or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court, . . . is an ancillary suit") (quoting *Julian v. Central Trust Co.*, 193 U.S. 93, 113-14 (1904) (internal citations omitted)).

in the Northern District, to establish such a contention.  *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010).  ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (quoting *Kokkonen*, 511 U.S. at 377).)

Furthermore, the current dispute does not even fit within the language emphasized by the Defendant.  Any actions by the Receiver are merely background in this case.  There is no claim against the Receiver in this action.  That case is currently pending on appeal in the Fifth Circuit. *See* USCA 5 Case No. 16-10556.  This case involves the erroneous actions *of the district court* in exercising jurisdiction of assets over which it did not have jurisdiction and allowing those assets to be improperly sold.  Indeed, one of the Receiver's main defenses, and the one upon which the district court granted the Receiver's motion to dismiss, is that the Receiver is entitled to judicial immunity because he was only doing what the district court authorized him to do.  This case also involves the actions of the Defendants in continuing to assert ownership interests in domain names that were effectively stolen from Mr. Baron, Novo Point, LLC, and Quantec, LLC, and that the Defendants acquired by virtue of undeniably unlawful (and thus unauthorized) sales.  In light of the district court's erroneous decision to allow the wrongful sale of those assets, Associated Recovery, as successor in interest, seeks return of the domain names.  That is all.

Relying on 28 U.S.C. § 1404(a), the Defendant next argues that this Court should transfer venue to the Northern District of Texas for the convenience of the witnesses and the parties.[2]  The

---

2 The Defendant also states in cursory fashion – with no citation to any authority and no analysis whatsoever – that the Plaintiff has not pled sufficient facts to bring the case within the proper venue in this Court.  The Defendant is flat wrong.  Its singular and unsupported cursory statement is plainly insufficient to establish any impropriety of venue in this Court.  As the Defendant did not see fit to dedicate much effort toward this argument despite the fact that Defendant bears the burden of making the requisite showing to justify a transfer of venue, Plaintiff similarly gives it short shrift.

Defendant's arguments on this point, however, are greatly exaggerated.  The relevant and central legal and factual issues have already been mainly decided.  *See* Discussion, *supra*.  The district court abused its discretion in establishing the Receivership, as not a single authority in the entire history of equity jurisprudence could be found to support institution of the Receivership.  In light of that fact, irrefutably established at this point, the Fifth Circuit expressly invalidated the Receivership Order and the Sale Order.  While there may well be other facts to be developed in discovery with respect to the other causes of action, those facts are at the heart of this suit.

The Defendant has not clearly demonstrated the "good cause" that is necessary for the Court to disregard the Plaintiff's choice of venue and cannot come close to doing so.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th. Cir. 2008).  "[W]hen the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.*  The Defendant's Motion does not even so much as pay homage to this showing that it must necessarily make in order to obtain the transfer the Defendant so desperately seeks. Indeed, the Defendant's Motion does not mention or argue many of the factors that this Court must consider in addressing a transfer motion.   Since the Defendant bears the burden of clearly demonstrating good cause for a transfer, the Defendant can only be properly understood as having conceded a majority of the relevant factors:

> The private interest factors are:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004). . . .  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*In re Volkswagen of Am. Inc.*, 545 F.3d at 315 (internal citations omitted).

The Defendant couches its arguments under general headings that do not track these factors, making it difficult to tell to which factors the Defendant's arguments apply. Regardless, the arguments the Defendant does make are not the least bit compelling and do not make out a clear case of good cause for upsetting the Plaintiff's choice of forum. Indeed, some of Defendant's arguments are difficult to take seriously. For example, under its heading for "Convenience of Witnesses and Parties" (a section of only two paragraphs), the Defendant oddly suggests that this Court is inconvenient for the Plaintiff and/or its predecessors. The Plaintiff – to state the obvious – chose the forum. One would be justified in assuming that the forum is not overly inconvenient for the Plaintiff or its predecessors. To the extent necessary, the Plaintiff affirmatively waives any claim that this Court is an inconvenient forum for itself or its predecessors.

