IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-126-JRG-RSP |
| | § | |
| LINDA BUTCHER, ET AL., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT, LOOKOUT, INC.'S MOTION FOR SANCTIONS AGAINST
PLAINTIFF, ASSOCIATED RECOVERY, AND PLAINTIFF'S ATTORNEYS,
AND SUPPORTING BRIEFING**

1. Defendant, Lookout, Inc. ("Lookout"), asks the court to sanction plaintiff's attorneys, their law firms, and plaintiff, Associated Recovery, LLC, itself, ("Associated Recovery") for violation of Fed. R. Civ. Proc. 11(b) and 28 U.S.C. §1927.

Introduction

2. As addressed more fully in Lookout's motion to dismiss this case under Rule 12(b), the Northern District of Texas, Dallas Division, the Honorable Sam A. Lindsey, dismissed *with prejudice* Associated Recovery's predecessors-in-interest's claims against the receiver. Associated Recovery stands in no better position in this case against the receiver's purchaser than Associated Recovery's predecessors did in their dismissed case against the receiver, himself. Yet, Associated Recovery has persisted in opposing dismissal of this action under Rule 12(b)(1) for lack of standing, based upon Associated Recovery's purported assignment of just such barred claims.

3. Furthermore, as addressed more fully in Lookout's motion and reply, Judge Lindsey repeatedly has refuted in his opinions in *Netsphere, Inc. v. Baron* and in *Baron v. Vogel* the

plaintiff's contention that the Fifth Circuit Court of Appeals' vacatur of the receivership also set aside the domain name sales in question. Yet, Associated Recovery has persisted in opposing dismissal of this action under Rule 12(b)(6) for failure to state a claim, based upon just such repeatedly refuted contention.

4. Additionally, as addressed more fully in Lookout's motion to dismiss, Lookout was a third-party purchaser in an arms-length transaction for value of the domain name rights from the receiver while the asset was in receivership, and thus stands in an even stronger legal position than the receiver did. Lookout received title to the rights to the domain name, regardless of the pendency of an appeal and regardless of the subsequent reversal of the receivership order, since there was no stay of the receivership in effect at any time and since the receivership sales were never set aside. Yet, Associated Recovery has persisted in opposing dismissal of this action under Rule 12(b)(6), based upon the same refuted contention regarding the effect of the court of appeals' vacatur of the receivership.

5. Lookout asserts that persistent untenable opposition to these matters by Associated Recovery's attorneys as well as by Associated Recovery, itself, constitutes sanctionable violation of Rule 11(b). Lookout, thus, in accordance with Rule 11(c), brings this motion for sanctions separately from its motion to dismiss under Rule 12(b). Lookout also certifies that it provisionally served this motion for sanctions on Associated Recovery and that Associated Recovery has not withdrawn or otherwise appropriately corrected within 21 days of such service its opposition to Lookout's motion to dismiss.

6. Lookout further asserts that persistent untenable opposition to these matters by Associated Recovery's attorneys also constitutes sanctionable violation of 28 U.S.C. §1927, for which Lookout additionally brings this motion for costs and expenses including attorney's fees.

## Summary of Argument

7. Associated Recovery's baseless lawsuit against Lookout is an improperly harassing and needless increase in litigation, for which Associated Recovery and its attorneys jointly are subject to the imposition of appropriate sanction against them for violation of Rule 11(b)(1).

8. Additionally, Associated Recovery's legal contention – that the Fifth Circuit Court of Appeals' opinion reversed the domain name rights sales, themselves, and that the purchasers have no legal title to the domain name rights – is unwarranted by existing law since it is contrary to the court of appeals' opinion and the subsequent district court proceedings interpreting such legal effect of the opinion. Associated Recovery's attorneys therefore are subject to the imposition of appropriate sanction against them for violation of Rule 11(b)(2).

9. Additionally, Associated Recovery's factual contention - that Associated Recovery acquired any interest or right in the subject domain names by assignment from its predecessors-in-interest, or that Associated Recovery acquired any right to sue to recover the subject domain names or damages - has no evidentiary support since Associated Recovery's predecessor assignors had no interest in or right to the subject domain names to transfer at the time of the purported assignment. Associated Recovery, itself, therefore is subject to the imposition of appropriate sanction against it for violation of Rule 11(b)(3).

10. Furthermore, Associated Recovery's attorneys separately are responsible for their unreasonable and vexatious multiplication of the underlying litigation by the filing of this frivolous lawsuit against Lookout, for which Associated Recovery's attorneys are subject to sanction for violation of 28 U.S.C. §1927.

11. Lookout suggests as an appropriate sanction against Associated Recovery the court impose a nonmonetary directive such as a prohibitory or mandatory injunction against any

further legal action, or else a monetary directive such as an order to pay a penalty into court. Additionally, Lookout requests the court award jointly against Associated Recovery and its attorneys Lookout's reasonable attorney's fees and other expenses as well as costs of suit.

12. Alternatively, the court is urged to issue an order requiring a designated representative of Associated Recovery to appear at an evidentiary hearing and to show cause why its conduct in authorizing the bringing of the instant lawsuit has not violated Rule 11(b).

Argument

I. Legal Standards for Imposition of Sanctions under Rule 11

A. Rule 11 Sanctions Generally

13. The Fifth Circuit Court of Appeals implied in its opinion that the district court should have considered sanctions under Rule 11 against Jeffrey Baron as an alternative to a receivership over him and his related entities such as Novo Point, LLC. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. [Tex.] 2012), citing *Woodson v. Surgitek, Inc.*, 57 F.3d 1406 (5th Cir. [Tex.] 1995), and *FDIC v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. [Tex.] 2008). In *Woodson v. Surgitek*, the court of appeals recognized that when parties or their attorneys engage in bad faith conduct, a court ordinarily should rely on the Federal Rules as the basis for sanctions, such as Rule 11. 57 F.3d at 1418. In *FDIC v. Maxxam*, the court of appeals considered that Rule 11 should be relied on as such a basis for sanctions since it had gained considerable "bite" when it was expanded by amendment to require that a party, when presenting a pleading before the court, certifies specific representations about the asserted matter, violation of any one of which representations provides an independent basis for sanction. 523 F.3d at 577. Furthermore, as Judge Lindsey noted in his memorandum opinion and order dismissing with prejudice the removed separate state court action against the receiver, any contention that a party engaged in

wrongful conduct should be brought to the court's attention in a Rule 11 motion. Case no. 3:15-CV-232-L, court docket doc.#49, pg.20-21, *Baron v. Vogel*, 2016 U.S. Dist. LEXIS 44294 at *20-*21 (N.D.Tex. Mar. 31, 2016) (Doc#66, Exh. #5).

