**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ASSOCIATED RECOVERY, LLC, a Wyoming limited liability company, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 2:16-cv-00126-JRG-RSP |
| LINDA BUTCHER, an individual; et al., | § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Pending before the Court is Defendants DBG Partners Inc. and Linda Butcher ("DBG")'s Motion to Dismiss for Improper Venue Under Rules 12(b)(1) and 12(b)(3) and/or Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Dkt. No. 52) ("DBG's Motion") – having a Response by Plaintiff Associated Recovery, LLC ("Associated Recovery") (Dkt. No. 54) – Defendant Lookout, Inc. ("Lookout")'s Motion to Dismiss Under Rule 12(b), Alternatively, to Transfer in Interest of Justice (Dkt. No. 66) ("Lookout's Motion") – having a Response by Associated Recovery (Dkt. No. 84), and a Reply by Lookout (Dkt. No. 91) – Defendant All-Pro Fasteners, Inc. ("APF")'s Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and Brief in Support (Dkt. No. 73) ("APF's Motion") – having a Response by Associated Recovery (Dkt. No. 92), a Reply by APF (Dkt. No. 96) and a Sur-Reply by Associated Recovery (Dkt. No. 101) – and Defendant Buyer International Group, LLC ("BI")'s Special Appearance for the Purpose of Filing a Motion to Dismiss or, in the Alternative, Motion to Transfer Venue and Brief in Support (Dkt. No. 89) ("BI's Motion") – having a Response by Associated Recovery (Dkt. No. 98). For the following reasons, DBG's Motion, Lookout's Motion, APF's Motion and BI's Motion are **GRANTED-IN-PART.**

## I.  Background

This is a saga regarding the sale of Internet domain names.[1] The current suit is the latest in a complex history of litigation[2] starting with a 2009 contractual dispute between Jeffrey Baron and Netsphere, Inc., which gave rise to a trilogy of cases or Orders:

(1)  First, the opinion of the U.S. Court of Appeals for the Fifth Circuit in case of *Netsphere, Inc. v. Baron,* 703 F.3d 296 (5th Cir. 2012) ("*Netsphere I*");

(2)  Second, an Order in the U.S. District Court for the Northern District of Texas ("Northern District of Texas"), in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F, 2013 WL 3327858 (N.D. Tex. May 29, 2013) ("*Netsphere II*"); and

(3)  Third, another Order in the Northern District of Texas, also in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F, 2015 WL 1400543 (N.D. Tex. Mar. 27, 2015) ("*Netsphere III*").

### A.  *Litigation Leading Up to Netsphere I*

Around 2009, Associated Recovery's alleged predecessor-in-interest, Baron, entered into a joint venture with Munish Krishan ("Krishan") relating to the ownership and sale of Internet domain names. (Dkt. No. 73 at 4; Dkt. No. 89 at 4). Baron and Krishan ultimately had a falling out and were unable to reach an agreement, which resulted in both parties signing a Memorandum of Understanding which settled all disputes between them. *Netsphere II,* 2013 WL 3327858 at *1. Shortly afterwards, Baron and one of his companies, Ondova Ltd. ("Ondova") breached the Memorandum of Understanding, leading Krishan and his company, Netsphere, to sue Baron in May of 2009 in the Northern District of Texas. *See Netsphere, Inc., et al. v. Jeffrey Baron, et al,* Case No. 3:09-cv-988-F (U.S. District Court for the N.D. Texas, Dallas Division).

---

[1] "A domain name is an identification string that defines a realm of administrative autonomy, authority or control within the Internet." Wikipedia, Domain name, https://en.wikipedia.org/wiki/Domain_name (last modified Jan. 7, 2017).

[2] For a full list of related cases, see "Related Cases" in Lookout's Motion (Dkt. No. 66 at 5-6, para. 14).

Throughout this initially filed case, Baron substituted attorneys so many times that the Northern District of Texas was "justifiably concerned that Baron would continue to frustrate the judicial system by cycling through attorneys in order to cause delay." *Netsphere II,* 2013 WL 3327858 at *2.

### 1.    The Bankruptcy Proceedings

Also early in this case, the Northern District of Texas entered a preliminary injunction sought by Netsphere to compel Baron to comply with the Memorandum of Understanding. *Netsphere I,* 703 F.3d at 302. In July of 2009, after Netsphere moved to hold Baron in contempt for violating the preliminary injunction and one day before the contempt hearing, Baron further complicated the proceedings by placing his company Ondova in bankruptcy in the Northern District of Texas. *Id.; See In re: Ondova Limited Company,* U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 09-BK-34784-SGJ-7. Eventually, the bankruptcy creditors and Ondova agreed to a partial settlement, but Baron continued to substitute counsel in the bankruptcy proceedings; ultimately a later settlement was reached, which was approved by the Bankruptcy Court in July of 2010. *Netsphere I,* 703 F.3d at 303.

At the hearing to approve the settlement agreement, the bankruptcy trustee informed the Bankruptcy Court that one of Baron's former attorneys had testified that Baron planned to move assets that were subject to U.S. jurisdiction to another country. *Id.* Thus, the bankruptcy trustee expressed concern that money to pay lawyers and satisfy other claims would be lost by moving the assets.[3] *Id.* In response, the Northern District of Texas District Judge appointed a special master, Peter S. Vogel, to mediate claims for unpaid legal fees. *Id.* at 304.

---

[3] The U.S. Court of Appeals for the Fifth Circuit noted that, during oral argument, the bankruptcy trustee's attorney "presented a chart identifying 45 lawyers whom Baron had not paid." *Netsphere I,* 703 F.3d at 303.

## 2.     The Receivership

After Baron again fired his attorney, the bankruptcy trustee filed a motion to appoint a receiver "because of Baron's failure to cooperate with the order to mediate the legal-fee claims and his continued hiring and firing of layers in violation of the court's order," which would "expose the bankruptcy estate to additional administrative claims and further delay the resolution of the bankruptcy proceedings." *Id.* Ultimately, the Northern District of Texas appointed Peter S. Vogel as the Receiver for Baron's companies in November of 2010. *Id; See* Order Appointing Receiver, Dkt. No. 130 (Nov. 24, 2010) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.). The Northern District of Texas later clarified that the Receivership Order should have included Baron's companies Novo Point, LLC ("Novo Point") and Quantec, LLC ("Quantec") as parties over which the Receiver had exclusive control. *See* Order Granting the Receiver's Motion to Clarify the Receiver Order with Respect to Novo Point, LLC and Quantec, LLC, Dkt. No. 176 (Dec. 17, 2010) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.).

