## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### Marshall Division

| | | |
|---|---|---|
| **ASSOCIATED RECOVERY, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:16-cv-126-JRG-RSP** |
| | § | |
| **LINDA BUTCHER, et. al.,** | § | |
| *Defendants.* | § | |

### PLAINTIFF'S ASSOCIATED RECOVERY'S RESPONSE IN OPPOSITION TO LOOKOUT, INC.'s MOTION FOR SANCTIONS

Luiz Felipe Oliveria
Reg. No. 5349923
Paul Grandinetti
Rebecca J. Stempien Coyle
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Tel:  (202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com


ATTORNEYS FOR PLAINTIFF
ASSOCIATED RECOVERY, LLC

## **TABLE OF CONTENTS**

I.  INTRODUCTION ......................................................................................................1

II.  LOOKOUT'S MOTIONS ARE PROCEDURALLY DEFECTIVE,
GROUNDLESS AND FRIVOLOUS .................................................................2

    A.  Lookout's Motions Do Not Comport With Procedural Requirements ...................3

    B.  Lookout's Rule 12(b)(3) Motion to Dismiss For Improper
Venue Is Groundless and Frivolous........................................................................4

    C.  Lookout's Rule 12(b)(1) and (6) Motion to Dismiss For
Lack of Standing and Failure to State a Claim and Non-Standard
Motion Seeking Application of *Res Judicata* and Collateral Estoppel
Are Groundless and Frivolous .......................................................................... 5-6

    D.  The Rule 12(b)(7) and Rule 19(b) Aspects of Lookout's Motion
to Dismiss For Failure to Join Certain Other Parties Are Groundless
and Frivolous ..........................................................................................................7

    E.  Other Aspects of Lookout's Rule 12(b)(1) and (6) Motions to Dismiss Are
Groundless and Frivolous .......................................................................................8

III.  APPLICABLE STANDARDS .................................................................................10

IV.  THE GIST OF ASSOCIATED RECOVERY'S ALLEGATIONS, IT'S
COUNSEL'S BELIEFS, AND THE BASIS THEREOF ...............................................11

## <u>CASES</u>

*Baron v. Vogel,*
  2106 U.S. Dist. LEXIS 44294
  (N.D. Tex. Mar 31, 2016) ........................................................................ 6

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................. 3

*Bryant v. Military Dep't,*
  597 F.3d 678 (5th Cir. 2010) .................................................................. 11

*Hickey v. Arkla Industries, Inc.,*
  615 F.2d 239 (5th Cir. 1980) (per curiam)............................................... 4

*Netsphere, Inc. v. Baron,*
  No. 3:09-cv-00988-L
  (N.D. Tex. Feb. 28, 2014) ......................................................................... 5

*CJC Holdings, Inc. v. Wright & Lato, Inc.,*
  989 F.2d 791 (5th Cir. 1993). ................................................................. 10

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) .................................................................... 3

*Erickson v. Pardus,*
  551 U.S. 89 (2007).................................................................................... 3

*Hogue v. Royse City,*
  939 F.2d 1249 (5th Cir. 1991) ................................................................ 10

*Manax v. McNamara,*
  842 F.2d 808 (5th Cir. 1988) .................................................................. 11

*Netsphere, Inc. v. Baron,*
  703 F.3d 296 (5th Cir. 2012) .................................................................... 7

*Proctor & Gamble Co. v. Amway Corp.,*
  280 F.3d 519 (5th Cir. 2002) .................................................................. 11

*Religious Tech. Ctr. v. Liebrich,*
  98 F. App'x 979 (5th Cir. 2004) .............................................................. 11

*T.L. Dallas,*
    2008 U.S. Dist. LEXIS 112603 .......................................................................... 11

*Thomas v. Capital Security Services, Inc.,*
    836 F.2d 866 (5th Cir. 1988) (en banc) ........................................................... 10

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,*
    38 F.3d 1414 (5th Cir. 1994) .......................................................................... 11

## **STATUTES**

28 U.S.C. § 1391(b)(3) ........................................................................................... 4
28 U.S.C. § 1927 ............................................................................................... 10, 11

## **RULES**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3, 4

Fed. R. Civ. P. 12(b)(7) ........................................................................................ 7, 8

Fed. R. Civ. P. 12(d) ............................................................................................... 4

Fed. R. Civ. P. 19(b) ............................................................................................ 7, 8

Fed. R. Civ. P. 11 .................................................................................................. 10

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 2, 3, 8

Fed. R. Civ. P. 12(b)(3) ......................................................................................... 2, 3

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 6, 8

Fed. R. Civ. P. 12(b)(7) ............................................................................................ 2

Fed. R. Civ. P. 19(b) ................................................................................................ 2

Fed. R. Civ. P 56 ................................................................................................. 3, 4

Fed. R. Civ. P 56(c) ................................................................................................ 4

Local Rule CV-56(a) ............................................................................................... 4

Local Rule CV-56(d) ............................................................................................... 4

Local Rule CV-7(a)(1) .............................................................................................. 3

Local Rule CV-7(a)(2) .............................................................................................. 3

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Associated Recovery, LLC, and hereby responds to Defendant Lookout, Inc.'s Motion for Sanctions (Dkt. No. 128), as follows:

## I.      INTRODUCTION

*"If the law is against you, talk about the evidence," said a battered barrister. "If the evidence is against you, talk about the law, and since you ask me, if the law and the evidence are both against you, then pound on the table and yell like hell."*[1]

Frankly, it is hard to know where to begin in addressing Defendant Lookout, Inc.'s motion for sanctions because it is such a formless mass of (1) wacky metaphysical asides[2], (2) McCarthyesque innuendos signifying nothing[3], (3) obtuse rhetorical questions[4], (5) "alternative fact" realities[5], (6) leaps of logic-defying imagination[6], (7) axiomatic untruths[7], (8) pre-determined conclusions purportedly-but-not-actually following from un-established premises[8], and (9) broad-

---

[1]     Carl Sandburg, The People, Yes 181 (1936).