With respect to the Receiver and those located in and around the Dallas area, Marshall is no more than a two-hour drive from Dallas – hardly an extreme inconvenience, much less an extreme burden, and far short of a showing that Dallas is "clearly more convenient" than this Court. All discovery (e.g., depositions) will take place where the witnesses are. The Defendant disingenuously cites only one issue, namely, the standing issue, as one on which the Dallas-area witnesses will be "essential witnesses." Aside from the fact that the Plaintiff plainly has standing, the standing issue will be decided on dispositive motion with supporting affidavits. The Receiver, of course, will not be required to travel to Marshall for that purpose, nor will any of the other witnesses. Beyond that, the Defendants are spread out all over the country (and perhaps internationally). There is no reason to think that for the vast majority of the Defendants the Northern District of Texas is any more convenient than the Eastern District of Texas.

The Defendant also observes in the "convenience" section of its Motion that "all books and records of the Receivership estate" are maintained by the Receiver in the Northern District of

Texas.  The Plaintiff is confident that the location of the books and records will not pose a problem for obtaining that proof.  *See* FED. R. CIV. P. 45.  The Defendant likewise observes that the Receiver and the Manager (Mr. Nelson) reside in the Northern District "outside the non-party subpoena range for deposition testimony in this district."  Again, the Plaintiff is confident that the Receiver's and the Manager's deposition testimony can be easily secured by the simple expedient of issuing a subpoena from the district court with jurisdiction to enforce it.  *See* FED. R. CIV. P. 45.

The balance of the Defendant's arguments about the "convenience of the witnesses and the parties," such as it is, sounds the familiar refrain that the Northern District already has history with the Plaintiff's predecessors.  The bulk of this notion is dispelled above.  The current parties have not been before the Northern District.  The issues facing the Court in this case are not at all complicated or complex, and they have either not been decided by the Northern District or have already been decided by the Fifth Circuit in a manner favorable to the Plaintiff.  The Northern District is no better position than this Court to simply read the Fifth Circuit's opinion and give it the legal effect it deserves.

The Defendant's Motion then turns to the "interests of justice."  This section does little more than repeat the familiar refrain that the Northern District has history with these issues and with the Plaintiff's predecessors.  At the risk of sounding like a broken record, the Defendant's argument is grossly exaggerated and overstated.  The relevant facts and legal issues that form the basis of the claim for equitable relief (i.e., return of the domain names) have been decided by an authority higher than the Northern District.  Thus, this case will involve very little of the "lengthy history of litigation" upon which the Defendant relies in suggesting that the interests of justice weigh in favor of a transfer.  To the extent the Defendant merely repeats other arguments in this section of its Motion (e.g., that the Northern District retained jurisdiction or that this action

14

"appears to be a collateral attack" on the orders of the Northern District), those arguments have already been addressed and refuted elsewhere in this brief.  The Northern District never had any jurisdiction to retain, and this case is an effort to *enforce* the Fifth Circuit's ruling, not collaterally attack it.

In addition to the fact that there is no particularly compelling reason for this Court to think any prior proceedings should weigh in favor of a transfer, it bears noting that this case involves other claims and that none of the Defendants has been involved in the Northern District proceedings.  Thus the legal and factual issues surrounding those claims are no more familiar to the Northern District of Texas than they are to this Court.  And with respect to the equitable claim for recovery of the domain names, there is likewise no compelling reason for this Court to defer to the Northern District.  The relevant proceedings in the Northern District have already been to the Fifth Circuit, which reversed the Northern District's orders.  The Northern District is in no better position to understand and implement that fact than this Court.

Turning back to the factors that this Court considers on a motion to transfer venue, it becomes readily apparent why the Defendant did not address them specifically.  There is no complicating factor with respect to access to sources of proof; no argument or issue made regarding the cost of attendance for willing witnesses; no suggestion that any factors make trial in this Court impractical; no suggestion of any administrative difficulties that would result from court congestion; no suggestion or argument that this Court is not sufficiently local to qualify as an essentially local forum with respect to the underlying dispute; no convincing argument that this Court is not sufficiently familiar with the basic legal principles, whether legal or equitable, that will govern this dispute; and no suggestion that the case will present difficult conflict of laws

issues.  The Defendant cannot possibly make the necessary clear showing of good cause for transfer of venue when it fails to acknowledge or address the vast majority of relevant concepts.

## V.     Collateral Estoppel

The Defendant's Motion next turns its attention to the doctrine of collateral estoppel.  Once the underlying proceedings upon which that defense is premised are properly and fully understood, the Defendant's collateral estoppel argument is revealed as indefensible.  First and foremost, the Plaintiff's predecessors *won* the Netsphere appeal.  *See* Discussion, *supra*.  It makes no sense whatsoever to speak of collaterally estopping a winning party from reaping the fruits of victory.  *See, e.g., Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir. 1986).  ("Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated *and lost*" (emphasis added) (internal citation omitted).)