14. Lookout, therefore, is doing just that, bringing Associated Recovery's wrongful conduct to the court's attention in a Rule 11 motion. As specifically noted in *FDIC v. Maxxam, supra,* Fed. R. Civ. Proc. 11 provides in pertinent part:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

The Notes of Advisory Committee on Rules - 1993 Amendment to Rule 11, *Re Subdivisions (b) and (c)*, are quite extensive and are particularly instructive in this matter of the imposition of sanctions under Rule 11. The Notes of Advisory Committee at ¶5, for example, state that the rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." *See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 732 F.Supp.2d 653, 666 (N.D. Tex. 2010) (quoting note of advisory committee). The Notes of Advisory Committee at ¶7 further state that "[m]oreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." It is just such persistence by Associated Recovery in asserting its unsupportable contentions in this case that is the essence of a sanctionable violation.

*See Barrett-Bowie v. Select Portfolio Servicing, Inc.*, 631 Fed. Appx. 219, 221 (5th Cir. [Tex.] 2015) (continuing to oppose motion constitutes sanctionable failure to withdraw unsupportable claims).

B. Sanctions against Attorney

15. Since Rule 11(a) and (b) address the signing and presentation of a pleading, sometimes by the *pro se* party but usually by an attorney, then Rule 11(c) sanctions ordinarily are directed at the attorney of record. By its terms, Rule 11 imposes at least three affirmative obligations on an attorney who signs a pleading or written motion on behalf of a party: (1) a duty to conduct reasonable inquiry into the facts supporting the document, (2) a duty to make reasonable inquiry into the law supporting that document to ensure that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) a duty not to interpose the document for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 873-74 (5th Cir. [Miss.] 1988). *See also Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. [Tex.] 2001).

16. Furthermore, "the standard under which the attorney is measured [under Rule 11] is an *objective, not subjective*, standard of reasonableness under the circumstances." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. [Miss.] 2003) (en banc) (emphasis original), quoting *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. [La.] 1994). Accordingly, an attorney's good faith will *not*, by itself, protect against the imposition of Rule 11 sanctions. *Childs*, 29 F.3d at 1024. *See also Jenkins v. Methodist Hosps.*, 478 F.3d 255, 264 (5th Cir. [Tex.] 2007).

17. And, "[a]bsent exceptional circumstances, a law firm *must* be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1) (emphasis added).

C. Sanctions against Party

18. The imposition of sanctions, however, is not limited to the attorney of record: "If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both.... Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." *Topalian v. Ehrman*, 3 F.3d 931, 935 (5th Cir. 1993) (quoting notes of advisory committee – 1983 amendment to rule 11). *See also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. [Tex.] 2006), cert. denied by *Skidmore Energy, Inc. v. Maghreb Petroleum Exploration, S.A.*, 549 U.S. 996, 127 S.Ct. 524, 166 L.Ed.2d 371 (2006). The Notes of Advisory Committee on Rules - 1993 Amendment to Rule 11 at ¶14 re-emphasizes that "[t]he sanction should be imposed on the persons - whether attorneys, law firms, or parties - who have violated the rule or who may be determined to be responsible for the violation."

19. Typically, sanctions are levied against a party as opposed to the attorney when the attorney's client misrepresents facts in the pleadings. *Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. [Ga.] 2001). A client is also subject to sanctions, however, when it is clear that he is the "mastermind" behind the frivolous case. *Id*. citing *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. [Ga.] 1991): "Rule 11 . . . requires district courts to sanction attorneys and the parties they are representing when they prosecute baseless claims." *Id*. at 1469.

20. Otherwise, Rule 11 permits a monetary sanction against the attorney, only, and not the party, when the basis for the sanction is a *legally* frivolous pleading as opposed to a *factually*

unsupported pleading. *Byrne v. Nezhat*, 261 F.3d at 1118, fn.85, quoting Rule 11(c)(2)(A): "Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." *See also Marlin v. Moody Nat'l Bank N A*, *infra.* Although, a party still can be monetarily sanctioned for violation of the other subsections (b)(1) and (b)(3), just not for subsection (b)(2) regarding legal contentions. *Skidmore Energy, Inc. v. KPMG, supra.* And, the party still can receive a *non*monetary sanction, in any regard. (See Section E., para.24, below.)

D. Sanctions Jurisdiction / Procedure

21. As a procedural matter, Lookout is required to file its motion for sanctions at this time, before disposition of its motion to dismiss under Rule 12(b), in order to obviate any potential counter-argument based on waiver: "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Notes of Advisory Committee at ¶18. *See also Thomas v. Capital Security Services, Inc.*, 836 F.2d at 879, quoting 1983 note of advisory committee: "[a] party seeking sanctions should give notice to the court and the offending party *promptly* upon discovering a basis for doing so." (emphasis original) Additionally, in the event Associated Recovery may move to voluntarily dismiss its claim against Lookout in any manner, then Lookout asserts that the court retains jurisdiction under the collateral order doctrine over Lookout's motion for sanctions and that the court still may proceed to impose appropriate sanctions on Associated Recovery's attorneys, as the circumstances may warrant. *Ratliff v. Stewart*, 508 F.3d 225, 230 (5th Cir. [Miss.] 2007), quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395-96, 110 S.Ct. 2447, 110 L. Ed. 2d 359 (1990).