In order to fund disbursements to the unpaid attorneys, the Northern District of Texas granted the Receiver's motion to sell domain names owned by Novo Point. *See* Order Granting the Receiver's Omnibus Motion to Permit Sales of Domain Names, Dkt. No. 288 (Feb. 4, 2011) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.) (Dkt. No. 73-1, Exhibit 1 at 1); *see also* The Receiver's Omnibus Motion to Permit Sales of Domain Names, Dkt. No. 242 (Jan. 24, 2011) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.) (Dkt. No. 73-1, Exhibit 1 at 2). According to both Defendants APF and BI, "[i]t is the order authorizing the sale of these domain names [Dkt. No. 288 in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.)] that Plaintiff [Associated Recovery] alleges initiated the sales Plaintiff is now trying to void by its current allegations before this court." (Dkt. No. 73 at 6; Dkt. No. 89 at 5-6).

The Northern District of Texas further granted the Receiver's motion to appoint Damon Nelson ("Nelson") as permanent manager of Quantec and Novo Point to assist the Receiver in selling the domain names. *See* Order Granting the Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and For Turnover of LLC Materials to Damon Nelson, Dkt. No. 473 (Apr. 22, 2011) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988F (N.D. Tex.); *see also* The Receiver's Motion to Appoint Damon Nelson as Permanent Manager of the LLCs and for Turnover of LLC Materials to Damon Nelson, Dkt. No. 377 (Mar. 16, 2011) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988F (N.D. Tex.).

Nelson then worked under the direction of Receiver Peter S. Vogel ("Vogel" or "Receiver") pursuant to the Order authorizing sale of the domain names ((Dkt. No. 288 in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.)) to sell the domain names that are the subject of the present case. (Dkt. No. 1 at 10-13, paras. 97-117; Dkt. No. 15 at 21-25, paras. 79-98). The purchasers of these domain names also bought them for value (several hundred thousand dollars) and pursuant to formal domain name assignment and transfer agreements. *See* Dkt. No. 32-7, Exhibit F (March 25, 2016) in *Associated Recovery, LLC v. John Does 1-44 et al,* Case No. 1:15-cv-01723 (E.D. Va.). In the agreements, the seller is Novopoint (specifically, "Novopoint, LLC") and Mr. Nelson authorized the sale by signing on behalf of Novopoint. *Id.* It should be noted that these agreements (from Dkt. No, 32-7, Exhibit F in E.D. Va. Case No. 1:15-cv-01723) pertain to some domain names at issue in this case such as: bxi.com, emv.com, iwf.com, okv.com and rsv.com (Amended Complaint, Dkt. No. 15 at 9, para. 29); uyr.com (Amended Complaint, Dkt. No. 15 at 14, para. 49); vhj.com (Amended Complaint, Dkt. No. 15 at 16, para. 58); and ucr.com (Amended Complaint, Dkt. No. 15 at 17, para. 60). *See* Dkt. No. 32-7, Exhibit F at 22, for a list of domain names, some of which are also at issue in this case.

The agreements from Dkt. No. 32-7, Exhibit F in E.D. Va. Case No. 1:15-cv-01723 also contain forum selection clauses, which require that any dispute arising from or relating to these agreements be brought in the Northern District of Texas:

> "THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. ALL DISPUTES ARISING FROM OR RELATING TO THIS AGREEMENT **SHALL BE ADJUDICATED IN THE U.S. DISTRICT COURTS FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS DIVISION)** OR THE STATE DISTRICT COURTS OF DALLAS COUNTY, TEXAS, [U.S.]."

Dkt. No. 32-7, Exhibit F at 4, 9, 19, and Dkt. No. 32 (March 25, 2016) in *Associated Recovery, LLC v. John Does 1-44 et al,* Case No. 1:15-cv-01723 (E.D. Va.) (adding the emphasis).

### B.    *Netsphere I: The Appeal of The Receivership Order*

In 2011, Baron appealed the Receivership Order (Dkt. No. 130 in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.)) as well as numerous subsequent orders entered by the Northern District of Texas. *Netsphere I,* 703 F.3d at 305. This resulted in the opinion of *Netsphere I,* where the U.S. Court of Appeals examined "whether a court can establish a receivership to control a vexatious litigation." *Id.* It is to be noted that neither the Order Appointing the Receiver nor the Order Authorizing the Sale of Domain Names (Dkt Nos. 130 and 288 in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.)) were stayed during the Fifth Circuit appeal. (Dkt. No. 73 at 6). Ultimately, the Fifth Circuit reversed the appointment of the Receiver, with directions to the Northern District of Texas to vacate and wind down the receivership. *Netsphere I,* 703 F.3d at 315. Normally when a receivership is improper, the party that sought the receivership should be accountable for the receivership fees and expenses. *Id.* at 312. However, because the Fifth Circuit found that "the record supports that the circumstances that led to the appointment of a receiver were primarily of Baron's own making," it concluded

that it was equitable to charge "the current receivership fund for reasonable receivership expenses." *Id.* at 313.

### C.     *Netsphere II:* **The Order on Receivership Professional Fees**

Pursuant to the Fifth Circuit's Order, the Northern District of Texas began to wind down the Receivership. *See* Order, Dkt. No. 1155 (Jan. 7, 2013) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.). When determining the fees to be paid to the Receiver and his professionals in the process of winding down the Receivership, the Northern District of Texas observed that "[n]ever in this Court's experience of over 40 years in the civil justice system, both as a lawyer and a judge, has this Court observed the kind of party misconduct that has been exhibited by Baron." *Id.* at 3. This then brought about *Netsphere II,* which was an Order on Receivership Professional Fees. Order on Receivership Professional Fees, Dkt. No. 1287 (May 29, 2013) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.), *Netsphere II,* 2013 WL 3327858. In *Netsphere II,* while the Northern District of Texas recognized that the Fifth Circuit vacated the Receivership, it also understood that "all Orders issued under the Receivership remain in effect until the Receivership is wound down." *Netsphere II,* 2013 WL 3327858, at *6-7. Over the next two years, the winding down was further delayed by the bankruptcy and other proceedings, such as when various creditors filed an involuntary bankruptcy petition against Baron on the same day that the Fifth Circuit reversed the Receivership Order. *Netsphere II,* 2013 WL 3327858, at *6; *see also Netsphere I,* 703 F.3d at 315 (the reversal of the Receivership Order, or Dkt. No. 130 in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.)).