[2]     "To say that Associated Recovery is cognizant of anything is, of course, a legal fiction." *See* Dkt. No. 128 at 20 of 28.

[3]     "As far as its own status, Associated Recovery also is not being any more candid in this lawsuit. Associated Recovery merely alleges that it is a Wyoming limited liability company." *See* Dkt. No. 128 at 20 of 28.

[4]     "But if its predecessors had any such right to sue, that is, any such cause of action to recover the domain name rights, then why did they not recover the domain name rights in the *Netsphere v. Baron* litigation?  Or, why did they not recover the corresponding damages in the *Baron v. Vogel* litigation?" *See* Dkt. No. 128 at 21 of 28.

[5]     "[T]hat the purchasers have no legal title to the domain name rights – is unwarranted by existing law since it is contrary to the court of appeals' opinion and the subsequent district court proceedings interpreting such legal effect of the opinion." *See* Dkt. No. 128 at 3 of 28.

[6]     "In other words, Judge Lindsey in effect *ratified* the domain name sales that had been made by the receiver." *See* Dkt. No. 128 at 26 of 28.

[7]     "Associated Recovery's attorneys separately are responsible for their unreasonable and vexatious multiplication of the underlying litigation by the filing of this frivolous lawsuit against Lookout" *See* Dkt. No. 128 at 22 of 28.

[8]     "At any rate, even charitably considering that whatever Associated Recovery through that someone may *not* have known before, Associated Recovery *now* has been put on actual notice of it by Lookout's motion to dismiss and this motion to sanction, as well as by defendants' motion to dismiss in the companion lawsuit and other defendants' motions to dismiss in this lawsuit.  Despite such notice and ample opportunity for inquiry regarding the factual and legal precedents of the underlying litigation, Associated Recovery has persisted in its unfounded opposition to Lookout's motion to dismiss." *See* Dkt. No. 128 at 21 of 28.

brushed indictments quashable under the void-for-vagueness doctrine.[9] About the only thing clear from the motion is that Lookout claims:  (1) Associated Recovery's undersigned attorney presented the amended complaint for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) To the best of his knowledge, information, and belief, the claims and other legal contentions asserted therein are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) To the best of his knowledge, information, and belief, the factual contentions asserted therein do not have evidentiary support, and still will not after a reasonable opportunity for further investigation or discovery; and (4) He has already multiplied the proceedings in this case unreasonably and vexatiously.  And that is oh, so rich!

## II.   LOOKOUT'S MOTIONS ARE PROCEDURALLY DEFECTIVE, GROUNDLESS AND FRIVOLOUS

Neither Lookout's motion for sanctions (Dkt. No. 128) nor its underlying motion to dismiss (Dkt. No. 66) comports with the requirements of the Local Civil Rules of the U.S. District Court for the Eastern District of Texas or the Federal Rules of Civil Procedure, and, O, irony of ironies, both are groundless and frivolous.

### A.   Lookout's Motions Do Not Comport With Procedural Requirements

Lookout's motion for sanctions is almost double the page limitation set forth in Rule CV-7(a)(2).

Lookout's motion to dismiss (Dkt. No. 66) does not conform to the requirement of Local Rule CV-7(a) because it effectively combines two, if not three, separate non-alternative motions into a single document (*e.g.,* the motions asserting defenses pursuant to Rule 12(b)(1) and (3), and some motion based upon *res judicata* and collateral estoppel of some unspecified procedural basis). None of those case dispositive motions comply with the requirement of Local Rule CV-7(a)(1) to "contain a statement of issues to be decided by the Court."

Lookout's motion to dismiss (Dkt. No. 66) includes what purports to be a Rule 12(b)(6)

---

[9]   "The totality of the circumstances suggests that the instant case is just the latest manifestation in a pattern of apparent behavior by Jeffrey Baron conducted through purported limited liability companies and a succession of substituted attorneys to manipulate the legal process to multiply and delay any final resolution of the incipient dispute." *See* Dkt. No. 128 at 24 of 28.

motion, but yet, inexplicably, Lookout attaches nine (9) exhibits to such motion.[10]  Moreover, in the arguments therein, Lookout utterly disregards the standards by which such motions are to be evaluated.[11]  For the most part, Lookout just takes issue with virtually all of the factual allegations in Associated Recovery's Amended Complaint (Dkt. No. 15), as summarized *infra* in section IV, and /or asserts that the facts have purportedly been judicially established completely to the contrary of Associated Recovery's factual allegations. Dkt. No. 66.