Furthermore, the issues here are not the same as in *Baron v. Vogel*, 2016 U.S. Dist. LEXIS 44294 (N.D. Tex. Mar. 31, 2016) (hereafter, *Vogel I*).  The issue in *Vogel I* is whether the Receiver engaged in wrongful conduct that subjects him to liability.  The district court dismissed the case primarily on immunity, and the case is now on appeal to the Fifth Circuit.  (*See* Fifth Circuit Appeal No. 16-10556.)  Even so, further review confirms that the issues are not the same in the two suits.  There is no way the Plaintiff or its predecessors could have sought return of the domain names in the *Vogel I* action.  Mr. Vogel does not currently claim an ownership interest in the domain names.  And indeed, it was not even Vogel himself who purported to sell the domain names; they were unlawfully sold by Damon Nelson, the court-appointed Manager.  Mr. Nelson is not a party to the *Vogel* action.  The point remains, however, that even if he were a party to *Vogel* for some reason, neither he nor Vogel claims any interest in the subject domain names.  Thus, there was not and

16

could not have been any claim for affirmative injunctive relief against Mr. Vogel or Mr. Nelson seeking to have the court order either to return ownership of the domain names to the rightful owners.  Only a suit against the current parties who currently claim an ownership interest can effectuate that relief.

All of which brings up two additional reasons why collateral estoppel cannot apply – no issues have been litigated in *Vogel I*, and the decision there is not final.  *See Kariuki v. Tarango*, 709 F.3d 495, 506 (5th. Cir. 2013) (for collateral estoppel to apply to an issue, it "must have been *fully and vigorously* litigated in the prior action") (emphasis added); *American Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 (5th Cir. 2005) (where case was settled and dismissed, the issues were not "actually litigated" for purposes of collateral estoppel doctrine); *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319-20 (4th Cir. 2002) (issues involved in a default judgment were not "actually litigated"); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981) ("general rule is that if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court"); *Scurlock Oil Co. v. Smithwick*, 724 S.W. 2d 1, 5-6 (Tex., 1986) (action on appeal is not final, a rule that applies even in federal court when the appeal could result in a reinstatement of all issues for a trial de novo).

Additionally, the district court's order dismissing *Vogel I* arguably rests on a few alternative grounds (although that is not altogether clear and may be clarified on appeal), a fact that complicates the analysis of whether any particular issue was "necessary to the court's judgment" for collateral estoppel purposes.  *Hicks, supra*.

Overall, many Defendants (including now BI) have asserted or are certainly expected to repeat the familiar refrain that this case is a "collateral attack" on the Northern District of Texas and the Fifth Circuit.  That claim is utter nonsense.  This case is nothing more than an effort *to get*

*the benefit of* the Fifth Circuit's prior *Netsphere* ruling, not attack it.  *See* Discussion, *supra*.  There

is literally nothing left to do but give the Plaintiff the benefit of its victory.  And to the extent that

anyone might be inclined to think that this case is a collateral attack on an order of the Fifth Circuit

(which is actually untenable), the Northern District of Texas is in no better position to understand

what the Fifth Circuit said than this Court is.  Indeed, in light of the tumultuous dealings in the

*Netsphere* litigation, it indeed may be preferable for a "fresh set of eyes" to consider this case.[3]

Nor is there any possibility of "inconsistent judgments."  The Defendant simply fails to

understand, come to grips with, or acknowledge that the Fifth Circuit has already decided the

largely dispositive legal issue.  The Defendant's willful blindness is disturbing at best.  The Fifth

Circuit has ruled.  Now the Plaintiff is entitled to get back the wrongfully sold domain names.

## VI.    Subject Matter Jurisdiction and Standing

Even assuming that a Rule 12(b)(1) motion is the proper mechanism for raising a standing

argument premised on a collateral estoppel argument, which is not at all clear, there is plainly

subject matter jurisdiction in this Court.  *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley*

*Real Estate Advisor, Inc.*, 614 Fed. Appx. 690, 698 n.7 (5th Cir. 2015).  ("We need not decide

whether Rule 12(b)(1) – as opposed to Rule 12(b)(6) or Rule 56 – is the appropriate procedural

vehicle for raising this issue of collateral estoppel" under the rubric of standing.)  One of Plaintiff's

claims is premised on a federal statute (the anticybersquatting statute), so at the very least, the case

is within the federal question of subject matter jurisdiction of the Court.  28 U.S.C. § 1331.  The

---

3 The intense history of the *Netsphere* matter appears to have led to inaccurate decisions and orders
from the Northern District, orders other than the institution of the Receivership.  For example, in
some of those orders, the district court made "factual findings" that the Fifth Circuit held were
plainly not supported by any record evidence.  *See, e.g., Netsphere*, 703 F.3d at 308.  ("We do not
. . . find evidence that Baron was threatening to nullify the global settlement agreement by
transferring domain names outside the court's jurisdiction.")