22. In any event, once the court determines that a violation of Rule 11 has occurred, the court "shall" impose sanctions. *Thomas,* 836 F.2d at 876. As the court of appeals in *Thomas* aptly

noted, "there are no longer any 'free passes' for attorneys and litigants who violate Rule 11. Once

a violation of Rule 11 is established, the rule mandates the application of sanctions." *Id.*

23. The court of appeals subsequently has enumerated four standards for the imposition

of sanctions based on the general factors set out in *Thomas*:

> [W]e discern four factors which the trial court's findings must reflect, the
> specificity of which is calculated according to *Thomas's* "sliding scale," in
> ordering sanctions:
>
> (1) *What conduct is being punished or is sought to be deterred by the sanction?* It
> is axiomatic that the court must announce the sanctionable conduct giving rise to
> its order.
>
> (2) *What expenses or costs were caused by the violation of the rule?* The district
> court must demonstrate some connection between the amount of monetary
> sanctions it imposes and the sanctionable conduct by the violating party.
>
> (3) *Were the costs or expenses "reasonable," as opposed to self-imposed,*
> *mitigatable, or the result of delay in seeking court intervention?* "A party seeking
> [costs and fees for defending against frivolous claims] has a duty to mitigate those
> expenses, by correlating his response, in hours and funds expended, to the merit
> of the claims," . . . as well as by giving notice to the court and the offending  party
> promptly upon discovering the sanctionable conduct The Court's findings must
> reflect some consideration of the reasonableness of the nonviolating party's
> actions in connection with the sanctionable conduct.
>
> (4) *Was the sanction the least severe sanction adequate to achieve the purpose of*
> *the rule under which it was imposed?*. . . district courts must demonstrate that
> sanctions are not vindictive or overly harsh reactions to objectionable conduct,
> and that the amount and type of sanction was necessary to carry out the purpose
> of the sanctioning provision.

*Topalian v. Ehrman*, 3 F.3d at 936-37 (internal citations omitted).

E. Types of Sanctions

24. Although some sanction for any violation of Rule 11 is mandatory, nonmonetary and

non-compensatory sanctions generally are authorized. *Smith International, Inc. v. Texas*

*Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. [Tex.] 1988), citing *Thomas v. Capital Security*

*Services, Inc.*, 836 F.2d at 878 (a district court must impose sanctions once a violation of Rule 11

is found, but the district court retains broad discretion in determining the "appropriate" sanction

under the rule) (quotation original). This determination of the imposition of "appropriate"

sanctions is often a fact-intensive inquiry, for which the trial court is given wide discretion.

*Mercury Air Group, Inc. v. Mansour*, 237 F.3d at 548, citing *Thomas* at 873. As the advisory

committee explains:

> The rule does not attempt to enumerate the factors a court should consider in
> deciding whether to impose a sanction or what sanctions would be appropriate in
> the circumstances; but, for emphasis, it does specifically note that a sanction may
> be nonmonetary as well as monetary. Whether the improper conduct was willful,
> or negligent; *whether it was part of a pattern of activity*, or an isolated event;
> whether it infected the entire pleading, or only one particular count or defense;
> *whether the person has engaged in similar conduct in other litigation*; whether it
> was intended to injure; what effect it had on the litigation process in time or
> expense; whether the responsible person is trained in the law; what amount, given
> the financial resources of the responsible person, is needed to deter that person
> from repetition in the same case; what amount is needed to deter similar activity
> by other litigants: all of these may in a particular case be proper considerations."

Notes of Advisory Committee at ¶12 (emphasis added). Additionally,

> under unusual circumstances, particularly for [subdivision] (b)(1) violations,
> deterrence may be ineffective unless the sanction not only requires the person
> violating the rule to make a monetary payment, but also directs that some or all of
> this payment be made to those injured by the violation. Accordingly, the rule
> authorizes the court, if requested in a motion and if so warranted, to award
> attorney's fees to another party.

Notes of Advisory Committee at ¶13. *See Skidmore Energy, Inc. v. KPMG,* 455 F.3d at 568:

Rule 11(c)(2) expressly provides that when there is a violation of the Rule, an appropriate

sanction is "an order directing payment to the movant of some or all of the reasonable attorneys'

fees and other expenses incurred as a direct result of the violation." *See also Marlin v. Moody*

*Nat'l Bank N A*, 533 F.3d 374, 380 (5th Cir. [Tex.] 2008). The Fifth Circuit has affirmed that the

least severe sanction that should be imposed for a lawsuit that is wholly frivolous is the

imposition of reasonable attorneys' fees and expenses. *Mercury Air Group, Inc. v. Mansour*, *supra*, citing *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. [Tex.] 1994).

F. Show-Cause Order

25. If, after notice and a reasonable opportunity to respond, the court determines Rule 11 sanctions may be warranted, the court alternatively on its own initiative may issue a show-cause order specifying the offending conduct and, following a response to the show-cause order, then may impose sanctions against the represented party. Fed. R. Civ. P. 11(c)(3). See *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d at 264.


II. Legal Standards for Imposition of Sanctions under §1927

26. A party also may make a request for attorneys' fees and expenses as a sanction under 28 U.S.C. §1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Such a request is similarly part of a court's collateral jurisdiction. *Ratliff v. Stewart*, 508 F.3d at 230; *Jackson Marine Corp. v. Harvey Barge Repair, Inc.*, 794 F.2d 989, 991 (5th Cir. [La.] 1986). Just as with Rule 11, §1927 is concerned with "baseless filings" that "burden[] courts and individuals alike with needless expense and delay," and "a litigant who violates [§1927, like one who violates rule 11,] merits sanctions even after a dismissal." *Ratliff*, 508 F.3d at 232, quoting *Cooter & Gell*, 496 U.S. at 398. When an attorney's conduct is so obviously unreasonable that a court can infer an improper purpose from the fact that the attorney persisted in it, it is not even

necessary for the court to explain at any great length why the conduct constitutes vexatiousness. *Ratliff*, 508 F.3d at 234, citing *Thomas v. Capital Security Services,* 836 F.2d at 883.