### D.     *Netsphere III:* **Memorandum Opinion & Order on Final Accounting**

On March 27, 2015, the Northern District of Texas issued a Memorandum Opinion and Order regarding the Receiver's request for final accounting, or *Netsphere III.* Memorandum

Opinion and Order, Dkt. No. 1447 (Mar. 27, 2015) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F (N.D. Tex.), *Netsphere III,* 2015 WL 1400543; (Dkt. No. 73-2, Exhibit 2). In addition to awarding the Receiver fees and expenses and holding that the receivership should be terminated once the Receiver has been paid those amounts, the Northern District of Texas ordered that the Receiver "shall store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the court." *Netsphere III,* 2015 WL 1400543, at *10.

Furthermore, in *Netsphere III,* the Northern District of Texas held, specifically, in paragraph 4 of its final orders, that:

> "The court **shall retain exclusive jurisdiction** of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, **or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.**"

*Netsphere III,* 2015 WL 1400543, at *10, para. 4 (emphasis added).

In addition, the Northern District of Texas held that it could not continue with the case until related bankruptcies were resolved, and therefore closed, but did not dismiss the case. Order, Dkt. No. 1448 (Mar. 27, 2015) in *Netsphere, Inc. v. Baron,* No. 3:09-cv-0988-F.

### E.       Baron's Texas State Lawsuit in Dallas County

In November of 2014, Baron and Novo Point sued the Receiver, Vogel, not in federal court, but in a state district court in Dallas County, Texas. (Dkt. No. 73 at 7; Dkt. No. 89 at 7). Baron and Novo Point alleged claims of wrongful appointment of the Receiver, breach of fiduciary duties, conspiracy, intentional infliction of emotional distress, abuse of process, breach of contracts, constitutional torts and vicarious liability. *Id.* After removing the case to the federal court of the Northern District of Texas, the Receiver filed a motion to dismiss alleging, *inter alia,* that the Receiver was immune as an officer of the court. *Id.* The Northern District of Texas granted the Receiver's motion, dismissing all claims against the Receiver. (Dkt. No. 73 at 7-8;

8

Dkt. No. 89 at 7); Memorandum Opinion and Order, Dkt. No. 49 (March 31, 2016) in *Baron v. Vogel,* No. 3:15-cv-323-L (N.D. Tex.) (Dkt. No. 73-3, Exhibit 3; Dkt. No. 89-3, Ex. 3).

### F.     The *In Rem* Litigation in The Eastern District of Virginia

In 2015, Associated Recovery, acting as a successor to Baron and Novo Point, filed an *in rem* action in the U.S. District Court for the Eastern District of Virginia against a number of domain names that allegedly had been transferred by the Receiver. *Associated Recovery, LLC v. John Does 1-44 et al,* No. 1:15-cv-01723-AJT-JFA (E.D. Va.), filed December 31, 2015. (Dkt. No. 73 at 8; Dkt. No. 89 at 8).

In the Eastern District of Virginia case, some of the defendant domains were able to successfully transfer their cases to the Northern District of Texas, Dallas Division. *See* Order, Dkt. No. 40 (April 15, 2016), granting Motion to Dismiss Complaint for Failure to Join a Necessary Party, or in the Alternative, to Transfer Venue, Dkt. Nos. 30, 31 (March 25, 2016), with Memorandum in Support, Dkt. No. 32 (March 25, 2016) in *Associated Recovery, LLC v. John Does 1-44 et al,* No. 1:15-cv-01723-AJT-JFA (E.D. Va.). These transferred defendant domain name cases are currently pending before the Honorable Sam A. Lindsay pursuant to the continuing jurisdiction provision, set out in paragraph 4 of *Netsphere III* excerpted above. (Dkt. No. 73 at 8; Dkt. No. 89 at 8). In the Northern District of Texas, the transferred *in rem* action is: *Associated Recovery LLC v. John Does 1-44 et al,* No. 3:16-cv-01025-L (N.D. Tex), filed April 15, 2016.  Some of the domain names at issue in the Northern District of Texas *in rem* action are also at issue in the present suit. (Dkt. No. 73 at 8; Dkt. No. 89 at 8).

### G.     The Present Action

On February 8, 2016, Associated Recovery filed its Complaint (Dkt. No. 1) and on June 16, 2016, filed its Amended Complaint (Dkt. No. 15), seeking the following relief:

"[A] declaration that Plaintiff's property, which was improperly, fraudulently, or otherwise converted through a vacated receivership. The vacated receivership had no authorization to transfer title of the Plaintiff's property to "original transferees" of that property. The original transferees had no legal title to the Plaintiff's property, which the original transferees could pass to subsequent and/or "current transferees" of that Property. The Plaintiff's requested declaratory judgment seeks the return to the Plaintiff of its property as well as a declaratory judgment that any and all interest obtained in the property by every Defendant was done wrongfully, that Plaintiff has a superior right in law and equity, and that any purported and/or alleged ownership rights are invalid, null and void ab initio. In addition to the return of its property under Texas law and a removal of cloud on said property via a request to quiet title, Plaintiff also seeks damages under federal and state law for conversion, unjust enrichment, misappropriation, fraudulent conveyance, and violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)."

(Dkt. No. 15 at 1, para. 1).

Associated Recovery's aforementioned Amended Complaint (Dkt. No. 15) also references eight domain names that are also subject to the Northern District of Texas *in rem action* (and previously the Eastern District of Virginia *in rem* action before it was transferred to the Northern District of Texas) specifically: (1) qmh.com, (2) sqg.com, (3) xsg.com, (4) ycx.com, (5) ygx.com, (6) yqp.com, (7) yqt.com and (8) zdp.com (Dkt. No. 15 at 9, para. 29); *See also* Dkt. No. 32 at 8 (March 25, 2016) in *Associated Recovery, LLC v. John Does 1-44 et al,* No. 1:15-cv-01723-AJT-JFA (E.D. Va.).

## II.    Summary of Defendants' Arguments & Granting In Part of Argument (1)

In the Motions filed by Defendants – specifically, DBG's Motion (Dkt. No. 52), Lookout's Motion (Dkt. No. 66), APF's Motion (Dkt. No. 73), and BI's Motion (Dkt. No. 89) – the Defendants raise the following arguments:

**(1) Improper Venue or Transfer:** Associated Recovery's Amended Complaint Should be Dismissed for Improper Venue under Federal Rule of Civil Procedure 12(b)(3), or in the Alternative Transferred to the Northern District of Texas Under 28 U.S.C. §1391 and §1406(a).