Through the motion to dismiss and even the motion for sanctions (to which evidence is also attached), Lookout seeks to obtain judgment in a summary fashion without all the bother of those pesky procedural safeguards associated with Rule 56 motions for summary judgment, or more accurately, through unabashed circumvention thereof. The Court should express disapproval of Lookout's assault on the procedural integrity of the judicial system by refusing to convert either of Lookout's motions into a motion for summary judgment pursuant to Rule 12(d), if, for no other reason than, neither motion meets the requirements set forth in Local Rule CV-56(a) or (d).[12]

## B.  Lookout's Rule 12(b)(3) Motion to Dismiss For Improper Venue Is Groundless and Frivolous [13]

Lookout contends a receiver was granted the exclusive rights of possession, control and management over Novo Point, L.L.C., and the receiver sold the domain name "Lookout.com" to

---

[10]     With respect to Lookout's Rule 12(b)(6) motion (Dkt. No. 66), Associated Recovery objects to and respectfully requests the Court to exclude all "matters outside of the pleadings" presented in connection with such motion, specifically including the Declaration of Irene Liu (Dkt. No. 66-1), Exhibit D-1 (Dkt. No. 66-2), Exhibits 1 through 7 (Dkt. Nos. 66-3, 66-4, 66-5, 66-6, 66-7, 99-1, and 99-2) and each unsupported "assertion of fact" (as that concept is used in Rule 56(c) and (e)) set forth in any of those motions which are outside of Associated Recovery's Amended Complaint.

[11]     When ruling on a defendant's motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555-56 (2007).  The court must indulge all inferences in favor of the Plaintiff *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[12]     In combination with Local Rule CV-7(e), the "reasonable opportunity" requirement of Rule 12(d) would seem to require this Court to allow the respondent to a Rule 12(b)(6) motion converted into a motion for summary judgment at least fourteen (14) days after notification of the conversion to file a response and any supporting evidence. *Hickey v. Arkla Industries, Inc.,* 615 F.2d at 240 (The "reasonable opportunity" requirement of Rule 12(b), which is now set forth in Rule 12(d), in combination with the requirement that motions for summary judgment be served at least ten (10) days prior to the hearing date formerly set forth in Rule 56(c) "establish[ed] that, as a rule of thumb, parties are entitled to 10 days notice that a 12(b)(6) motion is being treated as a Rule 56 motion for summary judgment.").

[13]     This Honorable Court has already concluded that "Associated Recovery has met its burden to establish proper venue in this district by establishing specific personal jurisdiction over at least one of the Defendants, including Lookout and BI, because under 28 U.S.C. § 1391(b)(3)." *See* Dkt. No. 130 at 17 of 28.

---

Lookout through an individual named Damon Nelson purportedly acting as manager for Novo Point.

In moving for the dismissal or transfer of this civil action to the U.S. District Court for the Northern District of Texas, Dallas Division, Lookout quotes a limited passage from a memorandum opinion and order of the Honorable Sam A. Lindsey, U.S. District Judge, and attributes significantly broader legal implications to that passage than is warranted by existing law.  Lookout argues Judge Lindsey specifically intended to confer "exclusive jurisdiction" upon himself (i.e., to the exclusion of all other courts) over each and every claim in any way arising out of or related to the receivership, and even with respect to persons and other legal entities never a party to the civil action, and that his Honor was legally empowered to do so. *See* Dkt. Nos. 66 at 1, 2-3, 8-9 of 29.

It is evident from expressions in other orders Judge Lindsey issued in the very same civil action that he never intended the egregious overextension of jurisdiction Lookout envisions, and, even expressly recognized he lacked jurisdiction to determine ownership of Novo Point's assets. Judge Lindsey's order of February 28, 2014, expressly provides in part as follows:

> The court **rejects** the Receiver's request for it to conduct a show cause hearing or proceedings to determine the ownership of the Baron or Novo Point/Quantec assets, and will not consider any evidence in this regard. […] While the ownership of Novo Point and Quantec may have been relevant in the bankruptcy proceeding, such a determination is not relevant or necessary to comply with the Fifth Circuit's mandate that the receivership, the creation of which was determined to be improper, be wound down expeditiously.   Thus, any such determination is outside of the court's jurisdiction.
>
> \*   \*   \*
>
> If the court lacks jurisdiction over the disputes regarding the ownership of the Novo Point and Quantec receivership assets, it would seem that it also lacks jurisdiction to enjoin third-party claims dealing with this matter, particularly those claims that have already been filed, litigated, or arbitrated or are in the process of being litigated or arbitrated. […] [T]he court concludes that the requested injunctive relief is not necessary to effectuate a winding down of the receivership in this case, and the parties have not pointed to any other authority that would permit the court to enjoin parties not before the court.

*See*, *Netsphere, Inc. v. Baron*, Civil Action No. 3:09-cv-00988-L, Dkt. No.1368 (N.D. Tex. Feb. 28, 2014)(emphasis original). *See* Dkt. No. 92-2 at 10 and 12 of 13; Dkt. No. 98-2 at 10 and 12 of 13.

Lookout cites no authority in its motion for sanctions (Dkt. No. 128) or its motion to dismiss

(Dkt. No. 66) to support the proposition that Judge Lindsey was vested with the power to limit jurisdiction over the claims Associated Recovery is asserting against Lookout in this action.