Amended Complaint further rests on 28 U.S.C. § 1338(a), 28 U.S.C. § 1367, and 28 U.S.C. §§ 2201 and 2202, all of which would also support federal question jurisdiction.

To the extent that the Defendant's argument of "lack of subject matter jurisdiction" turns on the argument that the Plaintiff lacks standing, the argument fares no better. The Defendant's argument begins with the assertion that the Plaintiff suffered no injury. This argument begins with the proposition that, although the Fifth Circuit reversed the Receivership, the sale of the domain names took place pursuant to a separate order. The Defendant conveniently overlooks the fact that, since the Fifth Circuit invalidated the Receivership Order because the district court lacked jurisdiction over the domain names, it also *expressly reversed* the Sale Order.

Moreover, the injury to the Plaintiff is obvious. The Fifth Circuit declared that the district court abused its discretion because that court could not lawfully exercise jurisdiction over the assets at issue (i.e., the domain names). Thus, those assets should have never been taken from Mr. Baron or the entities in which he holds an interest and should never have been sold. They should have been and should still be the property of Mr. Baron, the entities in which Mr. Baron claims an interest, or any entities that received the assets from one or more of those rightful owners (e.g., Plaintiff). The Plaintiff's injury is that the Defendant currently claims an ownership interest in a domain name that, by virtue of the Fifth Circuit's *Netsphere* opinion, properly belongs to the Plaintiff. The Plaintiff's injury is caused by the Defendant's assertion of and refusal to yield those claims to ownership of the domain names. And an order mandating the return of those domain names would redress the injury. The Plaintiff can easily establish the three elements of standing - injury, causation, and redressability. *See, e.g., Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th. Cir. 2009) (standing requires only that a plaintiff (1) have suffered an injury, (2) that was caused by the defendant, and (3) that the court is capable of issuing an order that will redress the injury).

Furthermore, it is textbook, black letter law that should hardly need a citation to any authority that the district court cannot do anything, "implicitly" or otherwise, to contravene the Fifth Circuit's ruling. *Ayestas v. Stephens*, 817 F.3d 888, 899 (5th Cir. 2016) ("[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues *expressly or impliedly decided* by the appellate court" (emphasis added) (internal citation omitted)).   In light of that ruling, any effort by the district court at any time to exercise any jurisdiction over the subject domain names is necessarily invalid, null, and void. *Id.*   At any rate, during the proceedings upon which the Defendant relies, the district court was doing nothing more than allocating the costs and fees of the wrongful Receivership.   It was not and could not have been doing anything that in any way implied that the Sale Order was valid or that it had jurisdiction over them.   The Fifth Circuit effectively said to the Northern District that "you had no jurisdiction to establish the Receivership, now undo it and use your equitable discretion in allocating fees and expenses."   That is *Netsphere* in a nutshell.   The only thing the district court had authority to do on remand was to *undo* the Receivership, nothing more.   And critically, the funds in the Receivership were not generated entirely by the wrongful sale of the domain names.

To the extent that any of the remaining arguments are premised on the Sale Order, those arguments must fall for the reasons given above.   The Fifth Circuit expressly invalidated that Order.   That Court really had no choice but do so after it concluded that there was not a single authority in the entire history of equity jurisprudence that supported the district court's effort to exercise jurisdiction over the domain names.