27. The Fifth Circuit has concluded, however, that for a motion under §1927 to be successful, there must be at least some "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *In re Sanctions Against Meyers*, *infra*, at *36-*37, citing *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. [Tex.] 1998); also citing *Ingram v. Glast, Phillips & Murray*, 196 Fed. Appx. 232 (5th Cir. [Tex.] 2006).


III. Case-Specific Precedent for Imposition of Sanctions

    A.  The *Meyers* Case

28. The Northern District of Texas, Fort Worth Division, the Honorable John McBryde presiding, recently dealt with a lawsuit under remarkably similar circumstances with similar legal results, the consequence of which was the imposition of sanctions under Rule 11 as well as under 28 U.S.C. §1927: *In re Sanctions Against Meyers*, 2014 U.S. Dist. LEXIS 52820, 2014 WL 1494099 (N.D. Tex. Apr. 16, 2014), aff'd by *Meyers v. Textron Fin. Corp.*, 609 Fed. Appx. 775 (5th Cir. [Tex.] 2015). *Meyers* similarly involved a lawsuit brought by the real parties-in-interest in the name of an LLC, which lawsuit was transferred to Judge McBryde's court in response to a motion filed by the defendant, based on that court having presided over an earlier action on the same claims by the real parties-in-interest that then were asserted in the name of the LLC in the subsequent action. The court granted the defendant's motion to dismiss the subsequent action under Rule 12(b)(6) for failure to state a claim, based on the result in the earlier action and the doctrine of *res judicata*. See *Rocky Mt. Choppers, LLC v. Textron Fin. Corp.*, 2012 U.S. Dist. LEXIS 170937 (N.D. Tex. Dec. 3, 2012). The court then considered the

defendant's separate motion for sanctions. *In re Sanctions Against Meyers*, 2014 U.S. Dist. LEXIS 52820 at *1-*4.

29. The court considered the factors listed by the Fifth Circuit in *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d at 875, used to determine if the attorney complied with the affirmative duties imposed under Rule 11. The court, however, found that the *Thomas* factors did not apply because those factors assume for the most part that if the attorney has made a misrepresentation of fact that it was not an intentional misrepresentation, but rather it was one that possibly was made because of inadequate time for investigation, or of reliance by the attorney upon his client for factual support, or of the infeasibility of a pre-filing investigation, etc. *Id.* at *19. Instead, the court determined from the evidentiary hearings held in its case that the later lawsuit was part of a coordinated effort of the real parties-in-interest and their attorney, that is, that the client had "some direct personal involvement in the management of the litigation and/or the decisions that resulted in the actions which the court finds improper under Rule 11." *Id.* at *23. In that circumstance, Rule 11 authorizes and the Fifth Circuit has approved joint and several liability of the client and the attorney for an award to the defendant of its attorney's fees. *Id.* at *23-*24, citing *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 196, 199 [sic] (5th Cir. [Tex.] 1991); and citing *Independent Fire Ins. Co. v. Lea*, 979 F.2d 377, 379 (5th Cir. [La.] 1992).

30. The court further found that under the circumstances the plaintiff's attorney patently had violated his duty imposed by Rule 11(b)(2) to certify that the claims and legal contentions were warranted by existing law:

> Any practicing attorney, even one with a minimum level of competence, would know that, once the lawsuit by the [real parties-in-interest] against [the defendant] based on [the same claims] was dismissed with prejudice, the [real parties-in-interest] were prohibited by the doctrine of *res judicata* from filing the [later] [l]awsuit against [the defendant] based on the same claims, using the second time,

instead of the [real parties-in-interest], as the name of the plaintiff a shell [LLC] entity wholly owned and controlled by the [real parties-in-interest].

. . .

The [real parties-in-interest] and [their attorney] have failed to make any rational argument in support of a right to file and pursue another lawsuit against [the defendant] based on the same facts that had been alleged in a lawsuit that had been dismissed with prejudice a few months earlier simply by substituting the name of [the LLC] for the [real parties-in-interest] as the plaintiff.

*In re Sanctions Against Meyers*, at *26-*27. *See also Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 346 (5th Cir. [Tex.] 1990) ("A conclusory allegation contrary to current jurisprudence that is made without any support whatsoever does not represent a good faith argument to modify existing law.")

31. In *Meyers*, the court further went on to find that the plaintiff's attorney also had violated the duty imposed by 28 U.S.C. §1927: Although §1927 speaks of vexatious multiplication of litigation, the court held that the section can support an award of attorneys' fees for an entire course of proceedings if the case never should have been brought in the first place, citing *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir. [Tex.] 1983); and citing *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. [Tex.] 1991) (indicating that "when the entire course of proceedings were unwarranted and should never have been commenced nor persisted in," the entire financial burden of an action's defense can be shifted to the plaintiff under §1927). *In re Sanctions Against Meyers*, at *36-*37. The court concluded that §1927 provided an additional reason to hold the client and the attorney jointly and severally liable for an award to the defendant of its attorney's fees. *Id.* at *38.

32. It is the only distinction between the *Meyers* case and the instant lawsuit that this subsequent action by Associated Recovery is against a purchaser from the receiver, as opposed to the receiver, himself, as in the state court lawsuit by Associated Recovery's predecessors-in-

interest. It is the only difference that this subsequent action by Associated Recovery is even less legally viable against Lookout as a purchaser than as against the receiver, because of the purchaser defense available to Lookout in addition to the defense of *res judicata* / collateral estoppel. As Judge McBryde noted, the doctrine of *res judicata* is a well-established fundamental legal precept of American jurisprudence, both federal and state, learned by every first-year law student. Like the Meyers' attorneys, Associated Recovery's attorneys "even . . . with a minimum level of competence" would know that the claims made in the instant lawsuit are barred by the doctrines of *res judicata* and collateral estoppel. Likewise, Associated Recovery's attorneys have failed to make any factually or legally supportable argument to file and pursue another lawsuit based on the same nucleus of operative facts supporting these otherwise barred claims for which Lookout even has an added defense.