(DBG's Motion, Dkt. No. 52 at 4-5; Lookout's Motion, Dkt. No. 66 at 6-10, paras. 15-24; APF's Motion, Dkt. No. 73 at 9-12; BI's Motion, Dkt. No. 89 at 9-13).

**(2) Lack of Subject Matter Jurisdiction or Standing:** Associated Recovery's Amended Complaint Should Be Dismissed Under FRCP 12(b)(10 for Lack of Subject Matter Jurisdiction (or Lack of Standing) Pursuant to 28 U.S.C. § 1367. (DBG's Motion, Dkt. No. 52 at 5-6; Lookout's Motion, Dkt. No. 66 at 10-14, paras.25-32; APF's Motion, Dkt. No. 73 at 12-15; BI's Motion, Dkt. No. 89 at 13-16).

**(3) Failure to State a Claim:** Associated Recovery's Amended Complaint Should Be Dismissed Under FRCP 12(b)(6) for Failure to State a Claim. (Lookout's Motion, Dkt. No. 66 at 14-24, paras. 33-50; APF's Motion, Dkt. No. 73 at 15-19; BI's Motion, Dkt. No. 89 at 16-20).

**(4) Failure to Join Required Parties:** Associated Recovery's Amended Complaint Should Be Dismissed for Failure to Join Required Parties under FRCP 12(b)(7) and FRCP 19. (Lookout's Motion, Dkt. No. 66 at 24-28, paras. 51-58; APF's Motion, Dkt. No. 73 at 19-23; BI's Motion, Dkt. No. 89 at 20-24).

**(5) Relevant Statute of Limitations:** Associated Recovery's Amended Complaint Should Be Dismissed Based on the Statute of Limitations under FRCP 12(b)(6). (APF's Motion, Dkt. No. 73 at 23-25; BI's Motion, Dkt. No. 89 at 24-26).

Because the Court finds that transfer to the Northern District of Texas is warranted as set forth in the analysis and reasoning below, the Court hereby **GRANTS-IN-PART** argument **(1)** for all of Defendants' Motions and **TRANSFERS** this case to the Northern District of Texas, Dallas Division, the proper venue in which this case should be heard. Furthermore, the Court will not make a ruling on arguments (2), (3), (4), or (5), and will leave the resolution of those aspects of Defendants' motions to the Northern District of Texas.

### III.    Applicable Law

When venue is challenged, the court must determine whether the case falls within one of the three categories set out in 28 U.S.C. § 1391(b). If the case does, then venue is proper; if the case does not, then venue is improper, and the case must be dismissed or transferred under 28 U.S.C. § 1404.  *Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas et al.,* 134 S. Ct. 568, 677 (2013). 28 U.S.C. § 1391(b) provides, in pertinent part:

"(b) Venue in General.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391(b).

When suit is filed in the wrong district, that is, when venue is improper, then the Court must dismiss the case upon timely objection, or, if the Court finds it be in the interest of justice, the Court may transfer the case to a district where the suit could have been brought, under 28 U.S.C. §1406(a). *Atlantic Marine,* 134 S.Ct. at 577.

A corporate defendant shall "be deemed to reside" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(c)(2). The Fifth Circuit has held that in states such as Texas where the forum's long arm statute is coextensive with the limits of due process, personal jurisdiction is determined by evaluating whether the defendant has sufficient minimum contacts with the forum "such that maintaining the suit does not offend traditional notions of fair play and substantial

justice." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000), *citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If such minimum contacts are not of a sufficient "continuous and systematic" nature so as to support general jurisdiction, then the plaintiff's claims must arise from or relate to the defendant's contacts with the forum to support specific jurisdiction. *See, e.g., Cent. Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 381 (5th Cir. 2003); *Alpine View*, 205 F.3d at 214-15.

In any event, "random," "fortuitous," or "attenuated" contacts or contacts resulting from the "unilateral activity" of others are insufficient to support jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

Alternatively, on a motion to transfer for convenience, the Court considers two broad categories of factors: (1) the convenience of the parties and the witnesses, and (2) the interests of justice. *Atlantic Marine,* 134 S.Ct. at 581.

Finally, in cases concerning receiverships, the caselaw holds that the District Court which ordered the receivership also has jurisdiction over matters arising from it. *See Alexander v. Hillman*, 296 U.S. 222, 237–38 (1935) ("The subject-matter of the main suit is the right of plaintiffs, being stockholders of defendant, to have its business wound up, and its assets collected and distributed among its creditors and stockholders. That the District Court had jurisdiction to enter that decree has been finally adjudged. The receivers are the court's representatives and are entitled to have all the property belonging to defendant, and, upon leave, may sue to recover any part of the *res*. The controversies before us arise between respondents who come to share therein and the receivers who not only put in issue the validity of respondents' claims but allege that they have and refuse to account for a portion of the assets.  Undoubtedly the court has jurisdiction of the subject-matter, i.e., the claims and counterclaims.") (citations omitted); *Becker v. Green,* No.

CIVA 09-226-JJB-DLD, 2009 WL 2948456, at *5–6 (M.D. La. Aug. 27, 2009), *Report and Recommendation approved,* No. CIVA 09-226-JJB-DLD, 2009 WL 2948407 (M.D. La. Sept. 14, 2009) (upholding the plain language of "a Receivership Order that prohibits suit against 'the Receivership Estate, any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of [the Receivership Litigation]' in any jurisdiction other than the Northern District of Texas, unless permission is obtained by the Receivership Court" and further stating that "it is not for this court or for the state court to decide, for example, what constitutes an asset of the 'Receivership Estate.' Those decisions are made by the Receivership Court and are binding on the parties and on state and federal courts alike. The Receiver and the Receivership Court's power to protect and marshal assets would be diminished if every court in the nation, state or federal, could make its own determination of what constitutes an asset of the 'Receivership Estate.'") *Santibanez v. Wier McMahon & Co*., 105 F.3d 234, 238 (5th Cir. 1997) ("A district court has continuing jurisdiction in support of its judgment and…[u]ntil the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions.") *citing Resolution Trust Corp. v. Smith*, 53 F.3d 72, 76 (5th Cir.1995); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir.1995).[4]

---

[4] *See also Vicksburg, S. & P. Ry. Co. v. Schaff*, 5 F.2d 610 (5th Cir. 1925) ("The intervention challenged the propriety of an order of the court disposing of property under its control. Therefore the court had jurisdiction regardless of diversity of citizenship. When the intervention was filed, intervener's property was still in the custody of the receiver and under the jurisdiction of the District Court for the Northern District of Texas, and, consequently, no other court had jurisdiction to consider a suit for its return."); *Bond v. Brown*, 2 F.2d 797, 799 (5th Cir. 1924) ("The court [U.S. District Court for the Eastern District of Texas] retained jurisdiction of the receivership suit for the purpose of granting such further relief as might be proper…The Peavy-Moore Lumber Company filed its petition of intervention to recover from the appellants possession of the leased land...Appellants appeared and contested the jurisdiction of the court, on the ground that the Miller-Link Lumber Company, its receivers, and the appellants were all citizens of Texas, and that the receivers, having assigned the lease to the Peavy-Moore Lumber Company, did not have possession…We think the trial court had jurisdiction …Clearly the court had jurisdiction of the Peavy-Moore Lumber Company's petition, which sought to recover possession from the appellants.").