**C.**     **Lookout's Rule 12(b)(1) and (6) Motions to Dismiss For Lack of Standing and Failure to State a Claim and Non-Standard Motion Seeking Application of *Res Judicata* and Collateral Estoppel Are Groundless and Frivolous**

In moving this Court to dismiss this civil action pursuant to Rule 12(b)(1) and (6), and to sanction Associated Recovery and its attorneys, Lookout asserts that Associated Recovery's claims against Lookout are barred by *res judicata* and collateral estoppel as the result of another of Judge Lindsey's memorandum opinion and order.  *See* Dkt. No. 66 at 2, 3, 4, 10-18 of 29; Dkt. No. 128 at 23 of 28.  In such memorandum opinion and order, Judge Lindsey **merely ruled** that the receiver and Mr. Nelson were entitled to dismissal of claims asserted against them based on derivative judicial immunity with respect to all actions taken in connection with the receivership, including the above-referenced purported sale.  *See Baron v. Vogel,* Civil Action No. 3:15-cv-232-L, Dkt. No. 49, 2016 U.S. Dist. LEXIS 44294 at *1-*2 (N.D. Tex. Mar 31, 2016).  *See* Dkt. No. 66-7.

The only rulings essential to Judge Lindsey's memorandum opinion and order of March 31, 2016, in *Baron v. Vogel* were: (1) the receiver and Mr. Nelson had derivative judicial immunity; (2) neither of them lost such immunity when the receivership order and other orders were reversed by the Fifth Circuit; and (3) the claimants were barred from asserting any exception to such immunity or the inapplicability of such immunity to claims in question because the claimants failed to raise such issues in earlier proceedings in the district and appellate court.  *Id.*

Contrary to what Lookout argues throughout its motion to dismiss (Dkt. No. 66) and motion for sanctions (Dkt. No. 128), nowhere in such memorandum opinion and order is the issue of the legal validity of the purported sales of domain names by the receiver, including the purported sale to Lookout, addressed **in any respect whatsoever**, nor has that issue ever been expressly determined by the U.S. District Court for the Northern District of Texas or any other court.[14]

Lookout's assertion that Associated Recovery's claims are somehow barred by *res judicata*

---

[14]     Except perhaps by the United States Court of Appeals for the Fifth Circuit and in a manner most unfavorable to Lookout and the other defendants in this case. *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).

and collateral estoppel as a result of the U.S. Court of Appeals for the Fifth Circuit opinion and judgment, which directed the District Court to vacate the receivership order and all related material orders, is not warranted by the existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

The Fifth Circuit directed the District Court to vacate the receivership order and **every single order authorizing any sale of Novo Point, L.L.C.'s domain names**, including the purported sale to Lookout.[15]   But, of course, as none of the purported purchasers of the domain names (i.e., neither Lookout nor any of the other defendants in this action) ever was a party to the action in the Northern District of Texas or the appeal in the Fifth Circuit **either before or after the Fifth Circuit issued its opinion and judgment**, the Fifth Circuit never had any reason or jurisdiction to: (1) Specifically adjudicate any of the purported purchasers title to any of the domain names; (2) Order any rescission of any such purported sale; (3) Order any purported purchaser to return any domain name that had already purportedly been sold; or (4) Order any restitution of any consideration paid by any purported purchaser for any domain name.

### D.   Lookout's Rule 12(b)(7) / Rule 19(b) Motion to Dismiss For Failure to Join Certain Other Parties Is Groundless and Frivolous

Lookout's assertion that Associated Recovery's claims are purportedly barred by *res judicata* and collateral estoppel as a result of Judge Lindsey's ruling that the receiver and Mr. Nelson were immune to liability with respect to the sale of the domain names **completely belies** Lookout's argument that this Court must dismiss this civil action pursuant to Rule 12(b)(7) and Rule 19(b) for failure to join the receiver and Mr. Nelson.   Although Lookout ostensibly asserts its Rule 12(b)(7) and Rule 19(b) defenses in the alternative, the inherent contradiction thoroughly discredits any argument that the receiver or Mr. Nelson must be joined.

Given the fact that all warranties, even as to title, were expressly disclaimed under the terms of the assignment through which Lookout purports to have purchased the domain name, and Lookout released an extraordinarily broad scope of claims against Novo Point, the receiver, and Mr. Nelson and each of their successors and assigns through such assignment and even assumed an

---

[15]     *Id.*; *see also* discussion *infra* at 13-17 and Exhibits 1 through 8 of this response.

equally broad obligation to indemnify and hold each of those parties harmless, as discussed *infra* at

8-10, it is merely stating the obvious to say, that no legitimate interest could possibly be served by

the joinder of Novo Point, the receiver, or Mr. Nelson in this action.

**E.     Other Aspects of Lookout's Rule 12(b)(1) and (6) Motions to Dismiss Are
        Groundless and Frivolous**

Throughout its motion to dismiss, Lookout senselessly repeats over and over that it was "a

third-party purchaser in an arms-length transaction for value" with respect to its purported purchase

of Novo Point's domain name from the receiver through Mr. Damon, and then follows up with a

*non-sequitur* to the effect that, as a result, it somehow has title to the domain name superior to Novo

Point, the receiver, and Novo Point's successor-in-interest, Associated Recovery "regardless of the

pendency of the appeal and regardless of the subsequent reversal of the receivership order." *See*

Dkt. No. 66 at 18-21 of 29.  And for good measure, Lookout repeats that exact same verse all over

again in its motion for sanctions.  *See* Dkt. No. 128 at 2 of 28.