In yet another effort at countering the notion that the Defendant caused the Plaintiff (and its predecessors) an injury, the Defendant argues, relying on certain portions of the *Netsphere* opinion, that any injury the Plaintiff's predecessors sustained was self-inflicted.   That argument is

another ill-considered red herring.  Mr. Baron's conduct could not possibly have expanded the district court's jurisdiction.  *Cf. Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) (reviewing Supreme Court cases establishing the proposition that "jurisdiction cannot exist by mere consent of the parties").  If it could, and had the facts of the case justified it, the Fifth Circuit would have affirmed the Receivership Order.  Jurisdiction is a legal concept, not an equitable one.  And it is a black letter law that legal constraints do not bow to equitable considerations.  *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("Judicial estoppel, as an equitable remedy, must be consistent with the law"); *In re Daves,* 770 F.2d 1363 (5th Cir. 1985) ("Equity follows the law . . . ." (internal citation omitted)).  Despite the observations relied on by the Defendant, the Fifth Circuit found that the district court lacked jurisdiction over the domain names and invalidated both the Receivership Order and the Sale Order.  The observations upon which the Defendant relies were made in the context of the Fifth Circuit's discussion about how to charge the fees and expenses *in light of the wrongful establishment of the receivership.*  It is completely unthinkable that the Fifth Circuit, in making these observations and ruling on the proper allocation of expenses, somehow blessed or otherwise approved the Sale Order that it expressly reversed.  This suit is nothing more than the necessary and logical expression and consequence of that ruling.

## VII.    The Plaintiff Sufficiently States Claims for Relief

The Defendant next argues that this matter should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).  This argument is nothing more than a rehashing of the baseless argument that the case is barred by collateral estoppel – an argument that simply cannot fly in light of *Netsphere*.  By way of response, the Plaintiff incorporates everything that has already been said on that issue, most importantly that Plaintiff's predecessors cannot even conceivably be collaterally attacking an

Order that granted them victory.  Moreover, not only are Plaintiff's claims plausible, the legal basis

of those claims is effectively undeniable.  *Netsphere* established the Plaintiff's right to the domain

names – period.  The Plaintiff here has stated a claim for injunctive relief premised on the necessary

and only logical reading of the *Netsphere* opinion.  That certainly must state a claim.

In support of its collateral estoppel argument, the Defendant purports to rely on *Netsphere*

*I, II, and III,* as well as *Vogel*.  The collateral estoppel argument based on *Netsphere I* has been

repeatedly addressed and debunked *ad nauseum* herein.  *Netsphere v. Baron*, 2013 U.S. Dist

LEXIS 94308 (N.D. Tex. Jan. 7, 2013) (hereafter, *Netsphere II*) and *Netsphere III* which were

district court proceedings conducted after the remand of *Netsphere I*, could not have done anything

to affect the legal validity of the claims asserted herein.  The claims here are premised on the Fifth

Circuit's *Netsphere I* holding, which the district court was precluded from altering in any way on

remand.  *See* cases discussing the mandate rule, *supra*.  Moreover, the district court did not purport

to make any rulings regarding its jurisdiction over the domain names and certainly did not attempt

to reauthorize any sales.  Each of the passages relied on by Defendant merely related to the district

court's rulings regarding allocation of fees for the wrongfully instituted Receivership.  The issue

of whether the Receiver (or anyone else) was entitled to fees, and what the proper allocation of

costs was, is an entirely separate issue from the issues presented here.

As to *Vogel*, many of the reasons it has no collateral estoppel effect in this case have already

been set out and are incorporated herein.  *Vogel* was about judicial immunity as well as whether

the defendants there (including the Receiver) engaged in wrongful or sanctionable conduct in the

*Netsphere* cases.  *Baron v. Vogel*, U.S. Dist. LEXIS 44294 (N.D. Tex. Mar. 31, 2016).  Neither of

these issues is identical to the issues in this case.  This case is about **the return of property to its**

**rightful owner**.  And, as noted above, Mr. Vogel is not even the individual who purported to

effectuate the sales; Mr. Nelson did that, and he is not a party to the *Vogel* suit.  The crux of this case is that the sales of the domain names at issue may be set aside as void, since they were conducted solely due to an Order which was found to lack subject matter jurisdiction. And not only are the actual issues and causes of action in *Vogel* and this case facially distinct, but the legal standards applied are different as well.  This is important since "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same."  *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1306 (2015) (quoting 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4417, p. 449 (2d ed. 2002)).  *See also Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013), and *Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.8 (5th Cir. 1971)).

In the portions of the *Netsphere* opinion relied on by Defendant, the Fifth Circuit found that there was no precedent establishing how fees and costs would be handled in a situation where the district court lacked jurisdiction to establish the receivership and initiation of the receivership was not provoked by any particular party.  *Netsphere*, 703 F.3d 311-12.  It ultimately concluded that the matter was one of equity.  *Id.* at 312.  The lack of jurisdiction may have been a factor that was argued in the weighing of the equities but, as per the Fifth Circuit, it was not and could not be dispositive as to the allocation of fees and expenses.  That is not the issue here.  Jurisdiction is not based on equitable concepts.  The issue here is primarily about return of the domain names – an issue that was not and could not have been at issue in *Vogel*.