B. The *Mercury Air Group* and *Skidmore Energy* Cases

33. In *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542 (5th Cir. [Tex.] 2001), the court of appeals affirmed the district court's granting of summary judgment and awarding of sanctions under both Rule 11 and §1927 against the plaintiff, for filing a 'baseless' lawsuit. The district court in part in support of its award of sanctions noted analogously that the plaintiff, while represented by the same counsel as in the instant case, had filed similar lawsuits in other federal district courts, which lawsuits likewise were dismissed by those courts. 237 F.3d at 548, fn.6. The court of appeals approved the district court's finding under those circumstances, since Rule 11(a)(1) and (3) states that an attorney must not file suit for any improper purpose or without evidentiary support for the allegations contained in the complaint. *Id.* at 548. And, moreover, an attorney must have made a reasonable inquiry into the facts and law of a case at the time at which the attorney affixes the attorney's signature on any papers to the court. *Id.* citing

*Thomas,* 836 F.2d at 884. In short, the plaintiff as well as the attorney in *Mercury Air Group* should have and did know better than to bring such a baseless lawsuit.

34. In *Skidmore Energy, Inc. v. KPMG,* 455 F.3d 564 (5th Cir. [Tex.] 2006), the court of appeals likewise affirmed the district court's awarding of sanctions under Rule 11 against the plaintiff (after having granted defendants' motions to dismiss the complaint), for filing a 'wholly frivolous' lawsuit. In particular, the court of appeals approved the district court's apportionment of sanctions in part against the plaintiff's attorneys and in part against the plaintiff because the complaint was a *factually* as well as *legally* frivolous pleading:

> It sanctioned them for the numerous *factually* groundless allegations in their Complaint, for which clients may properly be sanctioned. Fn.11: *See* FED. R. CIV. P. 11(b)(3) (factual evidentiary support); *see also Byrne,* 261 F.3d at 1118.] The district court observed the "common thread weaving its way through this case … is the puzzling lack of legal *or factual* support articulated for the pleadings," and repeatedly noted "Plaintiffs' failure to articulate any evidentiary support for their claims." . . . The court found "[t]he bulk of Plaintiff[s'] causes of action . . . are without evidentiary support and thus appear to have been 'instigated as a gamble that something might come of it rather than on the basis of the facts at hand.'" [quoting *Johnson v. A.W. Chesterton,* 18 F.3d 1362, 1366 (7th Cir. 1994)] The court awarded sanctions because it found "that reasonable *factual* and legal inquiries would have prevented this suit from being filed."

*Id.* at 568 (emphasis original). The district court after conducting two evidentiary hearings into the matter found the percentage apportionment of responsibility as between the attorney and the party for the award of defendants' attorney's fees as a monetary sanction. *Id.* at 566.

35. Again, the only distinction between these cases and the instant case is without any difference. The instant action by Associated Recovery is just as baseless and wholly frivolous, both factually and legally, as in the *Mercury Air Group* case and the *Skidmore Energy* case. Indeed, to borrow the language from the *Skidmore Energy* case, the common thread weaving its way through the instant case is just as inarticulate a failure of any evidentiary support for the cause of action as in the *Skidmore Energy* case. Both the instant case and the companion case by

Associated Recovery appear to have been 'instigated as a gamble that something might come of it rather than on the basis of the facts at hand.' *Id.*

C. The *Pelletier* Case

36. In *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. [Ga.] 1991), the court of appeals *reversed* the district court's *denial* of a motion for sanctions against the plaintiff, after the district court had disposed of the plaintiff's claims, some on motion to dismiss for failure to state a claim for relief and the remainder by motion for summary judgment. *Id.* at 1470. The court of appeals determined that the claims brought by the plaintiff and his attorney were patently baseless and brought in bad faith. *Id.*

37. The controversy in *Pelletier v. Zweifel* essentially involved the plaintiff's minority stockholder interest in an entity that had filed bankruptcy and the plaintiff's attempts to be made whole in a lawsuit against the majority stockholder's attorney, first in a state court action and subsequently in the federal court action. *Id.* at 1470-71. The court of appeals recounted at great length the convoluted factual history of the matter, which included the underlying bankruptcy filing as well as a prior state court action. *Id.* at 1471-95. The court of appeals then addressed at further considerable length the bases for affirmance of the district court's disposition of the plaintiff's claims, in significant part on the application of the doctrine of *res judicata* to the plaintiff's federal court claims because of the effect of the dismissal *with prejudice* of the prior state court action. *Id.* at 1495-1513. "If a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same "claim" or "cause of action" for purposes of res judicata." *Id.* at 1502, quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502-03 (11th Cir.1990) (internal citations omitted). The *Pelletier* case in a nutshell is very similar in its factual as well as legal

circumstances to the circumstances in the instant case regarding the *Netsphere, Inc. v. Baron* underlying receivership and the *Baron v. Vogel* prior state court action.

38. The court of appeals then went on to address the district court's denial of the defendant's motion for sanctions under Rule 11. *Id.* at 1513-22. The court of appeals held *as a matter of law* that both the plaintiff *and* his attorney should be sanctioned under Rule 11 for filing and pursuing the federal court action:

> We conclude that [plaintiff]'s complaint had no reasonable factual basis when pled and that [plaintiff] and [his attorney] knew this. When they decided to pursue this action despite their knowledge that it was frivolous, they acted in bad faith; they simply demanded from [the defendant's attorney in the federal court action] the redress they had sought and failed to obtain from [the prior defendant in the state court action] on similar meritless claims.

*Id.* at 1514-15. The court of appeals even considered the plaintiff's briefs "unilluminating," that is, doing nothing more than making contentions in a conclusory manner without any clear factual support, *id.* at 1519, just as Associated Recovery's amended complaint does in this case, making contentions in a conclusory manner without any clear factual support. The *Pelletier* case suggests that it would be an abuse of discretion *not* to sanction both Associated Recovery and its attorneys in this case, for persisting in their factually and legally unsupportable action that simply demands from the receiver's purchaser the same redress Associated Recovery's predecessors-in-interest had sought and failed to obtain from the receiver, himself.