IV.    **Analysis**

A.  **Proper Venue Under 28 U.S.C. § 1391**

Here, the Defendants argue that Associated Recovery has made no particularized factual allegations to support proper venue in this district against them, only general allegations or "blanket statements" of conclusory legal propositions, and that some of the Defendants do not have sufficient minimum contacts with the Eastern District of Texas to support either general or specific jurisdiction. (Dkt. No. 52 at 4-5; Dkt. No. 66 at 8; Dkt. No. 73 at 9; Dkt. No. 89 at 10).

In response, Associated Recovery argues that under 28 U.S.C. § 1391(b)(3), which provides that "[a] civil action may be brought in … any judicial district in which *any defendant* is subject to the court's personal jurisdiction with respect to such action" (emphasis added), venue plainly lies here. (Dkt. No. 84 at 2). Associated Recovery then states that one Defendant (Lookout) argues that it alone is not subject to personal jurisdiction, and does not argue that *none* of the Defendants are subject to personal jurisdiction: thus, that standing alone should be sufficient to warrant denial of Lookout's Motion to Dismiss on the grounds of improper venue. *Id.* at 3. Associated Recovery goes on to assert that "it is plain that this court may exercise personal jurisdiction over at least one of the defendants" and where the parties have not conducted discovery, "the plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction" and all "available materials, including the pleadings, are construed in the plaintiff's favor." *Id.*  In effect, Associated Recovery argues that the Court has personal jurisdiction over at least the Defendant Butcher, because Butcher has appeared and filed a pleading responsive to the complaint e.g., DBG's Motion to Dismiss (Dkt. No. 52) and also did not move to dismiss based on lack of personal jurisdiction. (Dkt. No. 15, at 13-14, para. 48 and 15, para. 53; Dkt. No. 84 at 3-4). Associated Recovery also argues that this Court also has

personal jurisdiction over at least two more Defendants (State Farm and Radical Investments), because they conduct business on a systematic and continuous basis within the State of Texas and this judicial District. *Id.*

In reply, Lookout argues that it has challenged the Court's exercise of personal jurisdiction over it by filing its Motion to Dismiss (Dkt. No. 66). (Dkt. No. 91 at 1). Lookout further asserts that 28 U.S.C. § 1391(b)(1) does not control, since not all of the Defendants are corporations and not all of the Defendants who are natural persons are residents of Texas. *Id.* Lookout argues that the action may not be brought in this District just because a defendant resides in this district, since not all the defendants reside in this District; thus, the action must be brought under either 28 U.S.C. § 1391(b)(2) or (3). *Id.* at 1-2. Thus, Lookout asserts that 28 U.S.C. § 1391(b)(2) does not apply to it, since it is undisputed that there is another district in which the action otherwise could be brought, that is: The Northern District of Texas. *Id.* at 2. Lookout further argues that alternatively, in a multi-defendant case such as this one, the Court may transfer the entire case even if venue is proper as to any one of the defendants; or, the Court may sever the claims, retain jurisdiction over the one Defendant as to whom venue is proper, and then transfer the case for the other Defendants. *Id.* Lookout points to the immediate precedent of the transfer by the Eastern District of Virginia to the Northern District of Texas, the case of *Associated Recovery, LLC v. John Does 1-44,* No. 3:16-cv-1025-L (originally filed in the Eastern District of Virginia as No. 1:15-cv-01723). *Id.* at 2-3.

Associated Recovery further contends that another Defendant (BI) does not suggest that service was improper, insufficient, or otherwise inadequate, and thus the Court has properly established personal jurisdiction over it. (Dkt. No. 98 at 5). Associated Recovery additionally argues that "BI cannot simultaneously argue on the one hand that a federal court in Texas cannot

exercise personal jurisdiction over the company and on the other hand that the court should transfer the case to another federal court in Texas that BI affirmatively argues is the only court in the nation that does have jurisdiction" and in light of "BI's admitted willingness to litigate in another federal court in Texas, it can hardly be said to violate due process to require BI to defend in this Court." *Id.*   Associated Recovery contends that "BI's argument that the case should be transferred to the Northern District can only be understood as consent to litigate in Texas" and "BI cannot cherry-pick which Texas federal courts it will litigate in – agreeing to litigate in some while attempting to preserve a personal jurisdiction defense to litigating in others. For personal jurisdiction purposes, Texas is Texas." *Id.* at 5-6. Associated Recovery further asserts that although BI's argument about it never having any presence in Texas may defeat any effort to exercise general jurisdiction over BI (*Id.* at 6), Associated Recovery is not asking the court to exercise general jurisdiction over BI, because there is no allegation in the Amended Complaint that BI has, or in the past has had, a continuous or systematic presence in Texas. *Id.* Thus, Associated Recovery concludes it has proven enough to establish specific personal jurisdiction over BI, because BI's Affidavit is not relevant to specific personal jurisdiction. (*Id.* at 7-8).

Based on the above arguments, the Court finds that Associated Recovery has met its burden to establish proper venue in this district by establishing specific personal jurisdiction over at least one of the Defendants, including Lookout and BI, because under 28 U.S.C. § 1391(b)(3), "[a] civil action may be brought in … any judicial district in which *any defendant* is subject to the court's personal jurisdiction with respect to such action". However, even though personal jurisdiction has been established for proper venue, the Court is still within its discretion to transfer a case for convenience under 28 U.S.C. § 1404(a), discussed next.

17

### B.  Convenience Factors Under 28 U.S.C. § 1404(a)

Defendants alternatively argue that even if venue is proper under 28 U.S.C. §1391 in this District, the present case should be transferred for "convenience" under 28 U.S.C. § 1404(a). The main two factors that Defendants focus their § 1404(a) convenience transfer arguments on are: (1) "the convenience of the parties and the witnesses" and (2) "the interests of justice." (Dkt. No. 66 at 9-10; Dkt. No. 73 at 10-12).