While its unclear exactly why Lookout keeps chanting that same mantra over and over, after

much deliberation, Associated Recovery has concluded the mantra has some connection with

Lookout's Rule 12(b)(1) and (6) motions to dismiss.   Lookout presents "matters outside the

pleadings" (as that concept is discussed in Rule 12(d)) – namely, the transactional document

through which Lookout purportedly purchased Novo Point's domain name from the receiver

through Mr. Damon (*see* Dkt. No. 66-2) – but that document only serves to refute Lookout's

contention.   More specifically, the transactional document through which Lookout purportedly

purchased Novo Point's domain name expressly provides in conspicuous capital letters as follows:

> 4.     <u>LIMITATIONS OF LIABILITY</u>.
>
> (a)  BUYER EXPRESSLY AGREES THAT IT IS PURCHASING RIGHTS
> TO THE DOMAIN NAMES AT ITS SOLE RISK ON AN "AS IS" BASIS.
> SELLER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES WITH
> RESPECT TO THE DOMAIN NAMES, INCLUDING BUT NOT LIMITED TO
> THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR
> A PARTICULAR PURPOSE.  BUYER ACKNOWLEDGES AND AGREES THAT
> THERE ARE NO IMPLIED REPRESENTATIONS, WARRANTIES, OR
> COVENANTS OF SELLER IN THIS AGREEMENT OR IN ANY DOCUMENT
> OR AGREEMENT EXECUTED BY SELLER PURSUANT HERETO.  SELLER

MAKES NO REPRESENTATION THAT THE DOMAIN NAMES WILL MEET BUYER'S REQUIREMENTS, OR THAT BUYER WILL BE ABLE TO ATTAIN ANY SPECIFIC RESULTS OR VALUE ASSOCIATED WITH THE DOMAIN NAMES OR THE USE THEREOF.  SELLER SHALL NOT BE LIABLE TO BUYER FOR ANY EXEMPLARY, PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES, LOST PROFITS OR LOST PRSOPECTIVE ECONOMIC ADVANTAGE ARISING UNDER THIS AGREEMENT.

(b)   BUYER HEREBY ASSUMES ANY AND ALL LIABILITIES, DEBTS, CLAIMS, OR OBLIGATIONS THAT ARISE OUT OF OR ARE RELATED TO THE OWNERSHIP AND CONTROL OF THE DOMAIN NAMES, WHETHER ACTUAL OR CONTINGENT, KNOWN OR UNKNOWN, WHETHER ARISING OUT OF OCCURRENCES PRIOR TO OR AFTER THE DATE HEREOF (COLLECTIVELY, THE "<u>ASSUMED LIABILITIES</u>").

(c)   THE ALLOCATIONS AND LIMITATIONS OF LIABILITY SSET FORTH IN THIS SECTION REPRESENT THE AGREED AND BARGAINED-FOR UNDERSTANDING OF THE PARTIES AND THE PURCHASE PRICE FOR THE DOMAIN NAMES REFLECTS SUCH ALLOCATIONS AND LIMITATIONS.

5.   <u>Release</u>.   Buyer, for itself and on behalf of its officers, directors, shareholders, representatives, agents, administrators, attorneys, employees, attorneys, assigns, successors and agents, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND FOREVER DISCHARGE Seller and its current and former officers, managers, members, representatives, agents, administrators, attorneys, employees, successors, assigns, including the Receiver Peter S. Vogel and his attorneys, Gardere Wynne Sewell LLP (hereinafter collectively referred to as the "<u>Seller Releasees</u>"), from any and all claims, debts, damages, demands, liabilities, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, damages, attorneys' fees and expenses of whatever kind or character ("<u>Losses</u>"), whether heretofore or hereafter accruing, whether known or unknown to the Parties, whether foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, arising out of or in connection with the Domain Names, the Assumed Liabilities or this Agreement, which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement.

6.   <u>Indemnification.</u>  Buyer hereby agrees to indemnify and hold Seller and the Seller Releasees harmless from and against, and pay to the applicable Seller Releasee the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names or any in connection with any intellectual property claim or ownership claim related to the Domain Names.

In short, the assignment through which Lookout contends it obtained title to the domain name

superior to Novo Point, the receiver, Mr. Nelson, and Novo Point's successor-in-interest,

Associated Recovery amounts to no more than a quitclaim deed, which warrants absolutely nothing, including title, and in fact, disclaims all warranties.   Under the express terms of the assignment, Lookout: (1) Assumed all risks; (2) Released Novo Point, the receiver and Mr. Nelson and their attorneys, and even Novo Point's "successors [and] assigns" (e.g., successor-in-interest, Associated Recovery) from liability, "which may have existed prior to, or contemporaneously with, the execution of this Agreement, or subsequent to the execution of this Agreement"; and (3) "[A]gree[d] to indemnify and hold [all of those other parties, including Associated Recovery] harmless from and against, and to pay to [each of those parties including Associated Recovery] the amount of any and all Losses arising out of, based upon or relating to any of the Domain Names."

## III.    APPLICABLE STANDARDS

"Rule 11 applies only to the *signing* of pleadings, motions, or other papers."   *Hogue v. Royse City*, 939 F.2d 1249, 1256 (5th Cir. 1991) (emphasis in original) (citing *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)).   Courts must be cautious regarding the imposition of sanctions, for the "misapplication of Rule 11 can chill counsel's 'enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories,' contrary to the intent of its framers.   For this reason, a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where [] the law is arguably unclear."   *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993).