Moreover, the Plaintiff is not here challenging the Receiver's actions per se.  The Plaintiff is seeking to receive the rightful benefit of the successful *challenge to the district court's actions* and to retrieve the subject domain names from the entities that continue to wrongfully withhold them.  *Netsphere I*, 703 F.3d at 312 ("[Appellants] overlook the fact that, though it is true that one

who invokes without sufficient equitable grounds the administration by a receiver of the property of another may be in a proper case held accountable for the costs and expenses of the receivership and for losses which the receivership has visited upon the property, *the appointment of a receiver is at last the court's appointment*; the administration, its administration" (emphasis added)).

Furthermore, the remedies sought in this case and the primary operative facts upon which the claims rest have nothing to do with whether the Receiver acted as part of a conspiracy or in bad faith or otherwise unlawfully.  Had the Receiver acted in a perfectly lawful and professional manner, the Plaintiff would still be entitled to a return of the domain names, all of which were sold pursuant to the district court's wrongful attempt to exercise jurisdiction over parties and assets over which it lacked jurisdiction.  In sum, this case is entirely about the undisputed and indisputable rulings by the Fifth Circuit about lack of jurisdiction, not about the Receiver's actions per se.

## VIII.   All Necessary Parties Have Been Joined

In its "kitchen sink" approach to its Motion to Dismiss, the Defendant next argues that the case should be dismissed for failure to join multiple necessary parties.  As a starting point, the Defendant argues that the Plaintiff's predecessors in interest (i.e., the assignors, Novo Point and Mr. Baron) are necessary parties.  Nothing could be farther from truth.  The Assignors are only necessary and indispensable parties primarily where the assignor has repudiated the agreement or the assignment has yet to be fully performed.  *See Overseas Dev. Disc Corp. v. Sangamo Const. Co., Inc.*, 686 F.2d 498, 505 n.18 (7th Cir. 1982).  ("Unless local law qualifies the rights of the assignee (e.g., of certain tort claims), or the assignor has repudiated the assignment, or the assignment is wholly executory, the assignor is not an indispensable (Rule 19(b)) party.  Even where the assignment is partial, the assignor and the assignee may be necessary parties, but they will not be indispensable (Rule 19(b)) parties.")  *See also Phoenix Insurance Company v. Woosley*,

24

287 F.2d 531, 533 (10th Cir. 1961) (only "parties claiming an interest in the indebtedness are

necessary parties"); and *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 819-20 (9th Cir., 1961)

("Professor Moore states flatly that a partial assignee of a chose [sic] in action, though a necessary

party, is not an indispensable party").   As can be seen from these authorities and others, the

Defendant simply cannot make the showing necessary to obtain dismissal on the basis of

nonjoinder.   At the very least, the authorities firmly establish that an assignor is not an

indispensable party:

> If joinder of a "necessary" party under Rule 19(a) is not feasible, the court consults
> Rule 19(b), which "requires courts to consider whether, 'in equity and good
> conscience,' the party is one without whom the action between the remaining
> parties cannot proceed – or, in the traditional terminology, whether the absent party
> is 'indispensable.'"   *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d
> Cir.2013) (quoting FED. R. CIV. P. 19(b)).   "Federal courts are extremely reluctant
> to grant motions to dismiss based on nonjoinder and, in general, dismissal will be
> ordered only when the defect cannot be cured and serious prejudice or inefficiency
> will result."   7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE &
> PROCEDURE § 1609 (3d ed. 2015).

*Am. Trucking Ass'ns v. N.Y. State Thruway Auth., N.Y. State Canal Corp.*, 795 F.3d 351, 357 (2nd

Cir. 2015).   *See also U.S. v. San Juan Bay Marina*, 239 F.3d 400, 405 (1st Cir. 2001) (in conducting

Rule 19 analysis, the court first determines whether person is necessary under subsection (a), and

then whether the person is indispensable under subsection (b)).   Moreover, even if the absence of

the identified parties were serious enough to warrant further scrutiny, which it is not, there is no

reason to think that the issue cannot be easily cured or that serious prejudice or inefficiency would

result from their absence.   Complete relief can certainly be afforded among the parties that are

currently before the Court.   FED. R. CIV. P. 19(a)(1)(A).