D. Other Cases

39. These four cases, above, are not the only pertinent examples, by any means. The imposition of sanctions, particularly in the circumstance of the bringing of a lawsuit barred in whole or in part by application of the doctrine of *res judicata* or collateral estoppel or *stare decisis*, is a relatively common occurrence. *See, e.g., Corpus Christi Taxpayer's Assoc. v. Corpus Christi*, 858 F.2d 973 (5th Cir. [Tex.] 1988) (subsequent federal court lawsuit was barred by

disposition of prior state court action, so persistence in asserting baseless claim was sanctionable under rule 11). *See also Meadows v. Chevron*, 1993 U.S. App. LEXIS 38742 (5th Cir. Tex. Mar. 25, 1993) (lawsuit was precluded by prior opinion construing same deed, so persistence in asserting baseless claim sanctionable under Rule 11) ("because 'a cursory examination of the law' would have shown that [case precedent] foreclosed any chance of success" at *3-*4). *See also Bruno v. Starr*, 247 Fed. Appx. 509 (5th Cir. [La.] 2007) (serial filing of foreclosed claims constituted sanctionable harassment). *Cf. Barrett-Bowie v. AmeriDream Educ. Concepts, LLC*, 2014 U.S. Dist. LEXIS 101041, 2014 WL 3629683 (N.D. Tex. June 23, 2014) (not clear that all claims were *legally* barred, but baseless *factual* allegations were sanctionable under Rule 11).


IV. Analyses

    A. The *Associated Recovery* Case

    40. Associated Recovery on the one hand asserts in its amended complaint that neither it nor its predecessors were privy to the sales and transfers of the domain names at issue. Doc.#15, pg. 22, ¶82. If by its predecessors, Associated Recovery is referring to Novo Point, LLC, and Jeffrey Baron, then they as parties to the *Netsphere v Baron* litigation certainly were aware of the receiver's motions for authority to conduct the sales of domain name rights and of that court's orders approving the sales, generally, as well as they were aware of the receiver's motions and of that court's order approving the receiver's final accounting and payment and discharging the receiver. Furthermore, Novo Point, LLC, and Jeffrey Baron as parties to the *Baron v. Vogel* litigation certainly were aware of the filing of their own subsequent lawsuit against the receiver and of that court's denial of the plaintiffs' motion to remand and granting of the defendants' motion to dismiss with prejudice.

41. Even if Associated Recovery technically was not a party to such prior proceedings, someone on behalf of Associated Recovery at some point had to have made a sufficiently factual inquiry into the sales after the fact, in order to be able to identify the tens of defendants and scores of domain names that are named in Associated Recovery's amended complaint in this lawsuit, doc.#15, as well as in its amended complaint in the companion lawsuit, *Associated Recovery, LLC v. John Does 1-44*. And, someone on behalf of Associated Recovery had to have made a sufficiently factual inquiry into the underlying litigation after the fact, in order to be able to allege the circumstances of the appeal of the receivership order. Doc.#15, pgs.21-22, ¶¶79-82.

42. Associated Recovery on the other hand specifically alleges in its amended complaint that it has done its "due diligence research," doc.#15, pg.22, ¶84. In that case, then, Associated Recovery by its own affirmation is fully aware of all of the prior proceedings involving this matter of the domain name sales in the receivership. Indeed, it is readily apparent that Associated Recovery is cognizant of the circumstances of the underlying receivership litigation, since Associated Recovery specifically references these matters throughout its complaint.

43. To say that Associated Recovery is cognizant of anything is, of course, a legal fiction, just as the existence of Associated Recovery as a Wyoming limited liability company is a legal fiction. *See, e.g., Patent Group, LLC v. Johnny Ray, LLC*, 2010 U.S. Dist. LEXIS 115930, 2010 WL 4287200 (E.D. Tex. Nov. 1, 2010), citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (corporation as artificial entity cannot appear *pro se*). Associated Recovery only can act through its ownership and management personnel and through its authorized representatives, that is, through some individual person who knows what Associated Recovery therefore vicariously knows. That someone is, at the very least, Associated Recovery's attorneys of record as its authorized court representatives, since they are required to

have satisfied their legal duty under Rule 11 to conduct a reasonable inquiry into the facts and the law supporting Associated Recovery's complaint to ensure that it is warranted. And, that someone also should be Associated Recovery's owner and management personnel, since they also are proscribed by Rule 11 from directing the bringing of a baseless lawsuit in Associated Recovery's name for any improper purpose.

44. At any rate, even charitably considering that whatever Associated Recovery through that someone may *not* have known before, Associated Recovery *now* has been put on actual notice of it by Lookout's motion to dismiss and this motion to sanction, as well as by defendants' motions to dismiss in the companion lawsuit and other defendants' motions to dismiss in this lawsuit. Despite such notice and ample opportunity for inquiry regarding the factual and legal precedents of the underlying litigation, Associated Recovery has persisted in its unfounded opposition to Lookout's motion to dismiss.

45. Associated Recovery repeatedly has asserted in its responses in this case that Associated Recovery just seeks the return of the domain name rights. See, e.g., doc.#s 84, 92, 98, 102. Associated Recovery in effect acknowledges that it did not receive by the purported assignment any domain name rights, that at best it received its predecessors' chose in action to sue to recover such domain name rights. See *Associated Recovery, LLC v. John Does 1-44*, case no. 3:16-CV-1025, Plaintiff's Amended Complaint, doc.#76, pgs.28-29, ¶106 allegations re: assignment. But if its predecessors had any such right to sue, that is, any such cause of action to recover the domain name rights, then why did they not recover the domain name rights in the *Netsphere v Baron* litigation? Or, why did they not recover the corresponding damages in the *Baron v. Vogel* litigation? The simple answer is that they were not entitled to do so, and thus Associated Recovery is not derivatively entitled to do so by assignment, either.