### 1.  Convenience of the Parties and the Witnesses

For "the convenience of the parties and the witnesses" factor, Defendants contend that the principle witnesses – the Receiver Peter S. Vogel, the manager Damon Nelson, as well as Associated Recovery's predecessors-in-interest Baron and Novo Point – all live in or are located in Dallas, Texas. (Dkt. No. 66 at 10; Dkt. No. 73 at 11; Dkt. No. 89 at 12). Defendants further contend that Novo Point, Baron, Receiver Vogel and his agents will all be "essential witnesses" in this case, especially on the issue of whether or not Associated Recovery even has standing to bring its claims. (Dkt. No. 73 at 11; Dkt. No. 89 at 12).

Defendants additionally assert that the Receiver, Mr. Nelson and Baron also reside in the Northern District of Texas, and are outside the non-party subpoena range for deposition testimony in this District. (Dkt. No. 73 at 11; Dkt. No. 89 at 12). Furthermore, Defendants contend that the Receiver was engaged by an Order of the Northern District of Texas, and the domain name sales complained of in this action were specifically authorized by an Order of the Northern District of Texas. *Id.* Defendants also point out that all of these sales also occurred in the Northern District of Texas, and Judge Lindsay of that Court also ordered the Receiver to "store and maintain all books and records of the Receivership estate under his control until otherwise ordered by the Court." *Id.; See Netsphere III,* 2015 WL 140053 at *10. Thus,

Defendants assert that all documents associated with the sales now complained of in this action are all held and stored in the Northern District of Texas. (Dkt. No. 73 at 11; Dkt. No. 89 at 12).

In response, Associated Recovery states that Defendants' arguments under § 1404(a) are "greatly exaggerated" because the "relevant and central legal and factual issues have already been mainly decided." (Dkt. No. 92 at 9; Dkt. No. 98 at 12). Because the "district court abused its discretion in establishing the Receivership, as not a single authority in the entire history of equity jurisprudence could be found to support institution of the Receivership," Associated Recovery asserts, the *Netsphere III* jurisdiction Order was "necessarily invalidated." *Id.* Associated Recovery also argues that Defendants have not clearly demonstrated the "good cause" that is necessary for the Court to disregard the Plaintiff's choice of venue and cannot come close to doing so, and their Motions do not "even so much as pay homage to this showing that it must necessarily make" in order to obtain the transfer the Defendant so "desperately seeks." *Id.* Citing the full eight private and public interest factors, Associated Recovery goes on to attack the formatting and content of Defendants' Motions ("[f]or example, under its heading for 'Convenience of Witnesses and Parties' (a section of only two paragraphs), the Defendant oddly suggests that this Court is inconvenient for the Plaintiff and/or its predecessors"), to reach the conclusion that this Court is not an "inconvenient forum for itself or its predecessors." (Dkt. No. 92 at 9-10; Dkt. No. 98 at 12-13).

Furthermore, Associated Recovery's primary argument to the "convenience of the parties and witnesses" factor is that "Marshall is no more than a two-hour drive from Dallas – hardly an extreme inconvenience, much less an extreme burden, and certainly not a clear showing that Dallas is 'clearly more convenient' than this Court." (Dkt. No. 92 at 11; Dkt. No. 98 at 13). Associated Recovery further asserts that all "discovery (e.g., depositions) will take place where

the witnesses are", the "Receiver" will "not be required to travel to Marshall" for the standing issue, and Defendants are "spread out all over the country (and perhaps internationally)," thus, there "is no reason to think that for the vast majority of the Defendants that the Northern District of Texas is any more convenient" than this District. *Id.* In addition, Associated Recovery is "confident that the location of the books and records [in the Northern District of Texas] will not pose a problem for obtaining that proof" and that "the Receiver's and the Manager's deposition testimony can be easily secured by the simple expedient of issuing a subpoena from the district court with jurisdiction to enforce it." (Dkt. No. 92 at 11; Dkt. No. 98 at 13-14).

In its Reply, APF states that the claims here are so intertwined with the litigation that has been pending for seven years in the Northern District of Texas that all of the relevant evidence remains within the confines of the Northern District of Texas, including all documents relating to the Receivership, the Receiver and his professionals. (Dkt. No. 96 at 5). APF also argues that obviously, presenting trial testimony by deposition is not the same as presenting that testimony in person and the fact that parties may be able to travel to depose a witness does not negate the fact that a more convenient forum exists. *Id.* APF further asserts that it is headquartered in Arlington, Tarrant County, Texas, which is a county within the Northern District of Texas, which also encompasses within its boundaries the Dallas-Fort Worth (DFW) International Airport, one of the busiest international airports in the nation. *Id.* at 5-6.

In its Sur-Reply, Associated Recovery argues that APF and other Defendants still fail to show how the Northern District of Texas is "clearly more convenient," and speculate that other Defendants may well prefer not to make the two-hour drive from the DFW International Airport to this District. (Dkt. No. 101 at 4).

On balance, the Court finds that the factor of "the convenience of the parties and the witnesses" favors transfer.

### 2.  Interests of Justice

#### a.  Retention of Jurisdiction in *Netsphere III*

Perhaps Defendants' strongest argument for transferring the case to the Northern District of Texas is that it may be in the overriding interest of justice to adhere to the Court's express retention of exclusive jurisdiction over all allegations arising from the Receivership (Dkt. No. 52 at 4-5; Dkt. No. 66 at 8-9; Dkt. No. 73 at 9-10; Dkt. No. 89 at 10-11):

> "The court **shall retain exclusive jurisdiction** of this case over any disputes that may arise concerning this or any earlier order, the wind down of the Receivership estate, and the relief provided under this order, **or any controversy that arises from or relates to the Receivership or actions of the Receiver or his professionals.**"

*Netsphere III,* 2015 WL 1400543, at *10, para. 4 (emphasis added).

The Defendants assert that the present action is clearly a "controversy that arises from or relates to the prior receivership and/or the actions of the receiver and his professionals," and Associated Recovery cannot dispute this fact, since it alleges that the sales of domain names at issue in this case were made by the Receiver. (Dkt. No. 73 at 10; Dkt. No. 89 at 11). Thus, Defendants argue that this Court is not a proper venue for this matter and that the entire case should be transferred to the Northern District of Texas, the proper Court for all Defendants under the above jurisdiction Order. (Dkt. No. 66 at 9; Dkt. No. 73 at 10; Dkt. No. 89 at 11).