"For sanctions under 28 U.S.C.§1927 to be appropriate, an attorney must have unreasonably and vexatiously multiplied the proceedings; there must be evidence of recklessness, bad faith, or improper motive."   *Hogue*, 939 F.2d at 1256 (citing *Manax v. McNamara*, 842 F.2d 808, 814 (5th Cir. 1988)).   In other words, a merely unsuccessful claim is not, itself, sanctionable under Section 1927.   *Id.*   "Sanctions under 28 U.S.C. § 1927 are punitive in nature and require 'clear and convincing evidence, that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"   *Bryant v. Military Dep't*, 597 F.3d 678, 694 (5th Cir. 2010) (quoting *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002) (emphasis in original)).   The standard for sanctions under Section 1927 "focuses on the conduct of the litigation *and not the merits*."   *Id.* (quoting *Religious Tech. Ctr. v.*

*Liebrich*, 98 F. App'x 979, 983 (5th Cir. 2004)) (emphasis added). "Section 1927 is strictly construed in favor of the party against whom sanctions are sought to avoid dampening 'the legitimate zeal of an attorney representing his client.'" *T.L. Dallas*, 2008 U.S. Dist. LEXIS 112603, *30 (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417 (5th Cir. 1994) and citing *Proctor & Gamble Co. v. Amway Corp..,* 280 F.3d 519, 525-26 (5th Cir. 2002)). "The court uses repeated filings despite warnings from the court, or other evidence of excessive litigiousness to support sanctions." *Id.* at *30-31 (citing *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d at 525-26).

## IV.   THE GIST OF ASSOCIATED RECOVERY'S ALLEGATIONS, ITS COUNSEL'S BELIEFS, AND THE BASIS THEREOF

A.     In Associated Recovery's amended complaint, Associated Recovery alleges the facts set forth in this section of this response (i.e., section IV.)[16]

B.     Associated Recovery's undersigned counsel certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under circumstances, each of these facts are true, and that his belief with respect to certain of those facts is based in part upon the exhibits attached to this response, which are true and correct copies of certain records filed in the underlying civil action in the U.S. District Court for the Northern District of Texas and/or the appeals of various orders issued by the District Court in such civil action to the U.S. Court of Appeals for the Fifth Circuit.

C.     Prior to and during the year 2004, the domain names that are the subject of this civil action were originally registered. *See* Dkt. No. 15 at 20 of 32.

D.     During a period beginning before November of 2010 and continuing through December 24, 2015, Novo Point, L.L.C. owned all right, title and interest in those domain names and was the registrant of those domain names. *See* Dkt. No. 15 at 3-4, 20-22, 25 of 32.

E.     On November 24 2010, and December 17, 2010, the U.S. District Court for the Northern District of Texas issued orders purporting to establish a receivership, appoint the receiver, and grant

---

[16]     *See* authorities and discussion *supra* at 3, note 11.

exclusive possession and control over Novo Point's domain names to the receiver in a civil action, notwithstanding that Novo Point was not even a party to such civil action. *See* Dkt. No. 15 at 21-22 of 32; Exhibits 2 and 3.

F.      Novo Point appealed the District Court's orders purportedly granting the exclusive rights of possession, control, and management over its domain names to the receiver immediately after the issuance of such order. *See* Dkt. No. 15 at 21-22 of 32; Exhibits 1, 2 and 3.

G.      On February 4, 2011, the District Court issued an order authorizing the receiver to sell Novo Point's domain names. *See* Dkt. No. 15 at 21-23 of 32; Exhibit 4.

H.      On March 3, 2011, Novo Point appealed the District Court's order purporting to authorize the receiver to sell Novo Point's domain names. *See* Dkt. No. 15 at 21-22 of 32; Exhibits 1 and 4.

I.      On March 11, 2011 and April 22, 2011, the District Court issued orders appointing an individual named Mr. Nelson to assist the receiver as the manager of Novo Point's domain names. *See* Dkt. No. 15 at 22-23 of 32; Exhibits 5 and 6.

J.      On April 11, 2011, Novo Point appealed the District Court's order of March 11, 2011, purportedly so appointing Mr. Nelson. *See* Dkt. No. 15 at 21-22 of 32; Exhibit 5.[17]

K.      On January 31, 2012, and on May 3, 2012, the District Court issued orders purportedly authorizing the receiver to sell Novo Point's domain names. *See* Dkt. No. 15 at 21-23 of 32; Exhibits 7 and 8.

L.      On February 7, 2012 and June 22, 2012, Novo Point appealed the District Court's order purporting to authorize the receiver to sell Novo Point's domain names. *See* Dkt. No. 15 at 21-22 of 32; Exhibits 7 and 8.

M.      After the District Court appointed Mr. Nelson, and after Novo Point appealed the District Court's order of November of 2010, but before December 18, 2012, the receiver acting through Mr. Nelson entered into a separate transaction purporting to assign ownership of a domain name or domain names from Novo Point to each defendant or predecessor-in-interest of each. *See* Dkt. No. 15 at 4-17, 22-23, 30 of 32; Dkt. No. 15-1.

---

[17]      On February 28, 2014, the District Court vacated its own order of April 22, 2011, purportedly appointing an individual named Damon Nelson to assist the receiver as the manager of Novo Point's domain names. *See* Exhibits 5 and 6.

N.     Novo Point was neither informed nor had actual knowledge of any such transaction prior to closing, and Novo Point never authorized or ratified any such purported transfer of ownership at any point.  *See* Dkt. No. 15 at 22-23, 30 of 32.