The above-referenced holdings make perfect sense because the whole point of the

"necessary party" rule is to prevent defendants from being subjected to multiple lawsuits which

could subject them to inconsistent results.   FED. R. CIV. P. 19(a)(1)(B)(ii).   Once all rights have

been fully and completely assigned, however, the assignee takes subject to all defenses that would be applicable against the assignor, *Kroeplin Farms General P'ship v. Heartland Crop Ins.*, 430 F.3d 906, 911 (8th Cir. 2005) (stating, "The assignee stands in the same shoes as the assignor. . . . An assignee can obtain no greater rights than the assignor had at the time of assignment" and citing RESTATEMENT (SECOND) OF CONTRACTS § 336(2) and other authorities for the proposition that an assignee is subject to defenses that could have been asserted against its assignor at the time of assignment). *See also, e.g., Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725 (5th Cir. 2010) ("An assignee is also subject to any defenses, limitations, or setoffs that could be asserted against the assignor's rights") (internal citations omitted). The assignor – having assigned all his rights – no longer has any basis upon which to bring suit and cannot claim any interest in the contract being litigated. FED. R. CIV. P. 19(a)(1)(B) (to be a required party, person must "claim[] an interest related to the subject of the action"). "When a contract right is assigned, the assignor's right to performance by the obligor is extinguished and the assignee acquires that right. . . . Where there is an unconditional assignment, an assignee can recover on an assigned right against the obligor, but the assignor cannot." *Kroeplin Farms*, 430 F.3d at 911 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 331).

As to Mr. Vogel and Mr. Nelson, it is inconceivable that they could be either necessary or indispensable. In their absence, the Court can clearly afford complete relief among the existing parties. FED. R. CIV. P. 19(a)(1)(A). While they may certainly be fact witnesses (although that is itself questionable since the Fifth Circuit has already decided the central legal issue), neither claims any interest in the domain names that are the subject of this lawsuit at all, much less an interest that meets the criteria of subsections (a)(1)(B)(I) and (ii). FED. R. CIV. P. 19(a)(1)(B). Tellingly, while the Defendant cites some authorities for general and otherwise unremarkable principles of

26

law, it does not cite a single case that holds that a Receiver or his underlings (e.g., Mr. Nelson, the manager) is a necessary party to any kind of case.  While the Defendant contends that it would basically be unfair to force the Defendant to stand trial in a posture in which it could be held "solely responsible for actions taken by the Receiver," the Defendant makes no effort to explain how this case would subject it to the potential for inconsistent judgments.  To the extent that the Defendant may wish to bring an action against the Receiver for indemnity, that cause of action is not ripe until, at the very earliest, this case ends. *Marathon E.G. Holding Ltd. v. CMS Enterprises Co.*, 597 F.3d 311, 320-21 (5th Cir. 2010) (explaining the two types of indemnity under Texas law, one of which accrues when "liability becomes fixed and certain, as by rendition of a judgment" and the other of which accrues only when the party is "compelled to pay the judgment or debt").  The indemnity lawsuit against Mr. Vogel, once ripe, can certainly be brought as an independent action.

There is no basis to conclude that any of the persons or entities identified by the Defendant are necessary or indispensable.  Rule 19 thus has no bearing on this case, either by way of the dismissal requested by Defendant or otherwise.

## IX.    This Action Is Not Precluded by Statute of Limitations

The Defendant contends that several claims in the amended complaint should be dismissed pursuant to the applicable statutes of limitations.  Specifically, the Defendant targets the claims for conversion, misappropriation, declaratory judgment, and unjust enrichment.  "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944 (5th Cir. 2014).  Even assuming that the statute of limitations proffered by the Defendant are correct, it is *not* evident from the pleadings that the action is time-barred or that the pleadings fail to raise some basis for tolling.  A crucial part of the claims identified by the

Defendant is that the Sales Order was void in light of the Fifth Circuit's holding in *Netsphere*. *See supra*. The mandate for the Fifth Circuit's holding did not occur until April 19, 2013, but the last challenge to the Fifth Circuit was not disposed of until November 4, 2014 (the last denial of a petition for writ of certiorari) and the Receivership was not wound down until March 27, 2015. "Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his rights." *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5th Cir. 1998). While the Receivership was still in the process of being wound down, Plaintiff's predecessors were expressly prohibited from hiring any counsel or pursuing any legal actions. *See* Exh. 3. Furthermore, when the domain names were sold, the Receiver did not disclose the identity of the domain name sold or the registrants. The domain name identifications were actually redacted from the filings that were made and never disclosed to Baron or any Receivership party. *See, e.g.,* Exh. 4. Discovery of the relevant information did not occur until much later. These facts represent significant impediments to bringing suit earlier and justifies tolling of the limitations periods that may be otherwise applicable.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff submits that the Defendant's Motion should be denied in its entirety.