B. Pattern of Vexatious Litigation

46. At the outset, Lookout notes that Associated Recovery has been even less candid in this lawsuit than in its companion lawsuit with regard to its predecessors-in-interest. In *Associated Recovery, LLC v. John Does 1-44*, Associated Recovery at least alleges in its amended complaint that Associated Recovery's predecessor-in-interest is Novo Point, LLC, whose predecessor-in-interest is Jeffrey Baron. See case no. 3:16-CV-1025-L doc.#76, pgs.2-3, ¶¶3-4 (Doc#66, Exh. #2).  In this case, Associated Recovery simply alleges that it acquired the domain name rights by assignment, doc#15, pgs.3-4, ¶¶4-5, and pg.21, ¶77, although Associated Recovery at one point does incidentally disclose in passing the identity of one of its predecessors-in-interest, Novo Point LLC, doc#15, pg.25, ¶97.

47. As far as its own status, Associated Recovery also is not being any more candid in this lawsuit. Associated Recovery merely alleges that it is a Wyoming limited liability company. Doc#15, pg.3, ¶4. A business-entity search of the official website of the Wyoming Secretary of State, https://wyobiz.wy.gov/Business/FilingSearch.aspx, reveals that Associated Recovery filed for its entity status on December 15, 2015 (less than 10 days before the date of the assignment to it on December 24, 2015, doc#15, pg.21, ¶77), and that Associated Recovery currently has the same principal office and mailing address as the address of its organizer, Wyoming RA LLC, and of its registered agent, Registered Agents Inc. The current data for the filing with the Wyoming Secretary of State does not reflect any information regarding the actual ownership or management personnel of Associated Recovery.

48. Defense counsel in the companion lawsuit by Associated Recovery suggests that "every indication points to [Jeffrey] Baron pulling the strings in this case." Memorandum in Support of Defendants' Renewed Rule 12(b) Motion, case no. 3:16-CV-1025 doc.#48, pg.7, ¶G.

Defense counsel in the most recently filed iteration of the memorandum additionally notes that "Indeed, [Baron] attended the July 13, 2016, settlement conference" that took place in that case, on behalf of the plaintiff, Associated Recovery. Case no. 3:16-CV-1025 doc.#81, pg.6, ¶F, and pg.24, ¶2. Even the very name of the plaintiff – "Associated Recovery" - is suggestive of a relationship with its predecessors-in-interest and of the purpose of the entity, that is, to attempt in derogation of Judge Lindsey's prior orders to do literally by proxy what Jeffrey Baron and Novo Point, LLC, previously attempted to do and now are barred from doing by *res judicata* and collateral estoppel.

49. Associated Recovery's own counsel in this case, in the response to another defendant's motion to dismiss, has implied that Associated Recovery *is* its predecessor, Jeffrey Baron or Novo Point, LLC. In Plaintiff's Opposition to Defendant All-Pro Fastener, Inc.'s Motion to Dismiss filed in this case, doc.#92, pg. 15, last para., Associated Recovery's counsel asserts:

> This case is nothing more than an effort *to get the benefit of* the Fifth Circuit's prior *Netsphere* ruling . . . There is nothing left to do but give the Plaintiff the benefit of its victory.

(emphasis original) The "Plaintiff" in the pleading is Associated Recovery. See doc.#92, pg.1. But, Associated Recovery was not a party to the *Netsphere* case. Associated Recovery did not even exist before December 15, 2015. Associated Recovery's predecessors-in-interest, Jeffrey Baron and Novo Point, LLC, were parties to the *Netsphere* case. The Fifth Circuit's opinion in the *Netsphere* case, therefore, is Associated Recovery's "victory" only if Associated Recovery is one and the same its predecessor, Jeffrey Baron or Novo Point, LLC.

50. It is instructive in this regard to further note that the incipient source of this legal saga is the claim by Netsphere, Inc., et al. against Jeffrey Baron et al. that Jeffrey Baron originally

converted the subject domain name rights to himself through a limited liability company alleged to be owned and controlled by him and to be his alter-ego, which claim resulted in years of litigation in federal and state courts beginning in 2006 and culminating in a purported agreement to settle in 2009, which in turn resulted in the underlying claim by Netsphere, Inc., et al. against Jeffrey Baron et al. that Jeffrey Baron reneged on the agreement to settle. See Original Complaint in civil action no. 3:09-CV-988-F styled *Netsphere, Inc., et al. v. Jeffrey Baron, et al.,* court docket doc.#1. (Attached is a true copy of the original complaint, marked Exhibit 8 [sic].) In turn, the *Netsphere v Baron* underlying breach of settlement claim has resulted in years of litigation in federal bankruptcy court as well as in multiple federal and state courts beginning in 2009 and continuing to this day. See Lookout's Reply, doc.#91, Exh.6, court of appeals' July 8, 2016, slip opinion.

51. The totality of the circumstances suggests that the instant case is just the latest manifestation in a pattern of apparent behavior by Jeffrey Baron conducted through purported limited liability companies and a succession of substituted attorneys to manipulate the legal process to multiply and delay any final resolution of the incipient dispute. The court virtually may take judicial notice that Jeffrey Baron has been a vexatious litigant in this matter. As the Fifth Circuit noted in its first opinion, "Baron's longstanding vexatious litigation tactics presented the district court with an exceedingly difficult situation." *Netsphere, Inc. v. Baron,* 703 F.3d at 311. And that was considering Jeffrey Baron's conduct in just the first couple of years of the case, between the filing of the complaint in 2009 and the ordering of the receivership in 2010. As Judge Lindsey subsequently noted in his order approving the final accounting and discharging the receiver, Jeffrey Baron continued in such contumacious conduct over the succeeding couple of years from 2013 into 2015 that it took to finally wind-up the receivership:

> Baron began interfering with the winding down of the Receivership immediately after the Fifth Circuit's December 18, 2012 opinion issued (and before the mandate issued in April 2013) by advising third-party monetizer Domain Holdings Group ("Domain Holdings") that the Receivership order had been vacated and requesting Domain Holdings to stop transferring funds to the Receiver or anyone acting pursuant to the Receivership order . . .