In response, Associated Recovery states that Defendants "conveniently overlook the introductory language that precedes the list of matters over which the district court purported to retain exclusive jurisdiction": "The court shall retain exclusive jurisdiction of *this...*" (emphasis added); that is, Associated Recovery argues that the present case is separate from the *Netsphere* case(s) and the simple fact that some of the relevant background facts are taken from *Netsphere I*

does not transmute the current case to bring it within the scope of "this case" as that term is used in the *Netsphere III* jurisdiction Order. (Dkt. No. 92 at 6-7; Dkt. No. 98 at 9). Associated Recovery further argues that (i) the Northern District of Texas has already expressly realized that, in light of the Fifth Circuit's ruling and remand, it had no jurisdiction over any claims and disputes regarding ownership of the receivership assets (which is precisely what this current case is about), and (ii) to the extent that the present action could otherwise be thought to be within the scope of the district court's retention of jurisdiction, the district court's order would plainly be invalid because none of these parties, their predecessors, or the subject domain names were properly before the district court in *Netsphere II-III,* which was the primary point of the *Netsphere I* opinion. (Dkt. No. 92 at 7; Dkt. No. 98 at 9-10). Associated Recovery argues that the Northern District of Texas cannot "retain" jurisdiction over parties or assets over which it never properly acquired jurisdiction in the first place – it would have to "obtain" jurisdiction in order to "retain" it. (Dkt. No. 92 at 7; Dkt. No. 98 at 10; Dkt. No. 101 at 3).[5]

Associated Recovery further states that the Defendants do not appear to appreciate that this lawsuit is not about the Receivership and that the above exclusive jurisdiction Order from *Netsphere III* is inapplicable to the current dispute (Dkt. No. 84 at 5).  First, Associated Recovery argues that there is no "dispute" as to any of the Northern District of Texas' earlier orders – they happened, and the Fifth Circuit subsequently held that the Northern District of Texas acted outside of its subject matter jurisdiction in ordering the Receivership, and reversed the Order permitting the sale of domain names. *Id.* Second, Associated Recovery contends that the present suit is not a dispute about the Receivership or actions by the Receiver or his professionals. *Id.*

---

[5] Associated Recovery cites case law pertaining to the "doctrine of ancillary jurisdiction" (Dkt. No. 92 at 7-8; Dkt. No. 98 at 10-11), but because that issue is not before the Court, it will not be analyzed.

As a result, Associated Recovery argues that the current suit does not even fit within the language of the *Netsphere III* jurisdictional Order because any actions by the Receiver are merely background in this case and there is no actual claim against the Receiver in this action (with that case currently pending on appeal in the Fifth Circuit). (Dkt. No. 92 at 8; Dkt. No. 98 at 11). Associated Recovery asserts that the present suit involves the erroneous actions of the district court in exercising jurisdiction of assets over which it did not have jurisdiction and allowing those assets to be improperly sold. *Id.* Associated Recovery then states that "[i]ndeed, one of the Receiver's main defenses…is that the Receiver is entitled to judicial immunity because he was only doing what the district court authorized him to do. This case also involves the actions of the Defendants in continuing to assert ownership interests in domain names that were effectively stolen from Mr. Baron and his entities and that the Defendants acquired by virtue of undeniably unlawful and unauthorized sales. In light of the district court's erroneous decision to allow the wrongful sale of those assets, Associated Recovery, as successor in interest, seeks return of the domain names. That is all." (Dkt. No. 92 at 8-9; Dkt. No. 98 at 11).

In its Reply, APF asserts that it "bears repeating" that the Northern District of Texas retained exclusive jurisdiction over "*any controversy* that arises from or relates to the Receivership or actions of the Receiver or his professionals." *Netsphere III,* 2015 WL 1400543, at *10, para. 4; (Dkt. No. 96 at 3). APF argues that the allegations in this case squarely arise out of the actions of the Receiver, and Associated Recovery fully acknowledges that fact. (Dkt. No. 96 at 3). APF goes on to assert that "[w]ithout the order of the NDTX authorizing sales of domains by the Receiver, and without the actual sale of those domains by the Receiver during the Receivership, Plaintiff would not be seeking redress in this court…As a result, venue is not proper [here]." *Id.* As to the "interest of justice" component, APF argues that the Northern

District of Texas has already reviewed the thousands of docket entries and motions from the *Netsphere* saga of cases,[6] made rulings on them and is already extremely familiar with many of the claims, parties and issues that are also before the Court in the present suit. (Dkt. No. 96 at 6).

In a clear oversimplification of the case, Associated Recovery states that this case is "simply one where a plaintiff's property was improperly taken (including by tortious activity conducted by the Defendant within this District) and the plaintiff is seeking to get it back." *Id.* The "courts have already decided that the taking of the property was improper due to a lack of subject matter jurisdiction" and "[w]hile the background noise of the earlier case[s] which led to the improper taking of the property may be 'interesting' to some, none of it is being litigated in this proceeding." *Id.*

The Court finds that the prior proceedings of *Netsphere I-III* are directly relevant to the present action. Namely, the Court finds that the current matter is clearly a "controversy *that arises from or relates to* the Receivership or actions of the Receiver or his professionals" according to Judge Lindsay's express retention of exclusive jurisdiction. *Netsphere III,* 2015 WL 1400543, at *10, para. 4; (Dkt. No. 96 at 3). But for the Receivership being created, the present action would not be in front of this Court now. It is clear that the domain names that were sold by the Receiver as part of the Receivership gave rise to the current action, where Associated Recovery is, as its name implies, attempting to "recover" them in a suit alleging, *inter alia,* misappropriation, conversion, and quieting title, as Lookout's Reply (Dkt. No. 91) points out:

---

[6] "This case has been described by all involved as a 'nightmare.' What should have been a simple contract dispute between the Netsphere parties and Jeffrey Baron and Ondova has morphed into a four-year train-wreck involving numerous attorneys, millions of dollars in legal fees, thousands of docket entries, and massive frustrations for all parties, for this Court, for the Bankruptcy Court and for the Fifth Circuit." *Netsphere II,* 2013 WL 3327858, at *1.