O.     Before the closing of each such transaction, such defendant or predecessor-in-interest had actual knowledge that:

1.     Novo Point claimed to own the domain names, and claimed that the District Court's order of November of 2010, purportedly granting the exclusive rights of possession, control and management over Novo Point's domain names to the receiver, and each order purportedly authorizing the receiver to sell such domain names through Mr. Nelson were *void ab initio* and never had any actual legal force or effect because Novo Point was never a party to the civil action (Dkt. No. 15 at 2-3, 22-23, 30 of 32);

2.     Novo Point claimed that, in reality, neither the receiver nor Mr. Nelson ever had any actual legal right to possess, control or manage any of the domain names whatsoever, or the ability to effectuate any legally valid transfer of any right, title or ownership interest in any of the domain names  (Dkt. No. 15 at 23, 30-31 of 32); and

3.     Novo Point's appeal of the District Court's order based upon each such claim and the risk that a reversal of any of the orders on appeal could establish as a matter of law that, in reality, no purported transfer of ownership of any domain name to a defendant or predecessor-in-interest of a defendant ever actually divested Novo Point of any right, title, or ownership interest in such domain name or effectuated any legally valid transfer of any right, title or ownership interest in such domain name or had any legal effect with respect to any such right, title or ownership interest whatsoever.  *See* Dkt. No. 15 at 22-23, 30 of 32.

P.     Such actual awareness of the risk posed by Novo Point's above-described claims and appeals led one or more of the defendants or predecessors-in-interest of a defendant to negotiate with Mr. Nelson to provide express warranties of title and to assume an obligation to indemnify such defendant(s) or predecessor(s)-in-interest against monetary loss in the written agreement(s) purportedly selling a domain name or domain names to such defendant(s) or predecessor(s)-in-

interest, but Mr. Nelson refused to do so, and none of the agreements include any express warranty of title or provision obligating Mr. Nelson to indemnify a defendant or predecessor-in-interest – in fact, on the contrary, each such agreement includes an express disclaimer of any warranty whatsoever. *See* Dkt. No. 15 at 23 of 32.

Q.    In view of the above-described risks, the absence of any express warranty of title or provision obligating Mr. Nelson to indemnify a defendant or predecessor-in-interest of a defendant, and the express disclaimer of any warranty, the monetary consideration paid by each defendant or predecessor-in-interest for each purported transfer of ownership of a domain name was well below the value of the domain name to Novo Point and also well below what the fair market value of such domain name would have been if such risks did not exist – more specifically, each defendant or predecessor-in-interest paid less than 1% of what the fair market value would have been conditions free of such risks.  *See* Dkt. No. 15 at 24 and 30 of 32.

R.    After each transaction purporting to transfer ownership of a domain name or domain names from Novo Point to a defendant or a predecessor-in-interest of a defendant, and without any legally valid authorization, such defendant or predecessor-in-interest unlawfully assumed and exercised control over such domain name(s) to the exclusion of, or inconsistent with Novo Point's right, title and ownership interest in various, specifically alleged, factual matters, including entering into transactions purporting to transfer ownership of domain names to certain defendants and predecessors-in-interest to certain defendants. *See* Dkt. No. 15 at 24-27 of 32.

S.    On December 18, 2012, the U.S. Court of Appeals for the Fifth Circuit issued a single opinion concerning numerous appeals of each of the above-referenced orders of the District Court, specifically including:

    1.    Novo Point's appeal of the District Court's order purporting to grant the exclusive rights of possession, control, and management over Novo Point's domain names to the receiver (*See* Dkt. No. 15 at 21-22 of 32; Exhibits 1, 2, and 3); and

2.       Appeals of the District Court's order authorizing the receiver to sell Novo Point's

domain names and the order of March 11, 2011, appointing Mr. Nelson to assist the receiver

as the manager of Novo Point's domain names.

*See* Dkt. No. 15 at 22-23 of 32; Exhibits 1, 4, and 5.

T.      In the opinion, the Fifth Circuit reversed each of the orders, instructed the District Court to

vacate each of the orders, and explained that the District Court never had subject-matter jurisdiction

over any of the domain names or any power to issue any of the orders because no issue concerning

any such domain name had ever been raised in the civil action independently from those pertaining

to the receivership-related orders, and Novo Point had never even been a party in the action.  *See*

Dkt. No. 15 at 21-23 of 32; Exhibit 1 at 20-21.

U.      On April 19, 2013, the Fifth Circuit reversed each of the District Court's above-referenced

orders through a separate judgment with respect to each appeal of each such order and the mandate

on each such judgment.  *See* Dkt. No. 15 at 2-3 and 21-23 of 32; Exhibits 1-8.

V.      On February 28, 2014, the District Court vacated its own order of April 22, 2011,

purportedly appointing an individual named Damon Nelson to assist the receiver as the manager of

Novo Point's domain names.  *See* Exhibits 5 and 6.

W.      On or about December 24, 2015, Novo Point, L.L.C. transferred all right, title and

ownership interest in the domain names, certain related intangible property, and some of the causes

of action that are the subject of this civil action to Associated Recovery.  *See* Dkt. No. 15 at 3-4, 20-

23, and 25-26 of 32.

X.      After Associated Recovery owned the domain names, related intangible property, and some

of the causes of action that are the subject of this action, Associated Recovery demanded that each

defendant return each domain name that purportedly been sold to the defendant or a predecessor-in-

interest of the defendant by the receiver through Mr. Nelson, and cease exercising control over such

domain name to the exclusion of, or inconsistent with Associated Recovery's right, title and

ownership interest in the domain names, and each defendant has refused to comply with the demands.  *See* Dkt. No. 15 at 3 and 26-31 of 32.

Y.     Associated Recovery alleges that it is entitled to recover damages from each of the defendants and obtain various other forms of relief with respect to the domain names in its capacity as the assignee of Novo Point and in its own capacity as the owner of all right, title and interest to the domain names and other property that are the subject of this suit under various applicable legal theories of recovery.  *See* Dkt. No. 15.

WHEREFORE PREMISES CONSIDERED Associated Recovery respectfully requests the Court to deny all relief requested in Lookout's Motion for Sanctions (Dkt. No. 128), and to grant such other relief to which Associated Recovery is entitled.

Respectfully submitted,

/s/ Luiz Felipe Oliveira
LUIZ FELIPE OLIVEIRA
Reg. No. 5349923
Paul Grandinetti
Rebecca J. Stempien Coyle
1120 Connecticut Avenue, N.W., Suite 304
Washington, D.C. 20036
Tel:  (202) 429-4560
Fax: (202) 429-4564
mail@levygrandinetti.com

ATTORNEYS FOR PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

On the 8th day of February, 2017, at approximately 9:30 p.m. Central, a true and correct copy of the foregoing document was electronically submitted to the Clerk of Court for the U.S. District Court for the Eastern District of Texas, using the ECF system.  I hereby certify that I have served the lead counsel in charge for Defendant Lookout, Inc., L. Nelson Hall, Esquire, and counsel of record for all other parties through the Court's electronic filing and service system in accordance with Local Rule CV-5.

*Linda Butcher, et al.*
*DGB Partner, Inc.*
Jason James Richerson
RICHERSON LAW FIRM
306 East Randol Mill, Suite 160
Arlington, Texas 76011
info@richersonlawfirm.com

*Tumult, Inc.*
Jennifer Parker Ainsworth
WILSON ROBERTSON & CORNELIUS PC
909 ESE Loop 323, Suite 400
P.O. Box 7339
Tyler, Texas 75711
jainsworth@wilsonlawfirm.com

*Slice Technology, Inc.*
*f/k/a Project Slice, Inc.*
Joel Christian Boehm
WILSON SONSINI GOODRICH & ROSATI
900 S Capital of Texas Highway
Las Cimas IV, 5th Floor
Austin, Texas 78746
jboehm@wsgr.com

*True Magic, LLC,*
*Adam Strong,*
*Strong, Inc.,*
*Onig, LLC,*
*Virtual Investments, LLC,*
*Creation Media, LLC,*
*Media Options, Inc.*
Adam H Pierson
DENTONS US LLP

*Priveco, Inc.*
Debra Elaine Gunter
FINDLAY CRAFT PC
102 N College Ave, Suite 900
Tyler, Texas 75702
dgunter@findlaycraft.com

Franklin Michael Smith
DICKINSON WRIGHT PLLC
2600 W Big Beaver Rd, Ste 300
Troy, MI 480084
fsmith@dickinsonwright.com

*CBRE Group, Inc.*
Michael Scott Fuller
Paul D Lein
LOCKE LORD LLP
2200 Ross Ave, Suite 2800
Dallas, TX 75201
sfuller@lockelord.com
plein@lockelord.com

*Electronic Arts, Inc.,*
*Power Home Technologies, LLC*
William Robert Lamb
GILLAM & SMITH LLP
303 S Washington Ave
Marshall, Texas 75670
wrlamb@gillamsmithlaw.com

*State Farm Mutual Automobile*
*Insurance Company*
R. William Beard, Jr.
SLAYDEN GRUBERT BEARD PLLC

*Radical Investments Mgmt., LLC*
Darin Michael Klemchuk
Aaron Douglas Davidson
Corey Jennifer Weinstein
KLEMCHUK LLP
8150 N Central Expwy.
10th Floor
Dallas, TX 75206
darin.klemchuk@klemchuk.com
aaron.davidson@klemchuk.com
corey.weinstein@klemchuk.com

*Lookout, Inc.*
James Mark Mann
MANN TINDEL & THOMPSON
300 W Main St
Henderson, Texas 75652
mark@themannfirm.com

*Telepathy, Inc.*
Brian H Pandya
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
bpandya@wileyrein.com

*All-Pro Fasteners, Inc.*
Michael Edward Hassett
JONES HASSETT PC
440 North Center
Arlington, Texas 76011
mhassett@joneshassett.com
*Buyers International Group, LLC*

2000 McKinney Ave
Suite 1900
Dallas, Texas 75201
adam.pierson@dentons.com

*Quinn Veysey*
Mark Jeffrey Levine
WEYCER KAPLAN PULASKI & ZUBER
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
mlevine@wkpz.com

401 Congress Ave
Suite 1900
Austin, Texas 78701
wbeard@sgbfirm.com

*Alansis Corporation*
*Alansis.com, Incorporated*
Brian Casper
CANTEY HANGER LLP
1999 Bryan St, Suite 3300
Dallas, Texas 75201
bcasper@canteyhanger.com

Jerome A. Moore
24825 Little Mack Avenue
St Clair Shores, MI 48080
gpwjam@aol.com

*Fantasy Spin Game, LLC*
55 Chapel Street
Suite 30
Newton, Massachusetts 024568

/s/ Luiz Felipe Oliveira
LUIZ FELIPE OLIVEIRA

ATTORNEY FOR PLAINTIFF