Date:  September 12, 2016                              Respectfully submitted,


  /s/  Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)
Paul Grandinetti
Rebecca J. Stempien Coyle
LEVY & GRANDINETTI
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Telephone (202) 429-4560
Facsimile (202) 429-4564
mail@levygrandinetti.com

**Attorneys for the Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, I electronically filed the foregoing document

with the clerk of court for the U.S. District Court, Eastern District of Texas, Marshall Division,

using the electronic case filing system of the court.  Pursuant to Local Rule CV-5, this

constitutes service on the following counsel:

Jason Richerson
Richerson Law Firm
306 East Randol Mill, Suite 160
Arlington, TX 76011
Telephone (214) 935-1439
Facsimile (214) 935-1443
info@richersonlawfirm.com

Jennifer Lee Taylor
Morrison & Forester LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone (415) 268-7000
Facsimile (415) 268-7522
jtaylor@mofo.com

Darin Michael Klemchuk
Aaron Douglas Davidson
Corey Jennifer Weinstein
Klemchuk LLP Dallas
Campbell Centre II
8150 North Central Expressway
10th Floor
Dallas, TX 75206
Telephone (214) 367-6000
Facsimile (214) 367-6001
darin.klemchuk@klemchuk.com
aaron.davidson@klemchuk.com
corey.weinstein@klemchuk.com

James Mark Mann
Mann Tindel & Thompson
300 W. Main
Henderson, TX 75652
Telephone (903) 657-8540
Facsimile (903) 657-6003
mark@themannfirm.com

Joel Christian Boehm
Wilson Sonsini Goodrich & Rosati Austin
900 South Capital of Texas Highway
Las Cimas IV
Fifth Floor
Austin, TX 78746-5546
Telephone (512) 338-5400
Facsimile (512) 338-5499
jboehm@wsgr.com

R William Beard, Jr.
Slayden Grubert Beard PLLC
401 Congress Avenue, Ste. 1900
Austin, TX 78701
Telephone (512) 402-3556
Facsimile (512) 402-6865
wbeard@sgbfirm.com

Steven M. Geiszler
Dentons US LLP
2000 McKinney Avenue, Ste 1900
Dallas, TX 75201-1858
Telephone (214) 259-091
Facsimile (214) 259-0910
steven.geiszler@dentons.com

Debra Elaine Gunter
Findlay Craft PC
102 N College Avenue
Suite 900
Tyler, TX 75702
Telephone (903) 534-1100
Facsimile (903) 534-1137
dgunter@findlaycraft.com

Jennifer Parker Ainsworth
Wilson Robertson & Cornelius PC
909 ESE Loop 323
Suite 400
P.O. Box 7339
Tyler, TX 75711-7339
Telephone (903) 509-5000
Facsimile (903) 509-5092
jainsworth@wilsonlawfirm.com

Mark Jeffrey Levine
Weycer Kaplan Pulaski & Zuber
Eleven Greenway Plaza, Suite 1400
Houston, TX 77046-1104
Telephone (713) 961-9045
Facsimile (713) 961-5341
mlevine@wkpz.com

Michael Edward Hassett
Jones Hassett PC
440 North Center
Arlington, TX 76011
Telephone (817) 265-0440
Facsimile (817) 265-1440
mhassett@joneshassett.com

Brian H Pandya
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Telephone (202) 719-7457
Facsimile (202) 719-7049
bpandya@wileyrein.com

Barry M Golden
Goldfarb LLP
2501 N. Harwood Street, Suite 1801
Dallas, TX 75201
Telephone (214) 583-2233
Facsimile (214) 583-2234
bgolden@goldfarbpllc.com

William Robert Lamb
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone (90) 934-8450
Facsimile (903) 934-9257
wrlamb@gillamsmithlaw.com

 /s/  Luiz Felipe Oliveira
Luiz Felipe Oliveira  (Reg. No. 5349923)