Civil case no. 3:09-CV-988-L, styled *Netsphere, Inc. v. Baron*, court docket doc. #1447, pg.14, fn.3, 2015 U.S. Dist. LEXIS 39735 at *14, fn.3 (N.D. Tex. Mar. 27, 2015). Judge Lindsey then went on to note that the very same argument by Jeffery Baron as made by Associated Recovery – that the Fifth Circuit's opinion purportedly vacated the receivership and thus set aside the domain name sales – already had been addressed and rebutted by Judge Ferguson:

> While Baron's statement that the Fifth Circuit's December 18, 2012 opinion vacated the Receivership order was technically correct, it gave *the false impression that the Receivership itself had been vacated or dissolved.* Baron persisted in his efforts to seize control of the domain assets that were still subject to the Receivership and to redirect payments by Domain Holdings away from the Receivership that were needed by the Receiver to continue paying domain name fees to maintain the Receivership assets pending dissolution of the Receivership. In doing so, *Baron disregarded Judge Furgeson's December 20, 2012 order* that the Receiver would continue to maintain all Receivership assets and pay all domain name renewals pending dissolution of the Receivership, *as well as the Fifth Circuit's December 31, 2012 clarification,* that its opinion did *not* dissolve the Receivership, and that the process for ending the Receivership would be managed by the district court on remand. *As a result, Judge Furgeson threatened to impose sanctions against Baron* by requiring him to pay the Receiver's and the Receiver's attorney's fees.

*Id.* (emphasis added). Judge Lindsey in his order ultimately held that:

> The court **grants** the Receiver's request for approval of final accounting and order of final discharge and release, except for acts of gross negligence, in accordance with the foregoing limitation of liability provision. The court **approves** the Receiver's final accounting and report; **confirms** that the Receiver has complied with the orders of the court; and **concludes** that *the Receivership was operated and concluded in keeping with the mandate of the Fifth Circuit and prior orders* of this court and the bankruptcy court.

*Id*. at 37 (boldface emphasis original, italicized added). In other words, Judge Lindsey in effect

*ratified* the domain name sales that had been made by the receiver. And, Judge Lindsey in his

order more particularly held that:

> 2. Upon termination of the Receivership estate, the Receiver and Receiver Released Parties shall be **discharged** and **released**, except for acts of gross negligence, from all claims and liabilities arising out of or pertaining in any way to the Receivership and from all claims and liabilities that were asserted *or could have been asserted* in the Receivership or in connection with the Receiver's administration of the Receivership, including without limitation (a) all claims for relief and causes of action pertaining in any way to the Receivership that were asserted in *or that could have been asserted* by *any* of the parties to this case or their current or former counsel; (b) all claims for relief and causes of action pertaining in any way to the Receivership that were asserted in or that could have been asserted in or in connection with the involuntary bankruptcy against Baron; and (c) all claims for relief and causes of action that could have been asserted against the Receiver by creditors, claimants, consumers, consultants, experts, vendors, purchasers (actual or prospective), clients, and any other persons arising out of the Receiver's activities or those of his professionals in connection with the Receivership.

*Id*. at 39-40 (boldface emphasis original, italicized added). This in effect was the basis for Judge

Lindsey's subsequent denial of the plaintiffs' motion to remand and granting of the defendants'

motion to dismiss with prejudice in *Baron v. Vogel*. And, finally, Judge Lindsey, in overruling a

number of late-filed objections to the receiver's application by related entities, noted that:

> the court strongly suspects, based on its familiarity with the record in this, the bankruptcies, and other related cases, that Baron and those acting on his behalf are the source of this disruptive conduct.

*Id*. at 41, fn.9. Defense counsel in the companion lawsuit apparently shares Judge Lindsey's

suspicions that "[Jeffrey] Baron and those acting on his behalf" are the source of this continuing

vexatious litigation by Associated Recovery.

52. The initial dispute - over the purported 2009 settlement of the 2006 conversion of

domain names by Jeffrey Baron's LLC - has yet to even be resolved, and it literally is entering

the second decade of related litigation. And, now, Lookout as a purchaser from the receiver of

the rights to one of the domain names is dragged into this legal morass by a baseless lawsuit brought in the name of another LLC seeking to re-convert the domain names to itself. The instant lawsuit by Associated Recovery is a prime example of a frivolous, unsupportable complaint brought for an improper purpose, and the overall litigation is a paradigm of unreasonable and vexatious multiplication of legal proceedings.

Conclusion

53. Lookout asks the court, therefore, after notice and a reasonable opportunity to respond, to determine that Fed. R. Civ. P. 11(b) has been violated by plaintiff's attorneys, their law firms, and plaintiff, Associated Recovery, LLC, itself, and, thus, to impose an appropriate sanction on each in proportion to the responsibility of each for the violation. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d at 566. Lookout suggests that the court consider as an appropriate sanction on Associated Recovery a nonmonetary directive such as a prohibitory or mandatory injunction against any further legal action, or else a monetary directive such as an order to pay a penalty into court. *Thomas v. Capital Security Services, Inc.*, 836 F.2d at 878.

54. Lookout also asks the court specifically to order payment by plaintiff's attorneys, their law firms, and plaintiff, Associated Recovery, LLC, itself, jointly to Lookout for Lookout's reasonable attorney's fees necessarily resulting from the violation of Rule 11(b). Lookout further asks the court to determine that 28 U.S.C. §1927 also has been violated by plaintiff's attorneys and, thus, to impose an appropriate monetary sanction on them for Lookout's other expenses as well as costs of suit. *Ratliff v. Stewart*, 508 F.3d at 232.

55. Lookout further urges the court to issue an order to Associated Recovery, LLC, for a designated representative to appear at an evidentiary hearing and to show cause why its conduct in authorizing the bringing of the instant lawsuit has not violated Rule 11(b), that is, why

authorizing the bringing of the instant lawsuit was not for any improper purpose such as to harass and why the factual contentions have evidentiary support.

Respectfully submitted,

**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

By: _____
**J. Mark Mann**
State Bar No. 12926150
mark@themannfirm.com
**G. Blake Thompson**
State Bar No. 24042033
blake@themannfirm.com

**ATTORNEYS FOR LOOKOUT, INC.**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on January 25, 2017.

_____
**J. Mark Mann**