"Associated Recovery asserts that it simply wants 'its' property back...Associated Recovery purportedly got its property, that is, the internet domain name rights, by assignment from its predecessors-in-interest, who had the domain names taken from them in the receivership. But, if the domain names were taken from them in the receivership, whether rightfully or wrongfully, then they no longer had the domain names to assign to Associated Recovery. **In point of fact, Associated Recovery is disputing the transfer of the domain names in the receivership and is trying to do just what its own name implies, recover the domain names by association. And, it is precisely that issue which already has been resolved adversely to Associated Recovery's predecessors and hence to Associated Recovery as a privy successor.** Associate Recovery simply is attempting to 'spin' the plain language of the court of appeals' opinion in *Netsphere v. Baron*, the subsequent order approving the receiver's final accounting and discharge in *Netsphere v. Baron*, and the subsequent orders denying the plaintiffs' motion to remand and granting the defendants' motion to dismiss in *Baron v Vogel*."

(Dkt. No. 91 at 5, para. 10) (emphasis added).

As a result, because Associated Recovery is attempting to recover the domain names that were sold by the Receiver via the Receivership, it is undeniable that the current suit is a controversy that "arises from or relates to" the Receivership or actions of the Receiver or his professionals.

### b. Other "Interest of Justice" Factors

Defendants further state that the public interest factor of "the familiarity of the forum with the law" of the case "squarely connects" this case with the Northern District of Texas, Dallas Division. (Dkt. No. 66 at 10). The Northern District of Texas also meets the threshold determination as a district in which the case not only could but *should* have been filed. Therefore, Defendants believe they have demonstrated good cause to overcome Associated Recovery's choice of venue. *Id.*

Defendants also declare that perhaps more compelling for the transfer of this matter to the Northern District of Texas than even the convenience of the witnesses is the over-riding interest of justice given the lengthy history of litigation involving Associated Recovery and its predecessors. (Dkt. No. 73 at 11; Dkt. No. 89 at 12). Defendants point out that the Northern

District of Texas has dealt with *Netsphere* litigation and all of its offshoots since 2009, and thus, that Court is most familiar with the facts and parties at issue here. (Dkt. No. 73 at 11; Dkt. No. 89 at 12-13). Defendants also describe how the present cases arises out of the Northern District of Texas' appointment of Receiver Vogel and the Receiver's actions taken pursuant to the order granting the Receiver the ability to sell the subject domains. (Dkt. No. 73 at 11-12; Dkt. No. 89 at 13). Defendants additionally state that the Northern District of Texas has been so involved in these exact issues from the *Netsphere* cases that it retained exclusive jurisdiction to deal with any disputes arising out of them. (Dkt. No. 73 at 12; Dkt. No. 89 at 13). In fact, as Defendants point out, even when Associated Recovery tried to file an *in rem* action relating to certain domain names in the Eastern District of Virginia, that court transferred that matter to the Northern District of Texas, where it remains pending now. *Id.* Therefore, Defendants contend that a "cursory consideration of the dozen related matters" demonstrates that Court's familiarity "with the underlying receivership action as well as with the various appeals, subsequent litigation, and entwined bankruptcy cases," which puts it "in a superior position to more expeditiously and judiciously determine the outcome of this action, whether procedurally or substantively." (Dkt. No. 66 at 9).

The Court finds these arguments persuasive. Judge Lindsay's deep familiarity with the *Netsphere* litigation and its myriad offshoots weighs heavily in favor of transfer to the Northern District of Texas. Because the Northern District of Texas is well-versed in all of the claims, parties, and issues before the Court presently, it is the most appropriate and best-suited venue for adjudicating this matter. The Northern District's knowledge of the core law and disputes in the *Netsphere* line of cases was also likely the reason for that Court's express retention of exclusive jurisdiction over all controversies arising from the Receivership or actions of the Receiver. The

Eastern District of Virginia has already realized this, and transferred an *in rem* action to the Northern District of Texas on primarily that basis. Finally, perhaps the soundest reason for transferring this case to the Northern District of Texas is the avoidance of inconsistent rulings or judgments.

### 2.   Forum Selection Clauses in the Domain Name Purchase Agreements

Although not raised by any of the parties, the purchase agreements for some of the domain names in this case contain forum selection clauses mandating that cases be filed in the Northern District of Texas. As can be seen by the agreements in Dkt. No, 32-7, Exhibit F in E.D. Va. Case No. 1:15-cv-01723, the forum selection clause applies to several domain names at issue in this case such as: bxi.com, emv.com, iwf.com, okv.com and rsv.com (Amended Complaint, Dkt. No. 15 at 9, para. 29); uyr.com (Amended Complaint, Dkt. No. 15 at 14, para. 49); vhj.com (Amended Complaint, Dkt. No. 15 at 16, para. 58); and ucr.com (Amended Complaint, Dkt. No. 15 at 17, para. 60). For the list of domain names where these overlapping domain names with the Amended Complaint (Dkt. No. 15) are taken from, see Dkt. No. 32-7, Exhibit F at 22).

Specifically, the forum selection clauses in the agreements from Dkt. No. 32-7, Exhibit F in E.D. Va. Case No. 1:15-cv-01723 require that any dispute arising from or relating to these agreements be brought in the Northern District of Texas:

> "THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. ALL DISPUTES ARISING FROM OR RELATING TO THIS AGREEMENT **SHALL BE ADJUDICATED IN THE U.S. DISTRICT COURTS FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS DIVISION)** OR THE STATE DISTRICT COURTS OF DALLAS COUNTY, TEXAS, [U.S.]."

Dkt. No. 32-7, Exhibit F at 4, 9, 19, and Dkt. No. 32 (March 25, 2016) in *Associated Recovery, LLC v. John Does 1-44 et al,* Case No. 1:15-cv-01723 (E.D. Va.) (adding the emphasis). Therefore, for this additional reason, and if the overlapping domain names of

bxi.com, emv.com, iwf.com, okv.com and rsv.com (Amended Complaint, Dkt. No. 15 at 9, para. 29); uyr.com (Amended Complaint, Dkt. No. 15 at 14, para. 49); vhj.com (Amended Complaint, Dkt. No. 15 at 16, para. 58); and ucr.com (Amended Complaint, Dkt. No. 15 at 17, para. 60) are still at issue in this case, then transfer to the Northern District of Texas is clearly warranted on this ground as well.

## V.   Conclusion

For the foregoing reasons, DBG's Motion (Dkt. No. 52), Lookout's Motion (Dkt. No. 66), APF's Motion (Dkt. No. 73) and BI's Motion (Dkt. No. 89) are hereby **GRANTED-IN-PART.** The Clerk of the Court is also directed to **TRANSFER** this case to the U.S. District Court for the Northern District of Texas, Dallas Division.

**SIGNED this 6th day of February, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE